WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 822-0220
Attorneys for Plaintiffs

| | | |
|---|---|---|
| DR. FADI CHAABAN; DR. SABINO R. TORRE; DR. CONSTANTINO A. COSTEAS and DR. ANTHONY J. CASELLA, as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan, | : : : : : : | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiffs, | : : | Civil Action |
| vs. | : : : | Case No.  2:08-cv-01567-GEB–MCA |
| DR. MARIO A. CRISCITO, | : : : : | **CERTIFICATION IN OPPOSITION TO DEFENDANT'S RULE 14(a) MOTION TO FILE A THIRD-PARTY COMPLAINT** |
| Defendant. | : | |

STEPHEN M. CHARME, of full age, certifies as follows:

1.      I am an attorney at law of the State of New Jersey and am a member of the law firm of Witman Stadtmauer, P.A., attorneys for plaintiffs in this action.  I submit this certification in opposition to defendant's motion to file a third-party complaint pursuant to Fed.R.Civ.P.14(a).

2.      Annexed as <u>Exhibit 1</u> is a copy of the complaint together with its exhibits that plaintiffs filed in this action.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 11, 2010                    /s/Stephen M. Charme_____
                                                   Stephen M. Charme

# **EXHIBIT 1**

WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932-2246
Telephone: (973) 822-0220
Facsimile: (973) 822-1188
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Dr. Fadi Chaaban, Dr. Sabino R. Torre, Dr. Constantinos A. Costeas, and Dr. Anthony J. Casella as trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan, | : | CASE NO:  08-1567(WJM) |
| | : | **COMPLAINT** |
| Plaintiffs, | : | |
| v. | : | |
| Dr. Mario A. Criscito, | : | |
| Defendant. | : | |

Plaintiffs Dr. Fadi Chaaban, residing at 7 Orchard Drive, Montville, New Jersey, Dr.

Sabino R. Torre, residing at 7 Lancer Drive, Short Hills, New Jersey, Dr. Constantinos A.

Costeas, residing at 17 Tara Lane, Montville, New Jersey and Dr. Anthony J. Casella, residing at

28 Holton Lane, Essex Fells, New Jersey as trustees of Diagnostic & Clinical Cardiology, P.A.

Profit Sharing Plan ("Plan"), for their complaint against Dr. Mario A. Criscito, residing at 32

Chelsea Drive, Livingston, New Jersey allege as follows:

### Nature of the Action

1.      This action arises from the fraud and other misconduct that defendant, the former

sole trustee of the Plan, a tax qualified pension plan, perpetrated upon the Plan and its participants and beneficiaries in order to enrich himself at their expense by using assets of the Plan for private equity and real estate investments, to pay personal expenses such as country club dues, to borrow money without repaying it, and to increase his personal assets by the diversion of other Plan participants' account balances to his account balance in the Plan, and then subsequently to his personal accounts at financial institutions - - all in violation of his fiduciary duties under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

2. Defendant was a cardiologist at a medical group in West Orange, New Jersey, and served as the Plan's sole trustee for over thirty years until he was removed as trustee on July 2, 2007; his employment ended on August 2, 2007. During his tenure as trustee he ensured that nobody at the medical group received any information about his handling of Plan assets, and knowingly, intentionally and fraudulently failed to supply appropriate and correct information to the third-party administrator as to the commingled accounts, i.e., the accounts that were not individually directed.

3. His most flagrant and audacious diversion of Plan assets for his own personal benefit occurred in early January 2000, when he knowingly, intentionally, and fraudulently misrepresented to the third-party administrator that the 1999 year end values of two commingled accounts at Dean Witter Morgan Stanley and Salomon Smith Barney were approximately $4,000,000 and $800,000 when, in fact, the true values were approximately $13,000,000 and $4,000,000.

4. He then pressured the other Plan participants to open individually directed accounts in the Plan, which one doctor and thirteen non-doctor employees did.

5. As trustee, defendant then arranged for distributions to be made to such participants'

2

individually directed accounts based on the false, fraudulent, and greatly reduced numbers that he had given to the third-party administrator, thereby drastically shortchanging the participants and keeping the difference for his personal account balance in the Plan.

6.  It was not until after defendant's removal as the sole trustee in July 2007, that the current trustees of the Plan had access to information and documents that disclosed defendant's massive fraud and wrongdoing, the full extent of which is still not known.

7.  Accordingly, as successor fiduciaries under ERISA, the current trustees of the Plan bring this action pursuant to ERISA on behalf of the Plan and its participants and beneficiaries to recover assets that rightfully belong to the Plan and its participants and beneficiaries, and also to seek related relief, including punitive damages by reason of defendant's massive fraud.

### The Parties

8.  Plaintiff Dr. Fadi Chaaban is a citizen and resident of Montville, New Jersey, and is a cardiologist currently employed by Diagnostic & Clinical Cardiology, P.A., located at 769 Northfield Avenue, Suite 220, West Orange, New Jersey 07052 ("DCC"). Since July 11, 2007, he has been and is a trustee of the Plan.

9.  Plaintiff Dr. Sabino R. Torre is a citizen and resident of Short Hills, New Jersey, and is a cardiologist currently employed by DCC. Since July 11, 2007 he has been and is a trustee of the Plan.

10. Plaintiff Dr. Constantinos Costeas is a citizen and resident of Montville, New Jersey, and is a cardiologist currently employed by DCC. Since July 11, 2007 he has been and is a trustee of the Plan.

11. Plaintiff Dr. Anthony J. Casella is a citizen and resident of Essex Fells, New Jersey,

3

and is a cardiologist currently employed by DCC. Since November 15, 2007 he has been and is a trustee of the Plan.

12. Defendant Dr. Mario A. Criscito is a citizen and resident of Livingston, New Jersey. From in or about April 1976 until August 2007 he was employed as a cardiologist by DCC, and until July 2, 2007 was the sole trustee of the Plan, including a predecessor money purchase pension plan that DCC established in 1976, which was converted into the current profit sharing plan in 2005. His employment with DCC ended on August 2, 2007.

### Jurisdiction and Venue

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 1132(e)(1) and (f), ERISA Section 502(e)(1) and (f) since this action arises under ERISA.

14. This Court has personal jurisdiction over defendant because this is the district where defendant resides, and where he committed numerous breaches of fiduciary duty during his tenure as the Plan's sole trustee.

15. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), ERISA Section 502(e)(2) because this is the district where at all times the Plan was and is administered, where the defendant's numerous breaches of fiduciary duty took place, and where defendant resides.

### CAUSE OF ACTION

16. In or about 1976, defendant formed DCC and created the "Diagnostic and Clinical Cardiology, P.A. Money Purchase Pension Plan", of which defendant was the sole trustee.

17. In or about January 2005, for tax reasons DCC converted the Money Purchase Pension Plan into a profit sharing plan named "Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan," of which defendant continued to be the sole trustee.

4

18. The Money Purchase Pension Plan and subsequent Profit Sharing Plan are referred to collectively as the "Plan."

19. At all times from the inception of the Plan in 1976 until his removal as trustee in July 2007, defendant was the Plan's sole trustee. He arranged for all information about the Plan to be sent directly to him at his home rather than to the office of DCC, where other Plan participants might have access to it. As described herein, he did so to conceal his use of Plan assets for his own personal benefit in breach of his fiduciary duties under ERISA.

### Defendant Fraudulently Conceals and Wrongfully Takes For Himself Millions of Dollars In Assets of the Plan

#### 1. The Morgan Stanley Account

20. At all times while he was the sole trustee, defendant unilaterally made all investment decisions for the commingled accounts of the Plan, i.e. accounts in which he and various other employees - - both doctors and non-doctors - - had their money invested, as opposed to individually directed accounts, where the money in each account is for the benefit of only the named participant, who makes his/her own investment decisions.

21. In or about February 1997, as sole trustee of the Plan, defendant established a commingled account for the Plan with Morgan Stanley Dean Witter ("Morgan Stanley Account").

22. As of December 31, 1998 the balance in the Morgan Stanley Account was $2,355,460.58 (Exhibit 1, p. 1). One of the largest holdings was a volatile high tech stock known as Veritas.

23. In or about January 1999, as sole trustee of the Plan defendant purchased substantial additional shares of Veritas for the Morgan Stanley Account.

24. Veritas soared in value during 1999. As a result, as of December 31, 1999 the

5

Morgan Stanley Account had a balance of $12,919,403.12 (Exhibit 2, p. 1). Without the knowledge of the other Plan participants, as sole trustee defendant sold most of the Veritas stock on January 5, 2000 and the balance on January 12, 2000 at a huge profit (Exhibit 3, p. 4).

25. However, in order to retain for his own account balance the lion's share of the increase in the value of the Morgan Stanley Account, defendant knowingly, intentionally, and fraudulently concealed and falsified the true 1999 year-end value of this account that he communicated to the third-party administrator as well as to the other Plan participants.

26. Accordingly, on or about January 13, 2000 - - the day after the last sale of Veritas stock - - defendant knowingly, intentionally, and fraudulently sent a false facsimile to American Pension Corporation ("APC"), the third-party administrator that defendant as sole trustee had selected to assist in administering the Plan.

27. In that facsimile (Exhibit 4) defendant knowingly, intentionally, and fraudulently misrepresented to APC that the 1999 year-end balance for the Morgan Stanley Account was $4,017,942.57, even though the correct balance was $12,919,403.12 (Exhibit 2, p. 1).

28. Defendant knowingly, intentionally, and fraudulently provided no backup to APC for the information in the January 13, 2000 facsimile.

29. All of the foregoing was unknown to plaintiffs until after July 2007, when defendant was removed as the Plan's sole trustee, and plaintiffs for the first time had access to the information and documents showing defendant's fraudulent activity.

30. As part of his fraudulent scheme to conceal and keep for himself the unreported approximately $9,000,000 increase in the Morgan Stanley Account that occurred during 1999, in January 2000 defendant knowingly, intentionally, and fraudulently misrepresented to the Plan participants that it was in their best interest to establish individually directed accounts, and

6

pressured them to transfer their account balances to accomplish this. In reality, it was in defendant's best interest for them to do so, in order to facilitate his concealment and diversion of the unreported approximately $9,000,000 increase in the Morgan Stanley Account.

31. In reliance on defendant's false and fraudulent misrepresentations, and unaware of the true balance of the Morgan Stanley Account, during the period January through March 2000 Dr. Keith Hawthorne and twelve non-doctor employees established their retirement investments in individually directed accounts at Morgan Stanley. They represented all of the Plan's participants in the commingled Morgan Stanley Account except for defendant and two women - - Antoinette Andriola, formerly Foggio, and Mary Ann Canares, formerly Campos, who had ceased working for DCC. An individually directed account was established for Ms. Canares in 2001.

32. The amount that these participants received from the Morgan Stanley Account for their individually directed accounts at Morgan Stanley were not calculated based on the true 1999 year end balance of that account, but rather on the false and fraudulent understated value that defendant had reported to APC in his facsimile. And in the case of Ms. Canares, defendant caused her to be underpaid by about $9500 even based on his false and fraudulent understated 1999 year end value for the Morgan Stanley Account.

33. Therefore, as a direct result of defendant's fraud, the participants in the Plan who established their retirement investments in the individually directed accounts at Morgan Stanley did not receive any portion of the unreported approximately $9,000,000 increase, and thus were wrongfully shortchanged as to the distribution that they received.

### 2. The Smith Barney Account

34. In the same facsimile to APC in which defendant knowingly, intentionally, and fraudulently misrepresented the true balance of the Morgan Stanley Account, he also knowingly,

7

intentionally, and fraudulently misrepresented the true value of the Plan's commingled account at Salomon Smith Barney ("Smith Barney Account").

35.     As of December 31, 1998 the balance in the Smith Barney Account was $660,949.29 (Exhibit 5). Defendant listed the 1999 year end balance in the Smith Barney Account in his facsimile as $798,425.50, when in fact the balance in that account was really $3,924,549.92 (Exhibit 5).

36.     No portion of the Smith Barney Account was ever distributed to any Plan participant other than defendant, who had the balance in that account transferred to his individual IRA account in or about September 2007, which he accomplished by knowingly, intentionally, and fraudulently misrepresenting to Smith Barney that he was still the trustee of the Plan, when in fact he had already been removed as trustee two months earlier.

## Harm To The Plan In Addition To Loss Of Plan
## Assets Resulting From Defendant's Fraud

37.     In order for the Plan to retain its tax-qualified status, the Plan must be administered as provided by the terms of the Plan, and the Plan participants must be credited with the correct amounts to which they are entitled from the Plan assets.

38.     If participants do not receive the correct amounts to which they are entitled from the Plan assets, then the Plan can lose its tax-qualified status and suffer adverse tax consequences, which would directly impact the Plan by causing its disqualification, which in turn would result in current taxation to the Plan assets. In addition, Plan participants would suffer adverse tax consequences, including but not limited to the inability to retain tax deferred retirement accounts.

39.     In 2000, when defendant fraudulently pressured Plan participants to establish individually directed accounts, the distributions to which these participants were entitled should have been calculated based on assets valued at approximately $17,000,000 - - approximately

8

$13,000,000 for the Morgan Stanley Account and approximately $4,000,000 for the Smith Barney Account.

40.  As a direct result of defendant's fraud, however, the false value that he knowingly, intentionally and fraudulently reported for these two accounts was only approximately $4,800,000 - - approximately $4,000,000 for the Morgan Stanley Account and approximately $800,000 for the Smith Barney Account, which caused the participants to be drastically shortchanged - - except for defendant, who fraudulently diverted the remaining Plan assets for his own personal benefit.

41.  As a further direct result of defendant's fraud, he knowingly, intentionally and fraudulently caused the Plan to file a false annual tax return for 1999 (known as Form 5500) with governmental agencies that grossly understated the true value of Plan assets for 1999.  In addition, he continued to knowingly, intentionally and fraudulently conceal Plan assets and misrepresent the amount of those assets to the third-party administrator, and therefore caused the Plan to file a false Form 5500  in each of the subsequent years that defendant remained as sole trustee.

42.  In order to preserve its tax-qualified status, the Plan will have to correct participants' accounts for 1999 and subsequent years, apply to the IRS under the Voluntary Compliance Program for corrective procedures, and file amended 5500 forms for tax years 1999 to the present, all of which will cause the Plan to incur substantial expense.

### Defendant's Withdrawals of Over $2.8 Million in 2000 and 2001 From The Morgan Stanley Account

43. In January 2000 defendant made two separate withdrawals from the Morgan Stanley Account of $950,000 and $150,000.

44. On May 1, 2000, defendant authorized a wire transfer of $75,000 from the Morgan Stanley Account to the Evelyn Langlieb Greer Trust.  Since DCC has never had an employee named Evelyn Langlieb Greer, this payment (the purpose of which is unknown) was not proper

9

under the Plan.  Through the internet plaintiffs have learned that Ms. Greer is a real estate

attorney in Florida and the CEO of Greer Properties, Inc., which is a real estate developer and

operator in Florida.

45. Between September 2000 and October 2001 defendant had a total of $1,000,000

wired from the Morgan Stanley Account to his personal joint checking account at Independence

Community Bank, now Sovereign Bank.

46. In or about November 2000 defendant authorized a wire transfer of $250,000

from the Morgan Stanley Account to "POSTX Corp., Acct: 1000020403."

47. In or about February 2001 defendant authorized a wire transfer of $265,680

from the Morgan Stanley Account to Citibank/Pillsbury Winthrop LLP Trust Clearing Account.

48. The above two wire transfers are unrelated to the Plan or any valid Plan purpose.

49. In April 2001 defendant arranged for $143,686 to be withdrawn from the Morgan

Stanley Account and paid directly to RC Shea Associates for what plaintiffs have since learned

was a Toms River real estate investment of defendant unrelated to the Plan or any valid Plan

purpose.

## Defendant's Withdrawals and Purchase of a Luxury Home

50. On or about January 14, 2002 defendant arranged for a withdrawal of $6,000,000 from

the Morgan Stanley Account.  He invested the money in a certificate of deposit in the Plan's name

at Independence Community Bank, but no Plan participant other than defendant has ever received

any portion of this $6,000,000 or any of the interest that was earned on it.

51. During the period February 2003 through April 2006 defendant put approximately

another $3,000,000 into this certificate of deposit.  On or about May 6, 2004 defendant took out

$3.26 million dollars from this certificate of deposit.

10

52. On or about May 20, 2004 defendant bought a luxury home in Livingston, New Jersey, where he currently resides, at a cost of at least $2.5 million.

53. In or about 2005 defendant advised the third-party administrator APC that he took a distribution of $4,500,000 from the Morgan Stanley Account. In response APC issued a Form 1099 for that amount, but no taxes were withheld.

54. After defendant's removal as trustee, plaintiffs learned that there was less than $2,000,000 in the Morgan Stanley Account throughout 2005. Defendant has failed and refused to explain to plaintiffs how it was possible for him under those circumstances to receive a distribution in 2005 of $4,500,000 from that account, and where the funds for that alleged distribution came from.

## Other Improper Payments from Assets of the Plan

55. Commencing in December 2001 through and including July 2007, defendant had payments totaling approximately $64,000 made directly from the Plan's Morgan Stanley Account to the Surf Club, a private country club in Florida to which defendant belonged.

56. In addition, during 2003 and 2004 defendant had the following payments made directly from the Morgan Stanley Account: two checks totaling $22,000 to an entity called TRC Holdings; $14,490 to Richard Fairclough, who has never been an employee of DCC; and $10,000 to Short Hills West, LLC, a personal real estate investment of defendant.

57. None of the above payments were for the benefit of the Plan or had any valid Plan purpose, and all were solely for defendant's personal benefit.

58. Plaintiffs did not learn of any of the foregoing withdrawals and payments until after defendant was removed as trustee in July 2007.

11

### Defendant's Failure To Follow Tax Procedures

59. When distributions were made from the Plan directly to or for the benefit of the defendant, for each such distribution the Plan was required to withhold 20% of the distribution and file a Form 1099.

60. Based on available records, no Form 1099 was ever issued until defendant reported the alleged 2005 distribution of $4,500,000. Prior distributions to defendant were not reported to the IRS, and no taxes are known to ever have been withheld on any distribution to defendant. In short, besides cheating the Plan participants, defendant may have also cheated governmental taxing authorities.

### Defendant's Unpaid $250,000 Loan From The Plan

61. Subsequent to defendant's removal as the Plan's sole trustee in July 2007, plaintiffs discovered that in 1982 defendant had borrowed $250,000 from the Plan, even though $50,000 was the maximum amount under the Plan that could be borrowed. Based on available records, this loan has not been fully repaid, and defendant still owes the Plan at least $100,000 plus interest for this $250,000 loan.

62. In addition, on at least one occasion DCC overcontributed to the Plan, and defendant improperly directed APC to credit the overpayment in reduction of his personal $250,000 loan.

### Defendant's Failure And Refusal To Account For His Administration Of The Plan

63. As noted, defendant was the sole trustee for the Plan from its inception in April 1976 until his removal in July 2007.

64. During that more than thirty-year period, defendant maintained exclusive access to all information and documents concerning the Plan assets.

12

65. Except for one Plan document and a few 5500 forms that he obtained from APC, defendant has asserted that he has no information and documents relating to his more than thirty-year reign as sole trustee of the Plan.

66. Defendant has failed and refused to account for his administration of the Plan during his more than thirty-year reign as trustee despite plaintiffs' demand that he do so.

67. Defendant has failed to provide any information or documents as to several investments that were part of the Plan's commingled assets, such as North American Venture, which is mentioned in the false and fraudulent January 13, 2000 facsimile (Exhibit 4), and Juniper Enterprises.

### Relevant Statutory Provisions

68. At all times during the period from April 1976 until his removal as trustee in August 2007, defendant was the sole "named fiduciary" in the Plan documents. 29 U.S.C. § 1102, ERISA Section 402.

69. Defendant was required to discharge his duties with respect to the Plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1), ERISA Section 404(a)(1).

70. As a fiduciary, defendant was not permitted to deal with the assets of the Plan "in his own interest or for his own account." 29 U.S.C. § 1105(b)(1), ERISA Section 406(b)(1).

71. As a direct result of defendant's fraudulent concealment, fraudulent misrepresentations, self-dealing, diversion of Plan assets, and unpaid loan from the Plan, he caused damage to the Plan and its participants and beneficiaries and breached his fiduciary duties under ERISA as the Plan's trustee.

13

72.  Because of the breach of his fiduciary duties, defendant is "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary…" 29 U.S.C. § 1109(a), ERISA Section 409(a).

73.  Because of defendant's fraud and other misconduct, plaintiffs should be awarded attorney's fees and costs.  29 U.S.C. § 1132(g)(1), ERISA Section 502(g)(1).

74.  As fiduciaries plaintiffs are entitled to "appropriate relief under section 1109 of this title" against defendant for breaching his fiduciary duties.  29 U.S.C. § 1132(a)(2), ERISA Section 502(a)(2).

75.  As fiduciaries plaintiffs are entitled "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a), ERISA Section 502(a)(3).

WHEREFORE plaintiffs demand judgment against defendant Dr. Mario A. Criscito as follows:

1.  restitution of all losses to the Plan

2.  disgorgement of all profits that defendant made using assets of the Plan

3.  the imposition of a constructive trust on all real estate or other items in which defendant acquired any right, title or interest through the improper use of Plan assets

4.  a full accounting by defendant of the use of Plan assets during his tenure as the sole trustee of the Plan.

5.  permanent injunctive relief preventing defendant from using or benefiting in any manner whatsoever from Plan assets to which he is not entitled.

6.  attorney's fees and costs

14

7. compensatory damages suffered by the Plan

8. punitive damages by reason of defendant's fraud

9. such other, further, or different relief as the Court deems just or equitable.

WITMAN STADTMAUER, P.A.
Attorneys for Plaintiffs

Dated: March 27, 2008

By: _____
Stephen M. Charme (SC-6959)

15

```
ACCOUNT NO  FA   PERIOD ENDING                INCOME & CHARGE SUMMARY

769 086347  070  DEC 31 1998         DESCRIPTION           THIS MONTH   YEAR-TO-DATE

                                     DIVIDENDS               592.00CR     4,233.75CR
                                     INTEREST INCOME             .00      7,727.59CR
                                     MARGIN INTEREST             .00           .00
                                     ACCRUED BOND INTEREST       .00           .00
MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP
V/A DTD 04/01/76
11 CHADWICK ROAD
LIVINGSTON NJ 07039-1903                      ACCOUNT VALUATION SUMMARY


                                     TOTAL VALUE OF PRICED INVESTMENTS  2,292,295.31
     YOUR FINANCIAL ADVISOR:         TOTAL VALUE OF CUSTODIAL HOLDINGS     52,630.48
                                     CLOSING CASH BALANCE                  10,534.79CR
HERBERT A MENDEL
SENIOR VICE PRESIDENT - INVESTMENTS
MORGAN STANLEY DEAN WITTER           TOTAL ACCOUNT VALUATION            2,355,460.58
FIVE CONCOURSE PARKWAY STE 3000
ATLANTA, GA       30328
770-698-2100
```

### YOUR INVESTMENTS AS OF DECEMBER 31 1998

| TYPE | LONG OR SHORT | QUANTITY | DESCRIPTION | MONTH END PRICE | MARKET VALUE | EST DIV RATE/ % YIELD | ESTIMATED ANNUAL INCOME | DWR SEC. NO. |
|------|------|------|------|------|------|------|------|------|
| CASH | LONG | 14800 | LUCENT TECHNOLOGIES | 109 15/16 | 1,627,075.00 | .14 | 2,368.00 | AKW85 |
| CASH | LONG | 300 | NYCAL CP | N/A | | | | 56987 |
| CASH | LONG | 9400 | SANDISK CORP | 14 1/8 | 132,775.00 | | | ACP50 |
| CASH | LONG | 1000 | UNICAPITAL CORPORATION | 7 3/8 | 7,375.00 | | | ADL23 |
| CASH | LONG | 7875 | VERITAS SOFTWARE DE | 59 15/16 | 472,007.81 | | | ABG76 |
| CASH | LONG | 50000 | US TSY NOTE    775  01FB15 | 106 1/8 | 53,062.50 | 7.30 | 3,875.00 | 811Y6 |

```
        TOTAL VALUE OF PRICED INVESTMENTS.............  2,292,295.31    .27   6,243.00

                     N/A = NOT AVAILABLE
```

```
THE CUSTODIAN(S) OF THE INVESTMENTS LISTED BELOW HAVE REPORTED THAT, AS OF THE DATE SHOWN,
YOUR ACCOUNT, MAINTAINED WITH SUCH CUSTODIAN REFLECTED THE FOLLOWING:
```

| CUST. | FUND | DATE | ACCOUNT NO. | SHARES/UNITS | N.A.V. | VALUE |
|------|------|------|------|------|------|------|
| MSDWT | MSDW LIQUID ASSET FUND | 12-31-98 | 503972647 | 52,630 | 1.00 | 52,630.48 |

```
        TOTAL VALUE OF CUSTODIAL HOLDINGS ............................  52,630.48
```

### DAILY ACTIVITY DURING DECEMBER 1998

| DATE | ACTIVITY | DESCRIPTION | PRICE | AMOUNT | CASH BALANCE | TYPE REF NO. |
|------|------|------|------|------|------|------|
| 11/30 | OPENING CASH BALANCE | | | | 79,145.00CR | |
| 12/01 | CHECK | FUNDS PAID | | 100,000.00DR | | C C0950321 |
| | CASH DIVIDEND | LUCENT TECHNOLOGIES | | 592.00CR | | C 33514800 |
| | SOLD | 20807.00 MSDW LIQUID ASSET FUND | 1.00 | 20,807.00CR | 544.00CR | C 334D2939 |
| 12/02 | SOLD | 48.00 MSDW LIQUID ASSET FUND | 1.00 | 48.00CR | 592.00CR | C 3353D684 |
| 12/07 | BOUGHT | 592.00 MSDW LIQUID ASSET FUND | 1.00 | 592.00DR | .00 | C 341PIE38 |
| 12/08 | SOLD | 500 AMDOCS LIMITED ORD | 15 5/8 | 7,784.88CR | | C 337E0542 |

```
------------------------------------------
ACCOUNT NO  PA   PERIOD ENDING
------------------------------------------
765 086347  070   DEC 31 1998
------------------------------------------
```

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP

---

DAILY ACTIVITY DURING DECEMBER 1998

---

| DATE | ACTIVITY | DESCRIPTION | PRICE | AMOUNT | CASH BALANCE | TYPE REF NO. |
|------|----------|-------------|-------|--------|--------------|--------------|
| 12/08 BOUGHT | 7784.00 | MSDW LIQUID ASSET FUND | 1.00 | 7,784.00DR | .88CR | C 34202971 |
| 12/14 BOUGHT | .88 | MSDW LIQUID ASSET FUND | 1.00 | .88DR | .00 | C 348IP41S |
| 12/30 SOLD | 500 | ZIFF-DAVIS INC | 21 1/8 | 10,534.79CR | 10,534.79CR | C 358L1349 |
| 12/31 CLOSING CASH BALANCE | | | | | 10,534.79CR | |

---

SUPPLEMENTAL TAX INFORMATION

---

|  | TOTAL THIS MONTH | TOTAL YEAR-TO-DATE |
|--|------------------|--------------------|
| U.S. TREASURY COUPON INTEREST.........0.00....3,875.00 | | |

THE SUPPLEMENTAL TAX INFORMATION PROVIDED ABOVE SHOULD BE USED ONLY
AS A GUIDE. A COMPLETE 1099 WILL BE SENT TO YOU.

---

IMPORTANT MESSAGES

---

IF YOU WISH TO BORROW, MORGAN STANLEY DEAN WITTER'S MARGIN LOAN RATE AS OF 12/31 IS  8.22% TO  9.87%

Case 2:08-cv-01867-GEB-MCA Document 44-1 Filed 06/11/10 Page 22 of 34 PageID: 679
Case 2:08-cv-01867-GEB-MCA Document 44 Filed 03/28/08 Page 20 of 32

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING DECEMBER 31, 1999

Your Financial Advisor
HERBERT A MENDEL
SENIOR VICE PRESIDENT - INVESTMENTS
MORGAN STANLEY DEAN WITTER
FIVE CONCOURSE PARKWAY STE 2000
ATLANTA, GA    30328
(770) 658-2100

(070391903116)

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP
U/A DTD 04/01/76
11 CHADWICK ROAD
LIVINGSTON NJ 07039 1903

## ASSET DETAILS

| Your Investments | | | Current Price | Value | Est Yrly Income | Current Yield |
|---|---|---|---|---|---|---|
| 1800 | AMERICA ONLINE INC | | 75 7/8 | 136,575.00 | | |
| 29600 | LUCENT TECHNOLOGIES | | 75 | 2,220,000.00 | 2,368.00 | .10% |
| 300 | NYCAL CP | | N/A | | | |
| 9400 | SANDISK CORP | | 96 1/4 | 904,750.00 | | |
| 67125 | VERITAS SOFTWARE DE | | 143 1/8 | 9,607,265.62 | | |
| 50000 | US TSY NOTE   775   01FB15 | | 101 5/8 | 50,812.50 | 3,875.00 | 7.62% |
| Total Value of Priced Investments | | | | $12,919,403.12 | $6,243.00 | .04% |

N/A = Not Available

| Custodial Holdings | | Symbol | Current Price | Date | Value | Custodian | Dividend Cap Gains Option | Fund Plan Number |
|---|---|---|---|---|---|---|---|---|
| 33533.31 | MSDW LIQUID ASSET FUND | 1LAF | 1.00 | 12/31/99 | 33,533.31 | MSDWT | Reinv/ N/A | 503972647 |
| Total Custodial Holdings | | | | | $33,533.31 | | | |

| Asset Summary | | Value | Est Yrly Income |
|---|---|---|---|
| Cash | | 0.00 | |
| Total Account Valuation | | $12,952,936.43 | $6,243.00 |

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING DECEMBER 31, 1999

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP

PAGE 2 OF
Account Number
769 086347

PA 070

DAILY ACTIVITY DETAILS

| Date | Activity | Quantity | Description | Price | YTD Taxes | YTD Cap Gains | Amount | Cash Balance | Features |
|------|----------|----------|-------------|-------|-----------|---------------|--------|--------------|----------|
| | | | CLOSING BALANCE AS OF 11/30 | | | | | .00 | |
| 12/01 | Dividend | | LUCENT TECHNOLOGIES | | | | +592.00 | +592.00 | |
| 12/06 | Bought | 592.00 | MSDW LIQUID ASSET FUND | 1.00 | | | -592.00 | .00 | |
| 12/31 | Dividend | | MSDW LIQUID ASSET FUND | | | | +149.25 | | |
| | Direct Purchase | 149.250 | MSDW LIQUID ASSET FUND | 1.00 | | | -149.25 | .00 | |
| | | | REINVESTMENT | | | | | | |
| | | | CLOSING BALANCE AS OF 12/31 | | | | | .00 | |

| Morgan Stanley Dean Witter Fund Summary | | YTD Dividends | YTD Cap Gains | YTD Taxes | | | Features |
|------|------|------|------|------|------|------|------|
| MSDW LIQUID ASSET FUND | | 8,220.18 | 0.00 | 0.00 | | | Reinvest Dividends |
| | Totals | $8,220.18 | $0.00 | $0.00 | | | |

MSDW LIQUID ASSET FUND

Following are the Fund's 30-day average annualized yields during the past quarter: October 4.96%, November 5.15% and December 5.29%.

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING DECEMBER 31, 1999

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP

PAGE 3 OF
Account Number
769 066347
PA 070

## Income Summary

| | This Month | Year-to-Date | | This Month | Year-to-Date |
|---|---|---|---|---|---|
| Dividends | 741.25 | 10,569.18 | Interest | .00 | 3,875.00 |
| Accrued Bond Interest | .00 | .00 | Margin Interest | .00 | .00 |

## Tax Information

| | This Month | Year-to-Date |
|---|---|---|
| U.S. Treasury Coupon Interest | .00 | 3,875.00 |

## Messages

For tax year 1999, clients invested in networked external mutual funds will receive two tax reports. One will come from the fund company and will reflect income and distributions for the period from January 1, 1999 up until the conversion date. The second report will be supplied from Morgan Stanley Dean Witter and will cover the period starting at the time of the conversion until December 31, 1999. Clients should retain both of these reports for their tax records. Beginning with tax year 2000, clients will receive one income and distribution report from Morgan Stanley Dean Witter.

If you wish to borrow, Morgan Stanley Dean Witter's Margin loan rate as of 12/31 is 8.67% to 10.62%.

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING JANUARY 31, 2000

Your Financial Advisor
HERBERT A MENDEL
SENIOR VICE PRESIDENT - INVESTMENTS
MORGAN STANLEY DEAN WITTER
FIVE CONCOURSE PARKWAY STE 2000
ATLANTA, GA         30328
(770) 698-2100

PAGE 1 OF

Account Number              PA    070
769 088347

(070393903116)

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP
U/A DTD 04/01/76
11 CHADWICK ROAD
LIVINGSTON NJ 07239 1903

## Asset Summary

| | Value | % of Assets |
|---|---|---|
| Money Market Funds | $5,748,123.76 | 57.0% |
| Stocks | 4,273,825.00 | 42.3 |
| Municipal Bonds | 0.00 | 0.0 |
| Corporate Fixed Income | 0.00 | 0.0 |
| Government Securities | 0.00 | 0.0 |
| Mutual Funds | 50,687.50 | 0.5 |
| Unit Investment Trusts | 0.00 | 0.0 |
| Certificates of Deposit | 0.00 | 0.0 |
| Annuities/Insurance | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| Asset Value | $10,072,636.26 | 100.0% |
| Cash | 0.00 | |
| Total Asset Value | $10,072,636.26 | |

## Activity Summary

| | | |
|---|---|---|
| Total Asset Value December 31 1999 | | $12,952,935.43 |
| Cash/Money Market Activity for January | | |
| Closing Balance 12/31 | $33,533.31 | |
| Credits To Your Account | | |
| Dividends and Interest | 19,876.93 | |
| Deposits | 36,933.58 | |
| Sales Proceeds/Redemptions | 11,617,400.95 | |
| Other Credits | 0.00 | |
| Total Credits | 11,674,211.45 | |
| Debits To Your Account | | |
| Withdrawals | -1,617,741.31 | |
| Funds to Purchase Securities | -4,341,879.70 | |
| Other Debits | 0.00 | |
| Total Debits | -5,959,621.01 | |
| Closing Balance 1/31 | 5,748,123.76 | |

## Net Change Cash/Money Market Activity

| | | |
|---|---|---|
| Changes in Asset Value for January | | 5,714,590.45 |
| Value of Priced Assets 12/31 | $12,959,403.12 | |
| Securities Bought | 4,341,879.70 | |
| Securities Received | 0.00 | |
| Securities Sold/Redeemed | -11,617,400.95 | |
| Securities Delivered | 0.00 | |
| Transactions at Fund Company | 0.00 | |
| Change in Value of Priced Assets | -1,319,369.37 | |
| Value of Priced Assets 1/31 | 4,324,512.50 | |
| Net Change in Asset Value | | -8,594,890.62 |
| Total Asset Value as of January 31 2000 | | $10,072,636.26 |

## Income Summary

| | This Month | Year To Date |
|---|---|---|
| Money Market Funds | $19,876.93 | $19,876.93 |
| Stocks | 0.00 | 0.00 |
| Municipal Bonds | 0.00 | 0.00 |
| Corporate Fixed Income | 0.00 | 0.00 |
| Government Securities | 0.00 | 0.00 |
| Mutual Funds | 0.00 | 0.00 |
| Unit Investment Trusts | 0.00 | 0.00 |
| Certificates of Deposit | 0.00 | 0.00 |
| Other | 0.00 | 0.00 |
| Total Income | $19,876.93 | $19,876.93 |
| Taxable Income | $19,876.93 | $19,876.93 |
| Tax Exempt Income | $0.00 | $0.00 |

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING JANUARY 31, 2000

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY NP

ASSET DETAILS

PAGE 2 07
Account Number    FA    070
769 086147

### Cash and Money Market Funds

| | Amount | Pct of Assets | Net Yrly Income | Annualized 30 Day Yield | |
|---|---|---|---|---|---|
| CASH | .00 | --- | --- | | |
| MSDW LIQUID ASSET FUND | 5,748,123.76 | 57.0% | 311,548 | MSDW Liquid Asset Fund........... | 5.43% |
| | | | | MSDW Tax Free Income Fr.......... | 2.66% |
| Total Cash and Money Market Funds | $5,748,123.76 | 57.0% | $311,548 | MSDW US Gvt MgmMt............... | 4.89% |
| | | | | MSDW CA Tax Free Daily.......... | 2.16% |
| Net Change Since Last Statement | $5,714,990.45 | | | MSDW New York Money Tr.......... | 2.38% |

### Stocks

#### Common Stocks

| | Current Price | Value | Pct of Assets | Net Yrly Income | Dividend Yield | Symbol | Additional Information |
|---|---|---|---|---|---|---|---|
| 1,800 AMERICA ONLINE INC | 57 | 102,600.00 | 1.1% | 0 | 0.00% | AOL | |
| 29,600 LUCENT TECHNOLOGIES | 55 1/2 | 1,642,800.00 | 16.3% | 2,368 | .14% | LU | |
| 300 NYCAL CP | N/A | 0.00 | N/A | 0 | 0.00% | NYCL | Next Dividend Payable 03/01/00 |
| 10,000 QUALCOMM INC | 127 N/A | 1,270,000.00 | 12.6% | 0 | 0.00% | QCOM | |
| 9,400 SANDISK CORP | 133 7/8 | 1,258,425.00 | 12.5% | 0 | 0.00% | SNDK | |
| **Total Stocks** | | $4,273,825.00 | 42.5% | $3,368 | .05% | | |
| Net Change Since Last Statement | | -6,594,765.62 | | | | | |

### Government Securities

#### Treasury Securities

| | Current Price | Value | Pct of Assets | Net Yrly Income | Current Yield | Accruing Interest | Additional Information |
|---|---|---|---|---|---|---|---|
| 50,000 UNITED STATES TREASURY NOTE 7.750% FEB/AUG 15 DUE 02/15/01 | 101 3/8 | 50,687.50 | 0.5% | 3,875 | 7.64% | 1.779 | YIELD TO MATURITY 6.3630% |
| | | | | | | | MOODY AAA    S&P AAA |
| | | | | | | | ISSUE 02/15/91 CUSIP 912827ZX3 |
| **Total Government Securities** | | $50,687.50 | 0.5% | $3,875 | 7.64% | $1.779 | |
| Net Change Since Last Statement | | -125.00 | | | | | |

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING JANUARY 31, 2000

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP

PAGE 3 OF
Account Number
769 086347                    PA  070

**Asset Summary**

| | Value | Est Yrly Income |
|---|---|---|
| TOTAL ASSET VALUE | $10,072,636.26 | $237,791 |

Total Net Change in Priced Assets Since Last Statement-$534,890.62

Morgan Stanley Dean Witter Margin Loan Rates

| Loan Amount | Rate |
|---|---|
| $0 - 24,999 | 10 5/8% |
| $25,000 - 49,999 | 10 1/8% |
| $50,000 - 99,999 | 9 3/8% |
| $100,000 & over | 8 7/8% |

EFFECTIVE DATE:   November 17, 1999
PREVIOUS CHANGE:  August 25, 1999

**CREDITS TO YOUR ACCOUNT**

**Dividends and Interest**

| Date | Activity | Description | Amount | Income Category |
|---|---|---|---|---|
| 01-31 | Dividend | MSDW LIQUID ASSET FUND | 19,876.93 | Money Market Funds |
| | | Total Dividends and interest | 19,876.93 | |

See Income Summary on page 1 for the month to date and year to date amounts per income category.

**Deposits**

| Date | Activity | Description | Amount | Additional Information |
|---|---|---|---|---|
| 01-21 | Branch Deposit | FUNDS RECEIVED | 35,830.66 | |
| 01-21 | Branch Deposit | FUNDS RECEIVED | 1,102.92 | |
| | | Total Deposits | $36,933.58 | Year To Date       $36,933.58 |

0961

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING JANUARY 31, 2000

MARIO A CRISCITO TREE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP

PAGE 4 OF
Account Number
769 086347

FA    070

## Sales Proceeds/Redemptions

| Date | Activity | Quantity | Description | Price | Amount | Additional Information |
|---|---|---|---|---|---|---|
| 01-05 | Sold | 5,000 | VERITAS SOFTWARE DE | 140 3/8 | 701,601.43 | |
| 01-05 | Sold | 5,000 | VERITAS SOFTWARE DE | 140 1/8 | 700,351.67 | |
| 01-05 | Sold | 7,000 | VERITAS SOFTWARE DE | 140 1/16 | 980,054.84 | |
| 01-05 | Sold | 16,000 | VERITAS SOFTWARE DE | 140 | 2,239,125.40 | |
| 01-05 | Sold | 5,000 | VERITAS SOFTWARE DE | 139 3/4 | 698,476.73 | |
| 01-05 | Sold | 21,000 | VERITAS SOFTWARE DE | 139 5/8 | 2,930,977.31 | |
| 01-05 | Sold | 2,125 | VERITAS SOFTWARE DE | 139 1/2 | 296,321.10 | |
| 01-05 | Sold | 6,000 | VERITAS SOFTWARE DE | 139 1/4 | 835,269.56 | |
| 01-12 | Sold | 12,000 | VERITAS SOFTWARE DE | 113 1/2 | 1,352,754.21 | |
| 01-12 | Sold | 8,000 | VERITAS SOFTWARE DE | 110 3/8 | 882,560.20 | |

Total Sales Proceeds/Redemptions        11,617,400.95    Year To Date    11,617,400.95

Total Credits to Your Account        $11,674,211.46    Year To Date    $11,674,211.46

## DEBITS TO YOUR ACCOUNT

### Withdrawals

| Date | Activity | Description | Amount | Additional Information |
|---|---|---|---|---|
| 01-05 | Transfer | FUNDS TRANSFERRED | 950,000.00 | PER LETTER OF AUTHORIZATION TO 769-074230-1 |
| 01-05 | Transfer | FUNDS TRANSFERRED | 150,000.00 | PER LETTER OF AUTHORIZATION TO 769-200624-1 |
| 01-25 | Check | FUNDS PAID | 51,875.58 | PAID TO CHASE MANHATTAN BANK |
| 01-25 | Check | FUNDS PAID | 740.19 | PAID TO WLMK ROELKE MD |
| 01-25 | Transfer | TRANSFER OF FUNDS | 20,861.51 | ROLLOVER TO 769-015116-0 |
| 01-25 | Transfer | FUNDS TRANSFERRED | 52,706.15 | PER LETTER OF AUTHORIZATION TO 769-015122-0 |
| 01-25 | Transfer | FUNDS TRANSFERRED | 30,000.00 | PER LETTER OF AUTHORIZATION TO 769-015124-0 |
| 01-25 | Transfer | FUNDS TRANSFERRED | 295,663.09 | PER LETTER OF AUTHORIZATION TO 769-015125-0 |
| 01-26 | Check | TRANSFER OF FUNDS | 65,894.79 | ROLLOVER TO 769-015157-0 |

Total Withdrawals        -1,617,741.31    Year To Date    -1,617,741.31

0962

STATEMENT OF YOUR ACCOUNT
FOR MONTH ENDING JANUARY 31, 2000

MARIO A CRISCITO TTEE
DIAGNOSTIC & CLINICAL CARDIOLOGY MP

PAGE 5 OF    FA  070
Account Number
769 085347

**Funds to Purchase Securities**

| Date | Activity | Quantity | Description | Price | Amount | Additional Information |
|------|----------|----------|-------------|-------|--------|------------------------|
| 01-07 | Bought | 4,000 | VERITAS SOFTWARE DE | 137 3/4 | 551,200.00 | |
| 01-07 | Bought | 3,000 | VERITAS SOFTWARE DE | 137 1/2 | 412,650.00 | |
| 01-07 | Bought | 2,000 | VERITAS SOFTWARE DE | 137 1/4 | 274,600.00 | |
| 01-07 | Bought | 1,000 | VERITAS SOFTWARE DE | 137 | 137,050.00 | |
| 01-07 | Bought | 6,000 | VERITAS SOFTWARE DE | 134 1/8 | 805,050.00 | |
| 01-07 | Bought | 4,000 | VERITAS SOFTWARE DE | 134 1/16 | 536,452.35 | |
| 01-07 | Bought | 10,000 | QUALCOMM INC | 162 7/16 | 1,624,877.35 | |

Total Funds to Purchase Securities

Total Debits To Your Account          -4,341,879.70   Year To Date   -4,341,879.70

ADDITIONAL ACCOUNT INFORMATION                        -5,959,621.01   Year To Date   -5,959,621.01

**Money Market**

| Date | Activity | Description | Amount | Additional Information |
|------|----------|-------------|--------|------------------------|
| | | Closing Balance 12/31 | 33,533.31 | |
| 01-06 | Automatic Investment | MSDW LIQUID ASSET FUND | 3,940,198.00 | |
| 01-10 | Automatic Investment | MSDW LIQUID ASSET FUND | 0.84 | |
| 01-14 | Automatic Investment | MSDW LIQUID ASSET FUND | 2,235,322.00 | |
| 01-18 | Automatic Investment | MSDW LIQUID ASSET FUND | 45.41 | |
| 01-25 | Automatic Redemption | MSDW LIQUID ASSET FUND | -451,847.00 | |
| 01-26 | Automatic Redemption | MSDW LIQUID ASSET FUND | -65,895.00 | |
| 01-27 | Automatic Investment | MSDW LIQUID ASSET FUND | 36,534.00 | |
| 01-31 | Dividend Reinvestment | MSDW LIQUID ASSET FUND | 19,876.93 | |
| 01-31 | Automatic Investment | MSDW LIQUID ASSET FUND | 0.27 | |

Closing Balance 1/31                                 5,748,123.76

**Morgan Stanley Dean Witter Fund Summary**

| | YTD Dividends | YTD Cap Gains | YTD Taxes | Features |
|---|---|---|---|---|
| MSDW LIQUID ASSET FUND | 19,876.93 | 0.00 | 0.00 | Reinvest Dividends |
| Totals | $19,876.93 | $0.00 | $0.00 | |

For Morgan Stanley Dean Witter Mutual Fund Account Information, Call 1-800-869-NEWS(6397).



**MORGAN STANLEY DEAN WITTER:**          $4,017,942.57
**SCHWAB   TRANSFERRED TO DEAN WITTER**          0.00
**SALOMON SMITH BARNEY**                 $   798,425.50
**NORTH AMERICAN VENTURE:**              $    50,000.00
                         **TOTAL:**      $ 4,728067.59

INCLUDED IN DEAN WITTER MONIES IS $98,300.48 OF WHICH
$8,300.48 IS FOR THE YEAR 1998 CONTRIBUTIONS HOWEVER DCC
PA STILL OWES PENSION PLAN $28,996.88 FOR THE YEAR 1999.


**MARIO A. CRISCITO, M.D.**
**11 CHADWICK ROAD**
**LIVINGSTON, N.J. 07039**

11724

Ref. 00000026 00000000



# Preferred Client Consolidation Summary
## November 29 - December 31, 1999

**WORKING WEALTH™**

SMITH BARNEY

4161990072722100000000026 307365RM01 RP1FO001A
DIAGNOSTIC AND CLINICAL
CARDIOLOGY
PA MONEY PURCHASE PENSION PLAN
411176
11 CHADWICK ROAD
LIVINGSTON NJ 07039-1903

**SALOMON SMITH BARNEY INC.**

*Your Financial Consultant*

ALLAN YARKIN
1000 E HALLANDALE
BEACH BLVD
HALLANDALE FL 33009
954-457-1500
(800) 232-4454
Branch: 800-624-0263

We have enclosed statements for the following accounts in your consolidated household. "Quarterly Total Value Comparison" and "Year to Date Summary" may contain information for previously existing accounts which have been recently consolidated. Unpriced securities are not included in the "Net Value" columns.

## Quarterly Summary

| Account Number | Abbreviated Name | Account Type | Net Value Last period | Net Value This period | Net Securities Dep/Withdrwn This period | Net Capital Deps/Wndrls This period | Total Income This period | Asset Appreciation This period | Unrealized Gain or (Loss) | Adjusted YTD Realized Gain or (Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| 416-30833 | DIAGNOSTIC AND CLINICAL CARDIOLOGY | PCA | $ 2,890,338.64 | $ 3,924,549.92 | $ 0.00 | $ 0.00 | $ 28.22 | $ 1,034,183.06 | $ 3,266,558.84 | ($ 83,336.25) |
| **Total** | | | **$ 2,890,338.64** | **$ 3,924,549.92** | **$ 0.00** | **$ 0.00** | **$ 28.22** | **$ 1,034,183.06** | **$ 3,266,558.84** | **($ 83,336.25)** |

## Year to Date Summary

| | |
|---|---|
| Beginning total net value as of 12/31/98 | $ 660,949.29 |
| Net security deposits/withdrawals (year to date) | 0.00 |
| Net cash deposits/withdrawals (year to date) | 5.28 |
| Total income (year to date) | 2,208.98 |
| Asset appreciation (year to date) | 3,261,386.37 |
| Ending total net value 12/31/99 | $ 3,924,549.92 |
| Year to date total return | 3,283,595.35 |

## Current Total Asset Allocation Summary

100.0% Equities

Cash represents less than 0.5% of total assets.

## Quarterly Total Value Comparison

Units in multiples of 1 million.

| 12/98 | 3/99 | 6/99 | 9/99 | 12/99 |
|---|---|---|---|---|
| .661 | .735 | .880 | 1.44 | 3.92 |