# EXHIBIT 40

# DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. PROFIT SHARING PLAN



PLAINTIFF'S EXHIBIT

CRISCITO 9

12-4-09

FERICO 800-631-6989

 **Internal Revenue Service**
**Tax Exempt &**
**Government Entities**

**Department of the Treasury**
**P.O. Box 2508**
**Cincinnati OH 45201**

Date:  SEP 2 7 2002

DATAIR
735 North Cass Ave.
Westmont, IL  60559-1100

Person to Contact:
Angelo Noe 31-00518
(513) 263-3536

Letter Serial Number
VS322784
Plan Name:  Volume Submitter
Profit Sharing Plan

Dear Sir or Madam:

We have reviewed the above named plan under our volume submitter program.  In our opinion it is acceptable under section 401(a) of the Internal Revenue Code.

This letter considers the changes in qualification requirements made by the Uruguay Round Agreements Act (GATT), Pub. L. 103-465, the Small Business Job Protection Act of 1996, Pub. L. 104-188, the Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. 103-353, the Taxpayer Relief Act of 1997, Pub. L. 105-34, the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, and the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554.

This volume submitter approval letter may constitute reliance for an employer adopting the approved plan. Please review section II of Announcement 2001-77 to determine when an employer adopting the approved plan is required to apply for a favorable determination letter to obtain reliance.

An employer adopting this approved plan may submit a request for a favorable determination letter on Form 5307, Application for Determination for Adopters of Master or Prototype or Volume Submitter Plans, and enclose the appropriate user fee.

When submitting such applications, please enclose a copy of this letter for each application request along with Form 8717, User Fee for Employee Plan Determination Letter Request.  Also, include a copy of the plan and a listing of any deviations from the approved plan for the adopting employer.  Enclosed is an application checklist indicating the items that are necessary for a complete submission.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely,

Paul T. Shultz

Paul T. Shultz
Director, EP Rulings & Agreements

Enclosure:  Application Checklist

7590

# DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. PROFIT SHARING PLAN

## TABLE OF CONTENTS

**PART 1**

| | | | |
|---|---|---|---|
| ARTICLE 1 | | INTRODUCTION | 1 |
| | 1.1.1 | Adoption and Title | 1 |
| | 1.1.2 | Effective Date | 1 |
| | 1.1.3 | Purpose | 1 |
| | | | 1 |
| ARTICLE 2 | | DEFINITIONS | 2 |
| | 1.2.1 | "Account" | 2 |
| | 1.2.2 | "Account Balance" | 2 |
| | 1.2.3 | "Act" | 2 |
| | 1.2.4 | "Alternate Payee" | 2 |
| | 1.2.5 | "Anniversary Date" | 2 |
| | 1.2.6 | "Base Benefit Percentage" | 2 |
| | 1.2.7 | "Base Contribution Percentage" | 2 |
| | 1.2.8 | "Beneficiary" | 2 |
| | 1.2.9 | "Board of Directors" | 2 |
| | 1.2.10 | "Break in Service" | 2 |
| | 1.2.11 | "Code" | 2 |
| | 1.2.12 | "Compensation" | 2 |
| | 1.2.13 | "Compensation Computation Period" | 4 |
| | 1.2.14 | "Contract" | 4 |
| | 1.2.15 | "Controlled Account" | 4 |
| | 1.2.16 | "Direct Rollover" | 4 |
| | 1.2.17 | "Disability Retirement Date" | 4 |
| | 1.2.18 | "Distributee" | 4 |
| | 1.2.19 | "Early Retirement Age" | 4 |
| | 1.2.20 | "Early Retirement Date" | 4 |
| | 1.2.21 | "Earned Income" | 4 |
| | 1.2.22 | "Elapsed Time Method" | 4 |
| | 1.2.23 | "Eligibility Computation Period" | 5 |
| | 1.2.24 | "Eligible Employee" | 5 |
| | 1.2.25 | "Eligible Retirement Plan" | 5 |
| | 1.2.26 | "Eligible Rollover Distribution" | 5 |
| | 1.2.27 | "Employee" | 5 |
| | 1.2.28 | "Employer" | 6 |
| | 1.2.29 | "Employer Account" | 6 |
| | 1.2.30 | "Entry Date" | 6 |
| | 1.2.31 | "Excess Benefit Percentage" | 6 |
| | 1.2.32 | "Excess Contribution Percentage" | 6 |
| | 1.2.33 | "Fiduciary" | 6 |
| | 1.2.34 | "Forfeitures" | 6 |
| | 1.2.35 | "Gross Benefit Percentage" | 6 |
| | 1.2.36 | "Highly Compensated Employee" | 6 |
| | 1.2.37 | "Hour of Service" | 7 |

7591

| | | |
|---|---|---|
| 1.2.38 | "Insurer" | |
| 1.2.39 | "Integration Level" | 8 |
| 1.2.40 | "Investment Manager" | 8 |
| 1.2.41 | "Joint and Survivor Annuity" | 8 |
| 1.2.42 | "Leased Employee" | 8 |
| 1.2.43 | "Life Insurance Policy" | 9 |
| 1.2.44 | "Limitation Year" | 9 |
| 1.2.45 | "Maximum Excess Benefit Percentage" | 9 |
| 1.2.46 | "Maximum Excess Contribution Percentage" | 9 |
| 1.2.47 | "Maximum Offset Benefit Percentage" | 9 |
| 1.2.48 | "Minimum Top-Heavy Allocation" | 9 |
| 1.2.49 | "Non-Highly Compensated Employee" | 9 |
| 1.2.50 | "Normal Form of Distribution" | 9 |
| 1.2.51 | "Normal Retirement Age" | 9 |
| 1.2.52 | "Normal Retirement Date" | 9 |
| 1.2.53 | "Offset Percentage" | 9 |
| 1.2.54 | "Owner-Employee" | 9 |
| 1.2.55 | "Participant" | 10 |
| 1.2.56 | "Plan" | 10 |
| 1.2.57 | "Plan Administrator" | 10 |
| 1.2.58 | "Plan Year" | 10 |
| 1.2.59 | "Pre-Retirement Survivor Annuity" | 10 |
| 1.2.60 | "Qualified Domestic Relations Order (QDRO)" | 10 |
| 1.2.61 | "Qualified Joint and Survivor Annuity" | 10 |
| 1.2.62 | "Qualified Military Service" | 10 |
| 1.2.63 | "Qualified Pre-Retirement Survivor Annuity" | 10 |
| 1.2.64 | "Qualifying Employer Real Property" | 10 |
| 1.2.65 | "Qualifying Employer Securities" | 11 |
| 1.2.66 | "Safe Harbor Profit Sharing Plan" | 11 |
| 1.2.67 | "Segregated Account" | 11 |
| 1.2.68 | "Segregated Fund" | 11 |
| 1.2.69 | "Self-Employed Individual" | 11 |
| 1.2.70 | "Straight Life Annuity" | 11 |
| 1.2.71 | "Taxable Wage Base" | 11 |
| 1.2.72 | "Trustee" | 11 |
| 1.2.73 | "Trust Fund" | 11 |
| 1.2.74 | "Valuation Date" | 11 |
| 1.2.75 | "Voluntary Account" | 11 |
| 1.2.76 | "Voluntary Contribution Benefit" | 11 |
| 1.2.77 | "Voluntary Employee Contributions" | 11 |
| 1.2.78 | "Year(s) of Credited Service" | 11 |
| 1.2.79 | "Year(s) of Eligibility Service" | 12 |
| 1.2.80 | "Year(s) of Participation" | 12 |
| 1.2.81 | "Year(s) of Service" | 12 |
| 1.2.82 | "Year(s) of Vesting Service" | 12 |

| | | | |
|---|---|---|---|
| **PART 2** | | | 13 |
| | ARTICLE 1 | PARTICIPATION | 13 |
| | 2.1.1 | Eligibility Requirements | 13 |
| | 2.1.2 | Commencement of Participation | 13 |
| | 2.1.3 | Participation upon Reemployment | 13 |
| | 2.1.4 | Termination of Participation | 13 |
| | 2.1.5 | Plan Administrator's Determination | 13 |
| | 2.1.6 | Existing Participants | 13 |

7592

| | | |
|---|---|---|
| 2.1.7 | Change in Status | 13 |
| 2.1.8 | Qualified Military Service | 14 |
| 2.1.9 | One-Time Election Not to Participate | 14 |
| 2.1.10 | Fail-Safe Accruals | 14 |
| ARTICLE 2 | CONTRIBUTIONS | 16 |
| 2.2.1 | Employer Contributions | 16 |
| 2.2.2 | Return of Contributions | 16 |
| 2.2.3 | Voluntary Employee Contributions | 16 |
| ARTICLE 3 | ALLOCATIONS | 17 |
| 2.3.1 | Eligible Participants | 17 |
| 2.3.2 | Basic Allocation | 17 |
| 2.3.3 | Minimum Top-Heavy Allocation | 17 |
| 2.3.4 | Allocations on Behalf of Disabled Participants | 17 |
| 2.3.5 | Forfeiture Allocations | 17 |
| 2.3.6 | Restoration of Forfeitures | 17 |
| 2.3.7 | Voluntary Contribution Benefit | 17 |
| 2.3.8 | Distribution Dates | 18 |
| 2.3.9 | Distribution Determination Date | 18 |
| 2.3.10 | Optional Forms of Payment | 18 |
| 2.3.11 | Small Amounts | 19 |
| 2.3.12 | Maximum Permitted Disparity | 19 |
| ARTICLE 4 | VESTING | 21 |
| 2.4.1 | Vesting of Accounts | 21 |
| 2.4.2 | Service Not Taken into Account | 21 |
| 2.4.3 | Reemployment | 21 |
| 2.4.4 | Leave of Absence | 21 |
| 2.4.5 | Voluntary Account | 21 |
| 2.4.6 | Forfeitures | 21 |
| 2.4.7 | Termination of Plan | 21 |
| ARTICLE 5 | DISTRIBUTIONS | 22 |
| 2.5.1 | Immediate Distributions | 22 |
| 2.5.2 | Deferred Distributions | 22 |
| 2.5.3 | Required Distributions | 22 |
| 2.5.4 | Requirement of Annuity Payment | 26 |
| 2.5.5 | Method of Distribution | 28 |
| 2.5.6 | Nature of Distribution | 29 |
| 2.5.7 | Miscellaneous Provisions | 29 |
| 2.5.8 | In Service Distributions | 31 |
| ARTICLE 6 | CONTINGENT TOP HEAVY PROVISION | 32 |
| 2.6.1 | Top Heavy Requirements | 32 |
| 2.6.2 | Top Heavy Definitions | 33 |
| ARTICLE 7 | LIMITATIONS ON EMPLOYEE CONTRIBUTIONS | 36 |
| ARTICLE 8 | ACCOUNTING | 37 |
| 2.8.1 | Accounts | 37 |
| 2.8.2 | Valuation Adjustments | 37 |

7593

| | | | |
|---|---|---|---|
| 2.8.3 | Allocation of Earnings, Gains, and Losses | 38 |
| 2.8.4 | Interim Valuations | 38 |
| 2.8.5 | Earnings on Forfeitures | 39 |
| 2.8.6 | Plan Expenses | 39 |

**PART 3**

| | | | |
|---|---|---|---|
| ARTICLE 1 | LIMITATIONS | 40 |
| 3.1.1 | General Limitations on Annual Additions | 40 |
| 3.1.2 | Determination of Annual Addition and Maximum Permissible Annual Addition | 40 |
| 3.1.3 | Excess Annual Additions | 41 |
| 3.1.4 | Participation in Certain Other Plans | 42 |
| 3.1.5 | Combined Plan Limitation | 42 |
| 3.1.6 | Definitions | 44 |
| 3.1.7 | Controlled Businesses | 45 |

| | | | |
|---|---|---|---|
| ARTICLE 2 | FIDUCIARIES | 46 |
| 3.2.1 | Standard of Conduct | 46 |
| 3.2.2 | Individual Fiduciaries | 46 |
| 3.2.3 | Disqualification from Service | 46 |
| 3.2.4 | Bonding | 46 |
| 3.2.5 | Prior Acts | 46 |
| 3.2.6 | Insurance and Indemnity | 46 |
| 3.2.7 | Expenses | 46 |
| 3.2.8 | Agents, Accountants and Legal Counsel | 47 |
| 3.2.9 | Investment Manager | 47 |
| 3.2.10 | Finality of Decisions or Acts | 47 |
| 3.2.11 | Certain Custodial Accounts and Contracts | 47 |

| | | | |
|---|---|---|---|
| ARTICLE 3 | PLAN ADMINISTRATOR | 48 |
| 3.3.1 | Administration of Plan | 48 |
| 3.3.2 | Disclosure Requirements | 49 |
| 3.3.3 | Information Generally Available | 49 |
| 3.3.4 | Statement of Account Balance | 49 |
| 3.3.5 | Explanation of Rollover Treatment | 49 |

| | | | |
|---|---|---|---|
| ARTICLE 4 | TRUSTEE | 50 |
| 3.4.1 | Acceptance of Trust | 50 |
| 3.4.2 | Trustee Capacity - Co-Trustees | 50 |
| 3.4.3 | Resignation, Removal, and Successors | 50 |
| 3.4.4 | Consultations | 50 |
| 3.4.5 | Rights, Powers and Duties | 50 |
| 3.4.6 | Rights of Trustee as to Contributions | 52 |
| 3.4.7 | Trustee Indemnification | 52 |
| 3.4.8 | Changes in Trustee Authority | 52 |
| 3.4.9 | Electromechanical Communications | 52 |

| | | | |
|---|---|---|---|
| ARTICLE 5 | TRUST ASSETS | 53 |
| 3.5.1 | Trustee Exclusive Owner | 53 |
| 3.5.2 | Investments | 53 |
| 3.5.3 | Administration of Trust Assets | 53 |
| 3.5.4 | Segregated Funds | 54 |

7594

| | | |
|---|---|---|
| 3.5.5 | Investment Control | 54 |
| | | |
| ARTICLE 6 | INSURANCE | 56 |
| 3.6.1 | Participants Insurable at Standard Rates | 56 |
| 3.6.2 | Uninsurable Participants | 56 |
| 3.6.3 | Participants Insurable at Above Standard Rates | 56 |
| 3.6.4 | Purchase of Contracts | 56 |
| 3.6.5 | Applications for Contracts | 57 |
| 3.6.6 | Incidents of Ownership | 57 |
| 3.6.7 | Payment of Premiums | 57 |
| 3.6.8 | Discontinuance of Insurance Contracts | 57 |
| | | |
| ARTICLE 7 | PARTICIPANT LOANS | 58 |
| | | |
| ARTICLE 8 | BENEFICIARIES | 59 |
| 3.8.1 | Designation of Beneficiaries | 59 |
| 3.8.2 | Absence or Death of Beneficiaries | 59 |
| 3.8.3 | Surviving Spouse Election | 59 |
| | | |
| ARTICLE 9 | CLAIMS | 60 |
| 3.9.1 | Claim Procedure | 60 |
| 3.9.2 | Appeal | 60 |
| | | |
| ARTICLE 10 | AMENDMENT AND TERMINATION | 61 |
| 3.10.1 | Right to Amend | 61 |
| 3.10.2 | Delegation | 61 |
| 3.10.3 | Manner of Amending | 61 |
| 3.10.4 | Limitations on Amendments | 61 |
| 3.10.5 | Voluntary Termination | 62 |
| 3.10.6 | Involuntary Termination | 62 |
| 3.10.7 | Withdrawal by Employer | 62 |
| 3.10.8 | Powers Pending Final Distribution | 62 |
| | | |
| ARTICLE 11 | PORTABILITY | 63 |
| 3.11.1 | Continuance by Successor | 63 |
| 3.11.2 | Merger with Other Plan | 63 |
| 3.11.3 | Transfers from Other Plans | 63 |
| 3.11.4 | Transfer to Other Plans | 64 |
| 3.11.5 | Direct Rollover | 64 |
| | | |
| ARTICLE 12 | MISCELLANEOUS | 65 |
| 3.12.1 | No Reversion to Employer | 65 |
| 3.12.2 | Employer Actions | 65 |
| 3.12.3 | Execution of Receipts and Releases | 65 |
| 3.12.4 | Rights of Participants Limited | 65 |
| 3.12.5 | Persons Dealing with Trustee Protected | 65 |
| 3.12.6 | Protection of the Insurer | 65 |
| 3.12.7 | No Responsibility for Act of Insurer | 65 |
| 3.12.8 | Inalienability | 65 |
| 3.12.9 | Qualified Domestic Relations Orders | 67 |
| 3.12.10 | Authorization to Withhold Taxes | 68 |
| 3.12.11 | Missing Persons | 68 |

7595

| 3.12.12 | Notices | |
| 3.12.13 | Governing Law | 68 |
| 3.12.14 | Severability of Provisions | 68 |
| 3.12.15 | Gender and Number | 68 |
| 3.12.16 | Binding Effect | 68 |
| 3.12.17 | Qualification under Internal Revenue Laws | 69 |
| | | 69 |
| ARTICLE 13 | EXECUTION OF AGREEMENT | |
| 3.13.1 | Counterparts | 70 |
| 3.13.2 | Acceptance by Trustee | 70 |
| 3.13.3 | Execution | 70 |
| | | 70 |

7596

# DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. PROFIT SHARING PLAN PLAN

THIS AGREEMENT is made this 20th day of July, 2005, by and between Diagnostic & Clinical Cardiology, P.A. (collectively "the Employer"), and Mario Criscito (collectively "the Trustee").

## PART 1

## ARTICLE 1

## INTRODUCTION

**1.1.1 Adoption and Title.** The Employer and the Trustee hereby create and adopt the Plan and Trust to be known as Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan. Prior to January 1, 2005 the name of the Plan was Diagnostic & Clinical Cardiology, P.A.. Money Purchase Plan.

**1.1.2 Effective Date.** Except as otherwise specifically provided herein, the provisions of this Plan and Trust shall be effective as of January 1, 2005, hereinafter known as the "Effective Date." Effective dates pertaining to legislative changes required by the Uruguay Round Agreements Act, Pub. L. 103-465 ("GATT"), the Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. 103-353 ("USERRA"), the Small Business Job Protection Act of 1996, Pub. L. 104-188 ("SBJPA"), the Taxpayer Relief Act of 1997, Pub. L. 105-34 ("TRA 97"), and the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206 ("RRA"), collectively known as "GUST", and the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554 ("CRA") are provided herein with those provisions.

**1.1.3 Purpose.** This Plan and Trust is established for the purpose of giving recognition to the contribution made by Employees to the successful conduct of the business of the Employer by providing Eligible Employees with retirement, disability and death benefits in accordance with the Plan.

# ARTICLE 2

## DEFINITION

As used in this Plan and Trust, the following terms shall have the following meanings:

**1.2.1 "Account":** The Employer Account, Controlled Account, Voluntary Account, or Segregated Account of a Participant, as the context requires, established and maintained for accounting purposes.

**1.2.2 "Account Balance":** The value of a Participant's Accounts as of a specified date.

**1.2.3 "Act":** The Employee Retirement Income Security Act of 1974, as amended from time to time.

**1.2.4 "Alternate Payee":** Any spouse, former spouse, child or other dependent of a Participant who is recognized by a Qualified Domestic Relations Order as having a right to receive all, or a portion of, the benefits payable under this, or any other plan of the Employer, with respect to such Participant.

**1.2.5 "Anniversary Date":** The last day of the Plan Year.

**1.2.6 "Base Benefit Percentage":** The percentage of average compensation at which Employer derived benefits are accrued with respect to compensation at or below the integration level in a defined benefit plan.

**1.2.7 "Base Contribution Percentage":** The percentage of Compensation at which Employer derived contributions are made with respect to Compensation at or below the Integration Level.

**1.2.8 "Beneficiary":** The person or persons entitled to receive any benefits payable upon or after a Participant's death.

**1.2.9 "Board of Directors":** The board of directors of an incorporated Employer.

**1.2.10 "Break in Service":** The failure of an Employee or Participant to complete more than a specified amount of service during a twelve (12) consecutive month period. A Break in Service for eligibility purposes shall occur if the Employee has less than 500 Hours of Service. A Break in Service for vesting purposes shall occur if the Participant has less than 500 Hours of Service. The determination of whether the Participant has earned a Year of Service (or partial year) or a Break in Service shall be measured on the same computation period, as specified in Section 1.2.23 or 1.2.82, as appropriate.

**1.2.11 "Code":** The Internal Revenue Code of 1986, as amended from time to time.

**1.2.12 "Compensation":** Total compensation, which is actually paid to the Participant by the Employer during the applicable twelve (12) consecutive month period and includes all wages, salaries, and fees for professional services and other amounts received, (without regard to whether an amount is paid in cash), for personal services actually rendered in the course of employment (Code section 415(c)(3) compensation) with the Employer maintaining the Plan to the extent that the amounts are includable in gross income (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements, or other expense allowances under a non-accountable plan (as described in Treasury Regulation 1.62-2(c)), but excluding all of the following:

(a) Employer contributions to a plan of deferred compensation which are not includable in the Employee's gross income for the taxable year in which contributed, or Employer

-2-

7598

contributions under a simplified employee pension to the extent such contributions are deductible by the Employee, or any distributions from a plan of deferred compensation;

(b) Amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(c) Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and,

(d) Other amounts which received special tax benefits, or contributions made by the Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity contract described in section 403(b) of the Code (whether or not the contributions are actually excludable from the gross income of the Employee).

In the case of a Self-Employed Individual, Compensation means Earned Income during such period; provided, if Compensation is modified so that Non-Highly Compensated Employees receive less than their total Compensation, Compensation for each self-employed individual shall be his Earned Income multiplied by a percentage. Such percentage equals the aggregate compensation recognized for allocation purposes for Non-Highly Compensated Employees divided by the aggregate total compensation actually paid to Non-Highly Compensated Employees.

Compensation shall include any amount which is contributed by the Employer pursuant to a salary reduction agreement and which is not includable in the gross income of the Employee under sections 125, 132(f)(4), 402(e)(3), 402(h), 403(b), and 457(b) of the Code. Section 132(f)(4) elective deferrals are included in Compensation for Plan Years beginning on or after January 1, 2001.

Effective December 12, 1994, a Participant who is in Qualified Military Service shall be credited with Compensation for such period based on the rate of Compensation he would have received had he been in the employment of the Employer, or if such rate is not ascertainable, the average Compensation for the twelve (12) consecutive month period, (or his entire period of employment, if shorter), preceding his Qualified Military Service.

For Plan Years beginning on or after January 1, 1989, and before January 1, 1994, the annual compensation of each Participant taken into account for determining all allocations provided under the Plan for any Plan Year shall not exceed $200,000. This limitation shall be adjusted by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code, except that the dollar increase in effect on January 1 of any calendar year is effective for Plan Years beginning in such calendar year and the first adjustment to the $200,000 limitation is effective on January 1, 1990.

For Plan Years beginning on or after January 1, 1994, the annual compensation of each Participant taken into account for determining all allocations provided under the Plan for any Plan Year, shall not exceed $150,000, as adjusted for increases in the cost-of-living in accordance with section 401(a)(17)(B) of the Code. The cost-of-living adjustment in effect for a calendar year applies to any determination period beginning in such calendar year.

If a determination period consists of fewer than twelve (12) months the annual compensation limit is an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is twelve (12).

If Compensation for any prior determination period is taken into account in determining a Participant's allocations for the current Plan Year, the Compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining allocations in Plan Years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000. In addition, in determining allocations in Plan Years beginning on or after January 1, 1994, the annual compensation limit in effect for

7599

determination periods beginning before that date is $150,000.

For Plan Years commencing prior to January 1, 1997 the annual compensation taken into account in determining whether the dollar limitation above applies shall include the compensation of the Participant's spouse and any lineal descendants who have not attained age nineteen (19) by the last day of the Plan Year. If the aggregate compensation exceeds such dollar limitation, then the dollar limitation shall be allocated among the Participant, spouse, and such lineal descendants. Each affected individual shall receive the lesser of his compensation (without regard to this Section) or the Taxable Wage Base in effect on the first day of the applicable Plan Year. If the aggregate of the amounts so allocated still exceeds the dollar limitation, then each affected individual shall receive a pro-rata portion based on such allocation so that the aggregate amount equals the dollar limitation for that Plan Year. If the aggregate of the amounts so allocated is less than the dollar limitation, then each affected individual shall receive an additional amount equal to such difference prorated over his compensation in excess of the Taxable Wage Base for that Plan Year. This Paragraph only applies to Participants who are 5-Percent Owners (as defined in Section 2.5.3(g)(2)) or who are Highly Compensated and receive one of the ten (10) highest compensations for that Plan Year.

**1.2.13 "Compensation Computation Period":** Each Plan Year. Compensation for a Participant's initial year of participation shall be measured over the twelve (12) month period ending in the initial year of participation.

**1.2.14 "Contract":** Any policy or other agreement with or without any insurance element issued and not subsequently determined invalid or unenforceable by any Insurer including, but not limited to, life insurance policies, individual or group annuity contracts, and deposit administration contracts.

**1.2.15 "Controlled Account":** An account established and maintained for a Participant with respect to his interest in the Trust Fund over which he is permitted, under the terms of the Plan and the Plan's investment policy, to exercise investment control.

**1.2.16 "Direct Rollover":** A payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

**1.2.17 "Disability Retirement Date":** The date that a Participant retires due to a medically determinable physical or mental impairment that is expected to last for a continuous period of at least twelve (12) months or result in death and which renders him incapable of performing his duties. Such date is the Participant's actual date of disability, as determined by the Plan Administrator, in a uniform and nondiscriminatory manner.

**1.2.18 "Distributee":** An Employee or former Employee, an Employee's or former Employee's surviving spouse, an Employee's or former Employee's spouse or former spouse who is an Alternate Payee under a Qualified Domestic Relations Order, as defined in section 414(p) of the Code.

**1.2.19 "Early Retirement Age":** The Plan does not provide an Early Retirement Age.

**1.2.20 "Early Retirement Date":** The Plan does not provide an Early Retirement Date.

**1.2.21 "Earned Income":** The net earnings from self-employment in the trade or business with respect to which the Plan is established for which personal services of the Participant are a material income-producing factor. Net earnings shall be determined without regard to items not included in gross income and the deductions allocable to such items but, in the case of taxable years beginning after 1989, with regard to the deduction allowed to the taxpayer by section 164(f) of the Code. Net earnings shall be reduced by contributions to a qualified Plan to the extent deductible under section 404 of the Code.

**1.2.22 "Elapsed Time Method":** A method of counting service for purposes of eligibility to participate, vesting, and contribution allocation which does not track actual hours worked by an Employee, but is measured according to the length of time an individual is an Employee of the Employer or a Participant of this Plan, as appropriate. This Plan does not use the Elapsed Time Method, but instead

-4-

7600

tracks Hours of Service for determining Years of Eligibility Service, Years of Credited Service, and Years of Vesting Service.

      1.2.23  **"Eligibility Computation Period":**  For purposes of determining Years of Eligibility Service and Breaks in Service for purposes of eligibility, the initial Eligibility Computation Period is the twelve (12) consecutive month period beginning with the date on which the Employee first performs an Hour of Service for the Employer and the subsequent Eligibility Computation Periods are each subsequent twelve (12) consecutive month period commencing on the anniversary of such employment date. If an Employee has a Break in Service before satisfying the Plan's eligibility requirements, service before such Break in Service shall not be taken into account.

      1.2.24  **"Eligible Employee":**  An Employee, as defined in Section 1.2.27, below, who has met the eligibility requirements set forth in Section 2.1.1, including Leased Employees subject to section 414(n) or (o) of the Code.

      1.2.25  **"Eligible Retirement Plan":**  An individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified plan described in section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution.  In the case of a surviving spouse, this term refers to an individual retirement account or individual retirement annuity.

      1.2.26  **"Eligible Rollover Distribution":**  Any distribution of all or a portion of the Participant's Account Balance, but does not include:

      (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years or more;

      (2) any distribution to the extent such distribution is required under section 401(a)(9) of the Code;

      (3) the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities);

      (4) any other distribution(s) that is (are) reasonably expected to total less than two hundred dollars ($200) during a year; and,

      (5) any hardship distribution described in section 401(k)(2)(B)(i)(IV) of the Code received after January 1, 1999

      1.2.27  **"Employee":**  A person who is currently or hereafter employed by the Employer, or by any other employer aggregated under section 414(b), (c), (m) or (o) of the Code and the regulations thereunder, but excluding an employee who is a non-resident alien (within the meaning of section 7701(b)(1)(B) of the Code) deriving no earned income (within the meaning of section 911(d)(2) of the Code) from the Employer which constitutes income from sources within the United States (within the meaning of section 861(a)(3) of the Code) and employees who are included in the unit of employees covered by a collective bargaining agreement between the Employer and "employee representatives"; provided, that retirement benefits were the subject of good faith negotiations and less than two (2%) percent of the employees of the Employer who are covered pursuant to such agreement are professionals as defined in Treasury regulation section 1.410(b)-9. For this purpose, the term "employee representatives" does not include any organization where more than half of its members are employees who are owners, officers, or executives of the employer.

      Unless otherwise provided under this Plan, individuals who are not classified as Employees of the Employer for purposes of the Employer's payroll system (including, without limitation, individuals employed by temporary help firms, technical help firms, staffing firms, employee leasing firms, professional

7601

employer organizations or other staffing firms whether or not deemed to be "common law" employees or "leased employees" within the meaning of section 414(n) or (o) of the Code) are not considered to be Eligible Employees of the Employer and shall not be eligible to participate in the Plan. In the event any such individuals are reclassified as Employees for any purpose, including without limitation, common law or statutory employees, by any action of any third party, including, without limitation, any government agency, or as a result of any private lawsuit, action, or administrative proceeding, such individuals shall notwithstanding such reclassification, remain ineligible for participation hereunder. In addition to and not in derogation of the foregoing, the exclusive means for individuals who are not classified as an Employee of the Employer on the Employer's payroll system to become eligible to participate in this Plan is through an amendment to this Plan, duly executed by the Employer, which specifically renders such individuals eligible for participation hereunder.

The Plan Administrator shall have full and complete discretion to determine eligibility for participation and benefits under this Plan, including, without limitation, the determination of those individuals who are deemed Employees of the Employer (or any controlled group member.) The Plan Administrator's decision shall be final, binding, and conclusive on all parties having or claiming a benefit under this Plan. This Plan is to be construed to exclude, and the Plan Administrator is authorized to exclude, all individuals who are not considered Employees for purposes of the Employer's payroll system.

**1.2.28 "Employer":** The Employer and each affiliated employer that are a party to this Agreement, or any of their respective successors or assigns which adopt the Plan; provided, however, that no mere change in the identity, form or organization of the Employer shall affect its status under the Plan in any manner, and, if the name of the Employer is hereinafter changed, a corresponding change shall be deemed to have been made in the name of the Plan and references herein to the Employer shall be deemed to refer to the Employer as it is then known.

**1.2.29 "Employer Account":** An Account established and maintained for a Participant for accounting purposes to which his share of Employer contributions and Forfeitures are added.

**1.2.30 "Entry Date":** The first day of the Plan Year nearest to the date of satisfying the eligibility requirements. Eligibility requirements are defined in Section 2.1.1.

**1.2.31 "Excess Benefit Percentage":** The percentage of average compensation at which Employer derived benefits are accrued with respect to compensation above the integration level in a defined benefit plan.

**1.2.32 "Excess Contribution Percentage":** The percentage of Compensation at which Employer derived contributions are made with respect to Compensation above the Integration Level.

**1.2.33 "Fiduciary":** The Plan Administrator, the Trustee, and any other person who has discretionary authority or control in the management of the Plan or the disposition of Trust assets.

**1.2.34 "Forfeitures":** The non-vested portion of a Participant's Account Balance that is forfeited on or after his termination of employment in accordance with Section 2.4.6 and may be allocated to other Participants, used to defray the administrative expenses of the Plan, or considered as part of the Employer's contribution if permitted by Section 2.3.5.

**1.2.35 "Gross Benefit Percentage":** The percentage of average compensation at which Employer derived benefits are accrued prior to the application of the offset in a defined benefit plan.

**1.2.36 "Highly Compensated Employee":**

(a) For Plan Years beginning after December 31, 1996, a Highly Compensated Employee means any Employee who:

(1) was a 5-percent owner (as defined in section 416(i)(1) of the Code) of the Employer at any time during the year or the preceding year; or

-6-

7602

(2) for the preceding year had "compensation" from the Employer in excess of $80,000 (as adjusted by the Secretary of the Treasury pursuant to section 415(d) of the Code, except that the base period shall be the calendar quarter ending September 30, 1996).

The year for which a determination is being made is called a "determination year" and the preceding twelve (12) month period is called a "look-back year."

For purposes of this Subsection, the term "compensation" means compensation within the meaning of section 415(c)(3) of the Code for the "determination year" or "look-back year." For Plan Years commencing before January 1, 1997 "compensation" for a Participant who is a 5-Percent Owner (as defined in Section 2.5.3(g)(2)) or who receives one of the ten (10) highest compensations for the Plan Year shall include the "compensation" of his spouse, any lineal ascendants and descendants, and the spouses of any lineal ascendants and descendants.

The determination of whether an Employee had "compensation" in excess of $80,000 (as adjusted by the Secretary of the Treasury), shall be made based on "compensation" paid during the preceding Plan Year.

The Employee data for all plans of the Employer shall be based on the preceding Plan Year. This requirement will not apply to "determination years" beginning with or within the 1997 calendar year, and for "determination years" beginning on or after January 1, 1998 and before January 1, 2000. Satisfaction of this requirement is determined without regard to any non-retirement plans of the Employer.

In determining whether an Employee is a Highly Compensated Employee for years beginning in 1997, the amendments to section 414(q) of the Code stated above are treated as having been in effect for years beginning in 1996.

(b) Generally, a former Employee shall be treated as a Highly Compensated Employee if:

(1) the Employee was Highly Compensated Employee when the Employee separated from service; or

(2) the Employee was a Highly Compensated Employee (active) for any Plan Year that ended on or after the Employee's 55th birthday.

The determination of whether a former Employee is a Highly Compensated Employee shall be based on the rules applicable to determining Highly Compensated Employee status as in effect for that "determination year", in accordance with section 1.414(q)-1T, A-7 and A-4 of the temporary Income Tax regulations and Notice 97-45.

The Plan Administrator shall apply rules, as set forth in an administrative policy, so long as such rules are reasonable, nondiscriminatory, and uniformly and consistently applied.

**1.2.37  "Hour of Service":**  An hour for which (a) the Employee is paid, or entitled to payment by the Employer for the performance of duties, (b) the Employee is paid or entitled to payment by the Employer during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, or (c) back pay, irrespective of mitigation of damages, has been either awarded or agreed to by the Employer.  Hours of Service shall be credited to the Employee under (a), above, for the period in which the duties are performed, under (b), above, in the period in which no duties are performed occurs, beginning with the first Hour of Service to which the payment relates, and under (c), above, for the period to which the award or agreement pertains rather than the period in which the award, agreement or payment is made; provided, however, that Hours of Service shall not be credited under both (a) and (b), above, as the case may be, and under (c) above.  Notwithstanding the preceding sentences, (i) no more than five hundred one (501) Hours of Service shall be credited under (b), above, on account of any single continuous period

during which the Employee performs no duties whether or not such period occurs in a single computation period, (ii) no Hours of Service shall be credited to the Employee by reason of a payment made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws, and (iii) no Hours of Service shall be credited by reason of a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee. The determination of Hours of Service for reasons other than the performance of duties and the crediting of Hours of Service to computation periods shall be made in accord with the provisions of Labor regulation sections 2530.200b-2(b) and (c) which are incorporated herein by reference.

Solely for purposes of determining whether an Employee has incurred a Break in Service, as defined in Section 1.2.10, an Employee shall be credited with the number of Hours of Service which would otherwise have been credited to such individual but for the absence or in any case in which such Hours cannot be determined with eight (8) Hours of Service, for any day that the Employee is absent from work by reason of the Employee's pregnancy, the birth of a child of the Employee, the placement of a child with the Employee in connection with the adoption of such child by the Employee, or for purposes of caring for such child for a period beginning immediately following such birth or placement. Such Hours of Service shall be credited only in the computation period in which the absence from work begins if the Employee would be prevented from incurring a Break in Service in such computation period solely because credit is given for such period of absence and, in any other case, in the immediately following computation period. Notwithstanding the foregoing, no credit shall be given for such service unless the Employee furnishes to the Plan Administrator information to establish that the absence from work is for the reasons indicated and the number of days for which there was such an absence.

An Employee shall be credited with Hours of Service equal to the actual hours for which the Employee is paid or entitled to payment. In the event actual hours are unavailable, the Employee shall be granted Hours of Service equal to forty-five (45) Hours of Service if he is credited with at least one (1) Hour of Service during the week.

Service with another business entity that is, along with the Employer, a member of a controlled group of corporations under section 414(b) of the Code, an affiliated service group under section 414(m) of the Code, or trades or businesses under common control as defined in section 414(c) of the Code, or, which is otherwise required to be aggregated with the Employer pursuant to section 414(o) of the Code and the regulations issued thereunder shall be treated as service for the Employer. Hours of Service shall be credited for any individual considered an Employee for purposes of this Plan under section 414(n) or section 414(o) of the Code and the regulations issued thereunder.

Except to the extent inconsistent with regulations issued by the Secretary of the Treasury, service for a predecessor to the Employer, whether as an Employee or self-employed person, may be treated as service for the Employer for purposes of calculating an Employee's Years of Eligibility Service, Years of Vesting Service, or Years of Credited Service, as those terms are defined in Sections 1.2.79, 1.2.82, and 1.2.78. As of the Effective Date of this Plan, there were no such predecessors to the Employer. Any future predecessors and the service being maintained will be listed in Appendix A and attached hereto and be treated as an amendment to this Plan. If the Employer maintains the plan of a predecessor employer, service with such predecessor shall be treated as service for the Employer.

**1.2.38 "Insurer":** Any insurance company that has issued a Contract to the Plan.

**1.2.39 "Integration Level":** The amount of Compensation at or below which Employer contributions are allocated based on the Base Contribution Percentage. This Plan does not utilize an Integration Level.

**1.2.40 "Investment Manager":** The person, persons, bank or insurance company appointed by the Trustee to manage the investments of the Plan, or if no appointment is made, the Trustee.

**1.2.41 "Joint and Survivor Annuity":** An annuity for the life of the Participant with a survivor annuity for the life of the spouse (or other Beneficiary) which is not less than fifty (50%) percent and not more than one hundred (100%) percent of the amount of the annuity payable during the life of the

7604

Participant and which is the amount of benefit which can be purchased with the Participant's vested Account Balances.

    **1.2.42 "Leased Employee":** Effective for Plan Years beginning after December 31, 1996, any person (other than an employee of the recipient) who, pursuant to an agreement between the recipient and any other person (the "leasing organization"), has performed services for the recipient (or for the recipient and related persons determined in accordance with section 414(n)(6) of the Code), on a substantially full time basis for a period of at least one (1) year, and such services are performed under the primary direction or control by the recipient; provided that any such person shall not be taken into account:

    (a)  if such person is covered by a money purchase pension plan providing: (i) a nonintegrated employer contribution rate of at least ten (10%) percent of compensation, as defined in Section 3.1.6(a); (ii) immediate participation; and (iii) full and immediate vesting; and

    (b)  if Leased Employees do not constitute more than twenty (20%) percent of the workforce of the recipient employer who are not Highly Compensated Employees.

Contributions or allocations provided for a Leased Employee by the leasing organization, which are attributable to services performed for the recipient employer, shall be treated as provided by the recipient employer.

    **1.2.43 "Life Insurance Policy":** A life insurance, annuity, or endowment policy or contract owned by the Trust on the life of a Participant, on the life of someone in whom the Participant has an insurable interest, or the joint lives of a Participant and someone in whom the Participant has an insurable interest.

    **1.2.44 "Limitation Year":** The Plan Year; provided that all qualified plans maintained by the Employer use the same Limitation Year.

    **1.2.45 "Maximum Excess Benefit Percentage":** The largest Excess Benefit Percentage that will satisfy the conditions of Code section 401(l) for a given Base Benefit Percentage. For purposes of Section 2.3.12, the Base Benefit Percentage refers to the one used by the defined benefit plan or plans maintained by the Employer.

    **1.2.46 "Maximum Excess Contribution Percentage":** The largest Excess Contribution Percentage that will satisfy the conditions of Code section 401(l) for a given Base Benefit Percentage. For purposes of Section 2.3.12, the Base Benefit Percentage refers to the one used by this Plan.

    **1.2.47 "Maximum Offset Benefit Percentage":** The largest Offset Percentage that will satisfy the conditions of Code section 401(l) for a given Gross Benefit Percentage. For purposes of Section 2.3.12, the Gross Benefit Percentage refers to the one used by the defined benefit plan or plans maintained by the Employer.

    **1.2.48 "Minimum Top-Heavy Allocation":** The minimum allocation of a Participant for which provision is made in Section 2.6.1.

    **1.2.49 "Non-Highly Compensated Employee":** An Employee who is not a Highly Compensated Employee, as that term is defined in Section 1.2.36.

    **1.2.50 "Normal Form of Distribution":** Unless otherwise elected by the Participant or his spouse, a Participant's vested Account Balance shall be distributed in a single lump sum payment.

    **1.2.51 "Normal Retirement Age":** The date the Employee attains age 59.

    **1.2.52 "Normal Retirement Date":** The actual date the Participant attains his Normal Retirement Age.

**7605**

**1.2.53 "Offset Percentage":** The percentage of final average compensation offset from Employer derived benefits in a defined benefit plan.

**1.2.54 "Owner-Employee":** An individual who is a sole proprietor or who is a partner owning more than ten (10%) percent of either the capital or profits interest of the partnership.

**1.2.55 "Participant":** Any Eligible Employee who enters the Plan after meeting the requirements of Part 2, Article 1.

**1.2.56 "Plan":** The profit sharing plan for Employees as set forth in this Agreement, together with any amendments or supplements thereto.

**1.2.57 "Plan Administrator":** The person, persons or entity appointed by the Employer to administer the Plan or, if the Employer fails to make such appointment, the Employer.

**1.2.58 "Plan Year":** The calendar year. In the event that a short Plan Year exists, each Employee shall be credited with a Year of Credited Service, a Year of Eligibility Service, or a Year of Vesting Service if he is credited with Hours of Service equal to the Hours of Service required for a full year multiplied by the number of months in the short Plan Year divided by twelve (12).

**1.2.59 "Pre-Retirement Survivor Annuity":** A survivor annuity for the life of the surviving spouse (or other Beneficiary) of the Participant purchasable with an amount equal to at least 50% of the vested Account Balance of the Participant as of the date of the Participant's death, reduced if necessary, to reflect any security interest held by the Plan by reason of an outstanding loan to the Participant for which a valid spousal consent has been obtained.

**1.2.60 "Qualified Domestic Relations Order (QDRO)":** A domestic relations order which creates or recognizes the existence of an Alternate Payee's right to receive all, or a portion of, the benefits payable under this, or any other plan of the Employer, with respect to a Participant and which has been determined by the Plan Administrator to satisfy the conditions of Code section 414(p).

**1.2.61 "Qualified Joint and Survivor Annuity":** A Joint and Survivor Annuity which is immediately payable and which the Beneficiary is the spouse of the Participant. The percentage of the survivor annuity shall be 50%.

**1.2.62 "Qualified Military Service":** Any service in the uniformed services, whether on a voluntary or involuntary basis, including active duty, active duty for training, initial active duty for training, inactive training, full-time National Guard duty, and the period of time a person is absent to determine his fitness to perform any such duty. Uniformed services refers to the Armed Forces, the Army National Guard, the Air National Guard, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or national emergency.

**1.2.63 "Qualified Pre-Retirement Survivor Annuity":** A Pre-Retirement Survivor Annuity for which the Beneficiary is the spouse of the Participant and the benefit the Participant would have received is a Qualified Joint and Survivor Annuity (or the actuarial equivalent thereof.)

(a) In the case of a Participant who dies after the date on which the Participant attained the earliest retirement age under the Plan on which he could elect to receive retirement benefits, such survivor annuity shall be immediately payable; and

(b) In the case of a Participant who dies on or before such date, such survivor annuity shall be an immediate annuity payable commencing in the month in which the Participant would have attained the earliest retirement age under the Plan.

Any security interest held by the Plan due to an outstanding loan to the Participant, for which a valid spousal consent has been obtained, if necessary, shall be taken into account.

7606

**1.2.64** "Qualifying Employer Real Property": Real property of the Employer that the Trustee may acquire and hold pursuant to section 407 of the Act.

**1.2.65** "Qualifying Employer Securities": Securities of the Employer that the Trustee may acquire and hold pursuant to section 407 of the Act.

**1.2.66** "Safe Harbor Profit Sharing Plan": A plan that does not permit the election of payments in the form of a life annuity (including any variations thereof, such as a joint and survivor annuity or a life annuity guaranteed for a number of years) in Section 2.3.10. On the death of the Participant, the Participant's vested Account Balance will be paid to the Participant's spouse, or, if there is no surviving spouse or the surviving spouse consents in accordance with Section 2.5.4, to a designated Beneficiary. The Participant's Account Balance must continue to share in the gains and losses of the Trust according to the rules in Part 2, Article 8 until distributed and such distribution shall be within a reasonable period. If a separate accounting is maintained, whether in a Segregated Account or not, for any direct or indirect transfers from a defined benefit plan, money purchase plan, target benefit plan, stock bonus plan, or profit sharing plan subject to section 401(a)(11) and section 417 of the Code, then such amounts shall not be treated as a Safe Harbor Profit Sharing Plan, but any other amounts that satisfies the conditions of a Safe Harbor Profit Sharing Plan may be treated as such. If a separate accounting is not maintained, no Accounts shall constitute a Safe Harbor Profit Sharing Plan.

**1.2.67** "Segregated Account": An account established and maintained for a Participant representing his interest in a Segregated Fund.

**1.2.68** "Segregated Fund": Assets held in the name of the Trustee which have been segregated from the other assets of the Trust Fund in accordance with any of the provisions of the Plan.

**1.2.69** "Self-Employed Individual": An individual who has Earned Income for the taxable year from the trade or business for which the Plan is established or who would have had Earned Income but for the fact that the trade or business had no net profit for the taxable year.

**1.2.70** "Straight Life Annuity": An annuity payable in equal installments over the life of the Participant that terminates upon the Participant's death.

**1.2.71** "Taxable Wage Base": The contribution and benefit base in effect under section 230 of the Social Security Act at the beginning of the Plan Year.

**1.2.72** "Trustee": The persons, corporations, associations or combination of them who shall at the time be acting as such from time to time hereunder.

**1.2.73** "Trust Fund": All money and property of every kind and character held by the Trustee pursuant to the Plan.

**1.2.74** "Valuation Date": A date on which the assets of the Trust Fund are valued and Participants' Accounts determined. A Valuation Date exists on the last day of the Plan Year.

**1.2.75** "Voluntary Account": An Account established and maintained for a Participant with respect to his Voluntary Employee Contributions.

**1.2.76** "Voluntary Contribution Benefit": The benefit of a Participant payable as a result of his Voluntary Employee Contributions.

**1.2.77** "Voluntary Employee Contributions": Pre-tax contributions made by a Participant at his discretion, prior to Plan Years beginning in 1987, and after-tax contributions made by a Participant at his discretion.

**1.2.78** "Year(s) of Credited Service": Subject to any limitations or exclusions under the Plan's benefit formula, a Participant's Years of Credited Service shall be each Plan Year during which the

-11-

7607

Participant completes 1000 Hours of Service.

**1.2.79 "Year(s) of Eligibility Service":** An Eligibility Computation Period in which the Employee completes 1000 Hours of Service.

**1.2.80 "Year(s) of Participation":** A year in which a Participant earns a Year of Credited Service.

**1.2.81 "Year(s) of Service":** A year in which an Employee earns a Year of Credited Service, or would have, if the Plan was in existence and he was a Participant in the Plan.

**1.2.82 "Year(s) of Vesting Service":** Each Plan Year during which the Employee completes 1000 Hours of Service.

7608

# PART 2

## ARTICLE 1

## PARTICIPATION

**2.1.1 Eligibility Requirements.** Each Employee shall be eligible to participate in this Plan upon the later of the date the Employee attains age 21 or completes two (2) Years of Eligibility Service, as defined in Section 1.2.79, provided that he is an Employee on such date.

**2.1.2 Commencement of Participation.** An Eligible Employee shall become a Participant in the Plan on the Entry Date, as defined in Section 1.2.30.

**2.1.3 Participation upon Reemployment.** A Participant whose employment terminates and who is subsequently reemployed shall reenter the Plan as a Participant immediately on the date of his reemployment. In the event that an Employee completes the eligibility requirements set forth in Section 2.1.1 above, his employment terminates prior to becoming a Participant and he is subsequently reemployed, such Employee shall be deemed to have met the eligibility requirements as of the date of his reemployment and shall become a Participant on the date of his reemployment; provided, however, that if he is reemployed prior to the date he would have become a Participant if his employment had not terminated, he shall become a Participant as of the date he would have become a Participant if his employment had not terminated. Any other Employee whose employment terminates and who is subsequently reemployed shall become a Participant in accordance with the provisions of Sections 2.1.1 and 2.1.2.

**2.1.4 Termination of Participation.** An Employee who becomes a Participant shall remain a Participant until his entire vested and non-forfeitable Account Balance is distributed to him, or his Beneficiary, in the event of his death.

**2.1.5 Plan Administrator's Determination.** In the event any question shall arise as to the eligibility of any person to become a Participant or the commencement of participation, the Plan Administrator shall determine such question and the Plan Administrator's decision shall be conclusive and binding, except to the extent of a claimant's right to appeal the denial of a claim.

**2.1.6 Existing Participants.** An Employee who, on the Effective Date of this Plan, was a Participant under the provisions of the Plan as in effect immediately prior to the Effective Date shall be a Participant on the Effective Date and the provisions of Sections 2.1.1 and 2.1.2, pertaining to participation, shall not be applicable to such Employee. The rights of a Participant whose employment terminated prior to the Effective Date shall be determined under the provisions of the Plan as in effect at the time of such termination.

**2.1.7 Change in Status.** If any Participant continues in the employ of the Employer or an affiliate for which service is required to be taken into account but ceases to be an Eligible Employee by becoming a member of any ineligible class for any reason (such as becoming covered by a collective bargaining agreement unless the collective bargaining agreement otherwise provides), the Participant shall continue to be a Participant until his entire Account Balance is distributed, but the individual shall not be entitled to receive an allocation of contributions or Forfeitures during the period that the Participant is not an Eligible Employee for such reason. Such Participant shall continue to receive credit for Years of Vesting Service completed during the period for purposes of determining his vested and non-forfeitable interest in his Employer Account. In the event that the individual subsequently again becomes a member of an eligible class of employees, the individual shall participate immediately upon the date of such change in status. If such Participant incurs a Break in Service and is subsequently reemployed, eligibility to participate shall be determined in accordance with Section 2.1.3. In the event that an individual who is not a member of an eligible class of employees becomes a member of an eligible class, the individual shall participate

-13-

immediately if such individual has satisfied the eligibility requirements and would have otherwise previously become a Participant and shall receive credit for Years of Vesting Service completed while in the ineligible class for purposes of determining his vested and non-forfeitable interest in his Employer Account.

        **2.1.8** **Qualified Military Service.** Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, contributions, benefits and service credit with respect to Qualified Military Service, as defined in Section 1.2.62, will be provided in accordance with section 414(u) of the Code.

        **2.1.9** **One-Time Election Not to Participate.** The Employer does not permit Employees to opt out of the Plan. All Employees who are eligible to participate in the Plan must enter on the next Entry Date as specified in Section 1.2.30.

        **2.1.10** **Fail-Safe Allocations.**

        (a) The Plan may satisfy the minimum coverage requirements of section 410(b) of the Code by either the ratio percentage test of regulation 1.410(b)-2(b)(2) or by the average benefit test of regulation 1.410(b)-2(b)(3).

        The ratio percentage test requires that the Plan's "ratio percentage" is at least seventy (70%) percent for the Plan Year. A Plan's "ratio percentage" equals a fraction, the numerator of which is the percentage of Non-Highly Compensated Employees (rounded to the nearest hundredth of a percentage point) who benefit under the Plan, and the denominator of which is the percentage of Highly Compensated Employees (rounded to the nearest hundredth of a percentage point) who benefit under the Plan. The percentage of Non-Highly Compensated Employees is determined by dividing the number of Non-Highly Compensated Employees who benefit under the Plan by the total number of Non-Highly Compensated Employees of the Employer. The percentage on Highly-Compensated Employees is determined by dividing the number of Highly Compensated Employees who benefit under the Plan by the total number of Highly Compensated Employees of the Employer.

        For this purpose, all Employees, as defined in Section 1.2.27, but modified to exclude any Employee who does not meet the age and service conditions, if any, specified in Section 2.1.1, must be taken into account. The exclusions in Section 1.2.24 shall not apply. If the eligibility requirements are more favorable than the maximum permissible eligibility requirements of section 410(a) of the Code, an Employer may elect to treat the Plan as two (2) separate plans for this purpose, one (1) covering those employees who satisfy such requirements, and one (1) covering those employees who do not satisfy such requirements (the "otherwise excludable employees" defined in Treasury regulation 1.410(b)-6(b)(3)). An Employer may, if approved by the Secretary of the Treasury, apply this requirement separately with respect to each "separate line of business", as that term is defined in section 414(r) of the Code, but omitting the condition of subsection (2)(A) (specifying that the line of business have 50 or more employees) and subsection (7) (defining separate lines of business as including geographically diverse operating units).

        The Employer may aggregate this Plan with another plan or plans of the Employer in determining whether the minimum coverage requirements are met; provided such other plan is aggregated for the purpose of satisfying section 401(a)(4) of the Code and the regulations thereunder. In such event, the percentages calculated in the previous paragraph will be determined by dividing the Non-Highly Compensated (or Highly Compensated) Employees benefiting under this Plan and the other plan or plans being aggregated by the total number of Non-Highly Compensated (or Highly Compensated) Employees of the Employer.

        The average benefit test requires that both the nondiscriminatory classification test of regulation 1.410(b)-4 and the average benefit percentage test of regulation 1.410(b)-5 are met for the Plan Year. The nondiscriminatory classification test requires that:

        (1) the group of Eligible Employees covered under the Plan, pursuant to Section 1.2.24, is a reasonable classification, based on objective bona fide business criteria (such as specified job categories or geographic location); and

7610

(2)  the ratio percentage described above equals or exceeds the "safe harbor percentage" or the classification has been determined by the Commissioner not to be discriminatory.

For this purpose, the term "safe harbor percentage" equals fifty (50%) percent, less three-fourths of a percentage point (.75%) for each percentage point (1%) that the "non-highly compensated employee concentration percentage" exceeds sixty (60%) percent.  An Employer's "non-highly compensated employee concentration percentage" is a fraction, the numerator of which is the number of Non-Highly Compensated Employees of the Employer, and the denominator of which is the number of employees of the Employer.  For determining the non-highly compensated employee concentration percentage only, all employees of the Employer shall be included, even if not considered Employees under Section 1.2.27 or if not eligible to enter the Plan by not meeting the conditions of Section 2.1.1.  By way of example, an Employer whose non-highly compensated employee concentration ratio is sixty (60%) percent has a safe harbor percentage of fifty (50%) percent; an Employer with a ratio of seventy-two (72%) percent has a safe harbor percentage of forty-one (41%) percent; an Employer with a ratio of eighty-four (84%) percent has a safe harbor percentage of thirty-two (32%) percent; and so forth.

The average benefit percentage test requires that the Plan's "average benefit percentage" is at least seventy (70%) percent for the Plan Year.  A Plan's "average benefit percentage" equals a fraction, the numerator of which is the "actual benefit percentage" of Non-Highly Compensated Employees (rounded to the nearest hundredth of a percentage point), and the denominator of which is the "actual benefit percentage" of Highly Compensated Employees (rounded to the nearest hundredth of a percentage point.)  The "actual benefit percentage" of Non-Highly Compensated Employees (or Highly Compensated Employees) is the average of the "benefit percentages" for all Non-Highly Compensated Employees (or Highly Compensated Employees), calculated separately for each "employee", as that term is modified in Subsection (a), even if such "employee" is not a Participant of this Plan. An Employee's "benefit percentage" is the increase in his benefits, from all qualified plans of the Employer, expressed as either an annual annuity or equivalent allocation for the year divided by his compensation, according to the rules, including any options such as the inclusion of permitted disparity, contained in regulations 1.401(a)(4) and 1.410(b)-5.  An Employee's "benefit percentage" shall not include any benefits attributable from Mandatory Employee Contributions, Voluntary Employee Contributions, or other contributions provided by the Employee; only benefits attributable to Employer contributions may be taken into account.

(b)  The Plan does not utilize any fail-safe provisions, thus if the Plan would otherwise fail to satisfy section 410(b) of the Code and the regulations thereunder, it must be amended within 9½ months after the end of the Plan Year to bring the Plan into compliance.

7611

# ARTICLE 2

## <u>CONTRIBUTIONS</u>

**2.2.1 <u>Employer Contributions.</u>** It is the intention of the Employer to continue the Plan and make regular contributions to the Trust Fund each year equal to the sum of the amounts specified by the Employer for the Plan Year for each Participant classification, such amount not limited to the profits of the Employer. Each year the Employer shall provide the Plan Administrator and the Trustee with a list containing each Participant classification and the discretionary contribution declared for each classification. Except as provided in Section 2.2.2, such contributions are irrevocable once transferred to the Trustee.

(a) **<u>Limitation.</u>** The contribution for any Plan Year by the Employer shall not exceed the maximum amount deductible from the Employer's income for such Year for federal income tax purposes under the applicable sections of the Code.

(b) **<u>Time of Contribution.</u>** All contributions by the Employer shall be delivered to the Trustee not later than the date fixed by law for the filing of the Employer's federal income tax return for the Year for which such contribution is made (including any extensions of time granted by the Internal Revenue Service for filing such return).

(c) **<u>Determination of Amount to be Final.</u>** The determination by the Employer as to the amount to be contributed by the Employer hereunder shall be in all respects final, binding, and conclusive on all persons or parties having or claiming any rights under this Agreement or under the Plan and Trust created hereby. Under no circumstances and in no event shall any Participant, Beneficiary, or other person or party have any right to examine the books or records of the Employer.

**2.2.2 <u>Return of Contributions.</u>** Employer contributions shall be returned to the Employer in the following instances:

(a) If the contribution is made by the Employer by mistake of fact, then the contribution shall be returned within one year after its payment upon the Employer's written request.

(b) Each contribution by the Employer is conditioned on initial qualification of the Plan under the applicable sections of the Code. If the Commissioner of Internal Revenue determines that the Plan is not qualified, then the contribution made incident to the initial qualification by the Employer shall be returned within one year after the date of denial of initial qualification of the Plan; provided that the application for initial qualification is made by the time prescribed by law for filing the Employer's tax return for the year in which the Plan is adopted, or such later date as the Secretary of the Treasury may prescribe.

(c) Each contribution by the Employer is conditioned upon the deductibility of the contribution under Code section 404. If the deduction for part or all of the contribution is disallowed by the Internal Revenue Service, the contribution, the extent of such disallowance, shall be returned to the Employer within one year after such disallowance.

**2.2.3 <u>Voluntary Employee Contributions.</u>** Voluntary Employee Contributions are not permitted under this Plan.

-16-

7612

# ARTICLE 3

## ALLOCATIONS

**2.3.1 Eligible Participants.** As of the last day of the Plan Year, the Employer Contribution (including any applicable Forfeitures as specified in 2.3.5) shall be allocated among the Employer Accounts of those Participants with at least 1000 Hours of Service during the Plan Year and who are employed on the last day of the Plan Year.

**2.3.2 Basic Allocation.** Each eligible Participant (as determined in Section 2.3.1) shall receive a percentage of his Compensation for the Plan Year, such percentage based on the Participant's classification. There shall be a separate classification for each Participant identified by the Participant's name. A list of each classification and the associated percentage shall be prepared for each Plan year not later than the earlier of the date that the allocation of the Non-Elective Contribution is completed or the time prescribed by law for filing the return for such applicable taxable year (including any extensions), and shall be maintained as part of the administrative records of the Plan.

For any Plan Year in which the Employer intends to rely on Treasury regulation 1.401(a)(4)-8 (cross testing) in satisfying section 401(a)(4) of the Code, each Non-Highly  Compensated Employee entitled to an allocation shall receive an allocation equal to the lesser of (a) one-third (1/3) of the highest allocation rate (as a percentage of Compensation) of any Highly Compensated Employee applied to his Compensation, as defined in 1.2.12, or (b) five (5%) percent of his compensation as defined in Section 3.1.6(a). If a defined benefit plan sponsored by the Employer is aggregated with this Plan for purposes of satisfying section 410(b) of the Code and the Employer intends to rely on Treasury regulation 1.401(a)(4)-9, then each Non-Highly Compensated Employee entitled to an allocation shall receive an allocation such that his aggregate normal allocation rate equals the lesser of (a) one-third (1/3) of the highest aggregate normal allocation rate (as a percentage of Compensation) of any Highly Compensated Employee or (b) five (5%) percent of his compensation as defined in Section 3.1.6(a); provided, if the highest aggregate normal allocation rate of any Highly Compensated Employee exceeds twenty-five (25%) percent, each Non-Highly Compensated Employee shall receive six (6%) percent of his compensation, if the highest aggregate normal allocation rate of any Highly Compensated Employee exceeds thirty (30%) percent, each Non-Highly Compensated Employee shall receive seven (7%) percent of his compensation, and if the highest aggregate normal allocation rate exceeds thirty-five (35%) percent, each Non-Highly Compensated Employee shall receive 7.5% of his compensation. In the event that the Plan is Top Heavy for a Plan Year, any Non-Highly Compensated Employee eligible for a Minimum Top Heavy Allocation in Section 2.6.1(a) shall instead receive an allocation no less than the amount determined in the aforementioned sentence. The Employer may elect to satisfy this Paragraph in this Plan or another plan of the Employer.

**2.3.3 Minimum Top-Heavy Allocation.** In the event that the Plan is Top-Heavy for the Plan Year, the Employer contribution shall continue to be allocated in the manner above; provided, if any Participant receives less than his Minimum Top Heavy Allocation, as determined in Section 2.6.1(a), an additional Employer contribution shall be made and allocated to such Participant.

**2.3.4 Allocations on Behalf of Disabled Participants.** A Participant who is disabled shall share in the Employer contribution based on his actual Compensation for the Plan Year.

**2.3.5 Forfeiture Allocations.** As of each Valuation Date, Forfeitures that arose from Section 2.4.6 during the Plan Year shall be used to reduce the Employer contribution otherwise payable to the Plan.

**2.3.6 Restoration of Forfeitures.** If a Participant is entitled to a restoration of his Forfeitures under Section 2.4.6, such amount shall be restored by an additional Employer contribution specifically allocated to the Participant's Employer Account.

**2.3.7 Voluntary Contribution Benefit.** In addition to any other benefit for which provision is made in this Article, a Participant shall be entitled to the balance in his Voluntary Account as of any date

7613

with respect to which he commences receiving his Employer Account, or any other date provided herein.

### 2.3.8 Distribution Dates.

(a) **Retirement.** A Participant who terminates employment on or after attaining his Normal Retirement Age, within the meaning of Section 1.2.51, shall be entitled to a distribution of his entire Account Balance as soon as administratively feasible following his actual date of retirement.

(b) **Disability Retirement.** A Participant who terminates employment due to being disabled, shall be entitled to his vested and non-forfeitable Account Balance as of his Disability Retirement Date, as such date is defined in Section 1.2.17.

(c) **Death.** Subject to any election made by a Participant in accordance with Section 2.5.3(c), and if applicable, the provisions of any Life Insurance Policy, a Beneficiary shall be entitled to a distribution of her portion of the Participant's vested Account Balance as soon as administratively feasible following the Participant's death.

(d) **Resignation or Discharge.** A Participant who terminates employment by reason of resignation or discharge prior to his Normal Retirement Date, shall be entitled to a distribution of his vested and non-forfeitable Account Balance as of the last day of the Plan Year in which he incurs his fifth (5th) consecutive Break in Service.

(e) **Plan Termination and Partial Termination.** In the event that the Plan terminates, including a termination resulting from a complete discontinuance of contributions, each Participant shall be entitled to his Account Balance as soon as administratively feasible following such termination. In the event of a partial plan termination, each affected Participant shall be entitled to his Account Balance as soon as administratively feasible following the next Valuation Date.

(f) **Rehires.** With the exception to (e), a distribution shall not be made under this Section 2.3.8 to any Participant who is rehired before the date his benefits are distributed.

(g) **Consents.** With the exception to (e), a distribution is contingent upon the consent of the Participant, and if applicable, the Participant's spouse unless the amount of the distribution satisfies 2.3.11 or this Plan is a Safe Harbor Profit Sharing Plan, as defined in Section 1.2.66. A Participant may elect to defer distribution of his vested Account Balance subject to Sections 2.5.1 and 2.5.3.

### 2.3.9 Distribution Determination Date.
The value of a Participant's vested Account Balance shall be determined as of the Valuation Date next preceding the date specified in Section 2.3.8, or such other date elected by the Participant.

If any Participant receives a distribution pursuant to the terms of the Plan as of any date other than a Valuation Date, then such distribution will include earnings credited solely as of the immediately preceding Valuation Date.

Notwithstanding the foregoing, if a Participant's Account Balance, or portion thereof, is invested in Accounts that are valued on a daily basis, the value of his Account Balance, or portion thereof, shall be the value on the actual date of distribution.

### 2.3.10 Optional Forms of Payment.
In lieu of the Normal Form of Distribution, as defined in Section 1.2.50, each Participant may select an optional form of payment. If a Participant (and his spouse, if applicable), does not select an optional form of payment, distributions will be made in the manner specified as the Normal Form of Distribution. Available options are set forth below and are available to all Participants on a nondiscriminatory basis.

(a) **Installment Payments.** Payments over a fixed period of time, but not to exceed the Participant's life expectancy, or, if applicable, the joint life and last survivor expectancy of the

**7614**

Participant and his Beneficiary. At the election of the Participant, payments shall be made in annual installments where each installment equals the Participants undistributed portion of his vested Account Balance divided by the number of remaining installments. Installments may be made for any number of years selected by the Participant. A Participant shall continue to share in the gains and losses of the Trust in accordance with Article 8 with respect to any undistributed portion.

(b) **Annuity Payments.** Monthly payments for the duration of the Participant's life, or, if applicable, over the Participant's life and the life of his Beneficiary, that may also be guaranteed for a specified number of years. At the election of the Participant, the Plan Administrator shall direct the Trustee to purchase a single premium, nontransferable, fully refundable annuity Contract from an Insurer with the Participant's vested and non-forfeitable Account Balance (or a portion thereof) in lieu of a cash distribution. The refund feature under such Contract shall inure to the Participant's Beneficiary upon his death. Such annuity shall conform to all provisions set forth herein. In the event of a conflict between the provisions of the annuity Contract and this Plan, the Plan provisions shall govern. Subject to the availability of an Insurer, the following annuities shall be permitted:

(1) **Life Annuity:** A monthly life annuity payable for the life of the Participant. Upon the Participant's death, no further payments are made.

(2) **Joint and Survivor Annuity:** A monthly life annuity payable for the life of the Participant with a percentage continuing to the Participant's spouse (or other such Beneficiary) for their lifetime. Once payments commence, the spouse or Beneficiary cannot be changed. The percentage continuing to the Participant's spouse or Beneficiary must be between 50% and 100%.

(3) **Life Annuity with Term Certain:** A monthly life annuity payable for the life of the Participant with a guarantee that payments will be made for a certain number of years. In no event will the certain period exceed the Participant's life expectancy or the joint life expectancy of the Participant and his Beneficiary. Once benefits commence, the certain period cannot change, but the Beneficiary may change at the request of the Participant.

**2.3.11 Small Amounts.** For Plan Years beginning on or after January 1, 2005, if the value of a Participant's vested Account Balance, determined as of a date following the Participant's date of termination of employment with the Employer, is $1,000.00 or less, the Participant will receive an immediate cash-out of his vested Account Balance as soon as administratively feasible, and no further benefits will be payable from the Plan. For Plan Years beginning prior to January 1, 2005, the threshold amount is $3,500.00. If the value of a Participant's vested Account Balance exceeds the threshold amount, an immediate cash-out shall not be made unless the Participant, and if applicable, his spouse, or his Beneficiary consent to such distribution. For distributions before January 1, 2005, benefits shall not be distributed without the Participant's consent if the vested Account Balance exceeded the threshold amount at the time of any prior distribution.

For purposes of this Section, a Participant's vested Account Balance includes benefits derived from both Employer and Employee contributions, including any rollover contributions, but excluding any accumulated deductible employee contributions (within the meaning of Code section 72(o)(5)(B)) for Plan Years beginning prior to January 1, 1989. A Participant's vested Account Balance shall also include the proceeds of any Life Insurance Policy, if any, on the Participant's life or the life of someone in whom the Participant has an insurable interest and the value of any outstanding loans originating from this Plan.

**2.3.12 Maximum Permitted Disparity.** The Participant's allocation, as determined in Section 2.3.2, is subject to the following limitations:

(a) If a Participant participates in two (2) or more qualified plans of the Employer, including a Simplified Employee Pension Plan under section 408(k) of the Code, his Annual Overall Permitted Disparity Fraction, as defined in this item (a), may not exceed one (1.0). In the case that the Annual Overall Permitted Disparity Fraction does exceed one (1.0) for a Plan Year with regard to any Participant, the allocation for each eligible Participant shall be based on the ratio that his

7615

Compensation for the Plan Year bears to the aggregate Compensation for all eligible Participants without regard to any Integration Level.

A Participant's Annual Overall Permitted Disparity Fraction is the sum of his Defined Contribution Disparity Fraction and his Defined Benefit Disparity Fraction for a Plan Year. A Participant's Defined Contribution Fraction equals:

> The Excess Contribution Percentage less the Base Contribution Percentage
> The Maximum Excess Contribution Percentage less the Base Contribution Percentage

A Participant's Defined Benefit Contribution Fraction equals:

> The Excess Benefit Percentage less the Base Benefit Percentage
> The Maximum Excess Benefit Percentage less the Base Benefit Percentage

or, if applicable,

> The Gross Benefit Percentage less the Offset Percentage,
> The Maximum Offset Percentage

where such terms are defined in Part 1, Article 2. For purposes of determining the Participant's Annual Overall Permitted Disparity Fraction, all Plan Years ending in the same calendar year are treated as the same Plan Year. If a plan maintained by the Employer relies on imputed disparity to satisfy the nondiscrimination tests of Code section 401(a)(4), as permitted by Treasury regulation 1.404(a)(4)-7, then the Participant's Annual Overall Permitted Disparity Fraction is one (1.0) for that Plan Year.

(b) If the Participant benefits or has ever benefited under a defined benefit plan of the Employer, then his Cumulative Disparity Fraction cannot exceed 35. A Participant's Cumulative Disparity Fraction is the sum of his Annual Overall Permitted Disparity Fraction for each Year of Service with the Employer. For each Plan Year in which the Employee is a Participant, his Annual Overall Permitted Disparity Fraction, for this purpose only, is one (1.0), regardless of the plan's benefit or contribution formula.

If a Participant's Cumulative Disparity Fraction equals or exceeds thirty-five (35), the general test of Treasury regulation 1.401(a)(4)-2(c) or the general test of Treasury regulation 1.401(a)(4)-8, as applicable, shall be performed without imputing permitted disparity for such Participant.

7616

# ARTICLE 4

# <u>VESTING</u>

**2.4.1  <u>Vesting of Accounts.</u>**  The vested and non-forfeitable interest in a Participant's Account Balance shall be determined by this Article 4.

(a)  <u>Normal or Postponed Retirement.</u>  If a Participant terminates employment at or after attaining Normal Retirement Age, he shall be one hundred (100%) percent vested and have a non-forfeitable interest in his Employer Account.

(b)  <u>Early Retirement.</u>  The Plan does not provide for Early Retirement.

(c)  <u>Disability Retirement.</u>  If a Participant terminates employment due to being disabled, the Participant shall be one hundred (100%) percent vested and have a non-forfeitable interest in his Employer Account.

(d)  <u>Death.</u>  In the event of the death of a Participant, the Participant shall be one hundred (100%) percent vested and have a non-forfeitable interest in his Employer Account.

(e)  <u>Resignation or Discharge.</u>  A Participant shall be one hundred (100%) percent vested and have a non-forfeitable interest in his Employer Account as of his Entry Date into the Plan.

**2.4.2  <u>Service Not Taken into Account.</u>**  In determining a Participant's vesting percentage in Section 2.4.1(e) all Years of Vesting Service with the Employer shall be included.

**2.4.3  <u>Reemployment.</u>**  An Employee whose employment terminates prior to completion of two (2) Years of Eligibility Service and who is subsequently reemployed after a Break in Service shall not have any Year of Eligibility Service completed before such Break in Service taken into account.

**2.4.4  <u>Leave of Absence.</u>**  A temporary cessation from active employment with the Employer pursuant to an authorized leave of absence in accordance with the nondiscriminatory policy of the Employer, whether occasioned by illness, military service or any other reason shall not be treated as either a termination of employment or a Break in Service provided that the Employee returns to employment prior to the end of the authorized leave of absence.

**2.4.5  <u>Voluntary Account.</u>**  A Participant's Voluntary Account shall be one hundred (100%) percent vested and non-forfeitable at all times.

**2.4.6  <u>Forfeitures.</u>**  All Participants are one hundred (100%) percent vested upon entry into the Plan, thus no Forfeitures occur as of the result of a Participant's termination of employment.

If it is determined that the Participant or his Beneficiary cannot be located, his vested Account Balance shall remain a part of the Trust Fund and share in any gains or losses in accordance with Part 2, Article 8.

**2.4.7  <u>Termination of Plan.</u>**  In the event that this Plan terminates (including a termination due to a complete discontinuance of contributions by the Employer), each Participant shall be one hundred (100%) percent vested and have a non-forfeitable interest in his Employer Account.  In the event of a partial termination of the Plan, each Participant with respect to whom such partial termination has occurred shall be one hundred (100%) percent vested and have a non-forfeitable interest in his Employer Account.

7617

# ARTICLE 5

## DISTRIBUTIONS

**2.5.1** **Immediate Distributions.**. A Participant whose employment terminates on account of death, disability, or retirement may elect (or his Beneficiary may elect) to commence distribution of his benefits within a reasonable period after the distribution date specified in Section 2.3.8, or delay the commencement of benefits, subject to the provisions of Sections 2.5.2 and 2.5.3. A Participant whose employment is terminated on account of resignation or discharge before meeting the eligibility requirements of Normal Retirement may elect to commence distribution of his benefits within a reasonable period after the distribution date specified in Section 2.3.8, or delay the commencement, subject to the provisions of Sections 2.5.2 and 2.5.3.

**2.5.2** **Deferred Distributions.** Unless the Participant elects otherwise, his vested and non-forfeitable Account Balance shall be dispersed no later than the sixtieth (60th) day after the last day of the Plan Year in which the latest of the following occurs:

(a) the Participant attains age sixty-five (65) or the Normal Retirement Age, if earlier;

(b) the Participant reaches his tenth (10th) anniversary of participating in the Plan; or

(c) the Participant terminates his employment with the Employer.

A Participant who terminates employment before satisfying the age requirement for Normal Retirement but has satisfied any service requirement shall be entitled to a distribution of his benefits in accordance with Section 2.5.1 upon attaining such age.

The Plan Administrator shall notify the Participant and the Participant's spouse of the right to defer any distribution while the Participant's Account Balance in the Plan is Immediately Distributable, as that term is defined in Section 2.5.3(g)(3). A Participant and the Participant's spouse may elect an earlier distribution after the receipt of such notice; provided the notice is given at least thirty (30), but no more than ninety (90), days before the distribution. A distribution may commence less than thirty (30) days after the notice is provided to the Participant if the notice clearly indicates that the Participant has at least thirty (30) days to decide whether to consent to the distribution. The failure of a Participant, or the Participant's spouse to consent to a distribution while the benefit is Immediately Distributable shall be deemed an election to defer commencement of benefits under this Section. If the Plan is a Safe Harbor Profit Sharing Plan, as that term is defined in Section 1.2.66, only the Participant need consent to the distribution of an Account Balance that is Immediately Distributable.

**2.5.3** **Required Distributions.** All distributions and benefit payments are subject to the minimum distribution requirements, including the minimum distribution incidental benefit requirements, of Code section 401(a)(9), and the regulations thereunder, including the proposed Income Tax regulations 1.401(a)(9)-1 and 1.401(a)(9)-2. The Plan will apply the regulations proposed on January 17, 2001, (hereinafter the "2001 Proposed Regulations") to distributions under the Plan made on or after January 1, 2001, and before the first day of the first calendar year beginning after the effective date of any final regulations under Code section 401(a)(9), or such other date as may be specified in guidance published by the Internal Revenue Service. If the total amount of required minimum distributions made to a Participant for 2001 prior to January 1, 2001 is equal to or greater than the amount of required minimum distributions determined under the 2001 Proposed Regulations, then no additional distributions are required for such Participant for 2001. If the total amount of required minimum distributions made to a Participant for 2001 prior to January 1, 2001 is less than the amount determined under the 2001 Proposed Regulations, then the amount of required minimum distributions for 2001 on or after such date will be determined so that the total amount of required minimum distributions for 2001 is the amount determined under the 2001 Proposed Regulations. In the event that a provision of this Plan conflicts with such requirements, such requirements

-22-

7618

shall govern.

(a) **Exempt Participants.** Those Participants who executed a valid "Section 242(b)(2) Election" by December 31, 1983, which has not been revoked or modified, may receive their distributions according to the terms of the election; provided, the spousal consent requirements of Code section 417 are satisfied. A "Section 242(b) Election" is an optional election provided by section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) which meets the guidelines of IRS Notice 83-23, 1983-2 C.B. 418. Such election is not valid for any assets rolled over into this Plan, unless such rollover was not at the direction of the Participant. A Participant may revoke his election at any time, but once revoked it cannot be reinstated and the provisions of Paragraphs (b) and (c) will govern his distributions as if the election had not been made. In the event that such a revocation results in distributions being required for prior years, such distributions must be distributed by the December 31st following the calendar year in which the "Section 242(b)(2) Election" was revoked.

(b) **Required Distributions Before Death.** Each Participant must receive his entire vested Account Balance or commence distribution of his benefits by his Required Beginning Date. In the event that the Participant or his spouse does not consent to a distribution, the Participant shall receive a distribution based solely on his Life Expectancy.

The required distribution is the amount determined by dividing the Participant's Account Balance by the applicable Life Expectancy or Joint Life Expectancy, provided that the distribution does not exceed the Participant's vested Account Balance. For this purpose, a Participant's Account Balance equals the value of his Accounts as of the Valuation Date coincident with or next preceding the December 31 preceding each Distribution Year, adjusted to reflect any contributions or forfeitures allocated to the Participant and any distributions made to the Participant after such Valuation Date and December 31. For the second Distribution Year, the Account Balance may also be adjusted by any distribution made prior to April 1.

The Life Expectancy or Joint Life Expectancy is based on the attained ages of the Participant and/or the Beneficiary as of the December 31 prior to the Participant's or the Beneficiary's first Distribution Year. For the second and subsequent Distribution Years, the Life Expectancies of the Participant and his Beneficiary, if applicable, will be recalculated, unless such Beneficiary is not the Participant's spouse. A life expectancy or joint life expectancy, which is not recalculated, is determined by taking the life expectancy or joint life expectancy of the prior year and subtracting one (1.0). A Life Expectancy or Joint Life Expectancy, which is recalculated, is determined each December 31 based on the attained ages at that date. If a Participant or Beneficiary dies before that date his life expectancy is zero. A joint life expectancy in which one life is being recalculated and the other is not will be determined in accordance with the procedure in proposed Treasury Regulation 1.401(a)(9)-1, E-8(b).

Notwithstanding the foregoing, for calendar years beginning on or after January 1, 2001, the Life Expectancy of the Participant (and his Beneficiary if the sole Beneficiary is his spouse) shall be recalculated each year.

(c) **Required Distributions After Death.**

(1) If distribution of the Participant's benefit has begun and the Participant dies before his entire benefit has been distributed to him, the remaining portion of such benefit shall be distributed at least as rapidly as under the method of distribution being used as of the date of the Participant's death. If the Participant had commenced payments and died prior to attaining his Required Beginning Date, the rules in Paragraph (2) below apply unless the Participant's benefits were being distributed as an irrevocable annuity under a Contract that meets the requirements of Code section 401(a)(9) and the regulations thereunder and was purchased from an Insurer.

(2) If the Participant dies before benefits have commenced, then his entire interest must

7619

be distributed by the December 31 following the fifth (5th) anniversary of his death; provided that the Participant may elect, or may provide that the Beneficiary may elect, to have such benefits paid over the lifetime of the Beneficiary, or a period not to exceed the Life Expectancy of the Beneficiary, in which case benefits must commence by the December 31 of the calendar year following the year of the Participant's death, or if the Beneficiary is the Participant's spouse, the December 31 of the calendar year in which the Participant would have attained age 70½, if living.  If the Beneficiary so elects, then the election is irrevocable and must be made prior to the Required Beginning Date of the Beneficiary or the December 31 following the Participant's fifth (5th) anniversary of his death, if earlier.

(3) If the Beneficiary dies (before or after his benefits commence), any remaining distributions shall continue in the manner designated above prior to death, unless the Beneficiary is the Participant's surviving spouse and distributions have not commenced.  In such a case, the surviving spouse's beneficiary must receive the Participant's entire interest by the December 31 following the fifth (5th) anniversary of the surviving spouse's death, or, if so elected by the Participant (or surviving spouse or surviving spouse's beneficiary), over the lifetime of the surviving spouse's beneficiary or a period not to exceed the Life Expectancy of the surviving spouse's beneficiary, in which case benefits must commence by the December 31 of the calendar year following the calendar year of the surviving spouse's death. Such election shall be made on administrative forms provided by the Plan Administrator.

(4) For purposes of this Section, any amount paid to a minor child shall be treated as if it had been paid to the surviving spouse, if such amount shall become payable to the surviving spouse when the child reaches majority.

(d)  **Option to Distribute Benefits as an Annuity.**  At the option of the Participant (or the Participant's Beneficiary) the Plan Administrator shall direct the Trustee to purchase a Contract from an Insurer that provides an irrevocable annuity meeting the requirements of Code section 401(a)(9) and the regulations thereunder.  Such annuity must commence prior to the Participant's (or the Participant's Beneficiary's) Required Beginning Date.  In the event of a conflict between the Contract and the Plan, the Plan provisions shall prevail.

(e)  **Asset Transfers.**

(1) If a Participant requests a rollover of his benefits to a qualified plan not maintained by the Employer during his first or subsequent Distribution Year, such rollover shall be reduced by the minimum required distribution for the Distribution Year under Code section 401(a)(9) and the reduction shall be distributed to the Participant by the appropriate date.

(2) If the Plan receives a rollover with respect to a Participant who has reached his Required Beginning Date, the Plan shall distribute the minimum required distribution under Code section 401(a)(9) beginning with the following calendar year. In the event that the beneficiary or method of distribution with respect to the transferred assets differs from the Beneficiary or method of distribution of this Plan, the Plan will segregate the transferred assets and continue to distribute the benefits from the originating plan in accordance with method of distribution and Life Expectancy of the originating plan.

(f)  **Transition Election for Participants Over 70½.**  Participants who attained age 70½ prior to 1997, whose distributions commenced, but who did not retire may elect to cease distributions as of January 1, 1997 provided that the terms of any Qualified Domestic Relations Order (QDRO) are not violated.  Such distributions will recommence no later than the April 1 of the calendar year following the date the Participant actually retires. Such date will not be considered a new Annuity Starting Date for purposes of Code section 417.  No spousal consent is required for the Participant to cease payments.  No spousal consent is required to recommence benefit payments if the form of payment and the Beneficiary are the same as the original date benefits commenced, the Participant's spouse executed a general consent within the meaning of Treasury Regulation 1.401(a)-20, A-31, or the Participant's spouse executed a specific consent within that regulation and is no longer the

-24-

7620

Participant's spouse. If the form of payment or the Beneficiary changes, and the form was a Joint and Survivor Annuity with the spouse as Beneficiary, or if the spouse's consent was a specific consent and the Participant has the same spouse, spousal consent is required to recommence benefit payments as such later date.

This option of ceasing distributions does not apply to Participants who are 5-Percent Owners, as that term is defined in Paragraph (g)(2) below, at any time after attaining age 70½.

(g) <u>**Definitions.**</u> For this Section 2.5.3, the terms below shall have the following meanings:

(1) <u>**"Distribution Year":**</u> A calendar year for which a minimum distribution is required under Code section 401(a)(9). For distributions prior to a Participant's death, the first Distribution Year is the year immediately preceding his Required Beginning Date and the second Distribution Year is the year containing his Required Beginning Date. For distributions after a Participant's death, the first Distribution Year is the year in which the Participant would have attained 70½ or the calendar year immediately following his death, whichever is appropriate.

(2) <u>**"5-Percent Owner":**</u> A Participant who satisfies the definition of a 5-percent owner within the meaning of section 416(i) of the Code at any time during the Plan Year ending with or within the calendar year.

(3) <u>**"Immediately Distributable":**</u> A benefit is Immediately Distributable if any part of the Account Balance could be distributed to the Participant, (or surviving spouse), before the Participant attains, (or would have attained if not deceased), the later of his Normal Retirement Age or 62.

(4) <u>**"Joint Life Expectancy":**</u> The joint two life expectancy of a Participant and his Beneficiary determined using Table VI of Treasury Regulation 1.72-9 and based upon their attained ages as of a specified date. If more than one Beneficiary is selected, the joint life expectancy will be determined using the Beneficiary with the oldest age.

(5) <u>**"Life Expectancy":**</u> The life expectancy of a Participant or a Participant's Beneficiary determined using Table V of Treasury Regulation 1.72-9 and based upon the attained age as of a specified date.

(6) <u>**"Required Beginning Date":**</u> The date on which benefits must commence to a Participant or his Beneficiary, determined as follows:

(i) For those Participants who attain age 70½ during 1997 or later, the Required Beginning Date is the April 1 of the calendar year following the calendar year of his actual retirement; provided that if the Participant is a 5-Percent Owner, his Required Beginning Date is the April 1 of the calendar year following such year. For a Participant who becomes a 5-Percent Owner after attaining age 70½, the Required Beginning Date is the April 1 of the calendar year following the calendar year containing such date.

(ii) For those Participants who attain age 70½ during 1988 or later, but before 1997, the Required Beginning Date is the April 1 of the calendar year following such year.

(iii) For those Participants who attain age 70½ prior to 1988, the Required Beginning Date is the April 1 of the calendar year following the later of such year or the year in which he retires; provided that if the Participant was a 5-Percent Owner at any time after attaining age 66½, his Required Beginning Date is the April 1 of the calendar year following the later of the year in which he attains age 70½ or becomes a 5-Percent Owner.

7621

(iv) If the Participant's Beneficiary is the Participant's spouse, the Required Beginning date is the December 31 following the later of the year in which the Participant deceased or the year in which the Participant would have attained age 70½ if living.

(v) If the Participant's Beneficiary is a person, but not the Participant's spouse, or a trust which meets the conditions of proposed Treasury Regulation 1.401(a)(9)-1, the Required Beginning Date is the December 31 following the year in which the Participant deceased.

**2.5.4  Requirement of Annuity Payment.** Except as otherwise provided herein, the vested Account Balance of a married Participant shall be provided in the form of a Qualified Joint and Survivor Annuity, and in the case of a Participant who dies before the Annuity Starting Date and has a surviving spouse, a Qualified Pre-Retirement Survivor Annuity shall be provided to such surviving spouse. Except as otherwise provided herein, the vested Account Balance of an unmarried Participant shall be provided in the form of a Straight Life Annuity. Such Qualified Joint and Survivor Annuity, Qualified Pre-Retirement Annuity, or Straight Life Annuity shall be the amount that can be purchased through an annuity Contract from an Insurer.

(a) **Exception for Small Vested Account Balances.** If the vested Account Balance satisfies the conditions specified in Section 2.3.11 and the Plan permits an immediate lump sum cash-out, an annuity form and spousal consent, as described in this Section 2.5.4, are not required. In this event, the default method of distribution is a lump sum distribution to the Participant, unless the address of the Participant is unknown, in which case the distribution will remain as part of the assets of the Plan until a claim for benefits is made by the Participant.

(b) **Election to Waive Annuity Payment.** At any time during the Applicable Election Period, a Participant and his spouse may elect to waive the Qualified Joint and Survivor Annuity form of benefit or the Qualified Pre-Retirement Survivor Annuity form of benefit (or both) and may revoke any such election. There is no limit to the number of times that an election or a revocation may be made by a Participant.

The Plan Administrator shall provide the Participant with a written explanation of the Qualified Joint and Survivor Annuity which meets the requirements of Code section 417 and the regulations thereunder not more than 90 days nor less than thirty (30) days before the Participant's Annuity Starting Date. The Annuity Starting Date for distributions on and after January 1, 1996 may be less than thirty (30) days from the date the written explanation is provided to the Participant if:

(1) the information provided clearly indicates that the Participant has at least thirty (30) days to consider whether to waive the Qualified Joint and Survivor Annuity and to elect a different form of benefit payment (with spousal consent, if applicable);

(2) the Participant may revoke any such waiver prior to the Annuity Starting Date, or if later, seven (7) days after the receipt of the written explanation; and

(3) the Annuity Starting Date occurs after the date the explanation was provided to the Participant.

Notwithstanding the above, a Participant who elects the Lump Sum Payment option in Section 2.3.10 shall not receive such payment until seven (7) days after the receipt of the written explanation.

A Participant who will not attain age of thirty-five (35) by the last day of the Plan Year who waives the Qualified Pre-Retirement Survivor Annuity will have such coverage reinstated as of the first day of the Plan Year in which he attains thirty-five (35). Any new waiver shall independently satisfy the requirements of this Subsection (b).

(c) **Spousal Consent Required.** An election to waive the Qualified Joint and Survivor

7622

Annuity form of benefit shall not take effect unless (1) the spouse of the Participant consents in writing to the election, the election designates a Beneficiary or form of benefits which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the Participant without any requirement of further consent by the spouse), the spouse's consent acknowledges the effect of such election, and the consent is witnessed by a Plan representative or a notary public; or (2) it is established to the satisfaction of the Plan Administrator that such consent cannot be obtained because there is no spouse, because the spouse cannot be located, or because of other circumstances permitted by applicable regulations. Any consent by a spouse (or establishment that the consent of a spouse cannot be obtained) shall be effective only with respect to such spouse.

The designation of a Beneficiary other than the spouse of the Participant (with the consent of such spouse) must acknowledge the specific non-spouse Beneficiary, including any class of Beneficiaries or any contingent Beneficiaries. A consent that permits designations by the Participant without any requirement of further consent by such spouse must acknowledge that the spouse has the right to limit consent to a specific beneficiary, and a specific form of benefit where applicable, and that the spouse voluntarily elects to relinquish either or both of such rights.

A Participant may revoke a prior waiver without the consent of the spouse at any time prior to the commencement of benefits. The number of waivers and revocations shall not be limited. No consent obtained under this provision shall be valid unless the Participant has received notice as provided in Subsection (e) below.

(d) **Consent by Surviving Spouse.** If an optional form of payment has not been elected by the Participant prior to death, or, if applicable, by the surviving spouse, then the Participant's vested Account Balance shall be applied toward the purchase of a Qualified Pre-Retirement Survivor Annuity. Such Account Balance shall include all Employer and Employee contributions (including any rollover contributions) and attributable earnings and the proceeds of any insurance Contracts on the Participant's life or the life of someone in which the Participant has an insurable interest. Unless otherwise provided by Section 2.5.3(c), a Qualified Pre-Retirement Survivor Annuity to a surviving spouse shall not commence without the consent of such spouse unless the vested Account Balance satisfies the conditions specified in Section 2.3.11.

(e) **Exception if Participant not Married for a Year.** The Plan does not provide a Pre-Retirement Survivor Annuity to a surviving spouse if the Participant and the spouse have been married for less than one (1) year at the time of death. In the event that the Participant and his spouse have been married for less than one (1) year at the Participant's Annuity Starting Date, the Plan shall treat the Participant and his spouse as being married and commence benefits as a Qualified Joint and Survivor Annuity unless the Participant waives such annuity and his spouse consents. If the Participant and his spouse have not been married for at least one (1) year, by reason of the Participant's death or divorce, the spouse is not entitled to any survivor benefits unless requested by the Participant or required by a Qualified Domestic Relations Order.

(f) **Written Explanations.** The Plan Administrator shall provide each Participant within a reasonable period of time before the Annuity Starting Date a written explanation of:

(1) the terms and conditions of a Qualified Joint and Survivor Annuity;

(2) the Participant's right to make and the effect of an election to waive the Qualified Joint and Survivor Annuity form of benefit;

(3) the rights of the Participant's spouse to consent to a Participant's election;

(4) the right to make and the effect of a revocation of an election; and

(5) the relative values of the various optional forms of benefit under the Plan.

-27-

The Plan Administrator shall provide to each Participant within the applicable period a written explanation of a Qualified Pre-Retirement Survivor Annuity and such other information comparable to the items listed above.

(g) **Definitions.** For this Section 2.5.4, the terms below shall have the following meanings:

(1) **"Annuity Starting Date".** The first day of the first period for which an amount is payable as an annuity, or, if not payable as an annuity, the first day on which the Participant is entitled to such an amount.

(2) **"Applicable Election Period".** The time period in which a Participant may elect to waive a Qualified Joint and Survivor Annuity or a Qualified Pre-Retirement Survivor Annuity.

(i) In the case of a Qualified Joint and Survivor Annuity, the ninety (90) day period ending on the Annuity Starting Date; and

(ii) In the case of a Qualified Pre-Retirement Survivor Annuity, the period which begins on the first day of the Plan Year in which the Participant attains age thirty-five (35) or the date the Participant severs employment with the Employer, and ends on the earlier of the date the Participant retires or the date of his death.

(3) **"Applicable Period".** The time period in which the Employer must provide an explanation of the Qualified Pre-Retirement Survivor Annuity to the Participant. Such period is whichever one of the following periods ends last:

(i) The period beginning with the first day of the Plan Year in which the Participant attains age thirty-two (32) and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age thirty-five (35);

(ii) A reasonable period after the individual becomes a Participant;

(iii) A reasonable period after the Participant severs employment with the Employer;

(iv) A reasonable period ending after the Plan ceases to fully subsidize the costs of the Qualified Pre-Retirement Survivor Annuity; or

(v) A reasonable period ending after the Participant accrues any vested or non-forfeitable benefits.

For purposes of this Subsection (3), a reasonable period means a two (2) year period beginning one (1) year prior to the date the applicable event occurs and ending one year after that date. If a Participant who severs employment with the Employer is later rehired, the Applicable Period shall be redetermined.

**2.5.5 Method of Distribution.**

(a) **Participants Not Eligible for Qualified Joint and Survivor Annuity.** If this is a Safe Harbor Profit Sharing Plan, or if the Participant is otherwise ineligible to receive payment of benefits in the form of a Qualified Joint and Survivor Annuity, or if a Participant and his spouse affirmatively elect not to receive a Qualified Joint and Survivor Annuity, the Participant shall receive his benefits in one of the optional forms described in Section 2.3.10 as selected by the Participant, with such spousal consents as may be required by law.

(b) **Death Benefits.** If a Participant dies entitled to a death benefit, payments shall be made in the form of a survivor annuity unless this Plan is a Safe Harbor Profit Sharing Plan, or unless the Participant, Beneficiary, or executor of his estate elects otherwise, in which case payments shall be

7624

made in one of the optional forms set forth in Section 2.3.10.

(c) **Voluntary Contribution Account.** If a Participant is entitled to receive a Voluntary Contribution Benefit, the amount of such benefit, unless otherwise elected, shall be paid in a manner consistent with Section 2.5.2.

### 2.5.6 Nature of Distributions.

(a) **Trust Fund.** Except as provided in Subsection (b) with regard to Life Insurance Policies, the distribution of a Participant's vested Account Balance shall consist of cash, property, an annuity policy (if offered by the Plan in Section 2.3.10), or a combination thereof. If a distribution includes property, the property shall be valued at its fair market value as of the date of distribution.

(b) **Insurance Policies.**

(1) If the Participant's employment terminates for any reason other than death, the Trustee, at the election of the Participant, shall either (i) surrender the Life Insurance Policy for its available cash value and distribute the proceeds as provided in Subsection (a) above, or (ii) distribute the Life Insurance Policy to the Participant, provided his vested and non-forfeitable Account Balance is at least equal to the policy's cash value.

(2) If the Participant dies, the Beneficiary shall be entitled to the full amount of the policy proceeds.

(3) In the event a Life Insurance Policy on the life of someone other than the Participant is purchased pursuant to this Plan, and such other person shall die, the Participant may withdraw the life insurance proceeds to the extent they exceed the cash value.

### 2.5.7 Miscellaneous Provisions.

(a) **Terms of Annuity Contracts.** Any annuity contract distributed from the Plan must be nontransferable. The terms of any annuity contract purchased and distributed by the Plan to a Participant or spouse shall comply with the requirements of the Plan.

(b) **Incidental Death Benefits.** For calendar years beginning before January 1, 1989, if the Participant's spouse is not the designated Beneficiary, the method of distribution selected must assure that at least fifty (50%) percent of the amount available for distribution is paid within the life expectancy of the Participant.

(c) **Consents.** No consent is required to distribute a Participant's benefits if the vested and non-forfeitable Account Balance of the Participant satisfies the conditions specified in Section 2.3.11 and the Plan permits immediate lump sum cash-outs. Neither the consent of the Participant nor the Participant's spouse shall be required to the extent that a distribution is required to satisfy section 401(a)(9) or section 415 of the Code. In addition, upon termination of the Plan, if the Plan does not offer an annuity option (purchased from a commercial provider) and if the Employer or any entity within the same controlled group does not maintain another defined contribution plan (other than an employee stock ownership plan as defined in section 4975(e)(7) of the Code), the Participant's Account Balance in the Plan will, without the Participant's consent, be distributed to the Participant. However, if any entity within the same controlled group as the Employer maintains another defined contribution plan (other than an employee stock ownership plan as defined in section 4975(e)(7) of the Code), then the Participant's Account Balance will be transferred, without the Participant's consent, to the other Plan if the Participant does not consent to an immediate distribution.

(d) **Zero Benefits.** If the value of the Participant's vested and non-forfeitable interest in the Plan at the time of his termination of employment is zero, the Participant shall be deemed to have received a distribution of such interest.

7625

(e) **Safe Harbor Rules.** If this Plan is a Safe Harbor Plan, as that term is defined in Section 1.2.66, the requirement that a spouse consent to the Participant taking his distribution in a form other than a Qualified Joint and Survivor Annuity shall not apply notwithstanding any other provision of the Plan. This Section (e) shall not be operative with respect to the portion of a Participant's Segregated Account attributable to a direct or indirect transfer from of a defined benefit plan, money purchase plan, target benefit plan, stock bonus, or profit sharing plan which is subject to the survivor annuity requirements of section 401(a)(11) and section 417 of the Code.

(f) **Distributions in the Event of Legal Incapacity.** If any person entitled to benefits is declared legally incapacitated by a court of proper jurisdiction, then the Plan Administrator shall direct the Trustee to make payments to the legal guardian or legal representative of the person or his estate.

(g) **Transitional Rules.**

(1) Any living Participant not receiving benefits on August 23, 1984, who would otherwise not receive the benefits prescribed by the previous Sections of this Article shall be given the opportunity to elect to have the prior Sections of this Article apply if such Participant is credited with at least one Hour of Service under this Plan or a predecessor plan in a Plan Year beginning on or after January 1, 1976, and such Participant has at least 10 Years of Vesting Service when he or she separated from service.

(2) Any living Participant not receiving benefits on August 23, 1984, who was credited with at least one Hour of Service under this Plan or a predecessor plan on or after September 2, 1974, and who is not otherwise credited with any service in a Plan Year beginning on or after January 1, 1976, must be given the opportunity to have his or her benefits paid in accordance with Paragraph (4) below.

(3) The respective opportunities to elect (as described above) must be afforded to the appropriate Participants during the period commencing on August 23, 1984, and ending on the date benefits would otherwise commence to such Participants.

(4) Any Participant who has elected pursuant to Paragraph (2) above and any Participant who does not elect under Paragraph (1) or who meets the requirements of Paragraph (1) except that such Participant does not have at least 10 Years of Vesting Service when he separates from service, shall have his benefits distributed in accordance with all of the following requirements if benefits would have been payable in the form of a life annuity:

(i) **Automatic Qualified Joint and Survivor Annuity.** If benefits in the form a life annuity become payable to a married Participant who:

(A) begins to receive payments under the Plan on or after Normal Retirement Age;

(B) dies on or after Normal Retirement Age while still working for the Employer;

(C) begins to receive payments on or after the Qualified Early Retirement Age; or

(D) separates from service on or after attaining Normal Retirement Age (or the Qualified Early Retirement Age) and after satisfying the eligibility requirements for the payment of benefits under the Plan and thereafter dies before beginning to receive such benefits;

then, such benefits will be received under this Plan in the form of a Qualified Joint and Survivor Annuity, unless the Participant has elected otherwise during the election

-30-

7626

period.  The election period must begin at least 6 months before the Participant attains Qualified Early Retirement Age and end not more than 90 days before the commencement of benefits. Any election hereunder will be in writing and may be changed by the Participant at any time.

(ii) **Election of early survivor annuity.**  A Participant who is employed after attaining the Qualified Early Retirement Age will be given the opportunity to elect, during the election period, to have a survivor annuity payable on death.  If the Participant elects the survivor annuity, payments under such annuity must not be less than the payments that would have been made to the spouse under the Qualified Joint and Survivor Annuity if the Participant had retired on the day before his death. Any election under this provision will be in writing and may be changed by the Participant at any time.  The election period begins on the later of (A) the 90th day before the Participant attains the Qualified Early Retirement Age, or (B) the date on which participation begins, and ends on the date the Participant terminates employment with the Employer.

(iii) **Qualified Early Retirement Age.**  For purposes of this Paragraph (4) a Participant's Qualified Early Retirement Age is the later of:

(A)  the earliest date, under the Plan, on which the Participant may elect to receive retirement benefits,

(B)  the first day of the 120th month beginning before the Participant reaches Normal Retirement Age, or

(C)  the date the Participant begins participation.

**2.5.8  In Service Distributions.**  A Participant shall be entitled to receive an in service distribution of all or part of his interest his Employer Account provided that no distribution shall be made unless the interest of the Participant in the Plan is fully vested and non-forfeitable and that he has attained Normal Retirement Age. In service distributions of rollover contributions are permitted at anytime. Such distribution shall be taken from the Participant's Segregated Account containing his rollover contributions.

7627

# ARTICLE 6

## CONTINGENT TOP HEAVY PROVISIONS

2.6.1 **Top Heavy Requirements.** If the Plan becomes a Top-Heavy Plan during any Plan Year beginning after December 31, 1983, the following provisions shall supersede any conflicting provisions in the Plan and apply for such Plan Year:

(a) **Minimum Top Heavy Allocation.** Notwithstanding any other Section of the Plan to the contrary, each Participant who is employed by the Employer on the last day of the Plan Year shall receive an allocation (to be provided solely by Employer contributions) of not less than three (3%) percent, or the largest "allocation percentage" received by a Key Employee, if less, of the Participant's Annual Compensation, as defined in Section 2.6.2(b). The minimum allocation is determined without regard to any Social Security contribution. The minimum allocation shall be made even though under other provisions of the Plan the Participant would not otherwise be entitled to receive an allocation, or would have received a lesser allocation for the year because (1) the Participant fails to complete 1,000 Hours of Service (or any equivalent provided in the Plan), (2) the Participant fails to make mandatory contributions (including elective deferrals to a cash or deferred arrangement described in section 401(k) of the Code) to the Plan, (3) the Participant's Compensation less than a stated amount, or (4) the Plan is integrated with Social Security.

The allocation percentage of a Key Employee is determined by dividing his share of the Employer contribution and Forfeitures by his Annual Compensation, as defined in Section 2.6.2(b). For this purpose only, the Employer contribution shall include any elective deferral (within the meaning of section 401(k) of the Code) made by the Employer on behalf of the Key Employee, any matching contribution (within the meaning of section 401(m) of the Code), or any other contribution made by the Employer to any plan that is included in this Plan's Required Aggregation Group or Permissive Aggregation Group.

(b) **Multiple Plans.** The minimum allocation provided above shall not apply to any Participant to the extent the Participant is covered under any other plan or plans of the Employer and the Employer has provided that the minimum allocation or benefit requirement applicable to Top Heavy plans will be met in the other plan or plans. In the case where the Employer has another plan or plans, it is intended that the minimum Top Heavy requirements will be met in this Plan.

(c) **Minimum Vesting Schedule.** If the Plan becomes Top Heavy, the vested and non-forfeitable interest of each Participant shall equal the percentage determined under the vesting schedule specified in Section 2.4.1.

The Top Heavy minimum vesting schedule applies to all benefits within the meaning of section 411(a)(7) of the Code, except those attributable to employee contributions, including benefits accrued before the effective date of section 416 of the Code and benefits accrued before the Plan becomes Top Heavy.

No decrease in a Participant's non-forfeitable percentage may occur in the event the Plan's status as Top Heavy changes for any Plan Year. Any minimum benefit required (to the extent required to be non-forfeitable under section 416(b)) may not be forfeited under sections 411(a)(3)(B) or (D) of the Code.

(d) In the event that this Plan covers Employees that are the subject of a bona fide collectively bargained agreement between the Employer and Employee representatives, the requirements of this Section shall continue to apply to such Employees in the same manner as all other Employees.

(e) For Plan Years beginning before January 1, 2000, references in Section 3.1.5, pertaining to combined plan limitations, to "one hundred twenty five (125%) percent" shall be applied by substituting "one hundred (100%) percent" for "one hundred twenty five (125%) percent" therein. Reference in Section

7628

3.1.5(c), pertaining to a special transition rule, to "$51,875" shall be applied by substituting "$41,500" for "$51,875" therein.

Notwithstanding the above, if the Employer provided additional Top Heavy Allocations in this Plan or another defined contribution plan of the Employer (or additional Top Heavy retirement benefits in a defined benefit plan of the Employer), then the substitutions in the aforementioned paragraph will not take place unless the Plan is Super Top Heavy.

**2.6.2 Top Heavy Definitions.** The following terms, as used in this Article 6, shall have the following meaning:

(a) **"Accrued Benefit":** The benefit accrued for a Participant under a defined benefit plan or plans of the Employer belonging to the Required Aggregation Group or Permissive Aggregation Group, such Accrued Benefit determined as of the Valuation Date, based on the provisions of that plan, except that the accrual rates of more than one plan differ, the Accrued Benefit will be determined using the slowest accrual rate for all plans.

(b) **"Annual Compensation":** Compensation as defined in Section 3.1.6(a) but measured over the Limitation Year, as specified in Section 1.2.44. Compensation shall not be limited for partial Years of Participation.

(c) **"Determination Date":** For any Plan year subsequent to the first Plan Year, the last day of the preceding Plan Year. For the first Plan Year of the Plan, the last day of the Plan Year.

(d) **"Determination Period":** The Plan Year containing the Determination Date and the four (4) preceding Plan Years.

(e) **"Key Employee":** An Employee or former Employee who, at any time during the Determination Period is either:

(1) an officer of the Employer having an Annual Compensation greater than fifty (50%) percent of the amount in effect under section 415(b)(I)(A) of the Code;

(2) an owner (or a person considered an owner under section 318 of the Code) of one of the ten largest interests in the Employer if such individual's Annual Compensation from the Employer is more than the limitation in effect under section 415(c)(I)(A) of the Code;

(3) any person who owns directly or indirectly more than five (5%) percent of the outstanding stock of the Employer or stock possessing more than five (5%) percent of the total combined voting power of all stock of the Employer or, in the case of an unincorporated Employer, the capital or profits interest in the Employer;

(4) any person who owns directly or indirectly more than one (1%) percent of the outstanding stock of the Employer or stock possessing more than one (1%) percent of the total combined voting power of all stock of the Employer or, in the case of an unincorporated Employer, the capital or profits interest in the Employer and having an Annual Compensation from the Employer of more than $150,000; or

(5) any Beneficiary of a Key Employee.

For this purpose, Annual Compensation is defined in Section 2.6.2(b). The determination of who is a Key Employee shall be made in accordance with section 416(i)(1) of the Code and the regulations thereunder.

(f) **"Non-Key Employee":** An Employee who is not a Key Employee.

(g) **"Permissive Aggregation Group":** The Required Aggregation Group plus any other plan

7629

or plans of the Employer which, when considered as a group with the Required Aggregation Group, continues to satisfy the requirements of sections 401(a)(4) and 410 of the Code.

(h) **"Present Value"**:  The Present Value of Accrued Benefits referred to in Paragraph (l) below shall be based on the interest rate and mortality table specified in the Employer's defined benefit plan.

(i) **"Required Aggregation Group"**:

(1) Each qualified plan of the Employer in which at least one Key Employee participates or participated at any time during the Determination Period (regardless of whether the plan has terminated), together with,

(2) Any other qualified plan of the Employer which enables a plan described in (1) to meet the requirements of sections 401(a)(4) or 410 of the Code.

(j) **"Super Top Heavy"**:  For any Plan Year, the Plan is Super Top Heavy if the Plan is Top Heavy and the Top Heavy Ratio exceeds ninety (90%) percent.

(k) **"Top-Heavy Plan"**:  For any Plan Year beginning after December 31, 1983, the plan is Top Heavy if any of the following conditions exists:

(1) If the Top Heavy Ratio for the Plan exceeds sixty (60%) percent and the Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans.

(2) If the Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top Heavy Ratio for the group of plans exceeds sixty (60%) percent.

(3) If the Plan is a part of a Required Aggregation Group of plans and part of a Permissive Aggregation Group of plans and the Top Heavy Ratio for the Permissive Aggregation Group exceeds sixty (60%) percent.

(l) **"Top Heavy Ratio"**:

(1) If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) and the Employer has not maintained any defined benefit plan which during the 5-year period ending on the Determination Date(s) has or has had accrued benefits, the Top Heavy Ratio for this Plan alone, for the Required Aggregation Group, or the Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the Account Balances of all Key Employees as of the Determination Date(s) (including any part of any Account Balance distributed in the 5-year period ending on the Determination Date(s)), and the denominator of which is the sum of all Account Balances (including any part of any Account Balance distributed in the 5-year period ending on the Determination Date(s)), both computed in accordance with section 416 of the Code and the regulations thereunder.

(2) If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) and the Employer maintains or has maintained one or more defined benefit plans which during the 5-year period ending on the Determination Date(s) has or has had any accrued benefits, the Top-Heavy Ratio for any Required Aggregation Group or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of Account Balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with (1) above, and the Present Value of Accrued Benefits under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the Account Balances under the aggregated defined contribution plan or plans for all Participants, determined in

-34-

7630

accordance with (1) above, and the Present Value of Accrued Benefits under the defined benefit plan or plans for all Participants as of the Determination Date(s), all determined in accordance with section 416 of the Code and the regulations thereunder.  The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top Heavy Ratio are increased for any distribution of an Accrued Benefit made in the five-year period ending on the Determination Date.

    (3) For purposes of (1) and (2) above, the value of Account Balances and the Present Value of Accrued Benefits will be determined as of the most recent Valuation Date that falls within or ends with the twelve (12) month period ending on the Determination Date, except as provided in section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

    The Account Balances and Accrued Benefits of a Participant (i) who is not a Key Employee but was a Key Employee in a prior year, or (ii) who has not been credited with at least one (1) Hour of Service with any Employer maintaining the Plan at any time during the five (5) year period ending on the Determination Date will be disregarded.  The calculation of the Top Heavy Ratio and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with section 416 of the Code and the regulations thereunder.  Deductible Employee contributions will not be taken into account for purposes of computing the Top Heavy Ratio.  When aggregating plans, the value of Account Balances and Accrued Benefits will be calculated with reference to the Determination Dates that fall within the same calendar year.

    The Accrued Benefit of a Participant other than a Key Employee shall be determined under the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer, or if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of section 411(b)(1)(C) of the Code.

    (m) **"Valuation Date":**  The date as of which Account Balances and accrued benefits are valued for purposes of calculating the Top Heavy Ratio.  The Valuation Date shall be December 31st of each Plan Year.

7631

# ARTICLE 7

## LIMITATIONS ON EMPLOYEE CONTRIBUTIONS

**2.7.1** Voluntary Employee Contributions are not permitted under this Plan.

7632

# ARTICLE 8

## ACCOUNTING

2.8.1 **Accounts.** All income, profits, recoveries, contributions and any and all moneys, securities and properties of any kind at any time received or held by the Trustee shall be held as a commingled Trust Fund, except to the extent such assets are transferred to a Segregated Fund or Controlled Account. For accounting purposes, the Plan Administrator shall establish and maintain certain Accounts for each Participant. An Employer Account shall be established and maintained for each Participant to which shall be added the Participant's share of Employer contributions and Forfeitures. If a Participant has made Voluntary Employee Contributions, the Plan Administrator shall establish and maintain a Voluntary Account for the Participant. If, in accordance with any of the provisions of the Plan, assets are either deposited initially or transferred to a Segregated Fund for the benefit of a Participant, the Plan Administrator shall establish and maintain a Segregated Account for the Participant. If a Participant elects to exercise investment control over all or a portion of his Accounts, the Plan Administrator shall establish and maintain a Controlled Account for the Participant.

2.8.2 **Valuation Adjustments.** As of each Valuation Date, the aggregate Accounts shall be reconciled to the current value of Plan assets per the Trustee and a sub-accounting for each Participant shall be maintained as follows:

(a) **Distributions.** Any distribution made to or on behalf of a Participant since the last preceding Valuation Date shall be deducted from the Participant's Account from which the distribution was made.

(b) **Insurance Premiums.** Payments made since the last preceding Valuation Date for Life Insurance Policies on the life of a Participant or someone in whom the Participant has an insurable interest (including without limitation payments of premiums and interest on policy loans) shall be deducted from the Account of the Participant from which the payment was made.

(c) **Insurance Dividends.** Dividends or credits received since the last preceding Valuation Date on any Life Insurance Policy on the life of a Participant or someone in whom the Participant has an insurable interest shall be added to the Account of the Participant from which the premiums for such Life Insurance Policy have been paid.

If this Plan is funded by individual contracts that provide a Participant's benefit under the Plan, such individual contracts shall constitute the Participant's Account Balance. If this Plan is funded by group annuity contracts or group insurance contracts, premiums or other consideration received by the insurance company must be allocated to each Participant's Account under the Plan.

(d) **Contributions.** Each Participant's Account shall be increased by his portion of the Employer contribution and any Voluntary Employee Contributions.

(e) **Forfeitures.** If a Participant terminates service with the Employer, is less than one hundred (100%) percent vested, and forfeits the non-vested portion of his Account Balance, his Account Balance and the amount available for distribution shall be reduced by the amount of his Forfeiture.

To the extent that the Plan provides additional allocations from Forfeitures, the Account Balances of those eligible for such an allocation will increase.

(f) **Loans.** The issuance of a loan to a Participant reduces the Account from which it is issued and increases the outstanding loan obligation. Loan repayments, including principal and interest, shall increase the Account to which the repayment is made and decreases the outstanding loan obligation.

7633

(g) **Expenses.** Any expenses earmarked for an individual Participant shall reduce his Account Balance.

(h) **Transfers To or From Segregated Funds.** To the extent that funds are transferred to a Segregated Fund from the general assets of the Trust or from a Segregated Fund to the general assets of the Trust pursuant to any of the provisions of the Plan, the Account from which the funds were transferred shall be decreased and the Account to which the funds were transferred shall be increased for such Participant.

(i) **Transfers Between Controlled Funds.** To the extent that investment transfers are made between Controlled Funds, the Controlled Fund from which a transfer is made will decrease, and the Controlled Fund to which a transfer is made will increase.

(j) **Adjustment to Fair Market Value.** The Trustee shall appraise all moneys, securities, and other property in the Trust Fund, excluding Life Insurance Policies, at the then fair market value for each asset. In determining such value, all income and contributions, if any, received by the Trustee from the Employer or Participants shall be included and all expenses shall be deducted, such amounts being determined under the accounting method of the Trust.

If the total net value so determined by the Trustee exceeds (or is less than) the total amount in the respective Accounts of all Participants, the excess (or deficiency) shall be added to (or deducted from) the respective Accounts of all Participants in the ratio that each such Participant's Account bears to the total amount in all such Accounts.

The Trustee's determination as to valuation of trust assets and charges or credits to the individual Accounts of the respective Participants shall be conclusive and binding on all persons.

**2.8.3 Allocation of Earnings, Gains, and Losses.** As of each Valuation Date specified in Section 1.2.74, the net income of the Trust Fund recognized since the prior Valuation Date will be allocated among Participant Accounts. Net income includes interest, dividends, net gains or losses from the sale of investments, and unrealized appreciation (depreciation) in Trust assets, less investment expenses of the Trust Fund.

As of each Valuation Date, the net income of the Trust Fund will be allocated pro rata based on the value of each Participant Account Balance as of the preceding Valuation Date plus any adjustments required by Section 2.8.2.

The portion of a Participant's Account held in a Controlled Fund shall not participate in the allocation of earnings of this Section, but instead shall be credited with the actual earnings of such Controlled Fund.

In the event that the Participant's Accounts (or portion thereof) are invested in assets that are valued on a daily basis, his Account Balance shall reflect the daily activity of such assets and the method of allocating earnings described above shall not apply.

**2.8.4 Interim Valuations.** While it is contemplated that the Trust Fund will be valued by the Trustee and allocations made only on the Valuation Date, at any time that the Plan's valuations are not performed on a daily basis, should it be necessary to make distributions under the provisions hereof and the Plan Administrator, in good faith determines that, because of (i) an extraordinary change in general economic conditions, (ii) the occurrence of some casualty materially affecting the value of the Trust Fund or a substantial part thereof, or (iii) a significant fluctuation in the value of the Trust Fund has occurred since the immediately preceding Valuation Date, the Plan Administrator may, in his sole discretion, to prevent the payee from receiving a substantially greater or lesser amount than what he would be entitled to, based on current values, cause a re-valuation of the Trust Fund to be made and a reallocation of the interests therein as of the date the payee's right of distribution becomes fixed. The Plan Administrator's determination to make such special valuation and the valuation of the Trust Fund as determined by the Trustee shall be conclusive and binding on all persons ever interested hereunder.

7634

**2.8.5  Earnings on Forfeitures.**  In the event that a Participant forfeits part of his Account Balance, such Forfeiture shall not be credited with earnings after the date specified in Section 2.4.6.

**2.8.6  Plan Expenses.**  Other than general investment expenses incurred by the Trustee in his duties which are charged against the Trust Fund earnings and annual administrative expenses incurred by the Plan on an ongoing basis, processing fees of the Plan shall be allocated on a pro rata basis in the same manner as provided in 2.8.3.

7635

# PART 3

## ARTICLE 1

## <u>LIMITATIONS</u>

**3.1.1 <u>General Limitations on Annual Additions.</u>** This Section 3.1.1 through Section 3.1.4 apply for all Limitation Years beginning after December 31, 1994. For Limitation Years beginning before January 1, 2000, the additional requirements of Section 3.1.5 also apply if the Employer ever maintained a qualified defined benefit plan.

The Annual Addition otherwise payable to a Participant for a Limitation Year shall not exceed the Maximum Permissible Annual Addition, as determined in Section 3.1.2. If the total allocations to the Participant's Account in a Limitation Year would otherwise produce an Annual Addition in excess of the Maximum Permissible Annual Addition, the allocations shall be reduced in accordance with Section 3.1.3 so that the Annual Addition will equal the Maximum Permissible Annual Addition.

If the Participant is covered under another qualified defined contribution plan, a welfare benefit fund (as defined in section 419(e) of the Code) under which amounts attributable to post-retirement medical benefits are held in separate accounts for key employees (as defined in section 419A(d)(3) of the Code), an individual medical account (as defined in section 415(l)(2) of the Code), or a simplified employee pension (as defined in section 408(k) of the Code) maintained by the Employer, the Annual Addition derived from the allocations of all such plans and this Plan, may not exceed the Maximum Permissible Annual Addition for the Limitation Year. If such Annual Addition does exceed the Maximum Permissible Annual Addition, allocations shall be reduced in accordance with Section 3.1.4 so that the Annual Addition will equal the Maximum Permissible Annual Addition.

**3.1.2 <u>Determination of Annual Addition and Maximum Permissible Annual Addition.</u>**

(a) <u>Annual Addition.</u> The term "Annual Addition" shall mean the sum of the following amounts credited to a Participant's Accounts for the Limitation Year:

    (1) Employer contributions;

    (2) Employee contributions;

    (3) Forfeitures;

    (4) Amounts allocated after March 31, 1984, to an individual medical account (as defined in section 415(l)(2) of the Code) which is part of a pension or annuity plan maintained by the Employer;

    (5) Amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, to a welfare benefit fund (as defined in section 419(e) of the Code) maintained by the Employer, to the extent attributable to post-retirement medical benefits held in separate accounts for key employees (as defined in section 419A(d)(3) of the Code); and,

    (6) Allocations under a simplified employee pension (as defined in section 408(k) of the Code.)

For this purpose, excess deferrals (as defined in section 402(g) of the Code) are disregarded to the extent distributed to the Participant. Excess contributions (as defined in section 401(k) of the Code) and excess aggregate contributions (as defined in section 401(m)

-40-

7636

of the Code) are not disregarded, even if distributed to the Participant, unless they are held in a suspense account or reallocated in accordance with Section 3.1.3.

(b) **Maximum Permissible Annual Addition.** The term "Maximum Permissible Annual Addition" shall mean, for any Limitation Year, the lesser of the Defined Contribution Dollar Limitation and the Defined Contribution Compensation Limitation, as defined below:

(1) **Defined Contribution Dollar Limitation.** The dollar limit specified in Code section 415(c)(1)(A), automatically adjusted on January 1 each year under Code section 415(d), in such manner as the Secretary of the Treasury shall prescribe. The new limitation will apply to Limitation Years ending with or within the calendar year of the date of the adjustment. Unless otherwise provided by law, adjustments for increases in the cost of living shall not be taken into account for any year before the year for which such adjustment first takes place.

(2) **Defined Contribution Compensation Limitation.** Twenty-five (25%) percent of a Participant's compensation, as defined in Section 3.1.6(a).

Notwithstanding the above, any amounts included in the Participant's Annual Addition attributable to medical benefits (within the meaning of section 419A(f)(2) of the Code) shall not be restricted by the Defined Contribution Compensation Limitation.

(c) **Short Limitation Year.** If a short Limitation Year is created because of an amendment changing the Limitation Year to a different twelve (12) consecutive month period, the Defined Contribution Dollar Limitation determined above shall be multiplied by a fraction, the numerator of which is the number of months in the short Limitation Year and the denominator of which is twelve (12). Any new Limitation Year must begin within the Limitation Year in which the amendment is made.

**3.1.3 Excess Annual Additions.** If, due to the allocation of forfeitures, a reasonable estimation of a Participant's compensation which exceeds his actual compensation, or a miscalculation in a Participant's elective deferrals (within the meaning of section 402(g)(3) of the Code), the Annual Addition for a Participant exceeds his Maximum Permissible Annual Addition for the Limitation Year, the following adjustments shall be made in the following order until the Participant's Annual Addition equals his Maximum Permissible Annual Addition:

(a) Any nondeductible Voluntary Employee Contributions (plus attributable earnings) made by a Participant to the extent they reduce the excess amount shall be returned to the Participant;

(b) Any elective deferrals (plus attributable earnings) made by a Participant to the extent they reduce the excess amount shall be returned to the Participant;

(c) Any remaining excess shall be allocated and reallocated to other Participants, subject to the limitation that no Participant has an Annual Addition in excess of his Maximum Permissible Annual Addition;

(d) If all Participants have Annual Additions equal to their Maximum Permissible Annual Addition for a Limitation Year, any remaining excess shall be held in an unallocated suspense account and allocated and reallocated in the next Limitation Year before any Employer contributions or Employee Contributions are made, and if necessary, allocated and reallocated in succeeding Limitation Years before any Employer contributions or Employee Contributions are made for those years.

The determination of a Participant's Annual Addition (without regard to this Section), his Maximum Permissible Annual Addition, and any adjustments listed above shall be determined as soon as administratively feasible after the end of the Limitation Year. Other than those items listed in Paragraphs (a) and (b), no excess amounts may be distributed to Participants or former Participants. Any amount distributed to a Participant, reallocated to other Participants, or held in a suspense account for future

7637

Limitation Years shall not be included in a Participant's Annual Addition for the current Limitation Year.

Any suspense account established in accordance with this Section shall not participate in the allocation of the Trust's investment gains and losses.

### 3.1.4 Participation in Certain Other Plans.

If a Participant's Annual Addition under this Plan and under other plans of the Employer exceeds the Maximum Permissible Annual Addition for a Limitation Year, such excess shall either be distributed to the Participant, reallocated to other Participants, or held in a suspense account in the same order as Section 3.1.3; provided that in no event will mandatory contributions made to a defined benefit plan of the Employer be distributed or reallocated. In addition, allocations to qualified defined contribution plans shall be adjusted first, followed by adjustments to allocations to a simplified employee pension, followed by adjustments to allocations to an individual medical account, followed by adjustments to allocations to a welfare benefit fund, as those terms are referenced in Section 3.1.1.

In the event that two (2) or more plans of the Employer have Voluntary Employee Contributions or elective deferrals, the amounts contributed last shall be distributed first. If two (2) or more plans of the Employer receive Employer contributions, the amounts allocated last shall be adjusted first. If two (2) or more qualified defined contribution plans of the Employer, including this Plan, allocate contributions on the same date, then the allocations from this Plan shall be adjusted prior to the allocations in the other defined contribution plan(s).

### 3.1.5 Combined Plan Limitation.

The combined plan limit under section 415(e) of the Code is repealed for Limitation Years beginning after December 31, 1999. For Limitation Years commencing before January 1, 2000, a Participant's benefits shall be limited by this Section if the Participant ever participated in a defined benefit plan maintained by the Employer.

(a) **Primary Limitation.** The sum of the Defined Benefit Fraction plus the Defined Contribution Fraction, as those terms are defined in this Subsection, shall not exceed 1.0 in any Limitation Year. In the event that the sum exceeds 1.0, the rate of accrual provided in the defined benefit plan will be decreased so that the sum equals 1.0.

(1) **"Defined Benefit Fraction":** For a Limitation Year, a fraction, (i) the numerator of which is the Projected Annual Benefit of the Participant under all the defined benefit plans (whether or not terminated) maintained by the Employer (determined as of the close of the year), and (ii) the denominator of which is the lesser of one hundred twenty five (125%) percent of the Defined Benefit Dollar Limitation determined for the Limitation Year or one hundred forty (140%) percent of the Defined Benefit Compensation Limitation, as those terms are defined in Section 3.1.6.

(2) **"Defined Contribution Fraction":** For a Limitation Year, a fraction (i) the numerator of which is the sum of the Annual Additions to the Participant's Accounts under all qualified defined contribution plans, all qualified defined benefit plans, all welfare benefit funds, all individual medical accounts, and all simplified employee pensions maintained by the Employer (whether or not terminated) for the current and all prior Limitation Years, and (ii) the denominator of which is the sum of the amounts independently determined for the current and each prior Limitation Year which equal the lesser of one hundred twenty five (125%) percent of the Defined Contribution Dollar Limitation for the Limitation Year and thirty five (35%) percent of the Participant's Compensation for such Limitation Year (regardless of whether a defined contribution plan was maintained by the Employer for such Limitation Year.)

In the event that the Plan itself, or the Permissive or Required Aggregation Group of which the Plan is a part thereof, is Top Heavy for a Limitation Year, as those terms are defined in Section 2.6.2, the references to "one hundred twenty five (125%) percent" in this Section shall be replaced with "one hundred (100%) percent" in determining a Participant's Defined Benefit Fraction and Defined Contribution Fraction for such Limitation Year.

7638

Notwithstanding the above, if the Employer provided additional Minimum Top-Heavy Allocation (or additional Top-Heavy accruals in a defined benefit plan of the Employer), then the substitutions in the aforementioned paragraph will not take place unless the Plan is Super Top-Heavy.

(b) **TRA '86 Transition Rules.**

(1) If the Employer maintained one or more defined benefit plans as of May 6, 1986, and the Participant's accrued benefit (actuarially adjusted to an equivalent Straight Life Annuity if such benefit is not expressed as a Straight Life Annuity or Qualified Joint and Survivor Annuity) from all such plans as of the close of the last Limitation Year beginning before January 1, 1987, disregarding any changes in the terms and conditions of the plan after May 6, 1986, exceeds the Defined Benefit Dollar Limitation for a Limitation Year after December 31, 1986, then the Participant's accrued benefit will be substituted for the Defined Benefit Dollar Limitation in determining the Defined Benefit Fraction for such Limitation Year.

(2) If the Employer maintained one or more defined benefit plans and one or more defined contribution plans as of May 6, 1986, and after the adjustment in (1) above, the sum of the Defined Benefit Fraction and Defined Contribution Fraction exceeds 1.0, as of the last day of the last Limitation Year beginning before January 1, 1987, but computed as if the TRA'86 changes were in effect, then the numerator of the Defined Contribution Fraction will be reduced so that the sum of the Defined Benefit Fraction and the Defined Contribution Fraction equals 1.0. The amount of the reduction shall be permanently offset from the numerator of the Defined Contribution Fraction and equals the product of: (i) the excess of the sum of the fractions over 1.0, times (2) the denominator of the Defined Contribution Fraction. Changes in plan provisions made after May 5, 1986, including a change in Limitation Year, are not reflected in this reduction.

(3) Paragraph (1) only applies if the defined benefit plan met the requirements of Code section 415 for all Limitation Years prior to the Limitation Year in which the TRA '86 Rules became effective. Paragraph (2) only applies if both the defined benefit plan and the defined contribution plan met the requirements of Code section 415 for the last Limitation Year beginning before January 1, 1987.

(c) **TEFRA '82 Transition Rules**

(1) If the Employer maintained a plan on or before July 1, 1982, then at the election of the Plan Administrator, in lieu of the denominator of the Defined Contribution Fraction determined in Section 3.1.5(a)(2), the denominator shall equal:

(i) the sum of the amounts independently determined for the current and each prior Limitation Year after the last Limitation Year ending before January 1, 1983 which equal the lesser of one hundred twenty five (125%) percent of the Defined Contribution Dollar Limitation for the Limitation Year and thirty five (35%) percent of the Participant's Compensation for such Limitation Year (regardless of whether a defined contribution plan was maintained by the Employer for such Limitation Year); plus

(ii) the sum of the amounts independently determined for each prior Limitation Year ending with the last Limitation Year which ends before January 1, 1983 which equal the lesser of the Defined Contribution Dollar Limitation for the Limitation Year and twenty five (25%) percent of the Participant's Compensation for such Limitation Year, all multiplied by the "transition fraction."

Such "transition fraction" is a fraction, the numerator of which is the lesser of $51,875 or thirty five (35%) percent of the Participant's compensation for the last Limitation Year which ends before January 1, 1983, and, the denominator of which is the lesser of $41,500 or twenty five (25%) percent of the Participant's compensation for the last Limitation Year which ends

-43-

7639

before January 1, 1983. In the event that the Plan itself, or the Permissive or Required Aggregation Group of which the Plan is a part thereof, is Top Heavy for a Limitation Year, as those terms are defined in Section 2.6.2, the reference to "$51,875" for a Limitation Year, as "$41,500" in the preceding sentence for such Limitation Year.

(2) If the Employer maintained one or more defined benefit plans as of July 1, 1982, and the Participant's accrued benefit (actuarially adjusted to an equivalent Straight Life Annuity if such benefit is not expressed as a Straight Life Annuity or Qualified Joint and Survivor Annuity) from all such plans as of the close of the last Limitation Year beginning before January 1, 1983, disregarding any changes in the terms and conditions of the plan after July 1, 1982, exceeds the Defined Benefit Dollar Limitation for a Limitation Year beginning after December 31, 1982, then the Participant's accrued benefit will be substituted for the Defined Benefit Dollar Limitation, in determining the Defined Benefit Fraction for such Limitation Year.

(3) If the Employer maintained one or more defined benefit plans and one or more defined contribution plans prior to July 1, 1982, and after the adjustment in (2) above, the sum of the Defined Benefit Fraction and the Defined Contribution Fraction exceeds 1.0, as of the last day of the last Limitation Year beginning before January 1, 1983, but computed as if the TEFRA '82 changes were in effect, then the numerator of the Defined Contribution Fraction will be reduced so that the sum of the Defined Benefit Fraction and the Defined Contribution Fraction equals 1.0. The adjustment in (1) may also be taken into account, if so elected by the Plan Administrator.

3.1.6 **Definitions.** For this Article 1, the terms below have the following meanings:

(a) **Compensation.** Compensation shall have the same meaning as in Section 1.2.12, modified if necessary, to include any amount which is contributed by the Employer pursuant to a salary reduction agreement and which is not includable in the gross income of the Employee under sections 125, 132(f)(4), 402(e)(3), 402(h), 403(b), and 457(b) of the Code.

Notwithstanding any provisions to the contrary, for purposes of applying the limitations of this Article, Compensation for a Limitation Year beginning after December 31, 1991, is the compensation actually paid or made available in gross income during such year without regard to the dollar limitations of Code section 401(a)(17).

For Limitation Years beginning after December 31, 1997, Compensation shall include any elective deferral (as defined in Code section 402(g)(3)), and any amount which is contributed or deferred by the Employer at the election of the Employee and which is not includable in the gross income of the Employee by reason of Code sections 125 and 457. For Limitation Years beginning on or after January 1, 2001 Compensation shall also include any elective amount which is not includable in the gross income by reason of Code section 132(f)(4). Compensation for a Participant who is disabled shall reflect only that Compensation received while actively employed.

(b) **Defined Benefit Compensation Limitation.** One hundred (100%) percent of a Participant's highest three (3) year consecutive average compensation, taking into account all Years of Service with the Employer. Compensation for this purpose shall be as defined in Paragraph (a) above.

(c) **Defined Benefit Dollar Limitation.** The dollar limit specified in Code section 415(c)(1)(A), automatically adjusted on January 1 each year under Code section 415(d), in such manner as the Secretary of the Treasury shall prescribe. The new limitation will apply to Limitation Years ending with or within the calendar year of the date of the adjustment. Unless otherwise provided by law, adjustments for increases in the cost of living shall not be taken into account for any year before the year for which such adjustment first takes place.

(d) **Employer.** The Employer that adopts this Plan and all members of a controlled group of

-44-

corporations (as defined in Code section 414(b) as modified by section 415(h)), all commonly controlled trades or businesses (as defined in Code section 414(c) as modified by section 415(h)), or affiliated service groups (as defined in Code section 414(m)) of which the adopting Employer is part and any other entity required to be aggregated with the Employer pursuant to Code section 414(o).

(e) **Projected Annual Benefit.** The annual benefit which the Participant would be entitled under the terms of a defined benefit plan (actuarially adjusted to an equivalent Straight Life Annuity if such benefit is not expressed as a Straight Life Annuity or Qualified Joint and Survivor Annuity), assuming that (1) the Participant will continue employment until Normal Retirement Age (or current age, if later), and (2) the Participant's Compensation for the current Limitation Year and all other relevant factors used to determine benefits under the plan will remain constant for all future Limitation Years.

**3.1.7 Controlled Businesses.** If this Plan provides contributions or benefits for one or more Owner-Employees who control both the business for which this Plan is established and one or more other trades or businesses, this Plan must, when looked at as a single plan, satisfy section 401(a) of the Code, and contributions on behalf of any Owner-Employee may be made only with respect to the Earned Income of such Owner-Employee which is derived from the trade or business with respect to which this Plan is established.

7641

# ARTICLE 2

## FIDUCIARIES

**3.2.1 Standard of Conduct.** The duties and responsibilities of the Plan Administrator and the Trustee with respect to the Plan shall be discharged (a) in a non-discriminatory manner; (b) for the exclusive benefit of Participants and their Beneficiaries; (c) by defraying the reasonable expenses of administering the Plan; (d) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (e) by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (f) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of the Act.

**3.2.2 Individual Fiduciaries.** At any time that a group of individuals is acting as Plan Administrator or Trustee, the Employer shall determine the number of such persons who shall act in such capacity from time to time. Such persons shall be appointed by the Employer and may or may not be Participants or Employees of the Employer. The Trustee (or Plan Administrator) shall be bound by any action taken by 2 of individuals acting in the capacity of the Trustee (or Plan Administrator.)

**3.2.3 Disqualification from Service.** No person shall be permitted to serve as a Fiduciary, custodian, counsel, agent or employee of the Plan or as a consultant to the Plan who has been convicted of any of the criminal offenses specified in the Act.

**3.2.4 Bonding.** Except as otherwise permitted by law, each Fiduciary or person who handles funds or other property or assets of the Plan shall be bonded in accordance with the requirements of the Act.

**3.2.5 Prior Acts.** No Fiduciary shall be liable for any acts occurring prior to the period of time during which the Fiduciary was actually serving in such capacity with respect to the Plan.

**3.2.6 Insurance and Indemnity.** The Employer may purchase or cause the Trustee to purchase and keep current as an authorized expense liability insurance for the Plan, its Fiduciaries, and any other person to whom any financial or other administrative responsibility with respect to the Plan and Trust is allocated or delegated, from and against any and all liabilities, costs and expenses incurred by such persons as a result of any act or omission to act in connection with the performance of the duties, responsibilities and obligations under the Plan and under the Act; provided that any such insurance policy purchased with Plan assets permits subrogation by the Insurer against the Fiduciary in the case of breach by such Fiduciary.

Unless otherwise determined and communicated to affected parties by the Employer, the Employer shall indemnify and hold harmless each such person, other than a corporate trustee, for and from any such liabilities, costs and expenses which are not covered by any such insurance, except to the extent that any such liabilities, costs or expenses are judicially determined to be due to the gross negligence or willful misconduct of such person. No Plan assets may be used for any such indemnification.

**3.2.7 Expenses.** Expenses incurred by the Plan Administrator or the Trustee in the administration of the Plan and the Trust, including fees for legal services rendered, such compensation to the Trustee as may be agreed upon in writing from time to time between the Employer and the Trustee, and all other proper charges and expenses of the Plan Administrator or the Trustee and of their agents and counsel shall be paid by the Employer, or at its election at any time or from time to time, may be charged against the assets of the Trust, but until so paid shall constitute a charge upon the assets of the Trust.

The Trustee shall have the authority to charge the Trust Fund for its compensation and reasonable expenses unless paid or contested by written notice by the Employer within sixty (60) days after

7642

mailing of the written billing by the Trustee. All taxes of any and all kinds whatsoever which may be levied or assessed under existing or future laws upon the assets of the Trust or the income thereof shall be paid from such assets. Notwithstanding the foregoing, no compensation shall be paid to any Employee for services rendered under the Plan and Trust as a Trustee.

### 3.2.8 Agents, Accountants and Legal Counsel.

The Plan Administrator shall have authority to employ suitable agents, custodians, investment counsel, accountants, and legal counsel who may, but need not be, legal counsel for the Employer. The Plan Administrator and the Trustee shall be fully protected in acting upon the advice of such persons. The Trustee shall at no time be obliged to institute any legal action or to become a party to any legal action unless the Trustee has been indemnified to the Trustee's satisfaction for any fees, costs and expenses to be incurred in connection therewith.

### 3.2.9 Investment Manager.

The Employer may employ as an Investment Manager or managers to manage all or any part of the Trust Fund any (a) investment advisor registered under the Investment Advisors Act of 1940; (b) bank as defined in said Act; or (c) insurance company qualified to perform investment management services in more than one state. Any Investment Manager shall have all powers of the Trustee in the management of such part of the Trust Fund, including the power to acquire or dispose of assets.

In the event an Investment Manager is so appointed, the Trustee shall not be liable for the acts or omissions of such Investment Manager or be under any obligation to invest or otherwise manage that part of the Trust Fund that is subject to the management of the Investment Manager. The Employer shall notify the Trustee in writing of any appointment of an Investment Manager, and shall provide the Trustee with the Investment Manager's written acknowledgment that it is a fiduciary with respect to the Plan.

### 3.2.10 Finality of Decisions or Acts.

Except for the right of a Participant or Beneficiary to appeal the denial of a claim, any decision or action of the Plan Administrator or the Trustee made or done in good faith upon any matter within the scope of authority and discretion of the Plan Administrator or the Trustee shall be final and binding upon all persons. In the event of judicial review of actions taken by any Fiduciary within the scope of his duties in accordance with the terms of the Plan and Trust, such actions shall be upheld unless determined to have been arbitrary and capricious.

### 3.2.11 Certain Custodial Accounts and Contracts.

The term "Trustee" as used herein will also include a person holding the assets of a custodial account, an annuity contract or other contract which is treated as a qualified trust pursuant to section 401(f) of the Code and references to the Trust Fund shall be construed to apply to such custodial account, annuity contract or other contract.

7643

# ARTICLE 2

## FIDUCIARIES

**3.2.1  Standard of Conduct.**  The duties and responsibilities of the Plan Administrator and the Trustee with respect to the Plan shall be discharged (a) in a non-discriminatory manner; (b) for the exclusive benefit of Participants and their Beneficiaries; (c) by defraying the reasonable expenses of administering the Plan; (d) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (e) by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (f) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of the Act.

**3.2.2  Individual Fiduciaries.**  At any time that a group of individuals is acting as Plan Administrator or Trustee, the Employer shall determine the number of such persons who shall act in such capacity from time to time.  Such persons shall be appointed by the Employer and may or may not be Participants or Employees of the Employer. The Trustee (or Plan Administrator) shall be bound by any action taken by 1 of individuals acting in the capacity of the Trustee (or Plan Administrator.)

**3.2.3  Disqualification from Service.**  No person shall be permitted to serve as a Fiduciary, custodian, counsel, agent or employee of the Plan or as a consultant to the Plan who has been convicted of any of the criminal offenses specified in the Act.

**3.2.4  Bonding.**  Except as otherwise permitted by law, each Fiduciary or person who handles funds or other property or assets of the Plan shall be bonded in accordance with the requirements of the Act.

**3.2.5  Prior Acts.**  No Fiduciary shall be liable for any acts occurring prior to the period of time during which the Fiduciary was actually serving in such capacity with respect to the Plan.

**3.2.6  Insurance and Indemnity.**  The Employer may purchase or cause the Trustee to purchase and keep current as an authorized expense liability insurance for the Plan, its Fiduciaries, and any other person to whom any financial or other administrative responsibility with respect to the Plan and Trust is allocated or delegated, from and against any and all liabilities, costs and expenses incurred by such persons as a result of any act or omission to act in connection with the performance of the duties, responsibilities and obligations under the Plan and under the Act; provided that any such insurance policy purchased with Plan assets permits subrogation by the Insurer against the Fiduciary in the case of breach by such Fiduciary.

Unless otherwise determined and communicated to affected parties by the Employer, the Employer shall indemnify and hold harmless each such person, other than a corporate trustee, for and from any such liabilities, costs and expenses which are not covered by any such insurance, except to the extent that any such liabilities, costs or expenses are judicially determined to be due to the gross negligence or willful misconduct of such person.  No Plan assets may be used for any such indemnification.

**3.2.7  Expenses.**  Expenses incurred by the Plan Administrator or the Trustee in the administration of the Plan and the Trust, including fees for legal services rendered, such compensation to the Trustee as may be agreed upon in writing from time to time between the Employer and the Trustee, and all other proper charges and expenses of the Plan Administrator or the Trustee and of their agents and counsel shall be paid by the Employer, or at its election at any time or from time to time, may be charged against the assets of the Trust, but until so paid shall constitute a charge upon the assets of the Trust.

The Trustee shall have the authority to charge the Trust Fund for its compensation and reasonable expenses unless paid or contested by written notice by the Employer within sixty (60) days after

-46-

7644

mailing of the written billing by the Trustee. All taxes of any and all kinds whatsoever which may be levied or assessed under existing or future laws upon the assets of the Trust or the income thereof shall be paid from such assets. Notwithstanding the foregoing, no compensation shall be paid to any Employee for services rendered under the Plan and Trust as a Trustee.

### 3.2.8 Agents, Accountants and Legal Counsel.

The Plan Administrator shall have authority to employ suitable agents, custodians, investment counsel, accountants, and legal counsel who may, but need not be, legal counsel for the Employer. The Plan Administrator and the Trustee shall be fully protected in acting upon the advice of such persons. The Trustee shall at no time be obliged to institute any legal action or to become a party to any legal action unless the Trustee has been indemnified to the Trustee's satisfaction for any fees, costs and expenses to be incurred in connection therewith.

### 3.2.9 Investment Manager.

The Employer may employ as an Investment Manager or managers to manage all or any part of the Trust Fund any (a) investment advisor registered under the Investment Advisors Act of 1940; (b) bank as defined in said Act; or (c) insurance company qualified to perform investment management services in more than one state. Any Investment Manager shall have all powers of the Trustee in the management of such part of the Trust Fund, including the power to acquire or dispose of assets.

In the event an Investment Manager is so appointed, the Trustee shall not be liable for the acts or omissions of such Investment Manager or be under any obligation to invest or otherwise manage that part of the Trust Fund that is subject to the management of the Investment Manager. The Employer shall notify the Trustee in writing of any appointment of an Investment Manager, and shall provide the Trustee with the Investment Manager's written acknowledgment that it is a fiduciary with respect to the Plan.

### 3.2.10 Finality of Decisions or Acts.

Except for the right of a Participant or Beneficiary to appeal the denial of a claim, any decision or action of the Plan Administrator or the Trustee made or done in good faith upon any matter within the scope of authority and discretion of the Plan Administrator or the Trustee shall be final and binding upon all persons. In the event of judicial review of actions taken by any Fiduciary within the scope of his duties in accordance with the terms of the Plan and Trust, such actions shall be upheld unless determined to have been arbitrary and capricious.

### 3.2.11 Certain Custodial Accounts and Contracts.

The term "Trustee" as used herein will also include a person holding the assets of a custodial account, an annuity contract or other contract which is treated as a qualified trust pursuant to section 401(f) of the Code and references to the Trust Fund shall be construed to apply to such custodial account, annuity contract or other contract.

7645

# ARTICLE 3

## PLAN ADMINISTRATOR

**3.3.1  Administration of Plan.** The Employer shall designate a Plan Administrator from time to time. The primary responsibility of the Plan Administrator is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Plan. The Plan Administrator shall administer the Plan and shall construe and determine all questions of interpretation or policy in his sole discretion. The Plan Administrator may correct any defect, supply any omission, or reconcile any inconsistency in such manner and to such extent as he shall deem necessary or advisable to carry out the purpose of the Plan; provided, however, that any interpretation or construction shall be done in a nondiscriminatory manner and shall be consistent with the intent that the Plan shall continue to be a qualified Plan pursuant to the Code, and shall comply with the terms of the Act. The Plan Administrator shall have all powers necessary or appropriate to accomplish his duties under the Plan.

(a)  The Plan Administrator shall be charged with the duties of the general administration of the Plan, including, but not limited to, the following:

(1) To determine all questions relating to the eligibility of an Employee to participate in the Plan or to remain a Participant in the Plan.

(2) To compute, certify and direct the Trustee with respect to the amount and kind of benefits to which any Participant is entitled.

(3) To authorize and direct the Trustee with respect to all disbursements from the Trust Fund.

(4) To maintain all the necessary records for the administration of the Plan.

(5) To interpret the provisions of the Plan and to make and publish rules and regulations for the Plan as the Plan Administrator may deem reasonably necessary for the proper and efficient administration of the Plan and consistent with its terms.

(6) To select the Insurer to provide any Life Insurance Policies for any Participant.

(7) To advise the Trustee regarding the short and long-term liquidity needs of the Plan in order that the Trustee might direct its investment accordingly.

(8) To advise, counsel and assist any Participant regarding any rights, benefits or elections available under the Plan.

(9) To instruct the Trustee as to the management, investment and reinvestment of the Trust Fund unless the investment authority has been delegated to the Trustee or an Investment Manager.

(b)  The Plan Administrator shall also be responsible for preparing and filing such annual disclosure reports and tax forms as may be required from time to time by the Secretary of Labor, the Secretary of the Treasury, or other governmental authorities.

(c)  Whenever it is determined by the Plan Administrator to be in the best interest of the Plan and its Participants or Beneficiaries, the Plan Administrator may request such variances, deferrals, extensions, or exemptions or make such elections for the Plan as may be available under the law.

(d)  The Plan Administrator shall be responsible for procuring bonding for all persons dealing

with the Plan or its assets as may be required by law.

### 3.3.2 Disclosure Requirements.
Every Participant covered under the Plan and every Beneficiary receiving benefits under the Plan shall receive from the Plan Administrator a summary plan description, and such other information as may be required by law or by the terms of the Plan.

### 3.3.3 Information Generally Available.
The Plan Administrator shall make copies of this Plan and Trust, the summary plan description, latest annual report, Life Insurance Policies, or other instruments under which the Plan was established or is operated available for examination by any Participant or Beneficiary in the principal office of the Plan Administrator and such other locations as may be necessary to make such information reasonably accessible to all interested parties. Subject to a reasonable charge to defray the cost of furnishing such copies, the Plan Administrator shall, upon written request of any Participant or Beneficiary, furnish a copy of any of the above documents to the respective party.

### 3.3.4 Statement of Account Balance.
Upon written request to the Plan Administrator once during any twelve (12) month period, a Participant or Beneficiary shall be furnished with a written statement, based on the latest available information, of his then vested Account Balance and the earliest date upon which the same will become fully vested and non-forfeitable. The statement shall also include a notice to the Participant of any benefits that are forfeitable if the Participant dies before a certain date.

### 3.3.5 Explanation of Rollover Treatment.
The Plan Administrator shall, when making a distribution eligible for rollover treatment, provide a written explanation to the recipient of the provisions under which such distribution will not be subject to tax if transferred to an Eligible Retirement Plan within sixty (60) days after the date on which the recipient received the distribution and, if applicable, the provisions of law pertaining to the tax treatment of lump sum distributions.

7647

# ARTICLE 4

## TRUSTEE

**3.4.1 Acceptance of Trust.** The Trustee, by joining in the execution of the Plan, agrees to act in accordance with the express terms and conditions hereof.

**3.4.2 Trustee Capacity - Co-Trustees.** The Trustee may be a bank, trust company or other corporation possessing trust powers under applicable state or federal law or one or more individuals or any combination thereof. When there are two or more Trustees, they may allocate specific responsibilities, obligations or duties among themselves by their written agreement. An executed copy of such written agreement shall be delivered to and retained by the Plan Administrator.

**3.4.3 Resignation, Removal, and Successors.** Any Trustee may resign at any time by delivering to the Employer a written notice of resignation to take effect at a date specified therein, which shall not be less than thirty (30) days after the delivery thereof; the Employer may waive such notice. The Trustee may be removed by the Employer with or without cause, by tendering to the Trustee a written notice of removal to take effect at a date specified therein.

Upon such removal or resignation of a Trustee, the Employer shall either appoint a successor Trustee who shall have the same powers and duties as those conferred upon the resigning or discharged Trustee, or, if a group of individuals is acting as Trustee, determine that a successor shall not be appointed and the number of Trustees shall be reduced by one (1).

**3.4.4 Consultations.** The Trustee shall be entitled to advice of counsel, which may be counsel for the Plan or the Employer, in any case in which the Trustee shall deem such advice necessary. The Trustee shall not be liable for any action taken or omitted in good faith reliance upon the advice of such counsel. With the exception of those powers and duties specifically allocated to the Trustee by the express terms of the Plan, it shall not be the responsibility of the Trustee to interpret the terms of the Plan and the Trustee may request, and is entitled to receive, guidance and written direction from the Plan Administrator on any point requiring construction or interpretation of the Plan documents.

**3.4.5 Rights, Powers and Duties.** The rights, powers, and duties of the Trustee shall be as follows:

(a) The Trustee shall have exclusive authority, discretion, and responsibility for the management and control of the assets of the Trust Fund in accordance with the provisions of the Plan and any amendments, unless limited or expanded by the Employer in another written document. The duties of the Trustee shall be determined solely by the express provisions of the Plan and no other further duties or responsibilities shall be implied. Subject to the terms of this Plan, the Trustee shall be fully protected and shall incur no liability in acting in reliance upon the written instructions or directions of the Employer, the Plan Administrator, a duly designated Investment Manager, or any other named Fiduciary.

(b) The Trustee shall have all powers necessary or convenient for the orderly and efficient performance of its duties, including but not limited to those specified in this Section. The Trustee shall have the power generally to do all acts, whether or not expressly authorized, which the Trustee in the exercise of its Fiduciary responsibility may deem necessary or desirable for the protection of the Trust Fund and the assets thereof.

(c) The Trustee shall have the power to collect and receive any and all monies and other property due the Plan and to give full discharge and release therefore; to settle, compromise or submit to arbitration any claims, debts or damages due to or owing to or from the Trust Fund; to commence or defend suits or legal proceedings wherever, in the Trustee's judgment, any interest of the Trust Fund requires it; and to represent the Trust Fund in all suits or legal proceedings in any

7648

court of law or equity or before any other body or tribunal.

(d)  The Trustee shall cause any Life Insurance Policies or assets of the Trust Fund to be registered in its name as Trustee and shall be authorized to exercise any and all ownership rights regarding these assets, subject to the terms of the Plan.

(e)  The Trustee may temporarily hold cash balances and shall be entitled to deposit any funds received in a bank account in the name of the Trust Fund in any bank selected by the Trustee, including the banking department of a corporate Trustee, if any, pending disposition of such funds in accordance with the Plan.  Any such deposit may be made with or without interest.

(f)  The Trustee shall pay the premiums and other charges due and payable at any time on any Life Insurance Policies as directed by the Plan Administrator; provided funds for such payments are then available in the Trust.  The Trustee shall be responsible only for such funds and Life Insurance Policies as actually received as Trustee, and shall have no obligation to make payments other than from such funds and cash values of Life Insurance Policies.

(g)  If the whole or any part of the Trust Fund shall become liable for the payment of any estate, inheritance, income or other tax which the Trustee shall be required to pay, the Trustee shall have full power and authority to pay such tax out of any monies or other property in its hands for the account of the person whose interest hereunder is so liable.  Prior to making any payment, the Trustee may require such releases or other documents from any lawful taxing authority, as it shall deem necessary.  The Trustee shall not be liable for any nonpayment of tax when it distributes an interest hereunder on instructions from the Plan Administrator.

(h)  The Trustee shall keep a full, accurate and detailed record of all transactions of the Trust that the Employer and the Plan Administrator shall have the right to examine at any time during the Trustee's regular business hours.  As of the close of each Plan Year, the Trustee shall furnish the Plan Administrator with a statement of account setting forth all receipts, disbursements and other transactions effected by the Trustee during the year.  The Plan Administrator shall promptly notify the Trustee in writing of his approval or disapproval of the account.

The Plan Administrator's failure to disapprove the account within sixty (60) days after receipt shall be considered an approval. Except as otherwise required by law, the approval by the Plan Administrator shall be binding as to all matters embraced in any statement to the same extent as if the account of the Trustee had been settled by judgment or decree of a court of competent jurisdiction under which the Trustee, Employer and all persons having or claiming any interest in the Trust Fund were parties; provided, however, that the Trustee may have its account judicially settled if it so desires.

(i)  The Trustee is hereby authorized to execute all necessary receipts and releases to any parties concerned; and shall be under a duty, upon being advised by the Plan Administrator that the proceeds of any Life Insurance Policies are payable, to give reasonable assistance to the Beneficiary in collecting such sums as may appear to be due, and upon payment, transfer such sums to the Beneficiary.

(j)  If, at any time, as the result of the death of the Participant there is a dispute as to the person to whom payment or delivery of monies or property should be made by the Trustee, or regarding any action to be taken by the Trustee, the Trustee may postpone such payment, delivery or action, retaining the funds or property involved, until such dispute is resolved in a court of competent jurisdiction or the Trustee shall have been indemnified to its satisfaction or has received written direction from the Plan Administrator.

(k)  Anything in this instrument to the contrary notwithstanding, the Trustee shall have no duty or responsibility with respect to the determination of matters pertaining to the eligibility of any Employee to become or remain a Participant hereunder, the amount of benefit to which any Participant or Beneficiary shall be entitled hereunder, or the size and type of any Life Insurance

7649

Policy to be purchased from any Insurer for any Participant hereunder; all such responsibilities being vested in the Plan Administrator.

### 3.4.6 Rights of Trustee as to Contributions.

The Trustee shall have no duty to require any contribution to be made or to determine whether contributions delivered to the Trustee by the Employer comply with the provisions of this Agreement. The Trustee shall be accountable only for funds actually received by the Trustee.

### 3.4.7 Trustee Indemnification.

The Employer shall indemnify and hold harmless the Trustee for and from the assertion or occurrence of any liability to a Participant or Beneficiary for any action taken or omitted by the Trustee pursuant to any written direction to the Trustee from the Employer or the Plan Administrator. Such indemnification obligation of the Employer shall not be applicable to the extent that any such liability is covered by insurance.

### 3.4.8 Changes in Trustee Authority.

If a successor Trustee is appointed, neither an Insurer nor any other person who has previously had dealings with the former Trustee shall be chargeable with knowledge of such appointment or such change until furnished with a written notice. Until such notice, the Insurer and any other such party shall be fully protected in relying on any action taken or any signature presented which would have been proper in accordance with the previous information.

### 3.4.9 Electromechanical Communications.

Electromechanical communications are permitted between all parties of a transaction, including the Participant. The Employer may designate an agent to make such payments. The giving of such payment directions to the agent by electromechanical means constitutes a certification from the Plan Administrator to the Trustee that such payment is in accordance with the terms of the Plan. The Trustee (or other agent appointed for this purpose) may act upon receipt of directions (including, without limitation, directions pursuant to voice response systems, facsimile, or other electromechanical means) certifying that an amount is payable to or for the benefit of a Participant under the Plan, with regard to all transactions. The Trustee shall pay such amount (or cause such amount to be paid) in accordance with such directions, and the Trustee shall be fully protected in, and will incur no liability, for doing so.

7650

# ARTICLE 5

## TRUST ASSETS

**3.5.1 Trustee Exclusive Owner.** All assets held by the Trustee shall be owned exclusively by the Trustee and no Participant or Beneficiary shall have any individual ownership. Participants and their Beneficiaries shall share in the assets of the Trust, its net earnings, profits, and losses, only as provided in this Plan.

**3.5.2 Investments.** The Trustee shall invest and reinvest the Trust Fund without distinction between income or principal in one or more of the following ways, as the Trustee shall from time to time determine:

(a) The Trustee may invest the Trust Fund or any portion thereof in obligations issued or guaranteed by the United States of America or of any instrumentalities thereof, or in other bonds, notes, debentures, mortgages, preferred or common stocks, options to buy or sell stocks or other securities, mutual fund shares, limited partnership interests, commodities, or in such other property, real or personal, as the Trustee shall determine.

(b) The Trustee may cause the Trust Fund or any portion thereof to be invested in a common trust fund established and maintained by a national bank or other bank regulated by the Federal Deposit Insurance Corporation ("FDIC"), for the collective investment of fiduciary funds, even though the bank is acting as the Trustee or Investment Manager; provided such common trust fund is a qualified trust under the applicable section of the Code, or corresponding provisions of future federal Internal Revenue laws and is exempt from income tax under the applicable section of the Code. In the event any assets of the Trust Fund are invested in such a common trust fund, the Declaration of Trust creating such common trust fund, as it may be amended from time to time, shall be incorporated into this Plan by reference and made a part hereof.

(c) The Trustee may deposit any portion of the Trust Fund in savings accounts in federally insured banks or savings and loan associations or invest in certificates of deposit issued by any such bank or savings and loan association. The Trustee may retain, without liability for interest, any portion of the Trust Fund in cash balances pending investment thereof or payment of expenses.

(d) The Trustee may buy and sell put and call options, covered or uncovered, engage in spreads, straddles, ratio writing and other forms of options trading, including sales of options against convertible bonds, and sales of Standard & Poor's futures contracts, and trade in and maintain a brokerage account on a cash or margin basis.

(e) The Trustee may invest the Trust Fund or any portion thereof to acquire or hold Qualifying Employer Securities or Real Property, provided that if the Participant's Account is taken into consideration in determining his benefits from a defined benefit plan of the Employer, the portion so invested shall not exceed ten (10%) percent of the fair market value of the assets of the Plan as of the date of such acquisition.

**3.5.3 Administration of Trust Assets.** Subject to the limitations expressly set forth in this Plan, the Trustee shall have the following powers and authority in connection with the administration of the assets of the Trust:

(a) To hold and administer all contributions made by the Employer to the Trust Fund and all income or other property derived therefrom as a single Trust Fund.

(b) To manage, control, sell, convey, exchange, petition, divide, subdivide, improve, repair, grant options, sell upon deferred payments, lease without limit as determined for any purpose, compromise, arbitrate or otherwise settle claims in favor of or against the Trust Fund, institute,

7651

compromise and defend actions and proceedings, and to take any other action necessary or desirable in connection with the administration of the Trust Fund.

(c)  To vote any stock, bonds, or other securities of any corporation or other issuer; otherwise consent to or request any action on the part of any such corporation or other issuer; to give general or special proxies or powers of attorney, with or without power of substitution; to participate in any reorganization, recapitalization, consolidation, merger or similar transaction with respect to such securities; to deposit such stocks or other securities in any voting trusts, or with any protective or like committee, or with the Trustee, or with the depositories designated thereby; to exercise any subscription rights and conversion privileges or other options and to make any payments incidental thereto; and generally to do all such acts, execute all such instruments, take all such proceedings and exercise all such rights, powers and privileges with respect to the stock or other securities or property constituting the Trust Fund as if the Trustee were the absolute owner thereof.

(d)  To apply for and procure, at the election of any Participant, Life Insurance Policies on the life of the Participant or someone in whom the Participant has an insurable interest; to exercise whatever rights and privileges may be granted to the Trustee under such Policies, and to cash in, receive and collect such Policies or the proceeds as and when entitled to do so under the provisions thereof;

(e)  To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(f)  To register any investment held in the Trust by a corporate or institutional Trustee in the Trustee's own name or in the name of a corporate or institutional Trustee's nominee for the benefit of the Plan, or to hold any investment in bearer form, provided that the books and records of the Trustee shall at all times show that all such investments are part of the Trust;

(g)  To borrow money for the purposes of the Plan in such amounts and upon such terms and conditions as the Trustee deems appropriate;

(h)  To commingle the assets of the Trust Fund with the assets of other similar trusts which are exempt from income tax, whether sponsored by the Employer, an affiliate of the Employer or an unrelated employer, provided that the books and records of the Trustee shall at all times show the portion of the commingled assets which are part of the Trust; and

(i)  To do all acts whether or not expressly authorized which the Trustee may deem necessary or proper for the protection of the property held hereunder.

**3.5.4  Segregated Funds.**  Unless otherwise determined by the Trustee not to be prudent, the Trustee shall invest and reinvest each Segregated Fund without distinction between income or principal. Such accounts shall be held for the benefit of the Participant for whom such Segregated Fund is established in accordance with the terms of the Plan and the Segregated Account of the Participant shall be credited with any interest earned in connection with such accounts.  If the Trustee determines that an alternative investment is appropriate, the Trustee may invest the Segregated Fund in any manner permitted with respect to the Trust Fund and such Segregated Account shall be credited with the net income or loss or net appreciation or depreciation in value of such investments.  No Segregated Fund shall share in any Employer contributions or Forfeitures, any net income or loss from, or net appreciation or depreciation in value of, any investments of the Trust Fund, or any allocation for which provision is made in this Plan that is not specifically attributable to the Segregated Fund.

**3.5.5  Investment Control.**  Each Participant may elect to transfer funds that do not exceed the balances in his Trustee-directed Accounts to a Controlled Account and exercise investment control of those funds by appropriate direction to the Trustee.

To the extent that the balance of the Participant's Account with respect to which a transfer is

-54-

7652

to be made includes his share of an Employer contribution that has not been received by the Trustee, such transfer shall not occur until the Trustee receives such contribution. Funds so transferred to a Controlled Account on behalf of the Participant shall thereafter be invested by the Trustee in such bonds, notes, debentures, commodities, mortgages, equipment, trust certificates, investment trust certificates, preferred or common stocks, mutual funds, partnership interests, life insurance policies, including universal life insurance policies, or in such other property, real or personal (other than collectibles), wherever situated, as the Participant shall direct from time to time in writing; provided, however, that the Participant may not direct the Trustee to make loans to himself, nor to make loans to the Employer; and provided further that the Trustee may limit the investment alternatives available to the Participant in a uniform and nondiscriminatory manner.

Upon any such election being made, the amount of such funds to be transferred shall be deducted from his Trustee- directed Account as appropriate and added to a Controlled Account of the Participant. Any such election shall be at the absolute discretion of the individual Participant and shall be binding on the Trustee, unless such transaction is classified as a prohibited transaction under section 406 of the Act or section 4975 of the Code. All dividends and interest thereafter received with respect to such transferred funds, as well as any appreciation or depreciation in his investments, shall be added to or deducted from his Controlled Account.

If a Participant wishes to make such an election to transfer funds from his Trustee-directed Accounts to a Controlled Account as of a date other than a Valuation Date, the Trustee shall defer such transfer until the next succeeding Valuation Date.

As of any Valuation Date, the Participant may elect to have all or any portion of any cash contained in his Controlled Account transferred back to the general assets of the Trust Fund, in which case the Trustee shall again invest such cash as part of the general assets of the Trust Fund. Any such election shall be made by giving notice to the Trustee, in the manner that the Trustee deems necessary, and the notice shall specify the amount of cash to be transferred. The amount of such funds so transferred shall be deducted from the Participant's Controlled Account and added to the appropriate Account of the Participant. Any such election shall be at the absolute discretion of the individual Participant and shall be binding upon the Trustee.

The Trustee shall not have any investment responsibility with respect to a Participant's Controlled Account. In the event that a Participant elects to have any such funds transferred to a Controlled Account and invested in particular securities or assets pursuant to this Section, the Trustee shall not be liable for any loss or damage resulting from the investment decision of the Participant.

**3.5.6 Compliance with Section 404(c) of the Act.** This Plan does not intend to meet the requirements of section 404(c) of the Act.

7653

# ARTICLE 6

## INSURANCE

**3.6.1 Participants Insurable at Standard Rates.** The Trustee, when directed by the Participant shall provide incidental insurance benefits by purchasing for each Participant insurable at standard rates, either term insurance, universal life insurance, or ordinary life insurance. Said Contract shall provide a death benefit, prior to his actual retirement date, equal to the proceeds of such insurance contracts, subject to the following provisions:

(a) Life Insurance Policies may be issued on the life of the Participant, someone in whom the Participant has an insurable interest, or the joint lives of the Participant and someone in whom the Participant has an insurable interest with the consent of the Participant.

(b) If "Ordinary Life Insurance Policies" are purchased, the aggregate life insurance premiums must be less than one-half (1/2) of the aggregate Employer contributions and Forfeitures allocated to the Participant's Account at any particular time, without regard to Trust earnings, capital gains, or losses. For purposes of this Plan, the term "Ordinary Life Insurance Policies" shall mean Life Insurance Policies with both non-decreasing death benefits and non-increasing premiums.

(c) The aggregate Premiums paid for Life Insurance Policies which are either term, universal or any other Contracts which are not Ordinary Life Insurance Policies shall not at any time exceed twenty-five (25%) percent of the aggregate amount of Employer contributions and Forfeitures which have been allocated to the Accounts of such Participant.

The sum of one-half (1/2) of the aggregate premiums for Ordinary Life Insurance Policies and all premiums for other Life Insurance Policies shall not at any time exceed twenty-five (25%) percent of the aggregate amount of Employer contributions and Forfeitures which have been allocated to the Accounts of such Participant.

Increases or decreases in the policy face amount shall be recognized as soon as administratively feasible, but in no event more than one year after the change. If the Plan permits In-Service Distributions to a Participant prior to his Normal Retirement Date, the amount that may be distributed to the Participant may be used to purchase additional Life Insurance Policies without limitation.

**3.6.2 Uninsurable Participants.** For each Participant found by an Insurer to be uninsurable, the Trustee, when requested by the Plan Administrator, shall purchase a retirement annuity Contract on the life of such Participant with a death benefit before Normal Retirement Date in an amount equal to the cash surrender value of such Contract. The Participant must consent to the purchase of such a retirement annuity contract.

**3.6.3 Participants Insurable at Above Standard Rates.** If a Participant is found by an Insurer to be uninsurable, except at above standard rates, the Trustee, when requested by the Plan Administrator, shall pay premiums not to exceed 150% the percent of standard rates. The face value of any insurance policy shall be limited by the percentage of the aggregate Employer contributions and Forfeitures allocated to the Participant's Account that the Employer dedicated to purchase insurance. The Participant must consent to the purchase of any insurance contract above standard rates.

**3.6.4 Purchase of Contracts.** No Contract will be purchased under the Plan unless such Contract or separate definite written agreement between the Employer and the Insurer provides that no value or credits determined by the Insurer (on account of dividends, earnings, or other experience rating credits, or surrender or cancellation credits) with respect to such Contracts may be paid or returned to the Employer or diverted to or used for other than the exclusive benefit of the Participants or their Beneficiaries. Any Life Insurance Policy must provide that any proceeds are payable to the Trustee, subject to the

-56-

7654

Trustee's obligation to transfer such proceeds to the Beneficiary. Under no circumstances shall the Trust retain any part of the proceeds.

If, at any time, a Contract described herein shall not be available from or shall be determined to be invalid or unenforceable by an Insurer, the Trustee, when directed by the Plan Administrator, shall purchase a Contract or make such other alternative arrangements which, in the opinion of the Plan Administrator, conforms most closely to the descriptions herein. In the event of a conflict between the terms of the Plan and the terms of any Contract, the Plan provisions shall control.

3.6.5  **Applications for Contracts.** The Trustee shall be the applicant, owner, and beneficiary for all Contracts required under the terms of the Plan. Any Contract distributed from the Plan must be nontransferable. The terms of any Contract purchased and distributed by the Plan to a Participant or spouse shall comply with the requirements of the Plan. The Trustee shall not be responsible for the validity or execution of Contracts, failure of an Insurer to pay proceeds when due, or failure of any policy to meet requirements or conform to the provisions of the Plan.

3.6.6  **Incidents of Ownership.** The Trustee shall have the right to receive all sums payable under the terms of all Contracts issued hereunder. The Trustee shall be the complete and absolute owner of the Contracts held in the Trust and of each and every incident of ownership therein and shall have the power to exercise the rights, options, and privileges of an absolute owner with respect to the Contracts subject to the provisions of the Plan. The Plan Administrator shall have the power to deal with and settle all claims.

3.6.7  **Payment of Premiums.** In a Plan Year in which the Employer contributions are less than the amount required to sustain insurance premiums, the Plan Administrator shall direct the Trustee to take one of the following steps with respect to payment of insurance premiums:

(a)  Pay premiums due on insurance policies from the Participant's Account, within the limits of Section 3.6.1 above,

(b)  Pay premiums due on insurance policies from the Participant's Account, using the balance described in Section 3.6.1 above,

(c)  Surrender any insurance policies for their cash surrender values and add such amount to the Participant's Account,

(d)  Convert the cash surrender value of any insurance policies to paid up insurance for which there will be no further premiums, or

(e)  Offer to sell any insurance policies to the Participant for their cash surrender value.

3.6.8  **Discontinuance of Insurance Contracts.** The Trustee or other Fiduciary responsible for making investment decisions may discontinue the investment in life insurance policies at any time. If the Plan provides for Participant directed investments, life insurance, as an investment option, may be eliminated at any time by the Plan Administrator.

-57-

7655

# ARTICLE 7

## PARTICIPANT LOANS

3.7.1 Loans are not permitted under the Plan.

7656

# ARTICLE 8

## BENEFICIARIES

**3.8.1 Designation of Beneficiaries.** Each Participant shall have the right to designate a Beneficiary or Beneficiaries and contingent or successive Beneficiaries to receive any benefits provided by this Plan which become payable upon the Participant's death. The Beneficiaries may be changed at any time or times by the filing of a new designation with the Plan Administrator. The most recent designation shall govern. Notwithstanding the foregoing, and subject to the provisions of Section 2.5.4, the Beneficiary shall be the surviving spouse of the Participant, unless such surviving spouse consents in writing to an alternate designation and the terms of such consent acknowledge the effect of such alternate designation and the consent is witnessed by a representative of the Plan or by a notary public. The designation of a Beneficiary other than the spouse of the Participant or an optional form of benefits with the consent of such spouse may not be changed without the consent of such spouse and any consent must acknowledge the specific non-spouse Beneficiary, including any class of Beneficiaries or any contingent Beneficiaries, unless the spouse expressly consents to permitting designations by the Participant without the further consent of the spouse. Notwithstanding the foregoing, a Participant, at any time, may designate his spouse as Beneficiary, and with respect to Accounts providing annuities, may also designate the form of benefit as a Qualified Joint and Survivor Annuity.

**3.8.2 Absence or Death of Beneficiaries.** If a Participant dies without having a Beneficiary designation then in force, or if all of the Beneficiaries designated by a Participant predecease him, his Beneficiary shall be his surviving spouse, or if none, his surviving children, equally, or if none, such other heirs, or the executor or administrator of his estate, as the Plan Administrator shall select.

Unless otherwise designated by the Participant, if a Participant dies and is survived by some, but not all, of the Beneficiaries designated by him, such surviving Beneficiaries shall be deemed his sole Beneficiaries. In the event that a surviving Beneficiary dies before the complete distribution of the deceased Participant's interest, the estate of such Beneficiary shall be deemed the Beneficiary of the undistributed portion of such interest.

**3.8.3 Surviving Spouse Election.** If the Participant does not elect a life annuity form of distribution, a surviving spouse, who has not consented to an alternate designation under Section 2.5.1, above, may elect to have distribution of the Participant's vested Account Balance commence within the 90-day period following the date of the Participant's death. The Account Balance shall be adjusted for gains or losses occurring after the Participant's death in accordance with the provisions of the Plan governing the adjustment of Account Balances for other types of distributions.

7657

# ARTICLE 9

## CLAIMS

**3.9.1 Claim Procedure.** Any Participant or Beneficiary who is entitled to a payment of a benefit for which provision is made in this Plan shall file a written claim with the Plan Administrator on such forms as furnished by the Plan Administrator and shall furnish such evidence of entitlement to benefits as the Plan Administrator may require. The Plan Administrator shall notify the Participant or Beneficiary in writing as to the amount of benefit to which he is entitled, the duration of such benefit, the time the benefit is to commence and other pertinent information concerning his benefit.

If a claim for benefit is denied by the Plan Administrator, in whole or in part, the Plan Administrator shall provide adequate notice in writing to the Participant or Beneficiary whose claim for benefits has been denied within ninety (90) days after receipt of the claim unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice indicating the special circumstances and the date by which a final decision is expected to be rendered shall be furnished to the Participant or Beneficiary. In no event shall the period of extension exceed one hundred eighty (180) days after receipt of the claim. The notice of denial of the claim shall set forth (a) the specific reason or reasons for the denial; (b) specific reference to pertinent Plan provisions on which the denial is based; (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (d) a statement that any appeal of the denial must be made by giving to the Plan Administrator, within sixty (60) days after receipt of the notice of the denial, written notice of such appeal, such notice to include a full description of the pertinent issues and basis of the claim. The Participant or Beneficiary (or his duly authorized representative) may review pertinent documents and submit issues and comments in writing to the Plan Administrator. If the Participant or Beneficiary fails to appeal such action to the Plan Administrator in writing within the prescribed period of time, the Plan Administrator's adverse determination shall be final, binding and conclusive. Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the applicant is entitled to them.

**3.9.2 Appeal.** If the Plan Administrator receives from a Participant or a Beneficiary, within the prescribed period of time, a notice of an appeal of the denial of a claim for benefit, such notice and all relevant materials shall immediately be submitted to the Employer. The Employer may hold a hearing or otherwise ascertain such facts as it deems necessary and shall render a decision that shall be binding upon both parties.

The decision of the Employer shall be made within sixty (60) days after the receipt by the Plan Administrator of the notice of appeal, unless special circumstances require an extension of time for processing, in which case a decision of the Employer shall be rendered as soon as possible but not later than one hundred twenty (120) days after receipt of the request for review. If such an extension of time is required, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. The decision of the Employer, in writing, shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based and shall be promptly furnished to the claimant. Benefits under this Plan granted pursuant to such an appeal will be paid only if the Employer decides in his discretion that the applicant is entitled to them.

7658

# ARTICLE 10

## AMENDMENT AND TERMINATION

**3.10.1  Right to Amend.**  The Employer may at any time or times amend the Plan and Trust, in whole or in part. The Employer specifically reserves the right to amend the Plan retroactively.

**3.10.2  Delegation.**  Each employer and each affiliated employer that is a party to this Agreement expressly delegates authority to Diagnostic & Clinical Cardiology, P.A. the right to amend any part of the Plan on its behalf. Diagnostic & Clinical Cardiology, P.A. shall submit a copy of the amendment to each other employer that has adopted the Plan.  Each employer or affiliated employer may revoke such authority to amend the Plan on its behalf by written notice to Diagnostic & Clinical Cardiology, P.A. of such revocation.

**3.10.3  Manner of Amending.**  Each amendment of this Plan shall be made by delivery to the Trustee of a copy of the resolution of the Employer that sets forth such amendment.

**3.10.4  Limitations on Amendments.**

(a)  No amendment shall be made to this Plan which shall:

(1) Directly or indirectly operates to give the Employer any interest whatsoever in the assets of the Trust or custodial account or to deprive any Participant or Beneficiary of his vested and non-forfeitable interest in the assets of the Trust as then constituted, or cause any part of the income or corpus of the Trust to be used for, or diverted to purposes other than the exclusive benefit of Participants or their Beneficiaries;

(2) Increases the duties or liabilities of the Trustee without the Trustee's prior written consent; or

(3) Changes the vesting schedule under the Plan if the non-forfeitable percentage of the Account Balance derived from Employer contributions (determined as of the later of the date such amendment is adopted or the date such amendment becomes effective) of any Participant is less than such non-forfeitable percentage computed without regard to such amendment.

(b)  No amendment to the Plan shall be effective to eliminate or restrict an optional form of benefit.  The preceding sentence shall not apply to a plan amendment that eliminates or restricts the ability of a Participant to receive payment of his or her Account Balance under a particular optional form of benefit if the amendment satisfies the conditions in (1) and (2) below:

(1) The amendment provides a single-sum distribution form that is otherwise identical to the optional form of benefit eliminated or restricted.  For purposes of this condition, a single-sum distribution form is otherwise identical only if it is identical in all respects to the eliminated or restricted optional form of benefit (or would be identical except that it provides greater rights to the Participant) except with respect to the timing of payments after commencement.

(2) The amendment shall not apply to any distribution with an Annuity Starting Date earlier than the earlier of (i) the ninetieth (90th) day after the date the Participant receiving the distribution has been furnished a summary of material modifications that satisfies the requirements of Labor regulation 2520.104b-3, or (ii) the first day of the second Plan Year following the Plan Year in which the amendment is adopted.

(c)  If the vesting schedule of a Plan is amended, any Participant as of the later of the date such amendment is adopted or becomes effective, shall be vested and have a non-forfeitable

percentage (determined as of such date) of his Employer provided Account Balance not less than the percentage computed under the Plan without regard to such amendment.

If a Plan amendment changes the vesting schedule, or the Plan is amended in any way that directly or indirectly affects the computation of the Participant's non-forfeitable percentage, or if the Plan is deemed amended by an automatic change to or from a Top-Heavy vesting schedule, each Participant who has completed three (3) Years of Vesting Service, (or in the case of Participants who do not have at least one (1) Hour of Service in any Plan Year beginning after 1988, five (5) Years of Vesting Service), may elect within a reasonable period after the adoption of such amendment to have his non-forfeitable percentage computed without regard to such amendment or change. The period during which the election may be made shall commence with the date the amendment is adopted or deemed to be made and shall end sixty (60) days after the latest of the date:

       (1) the amendment is adopted;

       (2) the amendment becomes effective; or

       (3) the Employer or Plan Administrator issues the Participant written notice of the amendment.

**3.10.5 Voluntary Termination.** The Employer may terminate the Plan at any time by delivering to the Trustee an instrument in writing that designates such termination. Following termination of the Plan, the Trust will continue until the interest of each Participant has been distributed.

**3.10.6 Involuntary Termination.** The Plan shall terminate if (a) the Employer is dissolved or adjudicated bankrupt or insolvent in appropriate proceedings, or if a general assignment is made by the Employer for the benefit of creditors, or (b) the Employer loses its identity by consolidation or merger into one or more corporations or organizations, unless within ninety (90) days after such consolidation or merger, such corporations or organizations elect to continue the Plan.

**3.10.7 Withdrawal by Employer.** The Employer may withdraw from participation under the Plan without terminating the Trust upon making a transfer of the Trust assets to another Plan, which shall be deemed to constitute an amendment in its entirety of the Trust.

**3.10.8 Powers Pending Final Distribution.** Until final distribution of the assets of the Trust, the Plan Administrator and Trustee shall continue to have all the powers provided under this Plan as are necessary for the orderly administration, liquidation and distribution of the assets of the Trust.

7660

# ARTICLE 11

# PORTABILITY

**3.11.1  Continuance by Successor.**  In the event of the dissolution, consolidation, or merger of the Employer, or the sale by the Employer of its assets, the resulting successor person or persons, firm or corporations may continue this Plan by (a) adopting the Plan by appropriate resolution; (b) appointing a new Trustee as though the Trustee (including all members of a group of individuals acting as Trustee) had resigned; and (c) executing a proper agreement with the new Trustee.  In such event, each Participant in this Plan shall have an interest in the Plan after the dissolution, consolidation, merger, or sale of assets, at least equal to the interest that he had in the Plan immediately before the dissolution, consolidation, merger, or sale of assets. Any Participants who do not accept a position with such successor within a reasonable time shall be deemed terminated.  If, within ninety (90) days from the effective date of such dissolution, consolidation, merger, or sale of assets, such successor does not adopt this Plan, as provided herein, the Plan shall automatically be terminated and deemed an involuntary termination.

**3.11.2  Merger with Other Plan.**  In the event of the merger or consolidation with, or transfer of assets or liabilities to, any other deferred compensation plan and trust, each Participant shall have an interest in such which is equal to or greater than the interest which he had in this Plan immediately before such merger, consolidation, or transfer, and if such other Plan thereafter terminates, each Participant shall be entitled to an Account Balance which is equal to or greater than the Account Balance to which he would have been entitled immediately before such merger, consolidation, or transfer if this Plan had then terminated, as adjusted for any investment gains or losses since such merger, consolidation, or transfer.

**3.11.3  Transfers from Other Plans.**  The Employer may cause all or any of the assets held in connection with any other plan or trust which is maintained by the Employer for the benefit of its Employees and satisfies the applicable requirements of the Code relating to qualified plans and trusts to be transferred to the Trustee, whether such transfer is made pursuant to a merger or consolidation of this Plan with such other plan or trust or for any other allowable purpose. In general, the rollover contributions may be accepted by the Trustee and held for the benefit of a Participant from a conduit individual retirement account and any other plan or trust which is maintained by any other employer for the benefit of its employees and satisfies the applicable requirements of the Code relating to qualified plans and trusts. However, the Employer reserves the right to permit or deny a rollover, in whole or in part, based on the characteristics of the underlying assets. A rollover contribution may include in-kind assets, except Participant loans.

Any such assets so transferred (rolled over) to the Trustee shall be accompanied by written instructions from the employer, or the trustee, custodian or individual holding such assets, setting forth the name of each Participant for whose benefit such assets have been transferred and showing separately the respective contributions by the employer and by the Participant and the current value of the assets attributable thereto.  Upon receipt by the Trustee of such assets, the Trustee shall place such assets in a Segregated Fund for the Participant and the Participant shall be deemed to be one hundred (100%) percent vested and have a non-forfeitable interest in any such assets. The Participant will maintain investment control over such assets.

Notwithstanding the above, if the transferor plan is another plan of the Employer and the Employer initiated the transfer or if the Plan is a restated money purchase plan, the Account Balances shall continue to vest according to the schedule in Section 2.4.1. If the transferor plan maintained a vesting schedule that differs from the one specified in Section 2.4.1, such transferred Account Balances shall vest according to the schedule that provides the greatest vesting percentage.

In the event that this Plan is a direct or indirect transferee of a defined benefit plan, money purchase plan, target benefit plan, stock bonus plan, or a profit sharing plan subject to the survivor annuity requirements of Code sections 401(a)(11) and 417, any transferred assets shall remain subject to such requirements and this Plan shall provide such annuity distribution options as the transferor plan. Unless

-63-

7661

this Plan is also subject to such survivor annuity requirements, the annuity distribution option shall only apply to those assets that were transferred and any earnings thereon. Furthermore, any such transferred assets and associated earnings shall be distributed to the Participant only if: (a) he terminates employment with the Employer, attains Normal Retirement Age, becomes disabled, or dies, (b) the Plan should subsequently terminate, or (c) the Employer spin-offs the business unit to which the Participant is a member.

### 3.11.4 Transfer to Other Plans.

The Trustee, upon written direction by the Employer, shall transfer some or all of the assets held under the Trust to another plan or trust of the Employer or any other employer meeting the requirements of the Code relating to qualified plans and trusts, whether such transfer is made pursuant to a merger or consolidation of this Plan with such other plan or trust or for any other allowable purpose.

In addition, upon the termination of employment of any Participant and receipt by the Plan Administrator of a request in writing, the Participant may request that any distribution from the Trust to which he is entitled shall be transferred to an individual retirement account, an individual retirement annuity, or any other plan or trust which is maintained by some other employer for the benefit of its employees and satisfies the applicable requirements of the Code relating to qualified plans and trusts. Upon receipt of any such written request, the Plan Administrator shall cause the Trustee to transfer the assets so directed and, as appropriate, shall direct the Insurer to transfer to the new trustee any applicable insurance policies issued on the Participant.

### 3.11.5 Direct Rollover.

With respect to distributions from the Plan made on or after January 1, 1993, and notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible Rollover Distribution that is equal to at least $500 paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover. If the entire Eligible Rollover Distribution is less than $500, but more than $200, the entire amount may be paid directly to an Eligible Retirement Plan.

7662

# ARTICLE 12

## MISCELLANEOUS

**3.12.1 No Reversion to Employer.** Except as specifically provided in the Plan, no part of the corpus or income of the Trust shall revert to the Employer or be used for, or diverted to purposes other than for the exclusive benefit of Participants and their Beneficiaries.

**3.12.2 Employer Actions.** Any action by the Employer pursuant to the provisions of the Plan shall be evidenced by appropriate resolution or by written instrument executed by any person authorized by the Employer to take such action.

**3.12.3 Execution of Receipts and Releases.** Any payment to any person eligible to receive benefits under this Plan, in accordance with the provisions of the Plan, shall, to the extent thereof, be in full satisfaction of all claims hereunder. The Plan Administrator may require such person, as a condition precedent to such payment, to execute a receipt and release therefore in such form, as he shall determine.

**3.12.4 Rights of Participants Limited.** Neither the creation of this Plan and Trust nor anything contained in this Plan shall be construed as giving any Participant, Beneficiary or Employee any equity or other interest in the assets, business or affairs of the Employer, or the right to complain about any action taken by or about any policy adopted or pursued by, the Employer, or as giving any Employee the right to be retained in the service of the Employer; and all Employees shall remain subject to discharge to the same extent as if the Plan had never been executed. Prior to the time that distributions are made in conformity with the provisions of the Plan, neither the Participants, nor their spouses, Beneficiaries, heirs-at-law, or legal representatives shall receive or be entitled to receive cash or any other thing of current exchangeable value, from either the Employer or the Trustee as a result of the Plan or the Trust.

**3.12.5 Persons Dealing with Trustee Protected.** No person dealing with the Trustee shall be required or entitled to see to the application of any money paid or property delivered to the Trustee, or determine whether the Trustee is acting pursuant to the authorities granted to the Trustee hereunder or to authorizations or directions herein required. The certificate of the Trustee that the Trustee is acting in accordance with the Plan shall protect any person relying thereon.

**3.12.6 Protection of the Insurer.** An Insurer shall not be responsible for the validity of the Plan or Trust and shall have no responsibility for action taken or not taken by the Trustee, for determining the propriety of accepting premium payments or other contributions, for making payments in accordance with the direction of the Trustee, or for the application of such payments. The Insurer shall be fully protected in dealing with any representative of the Employer or any one of a group of individuals acting as Trustee. Until written notice of a change of Trustee has been received by an Insurer at its home office, the Insurer shall be fully protected in dealing with any party acting as Trustee according to the latest information received by the Insurer at its home office.

**3.12.7 No Responsibility for Act of Insurer.** Neither the Employer, the Plan Administrator, or the Trustee shall be responsible for any of the following, nor shall they be liable for instituting action in connection with:

    (a) The validity of policies or policy provisions;

    (b) Failure or refusal by the Insurer to provide benefits under a policy;

    (c) An act by a person which may render a policy invalid or unenforceable; or

    (d) Inability to perform or delay in performing an act, which inability or delay is occasioned by a provision of a policy or a restriction imposed by the Insurer.

7663

**3.12.8 Inalienability.** The right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process. The preceding shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a Qualified Domestic Relations Order, as defined in section 414(p) of the Code, or any domestic relations order entered before January 1, 1985.

Notwithstanding the above, the foregoing shall not apply to judgments, orders and decrees issued, and settlement agreements entered into, on or after August 5, 1997, which offset the Participant's benefits provided under this Plan if:

(a)  the order or requirement to pay arises:

(1) under a judgment of conviction for a crime involving this Plan,

(2) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of the Act, or

(3) pursuant to a settlement agreement between the Secretary of Labor and the Participant, in connection with a violation (or alleged violation) of part 4 of such subtitle by a Fiduciary or any other person,

(b)  the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits provided under the Plan, and

(c)  in a case in which the survivor annuity requirements of Code section 401(a)(11) apply with respect to distributions from the Plan to the Participant, if the Participant has a spouse at the time at which the offset is to be made:

(1) either such spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the Plan (or it is established to the satisfaction of a Plan representative that such consent may not be obtained by reason of circumstances described in section 417(a)(2)(B) of the Code), or an election to waive the right of the spouse to either a Qualified Joint and Survivor Annuity or a Qualified Pre-Retirement Survivor Annuity is in effect in accordance with the requirements of section 417(a) of the Code,

(2) such spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the Plan in connection with a violation of part 4 of such subtitle, or

(3) in such judgment, order, decree, or settlement, such spouse retains the right to receive the survivor annuity under a Qualified Joint and Survivor Annuity or under a Qualified Pre-Retirement Survivor Annuity, where such survivor annuity equals the survivor annuity determined under the Plan assuming that:

(i)  the Participant terminated employment on the date of the offset,

(ii)  there was no offset,

(iii)  benefits commence at the Participant's Normal Retirement Date (or current age if later),

-66-

(iv)  the Qualified Joint and Survivor Annuity survivor percentage is fifty (50%) percent (even if another percentage is selected in Section 1.2.61), and

(v)  the Qualified Pre-Retirement Survivor Annuity is fifty (50%) percent of such Qualified Joint and Survivor Annuity.

In the event a Participant's benefits are attached by order of any court, the Plan Administrator may bring an action for a declaratory judgment in a court of competent jurisdiction to determine the proper recipient of the benefits to be paid by the Plan. During the pendency of the action, the Plan Administrator shall cause any benefits payable to be paid to the court for distribution by the court, as it considers appropriate.

### 3.12.9  Qualified Domestic Relations Orders.  The Plan Administrator shall adhere to the terms of any judgment, decree or order (including approval of a property settlement agreement) which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a Participant and is made pursuant to a state domestic relations law (including a community property law) and which creates or recognizes the existence of an Alternate Payee's right to, or assigns to an Alternate Payee the right to, receive all or a portion of the benefits payable with respect to a Participant.

Any such domestic relations order must clearly specify the name and last known mailing address of the Participant and the name and mailing address of each Alternate Payee covered by the order, the amount or percentage of the Participant's benefit to be paid by the Plan to each such Alternate Payee, or the manner in which such amount or percentage is to be determined, the number of payments or period to which such order applies, and each plan to which such order applies.

Any such domestic relations order shall not require the Plan to provide any type or form of benefit, or any option not otherwise provided under the Plan, to provide increased benefits, or the payment of benefits to an Alternate Payee which are required to be paid to another Alternate Payee under another order previously determined to be a Qualified Domestic Relations Order.

Distributions to an Alternate Payee are permitted on or after the date a Domestic Relations Order is determined to be a Qualified Domestic Relations Order, even if the Participant continues to be employed and has not attained the "earliest possible retirement age" pursuant to section 414(p) of the Code.

For this purpose, the "earliest possible retirement age" under the Plan means the earlier of: (a) the date on which the Participant is entitled to a distribution under the Plan, or (b) the later of the date the Participant attains age 50, or the earliest date on which the Participant could begin receiving benefits under the Plan if the Participant separated from service.

The payment of benefits to an Alternate Payee before the Participant has separated from service shall be determined as if the Participant had retired, or otherwise terminated employment, on the date on which such payment is to begin under the Qualified Domestic Relations Order, (but taking into account only the benefits actually accrued), and may be paid in any form in which such benefits may be paid under the Plan to the Participant (other than the form of a Joint and Survivor Annuity with respect to the Alternate Payee and his or her subsequent spouse).

To the extent provided in the Qualified Domestic Relations Order, the former spouse of a Participant shall be treated as a surviving spouse of such Participant for purposes of sections 401(a)(11) and 417 of the Code (and any spouse of the Participant shall not be treated as a spouse of the Participant for such purposes) and if married for at least one (1) year, the surviving former spouse shall be treated as meeting the requirements of section 417(d) of the Code.

The Plan Administrator shall promptly notify the Participant and each Alternate Payee of the receipt of a domestic relations order by the Plan and the Plan's procedures for determining the qualified status of domestic relations orders.  Within a reasonable period after receipt of a domestic relations order,

7665

the Plan Administrator shall determine whether such order is a Qualified Domestic Relations Order and shall notify the Participant and each Alternate Payee of such determination. If the Participant or any affected Alternate Payee disagrees with the determinations of the Plan Administrator, the disagreeing party shall be treated as a claimant and the claims procedure Section 3.9 shall be followed. The Plan Administrator may bring an action for a declaratory judgment in a court of competent jurisdiction to determine the proper recipient of the benefits to be paid by the Plan.

During any period in which the issue of whether a domestic relations order is a Qualified Domestic Relations Order is being determined (by the Plan Administrator, by a court of competent jurisdiction or otherwise), the Plan Administrator shall separately account for the amounts which would have been payable to the Alternate Payee during such period if the order had been determined to be a Qualified Domestic Relations Order. If, within the eighteen (18) month period beginning on the date on which the first payment would be required to be made under the domestic relations order, the order (or modification thereof) is determined to be a Qualified Domestic Relations Order, the Plan Administrator shall pay the segregated amounts, including any interest thereon, to the person or persons entitled thereto. If within such eighteen (18) month period it is determined that the order is not a Qualified Domestic Relations Order or the issue as to whether such order is a Qualified Domestic Relations Order is not resolved, then the Plan Administrator shall pay the segregated amounts, including any interest thereon, to the person or persons who would have been entitled to such amounts if there had been no order. Any determination that an order is a Qualified Domestic Relations Order, which is made after the close of the eighteen (18) month period, shall be applied prospectively only.

**3.12.10  Authorization to Withhold Taxes.**  The Trustee is authorized in accordance with applicable law to withhold from distribution to any payee such sums as may be necessary to cover federal and state taxes which may be due with respect to such distributions.

**3.12.11  Missing Persons.**  If the Trustee mails by registered or certified mail, postage prepaid, to the last known address of a Participant or Beneficiary, a notification that the Participant or Beneficiary is entitled to a distribution and if (a) the notification is returned to the post office because the addressee cannot be located at such address and if neither the Employer, the Plan Administrator nor the Trustee shall have any knowledge of the whereabouts of such Participant or Beneficiary within three (3) years from the date such notification was mailed, or (b) within three (3) years after such notification was mailed to such Participant or Beneficiary, he does not respond thereto by informing the Trustee of his whereabouts, the ultimate disposition of the then undistributed vested Account Balance of such Participant (or his Beneficiary) shall be determined in accordance with the then applicable Federal laws, rules and regulations. If any portion of the vested Account Balance is forfeited because the Participant or Beneficiary cannot be found, such portion shall be reinstated if a claim is later made by the Participant or Beneficiary.

**3.12.12  Notices.**  Any notice or direction to be given in accordance with the Plan shall be deemed to have been effectively given if hand delivered to the recipient or sent by certified mail, return receipt requested, to the recipient at the recipient's last known address. At any time that a group of individuals is acting as Trustee, notice to the Trustee may be given by giving notice to any one or more of such individuals.

**3.12.13  Governing Law.**  The provisions of this Plan and Trust shall be construed, administered and enforced in accordance with the provisions of the Act and, to the extent applicable, the laws of the state in which the Employer has its principal place of business. All contributions to the Trust shall be deemed to take place in such state.

**3.12.14  Severability of Provisions.**  In the event that any provision of this Plan and Trust shall be held to be illegal, invalid or unenforceable for any reason, said illegality, invalidity or unenforceability shall not affect the remaining provisions, but shall be fully severable and the Plan and Trust shall be construed and enforced as if said illegal, invalid or unenforceable provisions had never been inserted herein.

**3.12.15  Gender and Number.**  Whenever appropriate, words used in the singular shall include the plural, and the masculine gender shall include the feminine gender and vice versa.

**7666**

**3.12.16  Binding Effect.** The Plan and Trust, and all actions and decisions hereunder, shall be binding upon the heirs, executors, administrators, successors and assigns of any and all parties hereto and Participants, present and future.

**3.12.17  Qualification under Internal Revenue Laws.** The Employer intends that the Plan and Trust qualify under the applicable provisions of the Code.  Until advised to the contrary, the Trustee may assume that the Plan and Trust are so qualified and are entitled to tax exemption under the Code.

7667

## ARTICLE 13

### EXECUTION OF AGREEMENT

**3.13.1 Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be considered an original, and no other counterparts need be produced.

**3.13.2 Acceptance by Trustee.** The Trustee, by joining in the execution of this Agreement, hereby signifies the Trustee's acceptance thereof.

**3.13.3 Execution.** To record the adoption of this Plan and Trust the Employer and each affiliated employer, if any, has caused this Agreement to be executed by its duly qualified officers and the Trustee has executed this Agreement, as of the day and year first above written.

**Employer:**
Diagnostic & Clinical Cardiology, P.A.

**Trustee:**

Mario Criscito, M.D.
Employer

Mario Criscito
Trustee

-70-

7668

# Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan

## EGTRRA AMENDMENT FOR MONEY PURCHASE AND PROFIT SHARING PLANS

This amendment of the Plan is adopted to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"). This amendment is intended as good faith compliance with the requirements of EGTRRA and is to be construed in accordance with EGTRRA and guidance issued thereunder. Except as otherwise provided, this amendment shall be effective as of the first day of the first plan year beginning after December 31, 2001.

This amendment shall supersede the provisions of the plan to the extent those provisions are inconsistent with the provisions of this amendment.  Where appropriate, the term "Plan" shall mean plan, trust, adoption agreement and GUST Appendix or snap-off attachment.

7669

**SECTION 1.  PLAN LOANS FOR OWNER-EMPLOYEES AND SHAREHOLDER EMPLOYEES**

☒   Not Applicable

☐   Effective for plan loans made after December 31, 2001, Plan provisions prohibiting loans to any owner-employee or shareholder-employee shall cease to apply.

7670

## SECTION 2.  LIMITATIONS ON CONTRIBUTIONS

This section shall be effective for Limitation Years beginning after December 31, 2001.

Maximum Annual Additions

Except to the extent permitted under section 414(v) of the Code, if applicable, the Annual Addition that may be contributed or allocated to a Participant's account under the plan for any Limitation Year shall not exceed the lesser of:

(a) $40,000, as adjusted for increases in the cost-of-living under section 415(d) of the Code, or

(b) One hundred (100%) percent of the Participant's compensation, within the meaning of section 415(c)(3) of the Code, for the Limitation Year.

## SECTION 3.  INCREASE IN COMPENSATION LIMIT

The "annual compensation" of each Participant taken into account in determining allocations for any Plan Year shall not exceed $200,000, as adjusted for cost-of-living increases in accordance with section 401(a)(17)(B) of the Code.  "Annual compensation" means compensation during the Plan Year or such other consecutive 12-month period over which compensation is otherwise determined under the Plan (the determination period). The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

☒  Effective for Plan Years beginning after December 31, 2001

☐  Effective for Plan Years beginning after December 31, 2002

7672

## SECTION 4.  MODIFICATION OF TOP-HEAVY RULES

This section shall apply for Plan Years beginning after December 31, 2001.

Definition of Key Employee.

"Key Employee" shall mean any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the Determination Date was an officer of the Employer having "annual compensation" greater than $130,000 (as adjusted under section 416(i)(1) of the Code for Plan Years beginning after December 31, 2002), a 5-percent owner of the Employer, or a 1-percent owner of the Employer having annual compensation of more than $150,000. For this purpose, "annual compensation" means compensation within the meaning of section 415(c)(3) of the Code.  The determination of who is a Key Employee will be made in accordance with section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

Determination of Top-Heavy Status.

The present values of accrued benefits and the amounts of account balances of an Employee as of the Determination Date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under section 416(g)(2) of the Code during the 1-year period ending on the Determination Date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than separation from service, severance from employment, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

The accrued benefits and accounts of any individual who has not performed services for the Employer during the 1-year period ending on the Determination Date shall not be taken into account.

Contributions under Other Plans.

The Employer may provide that the minimum benefit requirement shall be met in another plan (including another plan that consists solely of a cash or deferred arrangement which meets the requirements of section 401(k)(12) of the Code and matching contributions with respect to which the requirements of section 401(m)(11) of the Code are met).

☒ Not Applicable -  no other plan or Top-Heavy minimum provided in this Plan.

☐ _____

Name of other plan to which Top-Heavy minimum shall be made

☐ Other: _____

(Must preclude Employer discretion.)

7673

## SECTION 5. DIRECT ROLLOVERS OF PLAN DISTRIBUTIONS

**This section shall apply to distributions made after December 31, 2001.**

Modification of Definition of Eligible Retirement Plan.

For purposes of the direct rollover provisions of the plan, an Eligible Retirement Plan shall also mean an annuity contract described in section 403(b) of the Code and an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. The definition of Eligible Retirement Plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the Alternate Payee under a qualified domestic relation order, as defined in section 414(p) of the Code.

Modification of Definition of Eligible Rollover Distribution.

☒  Not Applicable - Plan does not permit after-tax employee contributions.

☐  For purposes of the direct rollover provisions of the Plan, a portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in section 408(a) or (b) of the Code, or to a qualified defined contribution plan account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

For purposes of the direct rollover provisions of the plan, any amount that is distributed on account of hardship shall not be an Eligible Rollover Distribution and the Distributee may not elect to have any portion of such a distribution paid directly to an Eligible Retirement Plan.

7674

## SECTION 6. ROLLOVERS FROM OTHER PLANS

☐ Not Applicable

☒ In addition to the Participant rollover contributions and/or direct rollovers already accepted by the Plan, effective 01/01/2002 (Enter a date no earlier than January 1, 2002), the Plan will accept:

The Plan will accept a direct rollover of an Eligible Rollover Distribution from: (Check each that applies or none.)

☒ a qualified plan described in section 401(a) or 403(a) of the Code, excluding after-tax employee contributions.

☐ a qualified plan described in section 401(a) or 403(a) of the Code, including after-tax employee contributions.

☒ an annuity contract described in section 403(b) of the Code, excluding after-tax employee contributions.

☐ an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state.

<u>Participant Rollover Contributions from Other Plans:</u>

The plan will accept a Participant contribution of an Eligible Rollover Distribution from: (Check each that applies or none.)

☒ a qualified plan described in section 401(a) or 403(a) of the Code.

☒ an annuity contract described in section 403(b) of the Code.

☐ an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state.

<u>Participant Rollover Contributions from IRAs:</u>

The Plan: (Choose one.)

☐ will
☒ will not

accept a Participant rollover contribution of the portion of a distribution from an individual retirement account or annuity describe in section 408(a) or 408(b) of the code that is eligible to be rolled over and would otherwise be includible in gross income.

7675

## SECTION 7. ROLLOVERS DISREGARDED IN INVOLUNTARY CASH OUTS

☐ Not Applicable.  No involuntary cash out

☒ The Employer elects to maintain the Plan provision including the Participant's rollover contributions in determining the value of the Participant's non-forfeitable account balance for purposes of the Plan's involuntary cash-out rules.

☐ The Employer elects to exclude a Participant's rollover contributions in determining the value of the Participant's non-forfeitable account balance for purposes of the Plan's involuntary cash-out rules. The value of a Participant's non-forfeitable account balance shall be determined without regard to that portion of the account balance that is attributable to rollover contributions (and earnings allocable thereto) within the meaning of sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16) of the Code. If the value of the Participant's non-forfeitable account balance as so determined is less than the Involuntary Cash Out threshold specified in the Plan, the Trustee shall immediately distribute the Participant's entire non-forfeitable account balance. This election shall apply with respect to distributions made after:

_____/_____/_____ (Enter a date no earlier than December 31, 2001.)

with respect to Participants who separated from service after:

_____/_____/_____ (Enter date. The date may be earlier than December 31, 2001.)

* * * * *

The Employer hereby adopts this as evidenced by the foregoing this 23rd day of May, 2005.

**Employer:**
Diagnostic & Clinical Cardiology, P.A.

Mario Criscito, M.D.
Employer

**7676**