**EXHIBIT 76**

Form **5500**

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

## Annual Return/Report of Employee Benefit Plan

This form is required to be filed under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code).

▶ Complete all entries in accordance with the instructions to the Form 5500.

Official Use Only
OMB Nos. 1210 - 0110
1210 - 0089

**2005**

This Form is Open to Public Inspection.

**Part I   Annual Report Identification Information**

For the calendar plan year 2005 or fiscal plan year beginning _____ and ending _____

**A** This return/report is for: (1) ☐ a multiemployer plan; (3) ☐ a multiple-employer plan; or
(2) ☒ a single-employer plan (other than a multiple-employer plan); (4) ☐ a DFE (specify) _____

**B** This return/report is: (1) ☐ the first return/report filed for the plan; (3) ☐ the final return/report filed for the plan;
(2) ☐ an amended return/report; (4) ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here .................................................. ▶ ☐

**D** If filing under an extension of time or the DFVC program, check box and attach required information. (see instructions) ........... ▶ ☐

**Part II   Basic Plan Information** — enter all requested information. ........................................ ▶ ☒

**1a** Name of plan
DIAGNOSTIC & CLINICAL CARDIOLOGY,
P.A. PROFIT SHARING PLAN

**1b** Three-digit plan number (PN) ▶ | 002

**1c** Effective date of plan (mo., day, yr.)
04/01/1976

**2a** Plan sponsor's name and address (employer, if for a single-employer plan)
(Address should include room or suite no.)
DIAGNOSTIC & CLINICAL
CARDIOLOGY, P.A.
%MARIO CRISCITO
32 CHELSEA DRIVE
LIVINGSTON, N.J. 07039-3420

**2b** Employer Identification Number (EIN)
22-2323990

**2c** Sponsor's telephone number
973-731-9442

**2d** Business code (see instructions)
621111

Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report if it is being filed electronically, and to the best of my knowledge and belief, it is true, correct and complete.

SIGN HERE
Signature of plan administrator _____ Date 10/4/06
MARIO CRISCITO, M.D.
Type or print name of individual signing as plan administrator

SIGN HERE
Signature of employer/plan sponsor/DFE _____ Date 10/4/06
MARIO CRISCITO, M.D.
Type or print name of individual signing as employer, plan sponsor or DFE

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.   v8.2   Form **5500** (2005)

0  2  0  5  5  4  0  1  0  H

OCT 23 2006

PLAINTIFF'S EXHIBIT
CRISCITO 19
12-4-09
PENGAD 800-631-6989

Form 5500 (2005)

Page **2**

**3a** Plan administrator's name and address (If same as plan sponsor, enter "Same")
SAME

**3b** Administrator's EIN

**3c** Administrator's telephone number

Official Use Only

**4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report below:

**a** Sponsor's name

**b** EIN

**5** Preparer information (optional)    **a** Name (including firm name, if applicable) and address

AMERICAN PENSION CORPORATION

1375 PLAINFIELD AVENUE

WATCHUNG                                              NJ        07069-0000

**c** PN

**b** EIN

22-2141197

**c** Telephone number

908-757-5151

| | | | |
|---|---|---|---|
| **6** | Total number of participants at the beginning of the plan year | **6** | 62 |
| **7** | Number of participants as of the end of the plan year (welfare plans complete only lines 7a, 7b, 7c, and 7d) | | |
| **a** | Active participants | **7a** | 56 |
| **b** | Retired or separated participants receiving benefits | **7b** | 0 |
| **c** | Other retired or separated participants entitled to future benefits | **7c** | 4 |
| **d** | Subtotal. Add lines 7a, 7b, and 7c | **7d** | 60 |
| **e** | Deceased participants whose beneficiaries are receiving or are entitled to receive benefits | **7e** | 0 |
| **f** | Total. Add lines 7d and 7e | **7f** | 60 |
| **g** | Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) | **7g** | 60 |
| **h** | Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested | **7h** | 0 |
| **i** | If any participant(s) separated from service with a deferred vested benefit, enter the number of separated participants required to be reported on a Schedule SSA (Form 5500) | **7i** | 0 |

**8** Benefits provided under the plan (complete 8a and 8b, as applicable)

**a** ☒ Pension benefits (check this box if the plan provides pension benefits and enter the applicable pension feature codes from the List of Plan Characteristics Codes printed in the instructions): [2A] [2E] [2R] [ ] [ ] [ ] [ ] [ ] [ ]

**b** ☐ Welfare benefits (check this box if the plan provides welfare benefits and enter the applicable welfare feature codes from the List of Plan Characteristics Codes printed in the instructions): [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

**9a** Plan funding arrangement (check all that apply)
(1) ☒ Insurance
(2) ☐ Code section 412(i) insurance contracts
(3) ☒ Trust
(4) ☐ General assets of the sponsor

**9b** Plan benefit arrangement (check all that apply)
(1) ☒ Insurance
(2) ☐ Code section 412(i) insurance contracts
(3) ☒ Trust
(4) ☐ General assets of the sponsor

0  2  0  5  5  4  0  2  0  1

Form 5500 (2005)

Page **3**

**10**    Schedules attached (Check all applicable boxes and, where indicated, enter the number attached. See instructions.)

**Official Use Only**

**a** **Pension Benefit Schedules**

| | | | |
|---|---|---|---|
| (1) | ☒ | **R** | (Retirement Plan Information) |
| (2) | ☐ | **B** | (Actuarial Information) |
| (3) | ☐ | **E** | (ESOP Annual Information) |
| (4) | ☐ | **SSA** | (Separated Vested Participant Information) |

**b** **Financial Schedules**

| | | | | |
|---|---|---|---|---|
| (1) | ☐ | | **H** | (Financial Information) |
| (2) | ☒ | | **I** | (Financial Information -- Small Plan) |
| (3) | ☒ | 1 | **A** | (Insurance Information) |
| (4) | ☐ | | **C** | (Service Provider Information) |
| (5) | ☐ | | **D** | (DFE/Participating Plan Information) |
| (6) | ☐ | | **G** | (Financial Transaction Schedules) |
| (7) | ☒ | 1 | **P** | (Trust Fiduciary Information) |





**SCHEDULE I**
**(Form 5500)**

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

# Financial Information — Small Plan

This schedule is required to be filed under Section 104 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).

▶ File as an attachment to Form 5500.

Official Use Only

OMB No. 1210–0110

## 2005

This Form is Open to Public Inspection.

For calendar year 2005 or fiscal plan year beginning _____ and ending _____

| A Name of plan | | B Three-digit plan number ▶ | 002 |
|---|---|---|---|
| DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. PROFIT SHARI | | | |
| C Plan sponsor's name as shown on line 2a of Form 5500 | | D Employer Identification Number | |
| DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. | | 22-2323990 | |

Complete Schedule I if the plan covered fewer than 100 participants as of the beginning of the plan year. You may also complete Schedule I if you are filing as a small plan under the 80–120 participant rule (see instructions). Complete Schedule H if reporting as a large plan or DFE.

**Part I** **Small Plan Financial Information**

Report below the current value of assets and liabilities, income, expenses, transfers and changes in net assets during the plan year. Combine the value of plan assets held in more than one trust. Do not enter the value of the portion of an insurance contract that guarantees, during this plan year to pay a specific dollar benefit at a future date. Include all income and expenses of the plan including any trust(s) or separately maintained fund(s) and any payments/receipts from insurance carriers. Round off amounts to the nearest dollar.

| 1 | Plan Assets and Liabilities: | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|---|
| a | Total plan assets | **1a** | 9565020 | 6535736 |
| b | Total plan liabilities | **1b** | 0 | 0 |
| c | Net plan assets (subtract line 1b from line 1a) | **1c** | 9565020 | 6535736 |



| 2 | Income, Expenses, and Transfers for this Plan Year: | | (a) Amount | (b) Total |
|---|---|---|---|---|
| a | Contributions received or receivable | | | |
| | (1) Employers | **2a(1)** | | |
| | (2) Participants | **2a(2)** | 874616 | |
| | (3) Others (including rollovers) | **2a(3)** | | |
| b | Noncash contributions | **2b** | | |
| c | Other income | **2c** | | |
| d | Total income (add lines 2a(1), 2a(2), 2a(3), 2b, and 2c) | **2d** | 624335 | |
| e | Benefits paid (including direct rollovers) | **2e** | | 1498951 |
| f | Corrective distributions (see instructions) | **2f** | 4528235 | |
| g | Certain deemed distributions of participant loans (see instructions) | **2g** | | |
| h | Other expenses | **2h** | | |
| i | Total expenses (add lines 2e, 2f, 2g, and 2h) | **2i** | | |
| j | Net income (loss) (subtract line 2i from line 2d) | **2j** | | 4528235 |
| k | Transfers to (from) the plan (see instructions) | **2k** | | -3029284 |

| 3 | Specific Assets: If the plan held assets at anytime during the plan year in any of the following categories, check "Yes" and enter the current value of any assets remaining in the plan as of the end of the plan year. Allocate the value of the plan's interest in a commingled trust containing the assets of more than one plan on a line-by-line basis unless the trust meets one of the specific exceptions described in the instructions. | | Yes | No | Amount |
|---|---|---|---|---|---|
| a | Partnership/joint venture interests | **3a** | | X | |
| b | Employer real property | **3b** | | X | |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the Instructions for Form 5500.        v8.2        Schedule I (Form 5500) 2005



2 0 0 5 5 4 0 1 0 H

Schedule I (Form 5500) 2005

Page **2**

| | | | Yes | No | Official Use Only<br>Amount |
|---|---|---|---|---|---|
| **3c** | Real estate (other than employer real property) | **3c** | | X | |
| **d** | Employer securities | **3d** | | X | |
| **e** | Participant loans | **3e** | | X | |
| **f** | Loans (other than to participants) | **3f** | | X | |
| **g** | Tangible personal property | **3g** | | X | |

**PART III     Transactions During Plan Year**

**4**  During the plan year:

| | | | Yes | No | Amount |
|---|---|---|---|---|---|
| **a** | Did the employer fail to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3–102? (See instructions and DOL's Voluntary Fiduciary Correction Program.) | **4a** | | X | |
| **b** | Were any loans by the plan or fixed income obligations due the plan in default as of the close of the plan year or classified during the year as uncollectible? Disregard participant loans secured by the participant's account balance | **4b** | | X | |
| **c** | Were any leases to which the plan was a party in default or classified during the year as uncollectible? | **4c** | | X | |
| **d** | Were there any nonexempt transactions with any party-in-interest? (Do not include transactions reported on line 4a.) | **4d** | | X | |
| **e** | Was the plan covered by a fidelity bond? | **4e** | X | | |
| **f** | Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty? | **4f** | | X | 350000 |
| **g** | Did the plan hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser? | **4g** | | X | |
| **h** | Did the plan receive any noncash contributions whose value was neither readily determinable on an established market nor set by an independent third party appraiser? | **4h** | | X | |
| **i** | Did the plan at any time hold 20% or more of its assets in any single security, debt, mortgage, parcel of real estate, or partnership/joint venture interest? | **4i** | | X | |
| **j** | Were all the plan assets either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of the PBGC? | **4j** | | X | |
| **k** | Are you claiming a waiver of the annual examination and report of an independent qualified public accountant (IQPA) under 29 CFR 2520.104–46? If no, attach an IQPA's report or 2520.104–50 statement. (See instructions on waiver eligibility and conditions.) | **4k** | X | | |

**5a**  Has a resolution to terminate the plan been adopted during the plan year or any prior plan year? If yes, enter the amount of any plan assets that reverted to the employer this year. ☐ Yes ☒ No  Amount

**5b**  If during this plan year, any assets or liabilities were transferred from this plan to another plan(s), identify the plan(s) to which assets or liabilities were transferred. (See instructions.)

**5b(1)**  Name of plan(s)

_____

_____

**5b(2)**  EIN(s)

_____

**5b(3)**  PN(s)

_____

2 0 0 5 5 4 0 2 0 1

**SCHEDULE P
(FORM 5500)**

Department of the Treasury
Internal Revenue Service

# Annual Return of Fiduciary
## of Employee Benefit Trust

This schedule may be filed to satisfy the requirements under section 6033(a) for an annual information return from every section 401(a) organization exempt from tax under section 501(a).

Filing this form will start the running of the statute of limitations under section 6501(a) for any trust described in section 401(a) that is exempt from tax under section 501(a).

▶ File as an attachment to Form 5500 or 5500–EZ.

Official Use Only

OMB No. 1210–0110

**2005**

This Form is Open to
Public Inspection.

For trust calendar year 2005 or fiscal year beginning _____ and ending _____

**1a** Name of trustee or custodian

MARIO CRISCITO, M.D.

**b** Number, street, and room or suite no. (If a P.O. box, see the instructions for Form 5500 or 5500–EZ.)

769 NORTHFIELD AVENUE

**c** City or town, state, and ZIP code

WEST ORANGE          NJ        07052-0000

**2a** Name of trust

DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. PROFIT SHARING PLAN

**b** Trust's employer identification number          76-0810624

**3** Name of plan if different from name of trust

SAME

**4** Have you furnished the participating employee benefit plan(s) with the trust financial information required
to be reported by the plan(s)? ................................................................................................

**5** Enter the plan sponsor's employer identification number as shown on Form 5500
or 5500–EZ. ................................................................................................ ▶       ☒ Yes    ☐ No

Under penalties of perjury, I declare that I have examined this schedule, and to the best of my knowledge and belief it is true, correct, and complete.        22-2323990

**SIGN
HERE**     Signature of
fiduciary ▶ _____        Date ▶ _____

For Paperwork Reduction Act Notice and OMB Control Numbers,
see the Instructions for Form 5500 or 5500–EZ.                        v8.2

Schedule P (Form 5500) 2005





**SCHEDULE R**
**(Form 5500)**

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

# Retirement Plan Information

This schedule is required to be filed under sections 104 and 4065 of the Employee Retirement Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).

▶ File as an Attachment to Form 5500.

Official Use Only

OMB No. 1210-0110

**2005**

This Form is Open to Public Inspection.

For calendar year 2005 or fiscal plan year beginning _____ and ending _____

**A** Name of plan
DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A. PROFIT SHARIN

**B** Three-digit plan number ▶ 002

**C** Plan sponsor's name as shown on line 2a of Form 5500
DIAGNOSTIC & CLINICAL CARDIOLOGY, P.A.

**D** Employer Identification Number
22-2323990

## Part I  Distributions

All references to distributions relate only to payments of benefits during the plan year.

1  Total value of distributions paid in property other than in cash or the forms of property specified in the instructions. ...... | **1** | $

2  Enter the EIN(s) of payor(s) who paid benefits on behalf of the plan to participants or beneficiaries during the year (if more than two, enter EINs of the two payors who paid the greatest dollar amounts of benefits). 76-0810624

Profit-sharing plans, ESOPs, and stock bonus plans, skip line 3.

3  Number of participants (living or deceased) whose benefits were distributed in a single sum, during the plan year. | **3** |

## Part II  Funding Information (If the plan is not subject to the minimum funding requirements of section 412 of the Internal Revenue Code or ERISA section 302, skip this Part)

4  Is the plan administrator making an election under Code section 412(c)(8) or ERISA section 302(c)(8)? ........... | ☐ Yes | ☐ No | ☐ N/A
If the plan is a defined benefit plan, go to line 7.

5  If a waiver of the minimum funding standard for a prior year is being amortized in this plan year, see instructions, and enter the date of the ruling letter granting the waiver ............... ▶ Month _____ Day _____ Year _____
If you completed line 5, complete lines 3, 9, and 10 of Schedule B and do not complete the remainder of this schedule.

6a  Enter the minimum required contribution for this plan year .................................... | **6a** | $
b  Enter the amount contributed by the employer to the plan for this plan year ...................... | **6b** | $
c  Subtract the amount in line 6b from the amount in line 6a. Enter the result (enter a minus sign to the left of a negative amount) ...... | **6c** | $
If you completed line 6c, skip lines 7 and 8 and complete line 9.

7  If a change in actuarial cost method was made for this plan year pursuant to a revenue procedure providing automatic approval for the change or a class ruling letter, does the plan sponsor or plan administrator agree with the change?.. | ☐ Yes | ☐ No | ☐ N/A

## Part III  Amendments

8  If this is a defined benefit pension plan, were any amendments adopted during this plan year that increased or decreased the value of benefits? If yes, check the appropriate box(es). If no, check the "No" box. (See instructions.) .......... | ☐ Increase | ☐ Decrease | ☐ No

## Part IV  Coverage (See instructions.)

9  Check the box for the test this plan used to satisfy the coverage requirements ..... | ☐ the ratio percentage test | ☒ average benefit test

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.   v8.2   Schedule R (Form 5500) 2005





2 2 0 5 5 4 0 1 0 J

DCC Procedures for Terminated Employees

Page 1 of 2

Subj:    **DCC Procedures for Terminated Employees**
Date:    10/19/05 1:04:33 P.M. Eastern Daylight Time
From:    Marysue.Mccarthy@morganstanley.com
To:       apc401k@aol.com, Jane.Siedschlag@morganstanley.com

10-19-05

Here are the procedures we recommend for the informative and efficient handling of future requests for DCC retirement plan distributions:

1.) Morgan Stanley is notified of participant's termination of employment. This usually comes in the form of the participant calling Marysue McCarthy at Morgan Stanley requesting information on the process to have the assets rolled over to a self-directed IRA, taking a lump sum distribution, or moving to another custodian.

***The participant will be instructed to write a dated, signed letter (can be faxed) to Morgan Stanley stating they are no longer employed at DCC as of a specific date.***

2.) After Morgan Stanley receives the letter from the participant, we notify Dr. Criscito by e-mail that the participant has informed us of the termination of employment and complied with the letter requirement.

3.) By fax, Morgan Stanley notifies American Pension/Dominique Eck to send out an Election of Benefits form to the participant.

4.) Participant returns completed Election of Benefits form to American Pension.

5.) American Pension records 1099R info, and faxes (770-698-2135 attn: Jane) a copy of the Election of Benefits form to Morgan Stanley and a copy is also mailed (Chelsea Drive address only) to Dr. Criscito for his files.

6.) Morgan Stanley faxes (to Chelsea Drive fax only), appropriate documents to Dr. Criscito to sign as Trustee, to authorize the distribution in the manner requested by the participant.

7.) Dr. Criscito faxes (770-698-2135 attn: Jane) to Morgan Stanley the signed authorization, who then either opens a self-directed IRA for the former participant, transfers the assets to another firm, or makes the lump-sum distribution.

8.) Morgan Stanley (Jane) notifies Dr. Criscito and American Pension by e-mail that the asset move has been completed. She  notifies the participant by phone or e-mail that the asset move has been completed.

***Marysue McCarthy, Financial Advisor***
Morgan Stanley
Five Concourse Pkwy., Suite 2000

**EXHIBIT 77**

1              UNITED STATES DISTRICT COURT

2              DISTRICT OF NEW JERSEY

3              2:08-cv-1567(JAG-MCA)

4

5   DR. FADI CHAABAN, DR. SABINO R. TORRE, :

6   DR. CONSTANTINOS A. COSTEAS and          :

7   DR. ANTHONY J. CASELLA, as trustees of :

8   Diagnostic & Clinical Cardiology, PA,   :

9   Profit Sharing Plan,                     :

10             Plaintiffs,                    :

11        vs.                                 :

12  DR. MARIO CRISCITO,                       :

13             Defendant,                     :

14  - - - - - - - - - - - - - - - - - - - -

15        DEPOSITION OF ANTHONY J. CASELLA, MD

16             THURSDAY, MAY 21, 2009

17

18

19

20        ROSENBERG & ASSOCIATES, INC.

21     Certified Court Reporters & Videographers

22  425 Eagle Rock Ave., Suite 201      575 Madison Ave.

23  Roseland, NJ 07068               New York, NY 10022

24   (973) 228-9100    1-800-662-6878    (212) 868-1936

25            www.rosenbergandassociates.com

3

```
 1  A P P E A R A N C E S:

 2

 3  WITMAN STADTMAUER, PA

 4  Attorneys for Plaintiff/Dr. Casella

 5  26 Columbia Turnpike

 6  Florham Park, New Jersey  07932

 7  BY:  STEPHEN M. CHARME, ESQ.

 8  973-822-0220

 9  scharme@wsmesq.com

10

11  KERN, AUGUSTINE, CONROY & SCHOPPMANN, PC

12  Attorneys for the Defendant

13  1120 Route 22 East

14  Bridgewater, New Jersey 08807

15  BY:  STEVEN I. KERN, ESQ.

16  R. BRUCE CRELIN, ESQ.

17  908-704-8585

18  crelin@drlaw.com

19

20

21

22

23

24

25
```

1  and speak to you again?

2  A      I guess I am coming back.

3      Q      Let's go to answer number 17.  Second

4  line from the bottom statement is:  There were funds

5  removed from the segregated account within the two

6  years prior for which the trustees have no

7  documentation.  First of all, two years prior to

8  what?

9  A      Two years prior to December '99.

10      Q      How do you know that there were funds

11  removed if there is no documentation?

12  A      Well, we have no documentation as to where the

13  money went.  They were removed from the Morgan

14  Stanley account.

15      Q      And you know that because?

16  A      The Morgan Stanley account says it.

17      Q      Okay.  So there is documentation that

18  the funds were removed.  The question is where did

19  the moneys go?

20  A      Correct.

21      Q      Is that what you are saying?  Okay.

22      Paragraph 25.  Question 25.  How would one go

23  about substantiating or documenting a $65,439

24  payment in 1991.

25              MR. CHARME:  Object to the form.

1  A      Well, it is a little complicated because the

2  only information APC was getting was that there was

3  a certain amount of money in a money fund and that

4  there were certain stocks with a certain value.

5  There were no brokerage statements.  There was no

6  evidence of any checks that were deposited anywhere.

7  There was a handwritten note by Criscito saying,

8  this year I contributed $25,000 to the loan and

9  $11,000 was principal and 14,000 was interest.  And

10 then that stopped in 1990 after that $35,000 amount

11 was credited and there was no more communication

12 from Criscito except for a little handwritten note

13 by APC saying, loan paid by Criscito.

14      Q      You don't know the basis upon which

15 APC --

16 A      That is correct.  I don't know.

17      Q      -- made that determination?

18 A      No evidence any money was deposited anywhere.

19      Q      But APC used that information --

20 A      To write off a loan.

21      Q      -- to write off a loan, correct?

22 A      Correct.

23      Q      And did you have any conversations with

24 anyone as to why they wrote off a loan?

25 A      No.  I just found this out in 2007.

1         Q        Do you know why that is?

2    A       His name was on it.

3         Q        I assume you didn't object to him

4    getting the 1099?

5    A       Sorry?

6         Q        I assume you didn't object to him

7    getting the 1099?

8    A       We never got the income.  He got the income.

9         Q        That is my point.  Okay.  Thank you for

10   your time.

11            MR. CHARME:  I have just a couple of

12   quick questions.

13   CROSS-EXAMINATION BY MR. CHARME:

14        Q        In the beginning of the deposition, Dr.

15   Casella, you were asked if you were aware of any

16   incorrect communications besides the fax that was

17   marked as Casella-1 between Dr. Criscito and APC.

18   Do you recall that?

19   A       Yes.

20        Q        Okay.  And I believe later in the

21   deposition you said that for 2000 and 2001 he sent

22   faxes to APC for the purpose of preparing form 5500s

23   that were wrong; is that correct?

24   A       That's right.

25        Q        Okay.  Doctor, did Dr. Criscito send

1    faxes with wrong information to APC for years

2    subsequent to 2001?

3    A     Yes.

4          Q      Okay.  What years?

5    A     I don't know exactly which years he sent

6    faxes, but all the records that APC had through the

7    time he took his distribution of four and a half

8    million dollars had incorrect amounts under his

9    name.

10         Q      That distribution was taken in 2005?

11   A     2005.

12         Q      Okay.  So that aside from the incorrect

13   fax that was sent to APC that was marked as

14   Casella-1, there were additional incorrect

15   communications in the form of whether they were

16   faxes or letters containing financial information

17   that APC used to prepare form 5500s?

18   A     Right.  In addition to the four and a half

19   million dollars for which we don't have any

20   information that that was correct.

21         Q      Okay.  Throughout your deposition you

22   referred to Dr. Criscito as being entitled to about

23   85 percent of the money in the commingled account.

24   Do you recall that?

25   A     I recall saying that.

128

C E R T I F I C A T E

I, LAURA WESTRA, a Certified Court Reporter and Notary Public of the State of New Jersey, certify that the foregoing is a true and accurate transcript of the deposition of said witness who was first duly sworn by me, on the date and place hereinbefore set forth.

I FURTHER CERTIFY that I am neither attorney nor counsel for, nor related to or employed by, any of the parties to the above action, and further that I am not a relative or employee of any attorney or counsel employed in this action, nor am I financially interested in this case.

LAURA WESTRA, C.C.R.

LICENSE NO. XIO1734

**EXHIBIT 78**



# LOAN AMORTIZATION SCHEDULE

## DR. MARIO CRISCITO

INITIAL AMOUNT BORROWED:    $250,000.00

LOAN INTEREST RATE:  10 %

DATE OF LOAN:   4 - 1982

| MO YEAR | PAY NO. | TOTAL PAYMENT | INTEREST PAYMENT | PRINCIPAL PAYMENT | LOAN BALANCE | |
|---|---|---|---|---|---|---|
| 5/1982 | 1 | 2500.00 | 2083.33 | 416.67 | 249,583.33 | |
| 6/1982 | 2 | 2500.00 | 2079.86 | 420.14 | 249,163.19 | |
| 7/1982 | 3 | 2500.00 | 2076.36 | 423.64 | 248,739.55 | |
| 8/1982 | 4 | 2500.00 | 2072.83 | 427.17 | 248,312.38 | |
| 9/1982 | 5 | 2500.00 | 2069.27 | 430.73 | 247,881.65 | |
| 10/1982 | 6 | 2500.00 | 2065.68 | 434.32 | 247,447.33 | yr 1 |
| 11/1982 | 7 | 2500.00 | 2062.06 | 437.94 | 247,009.40 | |
| 12/1982 | 8 | 2500.00 | 2058.41 | 441.59 | 246,567.81 | |
| 1/1983 | 9 | 2500.00 | 2054.73 | 445.27 | 246,122.54 | |
| 2/1983 | 10 | 2500.00 | 2051.02 | 448.98 | 245,673.56 | |
| 3/1983 | 11 | 2500.00 | 2047.28 | 452.72 | 245,220.84 | |
| 4/1983 | 12 | 2500.00 | 2043.51 | 456.49 | 244,764.35 | |
| 5/1983 | 13 | 2500.00 | 2039.70 | 460.30 | 244,304.05 | |
| 6/1983 | 14 | 2500.00 | 2035.87 | 464.13 | 243,839.92 | |
| 7/1983 | 15 | 2500.00 | 2032.00 | 468.00 | 243,371.92 | |
| 8/1983 | 16 | 2500.00 | 2028.10 | 471.90 | 242,900.02 | yr 2 |
| 9/1983 | 17 | 2500.00 | 2024.17 | 475.83 | 242,424.18 | |
| 10/1983 | 18 | 2500.00 | 2020.20 | 479.80 | 241,944.38 | |
| 11/1983 | 19 | 2500.00 | 2016.20 | 483.80 | 241,460.59 | |
| 12/1983 | 20 | 2500.00 | 2012.17 | 487.83 | 240,972.76 | |
| 1/1984 | 21 | 2500.00 | 2008.11 | 491.89 | 240,480.86 | |
| 2/1984 | 22 | 2500.00 | 2004.01 | 495.99 | 239,984.87 | |
| 3/1984 | 23 | 2500.00 | 1999.87 | 500.13 | 239,484.75 | |
| 4/1984 | 24 | 2500.00 | 1995.71 | 504.29 | 238,980.45 | |
| 5/1984 | 25 | 2500.00 | 1991.50 | 508.50 | 238,471.96 | |
| 6/1984 | 26 | 2500.00 | 1987.27 | 512.73 | 237,959.22 | |
| 7/1984 | 27 | 2500.00 | 1982.99 | 517.01 | 237,442.22 | |
| 8/1984 | 28 | 2500.00 | 1978.69 | 521.31 | 236,920.90 | |
| 9/1984 | 29 | 2500.00 | 1974.34 | 525.66 | 236,395.24 | |
| 10/1984 | 30 | 2500.00 | 1969.96 | 530.04 | 235,865.20 | |
| 11/1984 | 31 | 2500.00 | 1965.54 | 534.46 | 235,330.75 | |
| 12/1984 | 32 | 2500.00 | 1961.09 | 538.91 | 234,791.83 | |
| 1/1985 | 33 | 2500.00 | 1956.60 | 543.40 | 234,248.43 | 25000 |
| 2/1985 | 34 | 2500.00 | 1952.07 | 547.93 | 233,700.50 | |
| 3/1985 | 35 | 2500.00 | 1947.50 | 552.50 | 233,148.01 | |

| MO YEAR | PAY NO. | TOTAL PAYMENT | INTEREST PAYMENT | PRINCIPAL PAYMENT | LOAN BALANCE |
|---|---|---|---|---|---|
| 5/1985 | 37 | 2500.00 | 1938.26 | 561.74 | 232,029.17 |
| 6/1985 | 38 | 2500.00 | 1933.58 | 566.42 | 231,462.74 |
| 7/1985 | 39 | 2500.00 | 1928.86 | 571.14 | 230,891.60 |
| 8/1985 | 40 | 2500.00 | 1924.10 | 575.90 | 230,315.69 |
| 9/1985 | 41 | 2500.00 | 1919.30 | 580.70 | 229,734.99 |
| 10/1985 | 42 | 2500.00 | 1914.46 | 585.54 | 229,149.45 |
| 11/1985 | 43 | 2500.00 | 1909.58 | 590.42 | 229,559.03 |
| 12/1985 | 44 | 2500.00 | 1904.66 | 595.34 | 227,963.69 |
| 1/1986 | 45 | 2500.00 | 1999.70 | 600.30 | 227,363.39 |
| 2/1986 | 46 | 2500.00 | 1894.69 | 605.31 | 226,758.08 |
| 3/1986 | 47 | 2500.00 | 1889.65 | 610.35 | 226,147.73 |
| 4/1986 | 48 | 2500.00 | 1884.56 | 615.44 | 225,532.30 |
| 5/1986 | 49 | 2500.00 | 1879.44 | 620.56 | 224,911.73 |
| 6/1986 | 50 | 2500.00 | 1874.26 | 625.74 | 224,286.00 |
| 7/1986 | 51 | 2500.00 | 1869.05 | 630.95 | 223,655.05 |
| 8/1986 | 52 | 2500.00 | 1863.79 | 636.21 | 223,018.84 |
| 9/1986 | 53 | 2500.00 | 1858.49 | 641.51 | 222,377.33 |
| 10/1986 | 54 | 2500.00 | 1853.14 | 646.86 | 221,730.47 |
| 11/1986 | 55 | 2500.00 | 1847.75 | 652.25 | 221,078.23 |
| 12/1986 | 56 | 2500.00 | 1842.32 | 657.68 | 220,420.54 |
| 1/1987 | 57 | 2500.00 | 1836.84 | 663.16 | 219,757.38 |
| 2/1987 | 58 | 2500.00 | 1831.31 | 668.69 | 219,088.69 |
| 3/1987 | 59 | 2500.00 | 1825.74 | 674.26 | 219,414.43 |
| 4/1987 | 60 | 2500.00 | 1820.12 | 679.88 | 217,734.55 |
| 5/1987 | 61 | 2500.00 | 1814.45 | 685.55 | 217,049.01 |
| 6/1987 | 62 | 2500.00 | 1808.74 | 691.26 | 216,357.75 |
| 7/1987 | 63 | 2500.00 | 1802.98 | 697.02 | 215,660.73 |
| 8/1987 | 64 | 2500.00 | 1797.17 | 702.83 | 214,957.90 |
| 9/1987 | 65 | 2500.00 | 1791.32 | 708.68 | 214,249.22 |
| 10/1987 | 66 | 2500.00 | 1785.41 | 714.59 | 213,534.63 |
| 11/1987 | 67 | 2500.00 | 1779.46 | 720.54 | 212,814.08 |
| 12/1987 | 68 | 2500.00 | 1773.45 | 726.55 | 212,087.54 |
| 1/1988 | 69 | 2500.00 | 1767.40 | 732.60 | 211,354.93 |
| 2/1988 | 70 | 2500.00 | 1761.29 | 738.71 | 210,616.22 |
| 3/1988 | 71 | 2500.00 | 1755.14 | 744.86 | 209,871.36 |
| 4/1988 | 72 | 2500.00 | 1748.93 | 751.07 | 209,120.29 |

| MO YEAR | PAY NO. | TOTAL PAYMENT | INTEREST PAYMENT | PRINCIPAL PAYMENT | LOAN BALANCE |
|---|---|---|---|---|---|
| 5/1988 | 73 | 2500.00 | 1742.67 | 757.33 | 208,362.96 |
| 6/1988 | 74 | 2500.00 | 1736.36 | 763.64 | 207,599.31 |
| 7/1988 | 75 | 2500.00 | 1729.99 | 770.01 | 206,829.31 |
| 8/1988 | 76 | 2500.00 | 1723.58 | 776.42 | 206,052.88 |
| 9/1988 | 77 | 2500.00 | 1717.11 | 782.89 | 205,269.99 |
| 10/1988 | 78 | 2500.00 | 1710.58 | 789.42 | 204,480.58 |
| 11/1988 | 79 | 2500.00 | 1704.00 | 796.00 | 203,684.58 |
| 12/1988 | 80 | 2500.00 | 1697.37 | 802.63 | 202,881.95 |
| 1/1989 | 81 | 2500.00 | 1690.68 | 809.32 | 202,072.63 |
| 2/1989 | 82 | 2500.00 | 1683.94 | 816.06 | 201,256.57 |
| 3/1989 | 83 | 2500.00 | 1677.14 | 822.86 | 200,433.71 |
| 4/1989 | 84 | 2500.00 | 1670.28 | 829.72 | 199,603.99 |
| 5/1989 | 85 | 2500.00 | 1663.37 | 836.63 | 198,767.36 |
| 6/1989 | 86 | 2500.00 | 1656.39 | 843.61 | 197,923.75 |
| 7/1989 | 87 | 2500.00 | 1649.36 | 850.64 | 197,073.12 |
| 8/1989 | 88 | 2500.00 | 1642.28 | 857.72 | 196,215.39 |
| 9/1989 | 89 | 2500.00 | 1635.13 | 864.87 | 195,350.52 |
| 10/1989 | 90 | 2500.00 | 1627.92 | 872.08 | 194,478.44 |
| 11/1989 | 91 | 2500.00 | 1620.65 | 879.35 | 193,599.10 |
| 12/1989 | 92 | 2500.00 | 1613.33 | 886.67 | 192,712.42 |
| 1/1990 | 93 | 2500.00 | 1605.94 | 894.06 | 191,818.36 |
| 2/1990 | 94 | 2500.00 | 1598.49 | 901.51 | 190,916.85 |
| 3/1990 | 95 | 2500.00 | 1590.97 | 909.03 | 190,007.82 |
| 4/1990 | 96 | 2500.00 | 1583.40 | 916.60 | 189,091.22 |
| 5/1990 | 97 | 2500.00 | 1575.76 | 924.24 | 188,166.98 |
| 6/1990 | 98 | 2500.00 | 1568.06 | 931.94 | 187,235.04 |
| 7/1990 | 99 | 2500.00 | 1560.29 | 939.71 | 186,295.33 |
| 8/1990 | 100 | 2500.00 | 1552.46 | 947.54 | 185,347.79 |
| 9/1990 | 101 | 2500.00 | 1544.56 | 955.44 | 184,392.35 |
| 10/1990 | 102 | 2500.00 | 1536.60 | 963.40 | 183,428.96 |
| 11/1990 | 103 | 2500.00 | 1528.57 | 971.43 | 182,457.53 |
| 12/1990 | 104 | 2500.00 | 1520.48 | 979.52 | 181,478.01 |
| 1/1991 | 105 | 2500.00 | 1512.32 | 987.68 | 180,490.33 |
| 2/1991 | 106 | 2500.00 | 1504.09 | 995.91 | 179,494.41 |
| 3/1991 | 107 | 2500.00 | 1495.79 | 1004.21 | 178,490.20 |
| 4/1991 | 108 | 2500.00 | 1487.42 | 1012.58 | 177,477.62 |

25002

| MO YEAR | PAY NO. | TOTAL PAYMENT | INTEREST PAYMENT | PRINCIPAL PAYMENT | LOAN BALANCE |
|---------|---------|---------------|------------------|-------------------|--------------|
| 5/1991 | 109 | 2500.00 | 1478.98 | 1021.02 | 176,456.60 |
| 6/1991 | 110 | 2500.00 | 1470.47 | 1029.53 | 175,427.07 |
| 7/1991 | 111 | 2500.00 | 1461.89 | 1038.11 | 174,388.96 |
| 8/1991 | 112 | 2500.00 | 1453.24 | 1046.76 | 173,342.21 |
| 9/1991 | 113 | 2500.00 | 1444.52 | 1055.48 | 172,286.72 |
| 10/1991 | 114 | 2500.00 | 1435.72 | 1064.28 | 171,222.45 |
| 11/1991 | 115 | 2500.00 | 1426.85 | 1073.15 | 170,149.30 |
| 12/1991 | 116 | 2500.00 | 1417.91 | 1082.09 | 169,067.21 |
| 1/1992 | 117 | 2500.00 | 1408.89 | 1091.11 | 167,976.10 |
| 2/1992 | 118 | 2500.00 | 1399.80 | 1100.20 | 166,875.91 |
| 3/1992 | 119 | 2500.00 | 1390.63 | 1109.37 | 165,766.54 |
| 4/1992 | 120 | 2500.00 | 1381.39 | 1118.61 | 164,647.93 |

---

| TOTALS: | 120 | 302500.00 | 216019.99 | 250000.00 | |

25003

**EXHIBIT 79**

Money Purchase Pension Fund.
4/1/84 — 3/31/85

Deposited into Liquid Asset Fund.

| | |
|---|---|
| Mario A. Criscito | 30,000.00 |
| From D.C.C.P.A. y1984-85 | 75,000.00 |
| Dividends From Stocks | 26,584.64 |
| Interest From Liquid Asset Funds | 16,837.30 |

off misc 49.13

Balance in Liquid Asset Fund Inc.
3/31/85          =          ~~26,981.30~~
                                    38,929.09

Loan to Mario A. Criscito.
   Balance of Loan as of 3/31/85 =   232,590.90.



PLAINTIFF'S EXHIBIT
Warick 3

DCC 1'4

4/1/85 ⟶ 3/31/86

Money Purchase Pension Fund

Interest obtained from Money Fund'          17,029.24.
Dividend from Stocks & Bonds             - 34,887.76
transfered from DCCPA ⟶ Pension            95,000.00.
transfered from Memo A Acct'o ⟶ Pension for Loan.  50,000.00.
        which includes    $80000 towards Principal

LOAN: 205,532.31 at End of March 31, 1986
ISRAEL BOND:       $25,000

3-31

3-31-86

Participant loan. (205,533.21)

4/1/86 — 3/31/87

Principal.                              12,607.76

Intrest                                 19,985.68

          Total                         32,593.44

Participant loan  As of 4/1/87 =  193,934.45

Participant loan.          167, 392.5, —

· 4/1/87  —     3/31/88

Principal                      16, 601.43

Interest                       1 5. 992.01

Total.                         33. 593. 44.

Bal. AS OF 3/31/88   15 0, 791. 52

Dr docta
Criscito
wt Should
carry the loan

25475

Participant Loan.

Loan Outstanding As of 3/31/88        150,791. 52

Less Principal Paid        18,339. 80

Loan Outstanding        132,451. 72

Less Principal Bid        25,000. 00
_____
107,451  72


Loan Repayments Made During Year

Principal              18,339. 80
Interest               14,253.64
Extra Principal        25,000.00
_____
57 593. 44


Loan Outstanding As of 3/31/89

107,451.72.

Participant loan.

Loan Outstanding as of 3/31/89.          107,451.72

Less-
Loan Outstanding as of 3/3/90          100,860.96

                    4/1/89 - 3/3/90
        Interest         10 448.50
        Principle         6591.76
        Total           17029.70

C PA Pension Fund
4/1/90 — 3/31/91

Assets

Shearson Lehman              404,567.28
Dean Witter $ ... Market Fund    175,888.64
Investment at Market Value    1,278,964.50
3/31/91  Total Ass.          1,859,420.42
3/30/90  Total Assets       — 1,697,771.90
                            + 161,648.52

Income for all pt

1991 Contribution deferred ... ( 65,000 )  ( 30 +30
Net Trust Earnings            ( 9,-48.52 )    + 5/m
                              161,678.52

3/31/90  Total Assets   1,697,771.90

3/31/91  Total Assets  ——→ 1,859,420.42

Percent Earning       5.61%        OVER CONTRIB
                                   = 800

Mario A. Criscito
Gary      Rojas
L...      Cruz

**EXHIBIT 80**

# Abar Pension Services, Inc.

PENSION, PROFIT SHARING, 401(K) PLAN
DESIGN AND ADMINISTRATION

MIKEL R. UCHTEL, FSA, EA, MSPA
MARK SHEMTOB, ASA, EA, MSPA
SCOTT M. FEIT, CPC, CPA, QKA
PHILIP D. COFIELD, EA, MSPA

April 14, 2010

25B VREELAND ROAD   SUITE 209
FLORHAM PARK, NJ 07932-1900
(973) 660-2100
FAX: (973) 660-2111
abar@abarpensions.com

Stephen M. Charme, Esq.
Witman, Stadtmauer & Michaels, P.A.
26 Columbia Turnpike
Florham Park, NJ 07932

Re:   Diagnostic & Clinical Cardiology, P.A.
        Profit Sharing Plan

Dear Mr. Charme:

This will update my May 28, 2009 report. Based upon our analysis, we concluded that the participants in the pooled account, excluding Dr. Mario A. Criscito, were entitled to an additional $1,681,572.65 as of the beginning of 2000. As of April 30, 2010, the value of their portion of the pooled account, together with interest, accumulated to $3,921,353.69. (Exhibit 4).

Please call if you should have any questions.

Sincerely,

ABAR PENSION SERVICES, INC.

Scott M. Feit, CPC, CPA, QPA, QKA

/sf

**EXHIBIT 4**

Diagnostic & Clinical Cardiology, P.A. Money Purchase Plan
Calculation of Lost Interest

| Start | End | Days | Present Value | Interest Rate | Future Value |
|---|---|---|---|---|---|
| 1/1/2000 | 3/31/2000 | 90 | $1,681,572.65 | 10% | $1,723,429.61 |
| 3/31/2000 | 6/30/2000 | 91 | $1,723,429.61 | 11% | $1,771,208.14 |
| 6/30/2000 | 9/30/2000 | 92 | $1,771,208.14 | 11% | $1,820,858.33 |
| 9/30/2000 | 12/31/2000 | 92 | $1,820,858.33 | 11% | $1,871,900.30 |
| 12/31/2000 | 3/31/2001 | 90 | $1,871,900.30 | 11% | $1,923,359.35 |
| 3/31/2001 | 6/30/2001 | 91 | $1,923,359.35 | 10% | $1,971,907.62 |
| 6/30/2001 | 9/30/2001 | 92 | $1,971,907.62 | 9% | $2,017,145.81 |
| 9/30/2001 | 12/31/2001 | 92 | $2,017,145.81 | 9% | $2,063,421.82 |
| 12/31/2001 | 3/31/2002 | 90 | $2,063,421.82 | 8% | $2,104,524.49 |
| 3/31/2002 | 6/30/2002 | 91 | $2,104,524.49 | 8% | $2,146,916.37 |
| 6/30/2002 | 9/30/2002 | 92 | $2,146,916.37 | 8% | $2,190,642.20 |
| 9/30/2002 | 12/31/2002 | 92 | $2,190,642.20 | 8% | $2,235,258.58 |
| 12/31/2002 | 3/31/2003 | 90 | $2,235,258.58 | 7% | $2,274,170.87 |
| 3/31/2003 | 6/30/2003 | 91 | $2,274,170.87 | 7% | $2,314,204.31 |
| 6/30/2003 | 9/30/2003 | 92 | $2,314,204.31 | 7% | $2,355,394.10 |
| 9/30/2003 | 12/31/2003 | 92 | $2,355,394.10 | 6% | $2,391,283.15 |
| 12/31/2003 | 3/31/2004 | 91 | $2,391,283.15 | 6% | $2,427,220.84 |
| 3/31/2004 | 6/30/2004 | 91 | $2,427,220.84 | 7% | $2,469,830.74 |
| 6/30/2004 | 9/30/2004 | 92 | $2,469,830.74 | 6% | $2,507,359.87 |
| 9/30/2004 | 12/31/2004 | 92 | $2,507,359.87 | 7% | $2,551,864.58 |
| 12/31/2004 | 3/31/2005 | 90 | $2,551,864.58 | 7% | $2,596,288.48 |
| 3/31/2005 | 6/30/2005 | 91 | $2,596,288.48 | 8% | $2,648,586.07 |
| 6/30/2005 | 9/30/2005 | 92 | $2,648,586.07 | 8% | $2,702,529.30 |
| 9/30/2005 | 12/31/2005 | 92 | $2,702,529.30 | 9% | $2,764,528.92 |
| 12/31/2005 | 3/31/2006 | 90 | $2,764,528.92 | 9% | $2,826,556.80 |
| 3/31/2006 | 6/30/2006 | 91 | $2,826,556.80 | 9% | $2,890,689.00 |
| 6/30/2006 | 9/30/2006 | 92 | $2,890,689.00 | 10% | $2,964,465.99 |
| 9/30/2006 | 12/31/2006 | 92 | $2,964,465.99 | 10% | $3,040,125.93 |
| 12/31/2006 | 3/31/2007 | 90 | $3,040,125.93 | 10% | $3,116,009.25 |
| 3/31/2007 | 6/30/2007 | 91 | $3,116,009.25 | 10% | $3,194,661.67 |
| 6/30/2007 | 9/30/2007 | 92 | $3,194,661.67 | 10% | $3,276,196.73 |
| 9/30/2007 | 12/31/2007 | 92 | $3,276,196.73 | 10% | $3,359,812.75 |
| 12/31/2007 | 3/31/2008 | 91 | $3,359,812.75 | 9% | $3,435,833.48 |
| 3/31/2008 | 5/5/2008 | 35 | $3,435,833.48 | 8% | $3,462,216.45 |
| 5/5/2008 | distribution of $26,202.74 to Antoinette Andriola | | | | $3,436,013.71 |
| 5/5/2008 | 6/30/2008 | 56 | $3,436,013.71 | 8% | $3,478,325.83 |
| 6/30/2008 | 9/30/2008 | 92 | $3,478,325.83 | 7% | $3,540,064.83 |
| 9/30/2008 | 12/31/2008 | 92 | $3,540,064.83 | 8% | $3,611,965.68 |
| 12/31/2008 | 3/31/2009 | 90 | $3,611,965.68 | 7% | $3,674,844.26 |
| 3/31/2009 | 6/30/2009 | 91 | $3,674,844.26 | 6% | $3,730,224.53 |
| 6/30/2009 | 9/30/2009 | 92 | $3,730,224.53 | 6% | $3,787,061.82 |
| 9/30/2009 | 12/31/2009 | 92 | $3,787,061.82 | 6% | $3,844,765.13 |
| 12/31/2009 | 3/31/2010 | 90 | $3,844,765.13 | 6% | $3,902,064.69 |
| 3/31/2010 | 4/30/2010 | 30 | $3,902,064.69 | 6% | $3,921,353.69 |

**Interest =**     **$2,239,781**

√₂

Interest was calculated using the Voluntary Fiduciary Correction Program (VFCP)
Online Calculator provided by the U.S. Department of Labor - EBSA.
Using IRC 6621(c)(1) underpayment rates

**EXHIBIT 81**

**KERN AUGUSTINE**
**CONROY & SCHOPPMANN, P.C.**
1120 Route 22 East
Bridgewater, New Jersey 08807
(908) 704-8585
Attorneys for Defendant
RC-8060

|  |  |
|---|---|
| DR. FADI CHAABAN; DR. SABINO R. TORRE; DR. CONSTANTINOS A. COSTEAS and DR. ANTHONY J. CASELLA, as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan, | ) UNITED STATES DISTRICT COURT ) DISTRICT OF NEW JERSEY ) )      Civil Action ) ) Case No. 2:08-cv-1567 (JAG - MCA) ) ) |
|      Plaintiffs, | ) ANSWER, SEPARATE DEFENSES, ) COUNTERCLAIM, JURY DEMAND |
|      v. | ) AND CERTIFICATION PURSUANT ) TO L. CIV. R. 11. 2 |
| DR. MARIO A. CRISCITO, | ) ) |
|      Defendant. | ) ) |

The Defendant, Dr. Mario A, Criscito ("Dr. Criscito"), residing at 32 Chelsea Drive in the Township of Livingston, County of Essex and State of New Jersey, by and through his attorneys, Kern Augustine Conroy & Schoppmann, P.C., by way of answer to the Plaintiffs' complaint, states as follows:

## AS TO THE ALLEGATIONS DENOMINATED "NATURE OF THE ACTION"

1.      The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

2.      Defendant admits he is a cardiologist, admits he was the founder of a medical group in West Orange, New Jersey named "Diagnostic & Clinical Cardiology, P.A." ("DCC"), and admits he was wrongfully expelled from his medical group on or about August 2, 2007. Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves. Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint. Defendant denies the balance of the allegations contained in this paragraph of the complaint.

3.      Defendant denies the allegations set forth in this paragraph of the complaint.

4.      Defendant denies the allegations set forth in this paragraph of the complaint.

5.      Defendant denies the allegations set forth in this paragraph of the complaint.

6.      Defendant denies the allegations set forth in this paragraph of the complaint.

7.      The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

## AS TO THE ALLEGATIONS DENOMINATED "THE PARTIES"

8.       Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.

9.       Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.

10.      Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.

11.      The Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.

12.      The Defendant admits he is a citizen of the State of New Jersey and a resident of the Township of Livingston, admits that he is a cardiologist, admits he was the founder of a medical group in West Orange, New Jersey named "Diagnostic & Clinical Cardiology, P.A." ("DCC"), and admits he was wrongfully expelled from his medical group on or about August 2, 2007.  Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time

3

frame alleged in the complaint. Defendant denies the balance of the allegations contained in this paragraph of the complaint.

## AS TO THE ALLEGATIONS DENOMINATED "JURIDICTION AND VENUE"

13.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

14.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

15.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

## AS TO THE ALLEGATIONS DENOMINATED "CAUSE OF ACTION"

16.    Defendant admits he formed DCC in or about 1977. Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves. Defendant states that, notwithstanding his *de jure* status with respect to

the Plan, others, including but not limited to, the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint. To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

17.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves. Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including, but not limited to, the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint. To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

18.     Defendant neither admits nor denies this paragraph of the complaint, as it is not a factual allegation.

19.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves. Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including, but not limited to, the plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint. To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

20.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

21.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including, but not limited to, the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

22.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including, but not limited to, the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

23.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

24.     Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

25.     Defendant denies the allegations contained in this paragraph of the complaint.

26.     Defendant denies the allegations contained in this paragraph of the complaint.

27.     Defendant denies the allegations contained in this paragraph of the complaint.

28.     Defendant denies the allegations contained in this paragraph of the complaint.

29.     Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.  The Defendant states further that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint.

30.    Defendant denies the allegations contained in this paragraph of the complaint.

31.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

32.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

33.    Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

34.    Defendant denies the allegations contained in this paragraph of the complaint.

35.    The allegations contained in this paragraph of the complaint refer to a document or documents which, if they exist, form the best evidence of their contents and speak for themselves.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

36.    Defendant denies the allegations contained in this paragraph of the complaint.

37.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required.  To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to

constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

38.   The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required.  To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

39.   Defendant denies the allegations contained in this paragraph of the complaint.

40.   Defendant denies the allegations contained in this paragraph of the complaint.

41.   Defendant denies the allegations contained in this paragraph of the complaint.

42.   The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required.  To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

43.   Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

44.   Defendant denies the allegations contained in this paragraph of the complaint.

45.   Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

46.   Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

47.     Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

48.     Defendant denies the allegations contained in this paragraph of the complaint.

49.     Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

50.     Defendant denies the allegations contained in this paragraph of the complaint.

51.     Defendant denies the allegations contained in this paragraph of the complaint.

52.     Defendant admits he purchased a home in Livingston, New Jersey on or about May 20, 2004. The Defendant denies the characterization of this house as a "luxury home."

53.     Defendant denies the allegations contained in this paragraph of the complaint.

54.     Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs. To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

55.     Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

56.     Defendant admits that he made the withdrawals indicated after he was the sole investor in these accounts.

57.     Defendant denies the allegations contained in this paragraph of the complaint.

58.     Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs. To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

59. The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

60. The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

61. Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs. To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

62. Defendant denies the allegations contained in this paragraph of the complaint.

63. Allegations regarding the contents of the Plan, and Defendant's status as the alleged "sole trustee" of the Plan, depend upon a document or documents which, if they exist, form the best evidence of their contents and speak for themselves. Defendant states that, notwithstanding his *de jure* status with respect to the Plan, others, including but not limited to the Plaintiffs, had access to relevant Plan documents and knowledge of activities regarding the Plan during the time frame alleged in the complaint. Defendant denies the balance of the allegations contained in this paragraph of the complaint.

64. Defendant denies the allegations contained in this paragraph of the complaint.

65.     Defendant denies the allegations contained in this paragraph of the complaint and further states that he provided all documents in his possession.

66.     Defendant denies the allegations contained in this paragraph of the complaint.

67.     Defendant denies the allegations contained in this paragraph of the complaint.

68.     The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required.  To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

69.     The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required.  To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

70.     The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required.  To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

71.     Defendant is without sufficient information to form a belief as to the truth or falsity of the allegations contained in this paragraph of the complaint, and leaves the Plaintiffs to their proofs.  To the extent these allegations may be deemed to allege any wrongdoing on the part of the Defendant, said allegations are specifically denied.

72.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

73.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

74.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

75.    The allegations contained in this paragraph of the complaint state legal conclusions, as to which no answer is required. To the extent an answer may be required, and to the extent the allegations contained in this paragraph of the complaint may be deemed to constitute factual allegations of wrongdoing against the Defendant, said allegations are specifically denied.

**WHEREFORE**, the Defendant, Dr. Mario Criscito, demands judgment dismissing the Plaintiffs' complaint, with prejudice and without costs, for costs of suit, for reasonable attorneys' fees, and for such other and further relief as the Court may deem equitable and just.

## SEPARATE DEFENSES

Without conceding any liability to the Plaintiffs, or that the statutes or common law impose any affirmative obligations upon him, the Defendant, Dr. Mario A. Criscito, states as his separate defenses against the Plaintiffs the following:

### THE FIRST SEPARATE DEFENSE

The Plaintiffs' complaint, and each cause of action therein, fails to state a claim upon which relief may be granted.

### THE SECOND SEPARATE DEFENSE

The Plaintiffs' complaint, or certain claims within it, is (or are) barred by the statute of limitations.

### THE THIRD SEPARATE DEFENSE

Plaintiffs are barred by the Doctrine of Unclean Hands.

### THE FOURTH SEPARATE DEFENSE

Plaintiffs are barred by the doctrines of legal and/or equitable estoppel.

### THE FIFTH SEPARATE DEFENSE

Plaintiffs have failed to take reasonable steps to mitigate their damages, if any.

### THE SIXTH SEPARATE DEFENSE

Plaintiffs have failed to make a proper showing of a legal basis for entitlement to attorneys' fees.

### THE SEVENTH SEPARATE DEFENSE

Any and all damages alleged to have been suffered by Plaintiffs are not causally related to any act or omission alleged to be chargeable to the Defendant.

## THE EIGHTH SEPARATE DEFENSE

Plaintiffs are barred by the doctrine of laches.

## THE NINTH SEPARATE DEFENSE

Plaintiffs are barred by reason that any damages they may have suffered were the result of actions of third parties over whom this Defendant had no control.

## THE TENTH SEPARATE DEFENSE

The Defendant acted in good faith and with a reasonable belief his actions were lawful.

## THE ELEVENTH SEPARATE DEFENSE

Plaintiff's claims are subject to setoff, offset, reduction and/or recoupment.

## THE TWELFTH SEPARATE DEFENSE

Plaintiff is barred by the doctrine of waiver.

**WHEREFORE**, the Defendant, Dr. Mario Criscito, demands judgment dismissing the Plaintiffs' complaint, with prejudice and without costs, for costs of suit, for reasonable attorneys' fees, and for such other and further relief as the Court may deem equitable and just.

## COUNTERCLAIM

The Defendant/Counterclaimant, Dr. Mario A. Criscito ("Dr. Criscito"), residing at 32 Chelsea Dive in the Township of Livingston, County of Essex and State of New Jersey, by and through his attorneys, Kern Augustine Conroy & Schoppmann, P.C., by way of counterclaim against the Plaintiffs, Dr. Fadi Chaaban, Dr. Sabino R. Torre, Dr. Constantinos A. Costeas and Dr. Anthony J. Casella, as Trustees of Diagnostic &Clinical Cardiology, P.A. Profit Sharing Plan, states as follows:

1.     The Defendant/Counterclaimant, Dr. Criscito, repeats and realleges the allegations contained in his answer to the complaint as though the same were set forth at length verbatim herein.

2.     Dr. Criscito maintained his own retirement accounts, funded with his own funds, commonly known as Smith Barney/Citigroup account no. 416-30833-16 007, and Independence Bank (now known as Sovereign Bank) account no. 1108007053.  Despite the fact that these are Dr. Criscito's own personal accounts, the plaintiffs have acted to interfere with his access to and control over the funds in these accounts, effectively "freezing" these assets and preventing Dr. Criscito to manage these funds.

3.     Since the plaintiffs acted to "freeze" Dr, Criscito's assets in these accounts, the securities market has undergone a profound contraction, resulting in the substantial loss of value of the assets held in these accounts.

4.     The plaintiffs' actions, as aforesaid, prevented Dr. Criscito from taking any actions at all to attempt to preserve his assets, such as, for example, transferring them into more stable investment vehicles or converting them to cash in order to stem the losses.

5.     As a result of the plaintiff's actions, as aforesaid, Dr. Criscito suffered serious losses to the value of the assets held in these accounts.

**WHEREFORE, the** Defendant/Counterclaimant, Dr. Mario A, Criscito, demands judgment against the Plaintiffs, Dr. Fadi Chaaban, Dr. Sabino R. Torre, Dr. Constantinos A. Costeas and Dr. Anthony J. Casella, as Trustees of Diagnostic &Clinical Cardiology, P.A. Profit Sharing Plan, for compensatory damages, together with costs of suit, reasonable attorneys' fees and such other and further relief as this Court may deem equitable and just.

## DEMAND FOR TRIAL BY JURY

The Defendant/Counterclaimant, Dr. Mario A. Criscito, demands trial by jury upon all actions and issues so triable.

**KERN AUGUSTINE
CONROY & SCHOPPMANN, P.C.**
Attorneys for Defendant,
Dr. Mario A. Criscito

By:   / S / Robert J. Conroy / S /
Robert J. Conroy

Dated: Bridgewater, New Jersey
February 17, 2009

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify to the best of my personal knowledge, information and belief, that I have no knowledge of any other pending action in any court or of a pending arbitration proceeding relating to the subject matter of this lawsuit, nor am I aware that any such action or arbitration proceeding is contemplated, except as follows:

*Diagnostic and Clinical Cardiology, P.A. v. Criscito, et al.*, Docket No. ESX- C-117-08, now pending in the Superior Court of New Jersey, Chancery Division, General Equity Part, Essex County.

*Diagnostic and Clinical Cardiology, P.A. v. Morgan Stanley Dean Witter v. Criscito*, Case No. 08-00047, arbitration matter now pending before FINRA.

I further certify that I have no knowledge of any other individuals or entities who should be joined as parties to this action at this time.

I declare under penalty of perjury that the foregoing statements are true and correct.

_____ / S /  Robert J. Conroy / S / _____
Robert J. Conroy

Dated: Bridgewater, New Jersey
February 17, 2009