## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. FADI CHAABAN, DR. SABINO R. TORRE, DR. CONSTANTINOS A. COSTEAS, AND DR. ANTHONY J. CASELLA as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan, <br><br> Plaintiffs, <br><br> v. <br><br> DR. MARIO A. CRISCITO, <br><br> Defendant. | Case No. 2:08-cv-01567 (GEB/MCA) |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Stephen M. Charme
Tara S. Sinha
WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 822-0220

-and-

John M. Agnello
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 4

ARGUMENT ........................................................................................................ 5

POINT I ............................................................................................................... 5

  STANDARD OF REVIEW ON SUMMARY JUDGMENT ................................... 5

POINT II .............................................................................................................. 5

  CRISCITO'S ARGUMENT THAT HE DID NOT PERPETRATE A FRAUD ON THE
  PENSION PLAN BECAUSE NO MONIES WERE REMOVED FROM THE SMITH
  BARNEY ACCOUNT IS MERITLESS. ............................................................. 5

    A. Plaintiffs' Claim Is For Breach Of Fiduciary Duty Under ERISA Not For Common
       Law Fraud ............................................................................................... 6

    B. Criscito's Argument That The Continued Existence Of The Smith Barney Account
       Eradicates His Fraudulent Conduct, Is Specious. ......................................... 6

POINT III ............................................................................................................. 9

  PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE ERISA STATUTE OF
  LIMITATIONS BECAUSE THE "FRAUD OR CONCEALMENT" EXCEPTION APPLIES
  HERE ............................................................................................................. 9

    A. The "Fraud Or Concealment" Exception To The ERISA Statute Of Limitations ........... 10

    B. The Record Shows That Criscito Actively And Successfully Concealed His Fraud ........ 11

    C. Judge Martini's Prior Holding In This Lawsuit That The ERISA Statute Of
       Limitations Does Not Bar Plaintiffs' Claims Is Not Only Supported By The
       Record, But Is Also The Law Of The Case .................................................... 14

    D. Criscito Cannot Meet His Burden Of Showing That The ERISA Statute Of
       Limitations Should Apply Here .................................................................. 17

    E. The Complaint Was Timely Filed ............................................................... 20

    F. The Statute Of Limitations Cases Cited By Criscito Are Inapposite And Do Not
       Warrant A Contrary Result ....................................................................... 21

POINT IV ............................................................................................................. 24

    CRISCITO CANNOT ESCAPE LIABILITY BY TRYING TO "SHIFT THE BLAME" FOR
    HIS FRAUDULENT CONDUCT TO APC ........................................................ 24

CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Arizona v California,
460 U.S. 605, 103 S. Ct. 1382, 75 L. Ed.2d 318 (1983)....................................15

Bellevue Drug Co. v. Caremarks PCS (In re: Pharm. Benefit Managers Antitrust
Litig.), 582 F.3d 432 (3d Cir. 2009) ..................................................................16

Casey v. Planned Parenthood of Southeastern Pennsylvania,
14 F.3d 848 (3d Cir. 1994)................................................................................16

Chaaban v. Criscito,
2008 U.S. Dist. LEXIS 49569 (D.N.J. 2008) ....................................................15

Christianson v. Colt Indus. Operating Corp.,
486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)..................................16

Fagan v City of Vineland, 22 F.3d 1283 (3d Cir. 1994)....................................16

Jackson v. Chevron Corp. Long-Term Disability Org., Inc.,
2006 U.S. Dist. LEXIS 3590 (D.N.J. 2006) ......................................................17

Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir. 1996), cert. den., 522 U.S.
913, 118 S. Ct. 297, 139 L. Ed. 2d 228 (1997).....................................10, 11, 21

Martin v Consultants & Administrators, Inc.,
966 F.2d 1078 (7th Cir. 1992) ..........................................................................23

Meinhardt v. Unisys Corp. (In re: Unisys Sav. Plan Litig.),
74 F.3d 420 (3d Cir. 1996), cert den.,
519 U.S. 810, 117 S.Ct. 56, 136 L.Ed.2d 19 (1996)..........................................25

Montrose Med. Group Participating Sav. Plan v. Bulger,
243 F.3d 773 (3d Cir. 2001)..............................................................................11

Olsen v. Hegarty, 180 F. Supp. 2d 552 (D.N.J. 2001)......................................25

Public Interest Research Group of NJ, Inc. v Magnesium Elektron,
123 F.3d 111 (3d Cir. 1997)..............................................................................16

Ranke v. Sanofi-Synthelabo, Inc.,
436 F.3d 197 (3d Cir. 2006)..............................................................................22

Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.,
311 F.3d 581 (3d Cir. 2002)..............................................................................17

<u>Schaefer v. Arkansas Med. Society</u>,
853 F.2d 1487 (8th Cir. 1988) ................................................................23, 24

<u>Sheet Metal Workers Int'l Assn., Local 19 v. 2300 Group Inc.</u>,
949 F.2d 1274 (3d Cir. 1991)...............................................................18, 20

<u>Stier v. Satnick Dev. Corp.</u>, 974 F. Supp. 436 (D.N.J. 1997)..............................18, 19, 20

<u>In re: Unisys Corp. Retiree Med. Benefit "ERISA" Litig.</u>, 242 F.3d 497 (3d Cir.
2001), <u>cert den.</u>, 534 U.S. 1018, 122 S.Ct. 542, 151 L.Ed.2d 420 (2001).......18, 19, 22, 25

## FEDERAL STATUTES

ERISA §413(1)(A), 29 U.S.C. §1113(1)(A)...................................................21

ERISA §413, 29 U.S.C. §1113 ...................................................................10

ERISA §413, 29 U.S.C. §1113(2) ................................................................21

## PRELIMINARY STATEMENT

Plaintiffs and Defendant have both filed motions for summary judgment. To a great extent, the undisputed facts necessary to resolve both motions are the same. In Plaintiffs' motion, Plaintiffs demonstrate that, in the year 2000, Criscito perpetrated a multi-million dollar fraud against the DCC Pension Plan which he successfully and actively concealed until his removal in July 2007 as the Plan's sole Trustee. During his more than 30 year reign as sole Trustee, Criscito prohibited the Plan's third party administrator from providing any Plan participant or beneficiary with access to any information about the value of the Plan's commingled account or the assets in it. This "information blackout" that Criscito imposed did not cease until after his removal as sole Trustee, thereby making it impossible for any Plan participant or beneficiary to discover his fraudulent conduct in 2000, or his subsequent ongoing course of fraudulent conduct and breaches of fiduciary duty, while he remained the sole Trustee.

In September 2007, the Plaintiffs, as successor Trustees, discovered Criscito's fraudulent conduct when, for the first time in the Plan's 30-year history, the third party administrator permitted access to information and records about the Plan's commingled account to someone other than Criscito. Six months later, in March 2008, Plaintiffs filed their Complaint under ERISA seeking compensatory damages, punitive damages and attorneys' fees and costs against Criscito for numerous breaches of fiduciary duty, including his fraudulent breach of fiduciary duty in January 2000 by which he wrongfully diverted millions of dollars in Plan assets for his own personal benefit.

Criscito's current motion for summary judgment fails to exculpate him from liability for his intentional, fraudulent conduct and other wrongdoing because his arguments ignore both the facts and the law.

First, Criscito argues that Plaintiffs cannot prove a state common law fraud case against him.  While Criscito is wrong on that point, his argument is irrelevant and immaterial because Plaintiffs' claim is an ERISA claim, not a state common law fraud claim.

Second, Criscito argues that Plaintiffs' ERISA claim is barred by the ERISA statute of limitations.  This argument fails because (i) the Complaint clearly alleges Criscito's active concealment of his fraudulent conduct by reason of the "information blackout" that he imposed to prevent any Plan participant or beneficiary other than himself from learning anything about the value of the Plan's commingled account or the assets in it, (ii) the testimony and documentary evidence in the record fully corroborate the allegations of active concealment, and (iii) Criscito's active concealment of his fraudulent conduct prevented Plaintiffs from discovering this conduct until after his removal as sole Trustee of the Plan, at which time the "information blackout" was lifted and Plaintiffs, for the first time, obtained access to information and records showing that Criscito had fraudulently looted the Plan's commingled account for his personal benefit and committed other significant breaches of his fiduciary duties.

Criscito's attempt to invoke the statute of limitations is particularly disingenuous because at the outset of this case Judge Martini denied Criscito's motion to dismiss the Complaint on this very basis.  Judge Martini squarely held not only that the Complaint alleged the requisite active concealment, but also that it alleged facts showing that even with reasonable diligence Plaintiffs could not have discovered Criscito's fraudulent conduct and other wrongdoing before his removal as sole Trustee.  The undisputed evidence obtained through discovery completely supports these allegations.  Further, Judge Martini's decision is the law of the case since Criscito did not move for reconsideration or otherwise seek to challenge that decision.

Criscito also argues that the presence of certain Morgan Stanley brokerage statements in APC's files in the year 2000 negates any claim of active concealment by him, and that therefore the Complaint should have been filed within six years from January 2000.  In asserting this position, Criscito ignores the fact that regardless of what documents APC's files contained about the Plan's commingled account, no Plan participant or beneficiary except Criscito had access to those files because of the "information blackout" that Criscito had imposed.  Therefore, Plaintiffs could not have discovered these brokerage statements—or any other incriminating materials— until after the "information blackout" was ended when  Criscito was removed as sole Trustee in July 2007.

As the record shows, Plaintiffs discovered these brokerage statements in September 2007, and thereafter obtained other information that enabled them to file their Complaint in March 2008. This filing was well within the ERISA six-year statute of limitations, which was tolled by the long laundry list of actions undertaken by Criscito to conceal his ongoing fraudulent activity from January 2000 through October 2007 (despite being removed as trustee in July 2007, in October 2007 Criscito tried to "clean out" the Smith Barney commingled account).

Finally, Criscito tries to "shift the blame" for his fraudulent conduct to the DCC Pension Plan's third party administrator, APC.  Criscito argues that if in the year 2000 APC had discovered the Morgan Stanley brokerage account statements in its files, APC could then have caught Criscito "red handed" and prevented his ongoing fraudulent conduct.  In advancing this meritless position,   Criscito once again ignores a prior ruling of this Court.  Criscito made this exact same argument to Magistrate Arleo in June 2010 by way of a motion for leave to file a third party complaint against APC and two of its employees for contribution and indemnification.  Magistrate Arleo denied Criscito's motion and held, among other things, that

3

even if APC was negligent, as a matter of law Criscito could not make APC liable for his own intentional, fraudulent conduct.  Indeed, to hold otherwise, would be akin to letting a corporate officer who embezzled company funds plead as a defense that his embezzlement was the fault of the company's outside auditors for not doing a better job.

For the reasons set forth in greater detail herein and in Plaintiffs' own summary judgment motion, Defendant's motion for summary judgment should be denied and Plaintiffs' motion for summary judgment on the issues of liability, compensatory damages, punitive damages and attorneys' fees and cost should be granted as a matter of law.

## STATEMENT OF FACTS

Plaintiffs rely upon (i) the facts contained in Plaintiffs' Rule 56.1 Statement submitted in support of their motion for summary judgment, (ii) the facts contained in Plaintiffs' Rule 56.1 Supplemental Statement of Disputed Material Facts, and (iii) the facts admitted in Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts.  Plaintiffs incorporate by reference all of those facts.

## ARGUMENT

### POINT I

#### STANDARD OF REVIEW ON SUMMARY JUDGMENT

Plaintiffs have discussed the standard of review on a motion for summary judgment in Plaintiffs' Brief in Support of Their Motion for Summary Judgment ("Plaintiffs' S.J. Br."), pp. 5-7. Plaintiffs incorporate by reference that discussion in this brief.

### POINT II

#### CRISCITO'S ARGUMENT THAT HE DID NOT PERPETRATE A FRAUD ON THE PENSION PLAN BECAUSE NO MONIES WERE REMOVED FROM THE SMITH BARNEY ACCOUNT IS MERITLESS

In Point II of Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's S.J. Br."), Criscito argues that Plaintiffs cannot prove a case against him for common law fraud because he never withdrew monies from the Smith Barney account. Criscito's argument is fatally flawed for two reasons. First, Plaintiffs' Complaint sets forth a claim for Criscito's breach of his fiduciary duties under ERISA, as opposed to a state common law claim for fraud.[1] Second, Criscito withdrew virtually all of the money from the Plan's[2] Smith Barney account and had it transferred to his personal IRA account at Smith Barney in October of 2007. Fortunately, Plaintiffs discovered Criscito's fraudulent transfer and had Smith Barney return the monies to the Plan's Smith Barney account. Moreover, as of December 31, 1999 the Plan's Smith Barney account had a balance of $3,942,549.92, but as a result of Criscito's fraud, the Smith Barney account today has a balance of $771,846.06. *See* Plaintiffs'

---

[1] Criscito has acknowledged that Plaintiffs' claim is for breach of fiduciary duty under ERISA. *See* Defendant's R. 56.1 Stmt., ¶14.

[2] References to the "Plan" refer to the DCC Money Purchase Plan and the DCC Profit Sharing Plan, collectively.

Supplemental Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Plaintiffs' Supp. R. 56.1 Stmt."), ¶3.

Thus, Criscito's argument that he did not commit common law fraud because the Smith Barney account remains intact today lacks any legal or factual support.

## A.   Plaintiffs' Claim Is For Breach Of Fiduciary Duty Under ERISA Not For Common Law Fraud

As demonstrated in Plaintiffs' motion for summary judgment, it is beyond any dispute that Criscito perpetrated a fraud on the Plan.  His conduct as outlined in detail in Plaintiffs' summary judgment papers unquestionably constitutes a breach of fiduciary duty under ERISA, entitling Plaintiffs to judgment against Criscito for compensatory damages, punitive damages and attorneys' fees and costs.  *See* Plaintiffs' S.J. Br. at pp. 7-27.   While Criscito's conduct undoubtedly also constitutes common law fraud,[3] Plaintiffs' Complaint sets forth an ERISA claim – a fact Criscito has acknowledged.  *See* Defendant's R. 56.1 Stmt., ¶14.  Thus, to the extent that in Point II of Defendant's S.J. Br., Criscito presents arguments regarding common law fraud, those arguments have no place in this litigation.[4]

## B.   Criscito's Argument That The Continued Existence Of The Smith Barney Account Eradicates His Fraudulent Conduct, Is Specious

At a number of places in Defendant's S.J. Br., Criscito argues that because the Smith Barney account continues in existence today, his fraudulent conduct is excused.[5]  To accept that argument, one would have to conclude that the following actions by Criscito, among others, are permissible:

---

[3] Plaintiffs noted this in Plaintiffs' S.J. Br. at p. 21, Footnote 2.

[4] Notably, Criscito does not present any argument that he has not breached his fiduciary duty under ERISA.

[5] *See* Defendant's S.J. Br. at pp. 4-6, 17, 19 and 22.

- Criscito's fiduciary breaches included falsifying the year-end values for the Morgan Stanley account and Smith Barney account and providing the falsified figures to APC for use in preparing the Plan's Annual Reports and its Forms 5500 for the years 1999-2005;

- Criscito's orchestrating, in late 1999/early 2000, the creation of individual accounts for the participants in the commingled account (other than himself) so that dramatically understated values (based on Criscito's false figures) would be transferred to the participants' new individual accounts;

- Criscito concealing the true value of the Smith Barney account and the Morgan Stanley account for many years;

- Criscito's signing the Forms 5500 for the years 1999 through 2005 as "true, correct and complete" under "penalties of perjury" when he knew the figures in the Forms 5500 were false;

- Criscito placing his home address as the account address for the Smith Barney account, the Morgan Stanley account and the Sovereign Bank Pension Fund account.

- Criscito's use of the funds in the Morgan Stanley account as his personal checking account;

- Criscito's transfer of $7,000,000 from the Morgan Stanley account to the Sovereign Bank Pension Fund account that Criscito opened in the name of the Plan;

- Criscito's use of the Sovereign Bank Pension Fund account as his personal checking account;

- Criscito's transfer of virtually all of the assets in the Smith Barney account to his personal IRA account at Smith Barney in October of 2007; and

- Criscito's failure to provide any accounting for any actions taken while he was (for 30 years) the sole Trustee of the Plan. [6]

Criscito's argument that the continued existence of the Smith Barney account insulates him from liability is not only specious, it is absurd.

Criscito falsely reported the 1999 year-end value of the Smith Barney account so that the monies paid to the other Plan participants would be dramatically less than that to which they were entitled. Criscito then facilitated and expedited the creation of individual accounts for the Plan participants (other than himself) into which the understated values (resulting from Criscito falsifying the 1999 year-end values of the Morgan Stanley account and the Smith Barney account) were transferred. The burgeoning Smith Barney account remained under the full dominion and control of Criscito. Criscito was the only person who received and reviewed the Smith Barney account statements that were sent to his home. Criscito continued to falsify the year-end values of the Smith Barney account in his reports to APC for the years 2000 through 2005. This continuation of the fraud was obligatory in order to prevent APC from discovering Criscito's initial falsification of the 1999 year-end values for the Smith Barney account and the Morgan Stanley account.

Criscito was removed as the sole Trustee of the Plan on July 2, 2007. Apparently emboldened by the fact that he had successfully concealed his fraud for over 7½ years (from January of 2000), in October 2007, Criscito (who was still listed as the sole Trustee on the Smith Barney account although he was no longer the Trustee) had Smith Barney transfer virtually the entire balance of the Smith Barney account (more than $945,000) to his personal IRA account at Smith Barney. Fortunately for the Plaintiffs and the Plan participants, Plaintiffs discovered

---

[6] Other instances of Criscito's fraud are detailed in Plaintiffs' R. 56.1 Stmt., ¶¶23 to 153 and in Plaintiffs' S.J. Br. at pp. 10-12.

Criscito's fraudulent transfer and were able to have the transfer to Criscito's personal IRA account reversed.[7]

However, as a result of Criscito's fraudulent conduct, his concealment of his fraud, his failure to provide copies of the Smith Barney account statements to anyone, and his exercising absolute control over the Smith Barney account through October of 2007, the value of the Smith Barney account has dwindled from $3,942,549.92 in December of 1999 to $771,846.06 as of September 30, 2010. *See* Plaintiffs' Supplemental Statement of Disputed Material Facts ("Plaintiffs' Supp. R. 56.1 Stmt.") at ¶3.

All of the foregoing confirm Criscito's fraud, self dealing and his numerous and significant breaches of his fiduciary duty to the Plan and its participants. The fact that the Smith Barney account is still in existence (with significantly less value) does not exculpate Criscito. His argument that it does should be rejected.

## POINT III

### PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE ERISA STATUTE OF LIMITATIONS BECAUSE THE "FRAUD OR CONCEALMENT" EXCEPTION APPLIES HERE

As discussed below, Criscito's argument that the Complaint is barred by the statute of limitations rests on the following fallacies: (1) that the Complaint does not allege active concealment by Criscito of his fraudulent conduct—even though Judge Martini has already ruled

---

[7] Indeed, Criscito's Counterclaim asserts that the Smith Barney account is his own "personal account" (as opposed to an account for the Plan participants) and that Plaintiffs interfered with Criscito's "access to and control over the funds" in his Smith Barney account, thereby refuting any notion that Criscito was maintaining this account over the years for the benefit of anyone besides himself. *See* Declaration of Melissa E. Flax in Support of Plaintiffs' Motion for Summary Judgment ("Flax Decl."), Ex. 81, pp. 15-16. Criscito also advised APC that all of the money in the commingled account (which included the Smith Barney account) was rolled over to his personal IRA as reflected in the 2005 IRS Form 1099-R prepared by APC for Criscito. *See* Plaintiffs' Supp. R.56.1 Stmt., ¶4; Flax Decl., Ex. 68, p.25010; Ex. 69.

that it does, and the evidence in the record fully corroborates his active concealment, and (2) that

Plaintiffs did not exercise reasonable diligence in uncovering Criscito's fraudulent conduct—

even though Judge Martini has already ruled that the Complaint adequately alleges that Plaintiffs

could not have discovered Criscito's fraud earlier than they did in the exercise of reasonable

diligence, and the evidence in the record similarly corroborates these allegations. Accordingly,

the Complaint was timely filed, and Criscito's motion for summary judgment dismissing the

Complaint based on the statute of limitations should be denied.

**A.     The "Fraud Or Concealment" Exception To The ERISA Statute Of Limitations**

ERISA §413, 29 U.S.C. §1113 provides:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of -

> (1)  six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

> (2)  three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

The Third Circuit has interpreted this provision as follows: "This section thus creates a

general six year statute of limitations, shortened to three years in cases where the plaintiff has

actual knowledge, and potentially extended to six years from the date of discovery in cases

involving fraud or concealment." Kurz v. Philadelphia Elec. Co., 96 F. 3d 1544, 1551 (3d Cir.

1996), cert den., 522 U.S. 913, 118 S. Ct. 297, 139 L. Ed. 2d 228 (1997). Therefore, "when a

lawsuit has been delayed because the defendant itself has taken steps to hide its breach of fiduciary duty (citation omitted), the limitations period will run six years after the date of the claim's discovery." Id. at 1552. Thus, the Third Circuit has interpreted the final "except that" clause "as incorporating the federal doctrine of fraudulent concealment: The statute of limitations is tolled until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment." Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 788 (3d Cir. 2001) (quoting Kurz, supra).

**B.     The Record Shows That Criscito Actively And Successfully Concealed His Fraud**

The overwhelming undisputed facts obtained in discovery establish beyond question Criscito's active concealment of his fraud:

- Criscito maintained the Morgan Stanley account in the name of the Plan but had his home address as the account address. *See, e.g.*, Flax Decl., Exhibit 1 at pp. 17 of 32 and 20 of 32 listing "11 Chadwick Road, Livingston, N.J.", Criscito's home address.[8]

- Criscito maintained the Smith Barney account in the name of the Plan but likewise had his home address as the account address. *See, e.g.*, Flax Decl., Exhibit 1 at p. 32 of 32 listing "11 Chadwick Road, Livingston, N.J.", Criscito's home address.

- Criscito opened the Sovereign Bank Pension Fund account in 2002 in the name of the Plan, using the Plan's Employer Identification Number, but used his home address as the account address. Records provided by Sovereign Bank in response to a subpoena issued in this case, confirm that the account address remained as Criscito's home address (*i.e.* 32 Chelsea

---

[8] Criscito moved to 32 Chelsea Drive, Livingston, New Jersey in or about early May 2004. *See* Plaintiffs' Rule 56.1 Stmt., ¶¶95-96.

Drive, Livingston, New Jersey) through the date on which the account was closed in August 2006. Flax Decl., Exhibit 60, p. 5, and Plaintiffs' Rule 56.1 Stmt., ¶¶75 and 92.

- During the period 1981 through at least 2006, Criscito repeatedly told Warnock that everything regarding the Money Purchase Plan and Profit Sharing Plan should be sent to Criscito's home, that APC could not send copies of any Plan information to DCC doctors or employees, that APC was not permitted to speak with anyone regarding the commingled account except Criscito, and on one occasion Criscito even told Warnock that if any information regarding the Plan goes to DCC's office or to Casella, Criscito would personally come to APC and "beat him."[9]  The foregoing repeated directions from Criscito to APC not to share any information regarding the Plan or the commingled account were recorded in numerous handwritten notes found in APC's files. See Plaintiffs' R. 56.1 Stmt., ¶23.

- In a December 6, 2007 letter from Warnock to then counsel for the Plaintiffs, Joy M. Mercer, Esq., Warnock reiterated that "Dr. Criscito always emphasized that he was the 'boss', and that everything was to be sent to him directly at his home." See Plaintiffs' R. 56.1 Stmt., ¶24.

- In 1999, Mark Brown, DCC's administrator, requested information from APC regarding his "money" in the commingled account.  APC advised Brown that they could not release that information to him and told him that only Criscito was allowed to have that information. See Plaintiffs' R. 56.1 Stmt., ¶25.

- Brown requested the information from Criscito who responded "Don't ask Mario. You're fine.  Uncle Mario is taking care of you."  Brown told Criscito that he was meeting with

---

[9] Warnock subsequently testified that although Criscito made that statement, Warnock did not believe that Criscito would actually "beat him" but he certainly believed Criscito would have fired APC if information regarding the commingled account was given to anyone but Criscito. Flax Decl., Ex. 41 (Warnock) at 281:23 to 282:1.

his financial advisor and that he did not have any idea what was in his retirement account. Criscito got irate, yelled at Brown, took Brown's hand and attempted to write a number on it. When Brown pulled his hand back, Criscito wrote a number on a napkin and gave it to Brown. *See* Plaintiffs' R. 56.1 Stmt., ¶26.

- Brown also requested information regarding his retirement monies in the commingled account from Mary Sue McCarthy at Morgan Stanley. McCarthy, like APC, told Brown that any information regarding his retirement monies would have to come from Criscito. *See* Plaintiffs' R. 56.1 Stmt., ¶27.

- When Criscito was removed as the sole Trustee of the Profit Sharing Plan in July 2007, he did not turn over any records or documents relating to the Money Purchase Plan or the Profit Sharing Plan to Plaintiffs. *See* Plaintiffs' R. 56.1 Stmt., ¶148.

- After Criscito was removed as sole Trustee in July 2007, the documentation that the Plaintiffs obtained regarding the Money Purchase Plan and the Profit Sharing Plan came from the files of APC and outside sources. *See* Plaintiffs' R. 56.1 Stmt., ¶149.

- Criscito has never accounted for his administration of the Money Purchase Plan or the Profit Sharing Plan during his more than 30-year reign as sole Trustee. *See* Plaintiffs' R. 56.1 Stmt., ¶150.

Criscito claims that this overwhelming evidence of active concealment is negated because APC received a handful of monthly Morgan Stanley account statements for the Plan in the year 2000 showing the true value of the commingled account (these commingled account statements were received at the same time that APC began receiving the monthly statements for the participants' newly created individual accounts). Conveniently, Criscito chooses to ignore the

fact that APC did not even know that its files contained those few statements until Plaintiffs discovered them in September of 2007.[10]

Moreover, nowhere does Criscito assert that he instructed Morgan Stanley to send these statements to APC for the first time in 2000, since Morgan Stanley, like APC, had been directed by Criscito to send everything regarding the Plan only to Criscito. In light of that instruction, it is clear that these few Plan statements were sent inadvertently to APC, who never discovered or reviewed them.

Finally, Criscito ignores that APC never received any of the Smith Barney account statements or any of the Sovereign Bank Pension Fund account statements that Criscito was concealing.

Criscito cannot negate his active concealment of a multi-million dollar fraud by pointing to a few pieces of paper in APC's files that were inadvertently sent and never discovered or reviewed by APC until after Plaintiffs became the trustees. Indeed, as discussed in Point IV, *infra*, APC's alleged negligence in not catching Criscito "red-handed" is not a viable defense or justification for the fraud that he perpetrated on the Plan.

**C.    Judge Martini's Prior Holding In This Lawsuit That The ERISA Statute Of Limitations Does Not Bar Plaintiffs' Claims Is Not Only Supported By The Record, But Is Also The Law Of The Case**

At the outset of this lawsuit, Criscito made a motion to dismiss Plaintiffs' Complaint based on the ERISA statute of limitations. He argued that the "fraud or concealment" exception did not apply because supposedly the Complaint did not allege facts showing his active

---

[10] It is not surprising that APC would not be looking for commingled account statements, since Criscito had never provided commingled account statements in the past. He chose instead (as part of his scheme) to provide APC with only handwritten/typed "faxes" containing what Criscito reported as the year-end values for the commingled account. *See, e.g.,* Flax Decl., Exs. 46 and 47, Declaration of Robert J. Conroy in Support of Defendant's Motion for Summary Judgment ("Conroy Decl"), Ex. B (Warnock) 159:23-160:9.

concealment or that Plaintiffs could not have discovered his fraudulent conduct earlier with the exercise of reasonable diligence. Judge Martini denied the motion in an Opinion and Order dated June 24, 2008 (*See* Declaration of Melissa E. Flax in Opposition to Defendant's Motion for Summary Judgment ("Flax Opp. Decl."), Exs. 1 and 2), and his decision was published in Chaaban v. Criscito, 2008 U.S. Dist. LEXIS 49569.

In denying Criscito's motion, Judge Martini stated at *6-7: "Here, Plaintiffs clearly allege that Defendant made affirmative misrepresentations to conceal his wrongdoing. The complaint contains at least the following relevant allegations: [citing paragraphs 2, 25 and 41 of the Complaint]." He expressly noted that these allegations "clearly support a finding that Defendant intentionally concealed his breach of fiduciary duties to the ERISA plan." Id. at *7.

Judge Martini also found: "Plaintiffs' complaint sets forth several allegations supporting a conclusion that they could not have discovered Defendant's fraud—even with reasonable diligence: [citing paragraphs 6 and 19 of the Complaint]." Id. at *7-8. He expressly noted that these allegations "support a conclusion that Plaintiffs could not have discovered Defendant's fraud until they replaced Defendant as a trustee in July 2007." Id. at *8. Therefore, the Court held "that under the facts alleged in the complaint, the statute of limitations on Plaintiffs' claims did not begin to run until that date. Plaintiffs' claims as presented in their complaint are thus timely filed." Id.

Since Criscito did not move for reconsideration or otherwise seek to challenge Judge Martini's rulings, under the law of the case doctrine, his decision "should continue to govern the same issues in subsequent stages in the same case." Arizona v California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L. Ed.2d 318 (1983) (citations omitted). The purpose of the law of the case doctrine is "to maintain consistency and avoid reconsideration of matters once decided during

the course of a single continuing lawsuit." <u>Casey v. Planned Parenthood of Southeastern Pennsylvania</u>, 14 F.3d 848, 856 (3d Cir. 1994) (citation omitted). Therefore, this "doctrine does not limit a federal court's power; rather it directs its exercise of discretion." <u>Pub. Interest Research Group of NJ, Inc. v Magnesium Elektron</u>, 123 F.3d 111,116 (3d Cir. 1997). This discretion should be exercised as follows: "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L. Ed. 2d 811 (1988) (quoting <u>Arizona v California</u>, <u>supra</u>, at 618 n.8). Thus, "as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case." <u>Fagan v City of Vineland</u>, 22 F. 3d 1283, 1290 (3d Cir. 1994).

Besides the extraordinary circumstances articulated in <u>Christianson</u>, <u>supra</u>, the Third Circuit has recognized that "the law of the case doctrine does not preclude a court from revisiting its own decisions or one of a coordinate court where (1) new evidence is available or (2) a supervening new law has been announced." <u>Bellevue Drug Co. v. Caremarks PCS (In re: Pharm. Benefit Managers Antitrust Litig.)</u>, 582 F.3d 432, 439 (3d Cir. 2009). In addition, the "doctrine does not preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling." <u>Id</u>. (citation omitted). Likewise, "a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." <u>Id</u>. (citation omitted).

Here, none of the recognized exceptions to the law of the case doctrine apply. Judge Martini's rulings were not "clearly erroneous," and there is no new evidence or supervening new

law to justify disturbing Judge Martini's clear and unambiguous rulings, all of which are supported by the undisputed facts obtained in discovery.    Similarly, no "unjust result" or "manifest injustice" occurs by permitting Plaintiffs to prove that Criscito is liable for the fraud that he perpetrated, and that they should recover the compensatory damages, punitive damages, and attorneys fees and costs that they seek.  Indeed, an "unjust result" and "manifest injustice" would only occur if Criscito (who carefully orchestrated his conduct to conceal his ongoing fraud) was permitted to invoke the statute of limitations to escape liability.

**D.      Criscito Cannot Meet His Burden Of Showing That The ERISA Statute Of Limitations Should Apply Here**

"[T]he burden of proving that the statute of limitations bars [a plaintiff's] claims rests with Defendants." Jackson v. Chevron Corp. Long-Term Disability Org., Inc., 2006 U.S. Dist. LEXIS 3590 (D.N.J. 2006) at *9 (motion to dismiss ERISA claims based on statute of limitations was denied).  The court in Jackson cited Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581 (3d Cir. 2002), where the Third Circuit made clear that the statute of limitations is not favored for insulating fiduciaries from breaches of their fiduciary duties by emphasizing that Section 1113 "sets a 'high standard' for barring claims against fiduciaries prior to the expiration of the six year limitations period and thus we have interpreted the actual knowledge requirement 'stringently.'" 311 F.3d at 587 (citations omitted)(District Court erred in finding that breach of fiduciary duty claim was time-barred).

In light of the heavy burden that a defendant bears in invoking the ERISA statute of limitations, it is not surprising that courts refuse to let a defendant escape liability where the allegations in the complaint and the evidence in the record set forth a defendant's efforts to conceal his wrongdoing.

In <u>In re: Unisys Corp. Retiree Med. Benefit "ERISA" Litig.</u>, 242 F.3d 497 (3d Cir. 2001), <u>cert den.</u>, 534 U.S. 1018, 122 S.Ct. 542, 151 L.Ed.2d 420 (2001), the Third Circuit reversed the District Court's granting of summary judgment in favor of defendant based on Section 1113. There, plaintiffs claimed that Unisys' termination of its post-retirement medical plans for retirees and disabled employees was a breach of fiduciary duty because allegedly these benefits had been represented as being "lifetime" benefits. 242 F.3d at 500.  The Third Circuit noted that there was evidence suggesting that a retirement counselor had advised potential retirees that the reservation of rights clause in the pension plan pertained only to active employees and not retirees, and concluded that such advice "could appropriately be regarded as an affirmative step" to conceal a breach of fiduciary duty by Unisys. <u>Id.</u> at 505.

In <u>Stier v. Satnick Dev. Corp.</u>, 974 F. Supp. 436 (D.N.J. 1997), the court denied a motion to dismiss an ERISA complaint seeking to recover deficient ERISA contributions by the employer.  The plaintiffs claimed that the employer concealed the records necessary for them to discover that they had a claim by refusing to produce financial records for an audit, by misrepresenting on its monthly contribution reports those employees for whom contributions were required, and by falsely certifying that its monthly contributions complied with the collective bargaining agreement. <u>Id.</u> at 440.  The court found that since there was "no basis on which the plaintiffs could have discovered the misstatements from the face of the reports", their claims seeking to recover delinquent contributions from 1987 to 1990 were not time barred. <u>Id.</u>

Likewise, in <u>Sheet Metal Workers Int'l Assn., Local 19 v. 2300 Group Inc.</u>, 949 F.2d 1274 (3d Cir. 1991), upon which the court in <u>Stier</u> relied, the Third Circuit affirmed the part of the lower court's holding that ERISA claims for deficient contributions were not time barred where the employer failed to supply accurate monthly reports of wage and hour information,

despite a written agreement requiring the employer to do so.  The court found that this agreement embodied "the plaintiffs' placement of trust and confidence in [the employer] to submit accurate reports." Id. at 1282.

These cases highlight why Plaintiffs' Complaint is not barred by the ERISA statute of limitations.  In Unisys, a single affirmative misrepresentation was sufficient for the Third Circuit to reverse summary judgment for the defendant employer and permit the plaintiff employees to go forward with a breach of fiduciary duty claim.  Here, Plaintiffs have alleged not one but many affirmative steps by Criscito to conceal his wrongdoing. See Point III. B. above.

Moreover, as in Stier, there was no way for Plaintiffs to discover Criscito's fraudulent conduct by reviewing the Plan's annual reports or tax returns.  On their face these documents did not reveal Criscito's false reporting of year-end values for the commingled account or his shortchanging the newly created individually directed accounts by diverting more than $12,000,000 in Plan assets to himself.  And, as the record shows, Criscito repeatedly declared (under "penalties of perjury") that the Plan's annual tax returns (Form 5500) were "true, correct and complete" as part of his scheme and in order to further conceal his fraudulent diversion of Plan assets.

While Criscito notes that stock prices are public (Defendant's S.J. Br. 28), so that the value of the stock in the commingled account could have been determined, he ignores that no Plan participant or beneficiary other than Criscito knew what stocks were in the commingled account because of the "information blackout" that he imposed.

In addition, the Morgan Stanley monthly account statements for the new individually directed accounts did not on their face disclose Criscito's fraud in shortchanging the Plan participants by fraudulently understating the 1999 year-end values, just as the fraudulent monthly

contribution reports in <u>Stier</u> and fraudulent monthly wage and hour reports in <u>Sheet Metal</u> did not on their face disclose the fraud that had occurred in those cases.

Since Criscito was the sole Trustee of the Plan, he was required to submit accurate information to the third-party administrator, just as the employer in <u>Sheet Metal</u> was required to submit accurate monthly reports of wage and hour information.  But like the employer in <u>Sheet Metal</u>, who falsified its reports, Criscito falsified the information that he submitted to the third-party administrator and caused the Plan to file false annual tax returns for 1999 and each succeeding year that he was the sole Trustee.  Just as the employees in <u>Sheet Metal</u> were entitled to place "trust and confidence" in their employer to submit accurate reports, so too Plaintiffs and the other Plan participants were entitled to place their trust and confidence in Criscito to submit accurate information to APC about the Plan's assets.

In light of the overwhelming undisputed facts showing Criscito's commission and active concealment of multiple breaches of fiduciary duty as part of his ongoing course of conduct to defraud the Plan, as well as the prior rulings of Judge Martini, Criscito has not and cannot meet the heavy burden under ERISA necessary to successfully invoke the statute of limitations as a bar to Plaintiffs' Complaint.

**E.   The Complaint Was Timely Filed**

In the unlikely event that this Court looks beyond Judge Martini's rulings and the arguments set forth above, there is no question that Plaintiffs' Complaint was timely filed.

The Complaint in this case was filed in March of 2008.  Plaintiffs did not unearth Criscito's fraud until September 2007, when Plaintiff, Dr. Anthony J. Casella ("Casella") discovered a Morgan Stanley account statement in the records of APC that revealed the 1999 year-end value of the Morgan Stanley account was approximately $9,000,000 more than Criscito

had reported to APC.  Not surprisingly, this discovery did not occur until after Criscito was removed as the Plan's sole Trustee, and Plaintiffs were, for the first time, afforded access to APC's files.

The Complaint was filed within approximately 6 months of discovery of Criscito's fraud and thus was timely under ERISA §413(2), 29 U.S.C. §1113(2).

Furthermore, Criscito provided false figures to APC and signed the Forms 5500 (under "penalties of perjury") based upon his false figures up through the reporting year 2005 (the 2005 Form 5500 was signed by Criscito on October 14, 2006.  *See* Flax Decl., Ex. 76).  Moreover, Criscito's failed attempt to transfer virtually the entire balance of the Smith Barney account to his personal IRA account occurred in October 2007.  *See* Flax Opp. Decl., Ex. 6, p.4 of 8 and Conroy Decl., Ex. G, p. 6312.  Both of these actions by Criscito were part of his ongoing breach of his fiduciary duty.  Thus, the Complaint was filed within six years "of the date of the last action which constituted part of the breach", as required by ERISA §413(1)(A), 29 U.S.C. §1113(1)(A).

Under any analysis, the Complaint was timely filed and is not barred by ERISA's statute of limitations.

**F.    The Statute Of Limitations Cases Cited By Criscito Are Inapposite And Do Not Warrant A Contrary Result**

In Kurz, where there was a bench trial, the court reversed the district court's judgment for the plaintiffs after finding that there was no evidence that the employer concealed its efforts to change its pension plan to provide more lucrative benefits in order to induce the plaintiff retirees to retire before the new plan went into effect.  Hence, Criscito's reliance on that case is inapposite (Defendant's S.J. Br. 24) because here the record is replete with evidence of his concealment. *See* Point III. B above.

The decision in Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197 (3d Cir. 2006) (Defendant's S.J. Br. p. 24), where an ERISA complaint was dismissed as time barred, is also inapposite.  There, Eastman Kodak Company's Pharmaceutical Division merged with a wholly-owned Kodak subsidiary named Sterling, which in turn was partially acquired by defendant Sanofi.  Former employees of Kodak who accepted employment with Sanofi in 1994 sued in 2004, after they learned in 2002 upon receiving a statement of their estimated retirement benefits that their change in employment had diminished the retirement benefits that they expected.  436 F.3d at 199.

Unlike the situation in Unisys, where "a fiduciary's act of responding to questions in a manner that diverted the beneficiary from discovering a prior misrepresentation could make the 'fraud or concealment' exception applicable," Id. at 204, in Ranke the complaint did not allege any misrepresentations or affirmative steps by Kodak or Sanofi to prevent the plaintiffs from discovering the terms of their pension benefits and the alleged breach of fiduciary duty.  Id. Instead, the complaint simply alleged that neither Kodak nor Sanofi told the appellants that their pension benefits "would be adversely affected or diminished." Id. The court therefore found that "Kodak's and Sanofi's failures to notify their beneficiaries of any change in the method of calculating retirement benefits or warn them of any misconception regarding their benefits are not 'affirmative steps,' and cannot on their own bring the 'fraud or concealment' exception into play." Id.

Unlike the complaint in Ranke, here both the Complaint and the record are replete with "affirmative steps" that Criscito took to prevent the discovery of his fraud and breaches of fiduciary duty, including:

- Having all information and documents about Plan assets sent only to Criscito at his home address for more than thirty years for the express purpose of concealing the wrongdoing that he committed during that time;

- Making misrepresentations to the third-party administrator about Plan assets, including sending a false facsimile that fraudulently understated by more than $12,000,000 the true 1999 year-end values of Plan assets in the commingled accounts at Morgan Stanley and Smith Barney; and

- Causing the Plan to file a false annual tax return for 1999 and each succeeding year that Criscito remained as sole Trustee in order to conceal his fraudulent diversion in 2000 of more than $12,000,000 in Plan assets.

This case is also unlike the situation in <u>Schaefer v. Arkansas Med. Society,</u> 853 F.2d 1487(8th Cir. 1988) (Defendant's S.J. Br. p. 28), where one trustee sought to recover certain cost-of-living adjustment benefits, and his co-trustees counterclaimed for damages arising from the plaintiff's alleged breach of fiduciary duty to the Plan in promulgating certain Plan amendments. In dismissing the counterclaim as time barred, the Eighth Circuit found that the plaintiff's "failure to investigate adequately and relay warnings about the feasibility and legality of the COLA and fringe benefit provisions does not rise to the level of active concealment, which is more than merely a failure to disclose." <u>Id.</u> at 1491. The same rationale was used to bar a lawsuit by trustees in <u>Martin v Consultants And Administrators, Inc.,</u> 966 F.2d 1078 (7th Cir. 1992) (Defendant's S.J. Br. 28).

Here, by contrast, the Complaint alleges both active concealment and misrepresentations. In addition, unlike the present case, the persons asserting the counterclaim in <u>Schaefer</u> were themselves trustees who had access to information concerning their counterclaim. Therefore, the

court found that they "were derelict in not independently investigating" the proposed amendments to the Plan. Id. at 1492. The undisputed facts in this case confirm that by reason of the "information blackout" imposed by Criscito while he was the sole Trustee, Plaintiffs could not independently investigate anything until Criscito was removed as sole Trustee in July 2007. It was not until then that Plaintiffs, for the first time, gained access to information and documents about the Plan.

**POINT IV**

**CRISCITO CANNOT ESCAPE LIABILITY BY TRYING TO "SHIFT THE BLAME" FOR HIS FRAUDULENT CONDUCT TO APC**

Even though Criscito lied and falsified the 1999 year-end values of the Morgan Stanley account and the Smith Barney account, he incredibly claims that liability for his fraudulent conduct should be attributed to APC and not to him. Under his tortured reasoning, if APC had discovered in the year 2000 the Morgan Stanley account statements for the Plan's commingled account (that were sent to APC along with the Morgan Stanley account statements for the newly created individual accounts), APC could have caught Criscito "red-handed" and immediately exposed his fraud, (years before Casella discovered the "smoking gun" in APC's files). In other words, the long laundry list of fraudulent misconduct by Criscito listed in Point III B. above, is really all APC's fault according to Criscito. This argument is ludicrous.[11]

Engaging in "what ifs" does not provide Criscito with a defense for fraudulent conduct and breach of fiduciary duty. Criscito's argument about what might have happened "if" APC had discovered the Morgan Stanley account statements (and then unearthed his fraudulent conduct) is purely speculative and does not in any way eradicate Criscito's massive fraud.

---

[11] Several months ago, Criscito sought leave to file a third party complaint to assert these very claims against APC. His motion was denied by Magistrate Arleo. *See* Flax Opp. Decl., Ex. 3 (Order) and 4 (Transcript of Opinion).

Further, Criscito was the sole Trustee of the plan and therefore a fiduciary. APC was simply the third party administrator hired by Criscito. APC was not a fiduciary. Therefore, it was Criscito who was supposed to monitor APC and not vice versa. In Olsen v. Hegarty, 180 F.Supp. 2d 552 (D.N.J. 2001), where the trustees hired non-fiduciaries to help with investment decisions, the trustees were not able to escape a breach of fiduciary duty claim when those decisions resulted in substantial losses to the retirement plan. "Even with the assistance of outside consultants making up for their lack of investment experience, the Trustees still were required to maintain an independent and critical eye toward the decisions that they approved." 180 F.Supp. 2d at 571. (citation omitted). Likewise, in Meinhardt v. Unisys Corp. (In re: Unisys Sav. Plan Litig.), 74 F.3d 420 (3d Cir. 1996), cert den., 519 U.S. 810, 117 S.Ct. 56, 1361 L.Ed. 2d 19 (1996), the Third Circuit recognized that fiduciaries who retain outside consultants to assist them in making prudent investments still have a duty "to review the data a consultant gathers, to assess its significance and to supplement it where necessary." 74 F.3d at 435.

The message in the Olsen and Unisys decisions is clear: trustees have a duty under ERISA to monitor the activities of outside consultants that they hire and cannot escape a breach of fiduciary duty claim by trying to shift responsibility for a loss to a retirement plan by blaming the consultant—precisely what Criscito is trying to do here. Magistrate Arleo recognized as much in denying Criscito's motion to file a third party complaint against APC and two of its employees for indemnification and contribution. "To hold otherwise, would be aiding Criscito, who has been alleged to have deliberately done harm to plaintiffs." (Flax Opp. Decl., Ex. 4, p.15). Further, in commenting on Criscito's undue delay in trying to bring such claims, Magistrate Arleo noted that "Criscito knew the crucial facts back in 2000. He knew who the third-party administrator was. He knew what their role was." Id. at 13. The Court added that

"as early as 2000, Criscito had to have been aware of their potential obliviousness to the valuation inaccuracies…" Id.

As Magistrate Arleo observed, "plaintiffs' ERISA action is based on Criscito's fraud, while Criscito's third-party claims are based upon negligence." Id. at 14. But even if APC was negligent, the Magistrate properly recognized that such conduct would not justify Criscito's fraud. Indeed, Criscito's claim that he would not have been able to defraud the Plan if APC had done a better job, is comparable to Bernie Madoff saying that he would not have been able to defraud his investors if the outside accountants that he hired had done a better job.

In short, as sole Trustee it was incumbent upon Criscito to "keep tabs" on the third party administrator that he himself had hired, and not the other way around. Accordingly, any attempt by Criscito to avoid his own culpability for defrauding the Plan by "blaming" APC for not catching him red-handed, is meritless.

Since "shifting the blame" to APC does not enable Criscito to escape liability for his ongoing fraudulent conduct, his references to APC's alleged negligence are both irrelevant and immaterial. Moreover, Criscito's attempt to rely on the deposition testimony of Plaintiffs' expert to support his negligence theory vis-à-vis APC, is likewise misplaced.

Plaintiffs designated Scott M. Feit ("Feit") of Abar Pension Services, Inc. as their damage expert to prove the compensatory damages to which Plaintiffs are entitled. His written expert report (and amendments) were provided to Criscito, whose counsel took Feit's deposition. Feit was asked a series of questions about how his own firm gathers information when it serves as a third-party administrator, and he responded that his firm always requests backup for the information supplied by the trustee of a plan. Feit further testified that he believed requesting

such backup (which APC did not request from Criscito) was part of the industry standards for third-party administrators.

In his motion papers, Criscito repeatedly refers to industry standards as a "smokescreen" to divert the Court's attention from the bald truth that he has no defense for the multiple breaches of fiduciary duty arising from his ongoing fraudulent conduct. *See* Defendant's Rule 56.1 Stmt., ¶¶28-31 and Defendant's S.J. Br., pp. 13, 21-22 and 26.

However, Feit was offered as an expert on damages, not on industry standards for third-party administrators. Likewise, the only expert that Criscito has designated is an expert on damages. Moreover, even if Feit's opinion about industry standards is correct, and even if APC was negligent in not requesting backup from Criscito, that is irrelevant and immaterial to whether or not Criscito perpetrated a fraud on the Plan. To use the words of Magistrate Arleo, it "would be aiding Criscito" to let him use APC's alleged negligence to escape liability for his intentional conduct that harmed the Plan.

Simply put, this case is about Criscito's multi-million dollar fraud. It is not about whether APC should have discovered a handful of Morgan Stanley account statements buried in its files. Criscito's disingenuous attempt to "shift blame" to APC highlights the absence of any credible defense to Plaintiffs' breach of fiduciary duty claim. This desperate tactic should be rejected.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that this Court should deny

Defendant's motion for summary judgment in its entirety.

Dated:  October 20, 2010

Respectfully submitted,

Stephen M. Charme
Tara S. Sinha
WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932-2213
(973) 822-0220

By: /s/ Stephen M. Charme
        Stephen M. Charme

John M. Agnello
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

By: /s/John M. Agnello
        John M. Agnello

*Attorneys for Plaintiffs*