# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Stephen M. Charme
Tara S. Sinha
WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932-2213
(973) 822-0220

John M. Agnello
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for Plaintiffs*

---

| | |
|---|---|
| DR. FADI CHAABAN, DR. SABINO R. TORRE, DR. CONSTANTINOS A. COSTEAS, AND DR. ANTHONY J. CASELLA as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan,<br><br>Plaintiffs,<br><br>v.<br><br>DR. MARIO A. CRISCITO,<br><br>Defendant. | Case No. 2:08-cv-01567 (GEB/MCA)<br><br>**DECLARATION OF MELISSA E. FLAX IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

MELISSA E. FLAX, of full age and upon her oath, declares as follows:

1.     I am an attorney at law in the State of New Jersey, and a partner of the law firm of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., attorneys for plaintiffs Dr. Fadi Chaaban, Dr. Sabion R. Torre, Dr. Constantinos A. Costeas and Dr. Anthony J. Casella, as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan.

2.      I submit this Declaration in opposition to Defendant's Motion for Summary Judgment.

3.      Attached hereto as Exhibit 1 is a true and accurate copy of the Order entered by the Honorable William J. Martini, U.S.D.J. on June 24, 2008.

4.      Attached hereto as Exhibit 2 is a true and accurate copy of Honorable William J. Martini, U.S.D.J. Opinion dated June 24, 2008.

5.      Attached hereto as Exhibit 3 is a true and accurate copy of the Order entered by the Honorable Madeline Cox Arleo, U.S.M.J. on June 21, 2010.

6.      Attached hereto as Exhibit 4 is a true and accurate copy of the transcript of the hearing before the Honorable Madeline Cox Arleo, U.S.M.J. on June 21, 2010.

7.      Attached hereto as Exhibit 5 is a true and accurate copy of relevant portions of the deposition transcript of Brian Warnock dated July 15, 2009.

8.      Attached hereto as Exhibit 6 is a true and accurate copy of the Smith Barney October 2007 statement.

I declare under penalty of perjury that the foregoing is true and accurate. Executed on October 20, 2010.

MELISSA E. FLAX

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DR. FADI CHAABAN, DR. SABINO R. TORRE, DR. CONSTANTINOS A. COSTEAS, DR. ANTHONY J. CASELLA, as trustees of Diagnostics & Clinical Cardiology, P.A. Profit Sharing Plan,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DR. MARIO A. CRISCITO,**<br><br>**Defendant.** | 08-CV-1567 (WJM)<br><br><br>**ORDER** |

Defendant having filed a motion to dismiss; and for the reasons set forth in the accompanying Opinion and for good cause shown,

**IT IS** on this 24th day of June 2008, hereby

**ORDERED** that Defendant's motion is **DENIED**.


s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DR. FADI CHAABAN, DR. SABINO R. TORRE, DR. CONSTANTINOS A. COSTEAS, DR. ANTHONY J. CASELLA, as trustees of Diagnostics & Clinical Cardiology, P.A. Profit Sharing Plan,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DR. MARIO A. CRISCITO,**<br><br>**Defendant.** | **MASTER FILE: 08-CV-1567 (WJM)**<br><br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

Stephen M. Charme
Witman, Stadtmauer & Michaels, P.A.
26 Columbia Turnpike
Florham Park, NJ 07932-2246

(*Counsel for Plaintiffs*)

Robert J. Conroy
Conroy & Schoppmann, PC
1120 Route 22 East
Bridgewater, NJ 08807

(*Counsel for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendant moves to dismiss Plaintiffs' ERISA claims on the grounds that

Plaintiffs filed them more than six years after Defendant's allegedly wrongful actions.

Although ERISA does provide a six-year statute of limitations, this period tolls if a

defendant conceals his wrongdoing until Plaintiff discovers or should discover it.  Here, Plaintiffs adequately allege that Defendant concealed his wrongdoing, preventing Plaintiffs from discovering it until quite recently.  Accordingly, Plaintiffs' claims as pled are timely, and Defendant's motion to dismiss is **DENIED**.

I.   **FACTS AND PROCEEDINGS**

This case concerns Defendant's alleged concealed breach of his fiduciary duties to an employee benefit plan.[1]  Plaintiffs are the current trustees of this plan.  (Compl. ¶¶ 8–11.)  They allege that Defendant, the former trustee, secretly diverted the plan's assets to his own benefit.  (Compl. ¶¶ 1–7, 12.)

Plaintiffs allege that Defendant accomplished this diversion through a series of schemes spanning several decades until 2007, while he was the sole trustee.  (Compl. ¶¶ 20–67.)  For example, Plaintiffs allege that in 1982 Defendant borrowed money from the plan, part of which loan remains outstanding and part of which Defendant illegally repaid with contributions from the plan's employer.  (Compl. ¶¶ 61–62.)  Plaintiffs allege that in late 1999 and early 2000, Defendant purposely under-reported to the plan's third party administrator the values of certain of the plan's investment accounts (one account with Morgan Stanley and another with Smith Barney) and transferred the unreported overages to his own personal accounts.  (Compl. ¶¶ 20–36.)  Finally, Plaintiffs allege that

---

[1]Because this is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court recites the facts as alleged in the complaint in the light most favorable to Plaintiffs.  See Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).

Defendant withdrew money from the plan on various occasions and guided it into his own personal accounts or used it to pay for goods or services that he purchased solely for his own benefit. (Compl. ¶¶ 43–58.)

Furthermore, Plaintiffs allege that Defendant intentionally concealed this diversion. (Compl. ¶ 2.) Plaintiffs allege that Defendant's concealment precluded them from discovering his wrongdoing until they replaced Defendant as trustees, in 2007. (Compl. ¶ 6.)

Based on these allegations of over thirty years of wrongdoing, Plaintiffs filed the instant suit in March 2008. Plaintiffs claim that Defendant violated his fiduciary duties to the plan as set forth in the Employee Retirement Income Security Act (ERISA). (Compl. ¶¶ 68–75.)

Defendant now moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Defendant's sole argument is that the complaint is barred by ERISA's statute of limitations.[2]

## II.   DISCUSSION

Courts may dismiss a complaint under Rule 12(b)(6) if it fails to state claim upon which relief may be granted. Dismissal is thus proper where a claim is barred by a statute

---

[2]In Defendant's reply, he also moves in the alternative for limited discovery on the ERISA statute of limitations issue, perhaps in preparation for a summary judgment motion. Because Defendant does not raise this issue until the reply, however, the Court will not consider it. See Bayer AG v. Schein Pharmaceutical, 129 F. Supp. 2d 705, 716 (D.N.J. 2001).

3

of limitations. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). In evaluating a motion to dismiss, courts will accept the allegations in the complaint as true and view them in the light most favorable to the plaintiff. See Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).

Defendant argues that Plaintiffs' complaint fails to state a claim because all claims alleged are barred by ERISA's six-year statute of limitations. Defendant reasons that Plaintiffs did not file this complaint until March 2008 even though their claims stem from Defendant's alleged conduct occurring in some instances decades ago. Plaintiffs oppose and argue that ERISA's six-year statute of limitations tolled because Defendant intentionally concealed his breach from Plaintiffs. The Court agrees with Plaintiffs.

ERISA contains a statute of limitations for claims that a defendant has breached his fiduciary duties to an employee plan. Section 413 of ERISA, 29 U.S.C. § 1113, provides that a plaintiff must normally bring such a claim—at the latest—within six years of "the date of the last action which constituted a part of the breach or violation." However, section 413 also contains an exception to this rule: "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."

When determining whether an ERISA fiduciary has concealed a breach of his fiduciary duties and thus tolled the statute of limitations until plaintiffs should or did discover the breach, the question is "whether there is evidence that the defendant took

4

affirmative steps to hide its breach." Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1552 (3d

Cir. 1996).  The statute of limitations does not toll merely because the fiduciary's

misconduct was innately difficult to detect; the fiduciary must act affirmatively to conceal

the wrongdoing.  Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 204 (3d Cir. 2006).  For

example, the District Court for the Eastern District of Pennsylvania has held that ERISA's

statute of limitations did not toll for claims that an employer merely failed to inform his

employees of their eligibility for an employee benefit plan because there was no evidence

that the employer took affirmative steps to prevent the employees from discovering their

eligibility.  Keen v. Lockheed Martin Corp., 486 F. Supp. 2d 481, 493 (E.D. Pa. 2007).  In

contrast, this Court has held that ERISA's statute of limitations tolls on claims for breach

of fiduciary duty where the defendant made misrepresentations and omissions to plaintiffs

to prevent them from learning of the breach.  Finley v. Dun & Bradstreet Corp., 471 F.

Supp. 2d 485, 493 (D.N.J. 2007).

Here, Plaintiffs clearly allege that Defendant made affirmative misrepresentations

to conceal his wrongdoing.  The complaint contains at least the following relevant

allegations:

> During his tenure as trustee [Defendant] ensured that nobody .
> . . received any information about his handling of Plan assets,
> and knowingly, intentionally and fraudulently failed to supply
> appropriate and correct information to the third-party
> administrator . . . .  (Compl. ¶ 2.)
>
> . . . .

5

> [I]n order to retain for his own account balance the lion's
> share of the increase in the value of the Morgan Stanley
> Account, defendant knowingly, intentionally, and fraudulently
> concealed and falsified the true 1999 year-end value of this
> account that he communicated to the third-party administrator
> as well as to the other Plan participants. (Compl. ¶ 25.)
>
> . . . .
>
> As a further direct result of defendant's fraud, he knowingly,
> intentionally and fraudulently caused the Plan to file a false
> annual tax return for 1999 (known as Form 5500) with
> governmental agencies that grossly understated the true value
> of Plan assets for 1999. (Compl. ¶ 41.)

Accepting these allegations as true, as the Court must on a motion to dismiss, they clearly

support a finding that Defendant intentionally concealed his breach of fiduciary duties to

the ERISA plan.

Defendant also contends that even if Plaintiffs do allege that he intentionally

concealed his fraud, their complaint is deficient because it fails to allege that they

exercised due diligence in attempting to discover this fraud. Again the Court disagrees.

Defendants are correct that ERISA's statute of limitations only tolls until Plaintiffs could

have discovered Defendant's fraud with reasonable diligence. Kurz, 96 F.3d at 1552.

Here, however, Plaintiffs' complaint sets forth several allegations supporting a conclusion

that they could not have discovered Defendant's fraud—even with reasonable diligence:

> It was not until after defendant's removal as the sole trustee in
> July 2007, that the current trustees of the Plan had access to
> information and documents that disclosed defendant's
> massive fraud and wrongdoing, the full extent of which is still
> not known. (Compl. ¶ 6.)

. . . .

> [Defendant] arranged for all information about the Plan to be
> sent directly to him at his home rather than to the office of
> [the plan's employer], where other Plan participants might
> have access to it. As described herein, he did so to conceal
> his use of Plan assets for his own personal benefit in breach of
> his fiduciary duties under ERISA. (Compl. ¶ 19.)

Again, accepting these allegations as true and viewing them in the light most favorable to Plaintiffs, the Court finds that they support a conclusion that Plaintiffs could not have discovered Defendant's fraud until they replaced Defendant as a trustee in July 2007. Accordingly the Court holds that under the facts alleged in the complaint, the statute of limitations on Plaintiffs' claims did not begin to run until that date. Plaintiffs' claims as presented in their complaint are thus timely filed.

## III.   CONCLUSION

The Court holds that under the facts as alleged in Plaintiffs' complaint, Plaintiffs have filed this suit within ERISA's six-year statute of limitations. Defendant's motion to dismiss is accordingly **DENIED**. An Order accompanies this Opinion.

s/ William J. Martini
William J. Martini, U.S.D.J.

7

# EXHIBIT 3

**KERN AUGUSTINE**
**CONROY & SCHOPPMANN, P.C.**
1120 Route 22 East
Bridgewater, New Jersey 08807
(908) 704-8585
Attorneys for Defendant
RC-8922

|  |  |
|---|---|
| DR. FADI CHAABAN; DR. SABINO R. TORRE; DR. CONSTANTINOS A. COSTEAS and DR. ANTHONY J. CASELLA, as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan, | ) UNITED STATES DISTRICT COURT ) DISTRICT OF NEW JERSEY ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ORDER ~~GRANTING~~ Denying ) LEAVE TO FILE THIRD-PARTY, ) COMPLAINT, PURSUANT ) TO FED. R. CIV. P. 14(a) |
| DR. MARIO A. CRISCITO, | ) |
| Defendant, | ) ) |
| and | ) ) |
| DR. MARIO A. CRISCITO, | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| AMERICAN PENSION CORPORATION; BRIAN P. WARNOCK and DOMINIQUE SANDRA ECK, | ) ) ) ) |
| Third-Party Defendants. | ) ) |

Civil Action

Case No. 2:08-cv-1567 (GEB-MCA)

**THIS MATTER,** having been opened to the Court by Kern Augustine Conroy & Schoppmann, P.C., counsel for the defendant, Dr. Mario A. Criscito ("Dr. Criscito") by way of motion for leave to file a third-party complaint, and this Court having considered the moving papers,

Case 2:08-cv-01567-GEB -MCA   Document 61-3   Filed 10/20/10   Page 15 of 52 PageID: 2143

Case 2:08-cv-01567-GEB -MCA   Document 52   Filed 06/21/10   Page 2 of 2
Case 2:08-cv-01567-GEB -MCA   Document 42-5   Filed 04/26/10   Page 2 of 2

as well as any papers submitted in opposition or in reply, and having heard any oral arguments offered by counsel, *on 21 June 2010* and good cause therefor having been shown;

**IT IS**, on this __21__ day of June, 2010;

**ORDERED**, that Dr. Criscito's motion **BE**, and hereby **IS**, ~~GRANTED~~; and it is further *Denied.*

**ORDERED**, that, within ten (10) days of defendant's counsel's receipt of this executed Order, the original proposed third-party complaint, in the form submitted in support of this motion, shall be electronically filed with the Clerk of the Court and a true copy electronically served upon counsel for the plaintiff and third-party defendants; and it is further

**ORDERED**, that counsel for the moving party shall serve a true copy of this executed Order upon all counsel of record in this matter within _____ days of counsel's receipt of same.

Hon. Madeline Cox Arleo, U.S.M.J.

2

# EXHIBIT 4

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
2

3    CHAABAN, et al.,                    .

4          Plaintiffs,                   .
                                         .  Case No. 2:08-cv-01567
5    vs.                                 .
                                         .  Newark, New Jersey
6    CRISCITO,                           .  June 21, 2010
                                         .
7          Defendant.                    .
                                         .
8

9
                          TRANSCRIPT OF HEARING
10              BEFORE THE HONORABLE MADELINE ARLEO
                    UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12

13   For the Plaintiffs:      STEPHEN M. CHARME, ESQ.
                              Witman, Stadtmauer & Michaels, P.A.
14                            26 Columbia Turnpike
                              Florham Park, NJ 07932-2246
15
                              JOHN MICHAEL AGNELLO, ESQ.
16                            Carella, Byrne, Cecchi, Olstein,
                              Brody & Agnello, P.C.
17                            5 Becker Farm Road
                              Roseland, NJ 07068
18
     For the Defendant:       STEVEN I. KERN, ESQ.
19                            CONROY & SCHOPPMANN, PC
                              1120 ROUTE 22 EAST
20                            BRIDGEWATER, NJ 08807

21   Audio Operator:

22   Transcription Service:      KING TRANSCRIPTION SERVICES
                                 65 Willowbrook Boulevard
23                               Wayne, New Jersey 07470
                                 (973) 237-6080
24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1              (Commencement of proceedings at 12:22 p.m.)

2

3              THE COURT:  -- Criscito.  Could I have appearances,

4    please?

5              MR. CHARME:  Stephen Charme, Witman Stadtmauer for

6    the plaintiff trustees.

7              THE COURT:  Okay.

8              MR. AGNELLO:  John Agnello also for plaintiffs'

9    trustees.

10             THE COURT:  Okay.

11             MR. KERN:  Steven Kern, Kern Augustine Conroy &

12   Schoppmann on behalf of Dr. Criscito.

13             THE COURT:  Okay.  Have a seat, everyone.  Let me

14   just put a -- this motion in a little bit of factual context.

15             This is a motion of Dr. Criscito seeking leave to

16   file a third-party complaint pursuant to Fed. R. Civ. P.

17   14(a).  Plaintiffs Dr. Fadi Chaaban, Dr. Sabino Torre,

18   Dr. Constantinos Costeas, and Dr. Anthony Casella are

19   trustees of Diagnostic & Clinical Cardiology, a profit

20   sharing plan, which is the subject this action.

21             The complaint as -- alleges as follows:  Criscito

22   intentionally concealed his breach of fiduciary duties to the

23   plan, its beneficiaries and participants.  Specifically

24   Criscito, the former trustee, secretly diverted the plan's

25   assets to his own benefit.  Criscito accomplished this

1   unlawful conduct through a series of schemes spanning decades

2   until 2007 when he was the sole trustee.   Plaintiffs did not

3   discover Criscito's fraudulent scheme until they replaced him

4   as trustee in 2007.   Based on this alleged wrongdoing,

5   plaintiffs filed this action in March of 2008.   They claim

6   that Criscito violated his fiduciaries duties to the plan as

7   set forth in the Employee Retirement Income Security Act,

8   otherwise known as ERISA.   And I should note for the record,

9   that there is no claim of negligence; it's an intentional

10  tort and a fraud claim brought under ERISA.

11          And to proceed to the instant motion, on June 16th,

12  2009, plaintiffs' counsel deposed Brian Warnock, who was a

13  vice president of the American Pension Corporation, an

14  independent third-party administrator, who was retained to

15  administer the functions of the plan.   According to Criscito,

16  during Warnock's deposition, he admitted that APC possessed

17  brokerage account statements from early 2000, which had they

18  been reviewed, would have no later than October of 2001

19  revealed the discrepancies in the valuation of the plan's

20  assets, which would have prevented Criscito's alleged

21  fraudulent scheme, or, I guess, would have at least brought

22  it to light.   And that is at admission on April 26, 2010,

23  Criscito filed this motion to implead APC, Mr. Warnock, and

24  Sandra Eck [phonetic], a pension consultant of APC, as

25  third-party defendants.   Criscito seeks to assert common law

1   claims for indemnification and contribution against the

2   third-party defendants based on their negligence.  Criscito

3   alleges that Warnock and/or Eck had a duty to correct any

4   inaccuracies and/or omissions concerning the valuation of the

5   plan assets, based on the brokerage account statements in

6   their possession; yet they failed to discover any alleged

7   discrepancies between the true valuation of the alleged

8   value- -- and the alleged valuation that Criscito had

9   provided.  As such, according to Criscito, the proposed

10  third-party defendants negligently performed their duties

11  "with respect to the administration of the plan."

12          Thus, he claims that in the event that he is liable

13  to the plaintiffs based on his actions while trustee of the

14  plan, the third-party defendants are bound to indemnify

15  Criscito and contribute to any judgment against him based on

16  any lawsuits, costs, and as a result of third-party

17  defendants' negligence.  In support of this motion, Criscito

18  submits that the motion is timely and that his third-party

19  complaint will not cause any undue prejudice.

20          Plaintiff opposes -- plaintiffs oppose the motion

21  on several grounds that -- that the indemnification and

22  contribution claims are preempted by ERISA and thus barred;

23  that Criscito cannot state a claim for contribution or

24  indemnification, his claims are barred by the applicable

25  statute of limitations governing medical- -- malpractice

1  claims.   There is no basis under ERISA to sue

2  non-fiduciaries, including the third-party defendants, and

3  admit that if APC was a fiduciary, Criscito could not assert

4  indemnification and contribution claims against a third-party

5  administrator Warnock or Eck.

6         Rule 14(a) says that a party must serve a

7  third-party -- summons within 14 days after filing its answer

8  or must seek leave from court to do so, and that's why this

9  instant motion is before us.

10        I'd like to begin by asking Mr. Kern a question.   I

11  know there's a lot of issues here today.   But it's -- it's

12  really a basic one that goes to futility, and that is whether

13  the proposed amended -- pleading states a claim for

14  indemnification and contribution.   And your brief did not

15  indicate nor has my research disclosed any cases where a

16  claim for either contribution or indemnification can arise

17  where -- in favor of any tort-feasor who was -- who was

18  alleged to have intentionally caused the harm.   All the cases

19  talk about joint tort-feasors under negligence theories.

20  There's no cases out there where there is solely claims of

21  intentional fraud and then indemnification and contribution

22  claims based on negligence.   They don't exist.

23        And there's some -- there's some very strong

24  language in the Restatement of Torts that says that is not

25  permitted.   Because as I understand your claim, it's --

1  plaintiffs' claim is that Dr. Criscito committed a fraud on

2  us and stole our money, and your contribution and

3  indemnification claim is, well, the third-party

4  administrators should have discovered my fraud, and therefore

5  they're liable to the plaintiffs too.

6          Is there any other way really to describe your

7  third-party complaint?

8          MR. KERN:  If, indeed -- and I think you're

9  correct, plaintiffs' claim is limited to one of fraud.

10         THE COURT:  It is.

11         MR. KERN:  You're right.  I think you raise an

12 interesting point and frankly one where that I'm not sure

13 that we've given much consideration to.  But --

14         THE COURT:  Because -- because think about the

15 whole notion of contribution indemnification as principles.

16 Contribution -- indemnification says, I didn't do it, the

17 other person's primarily liable.  And on the face of the

18 pleadings, that just cannot be, because the theory is you did

19 it intentionally, you went and you stole our money, so

20 there's no way on that intentional theory, you could --

21 Criscito could say to the folks that didn't catch his

22 wrongdoing, you're primarily label.  So I'm not sure how you

23 can even state a claim for indemnity.

24         But when we get to contribution, which is we're all

25 liable, we're all tort-feasors, the case when there's a

1   four-party collision and everyone did something wrong on the

2   highway and we bring in all the tort-feasors and -- on a

3   negligence theory.

4          I haven't seen any cases, and I've looked very,

5   very carefully for contribution theories where the -- in

6   favor of the tort-feasor who -- who the only theory against

7   him is intentional harm.  In fact, that's the third -- the

8   second -- the restatement section of torts, says there's no

9   right of contribution in favor of any tort-feasor who has

10  intentionally caused the harm.  That's been adopted by the

11  New Jersey courts.  And I didn't see any law that's ever

12  recognized a contribution theory in this intentional

13  tort-feasor versus negligence context.

14         MR. KERN:  It is an interesting question,

15  obviously.  It's not one that was raised by the plaintiffs.

16  And frankly, I -- I can't tell that I've considered it at any

17  length.

18         But from what you're saying, Your Honor, I can't

19  tell you that you're wrong.  And indeed, I -- it sounds like

20  you're most probably right, but honestly, it's not something

21  I've addressed.

22         THE COURT:  Let me ask you a question about

23  standing.  I know that the plaintiffs have talked about

24  standing under ERISA based on fiduciary status.  But there's

25  some more basic standing concepts out there that talk about

1   that a plaintiff must have personally suffered some actual or

2   threatened injury as a result of defendant's alleged conduct.

3          So how does he have stand- -- when the theory is

4   you defrauded us, and his -- here's your theory against the

5   other tort-feasor or the proposed tort-feasor is you should

6   have let -- you should have -- you should have picked up my

7   wrongdoing earlier, how come he said that he has personally

8   suffered some injury as a result of their conduct?

9          MR. KERN:  I think, again, if we're limiting

10  this -- and you're right -- to a fraud base, then there is

11  none.

12         THE COURT:  Okay.

13         MR. KERN:  I think you're --

14         THE COURT:  Anything else you want to add?

15         MR. KERN:  No, I -- you've stumped me, Your Honor.

16  I think you're --

17         THE COURT:  Okay.

18         Mr. Agnello, anything you want to add?

19         MR. AGNELLO:  Mr. Charme is going to argue the

20  motion, Judge, but no, I don't think we have anything to add.

21         MR. CHARME:  I really have nothing to add to what

22  Your Honor has said.

23         THE COURT:  Okay.  I'm -- I think you see where I'm

24  headed.  And I just want the record to be clear.  There's a

25  lot of issues were raised by the -- both parties.  And I

1   think there's four fundamental points that make this motion

2   both untimely, prejudicial, and futile under the proposed

3   pleading, and for that reason I'm denying the motion to -- to

4   amend -- for leave, rather, to file a third-party complaint.

5   And I want to go through my reasons.

6           The first issue is whether the third-party claims

7   are dependent on the outcome of the main claim.

8   Rule 14(a) -- third-party complaints under 14(a) can only be

9   asserted when the third party's liability is in some way

10  dependent on the outcome of the main claim or when the third

11  party is secondarily liable to the defendant.  If the claim

12  is separate or independent, the pleading will be denied.  The

13  crucial characteristic of a Rule 14 third-party claim is that

14  the original defendant is attempting to transfer to the

15  third-party defendant all or part of the liability asserted

16  against the original plaintiff.  And that's from *In re One*

17  *Meridian Plaza Fire Litigation*, 820 F. Supp. 1492 (E.D. Pa.

18  1993).

19          Here, the essence of this case is Criscito's

20  alleged concealed breach of his fiduciary duties owed to the

21  plan.  His indemnification and contribution claim against

22  APC, Warnock, and Eck are separate and independent from the

23  main fraud under ERISA.  Specifically, the liability of APC,

24  Warnock, and/or Eck as third-party defendants is not

25  derivative of Criscito's liability concerning his diversion

1   of the plan assets for his own benefit.  Criscito

2   theoretically could file a separate professional and

3   malpractice action against them if a judgment is rendered

4   against him in this case.  Thus, Criscito cannot maintain a

5   third-party action for contribution and indemnification

6   against APC, Warnock, and Eck.

7           Although -- second, I want to talk about standing.

8   Although it was not raised precisely in this way by the

9   parties, the Court finds that Criscito lacks standing to file

10  a third-party complaint on his indemnification and

11  contribution claims.  To have standing, a plaintiff must have

12  personally suffered some actual or threatened injury as a

13  result of defendant's unlawful conduct.  That's the Gariano

14  [phonetic] case at 845 F. Supp. 1074 (D.N.J. 1994).  A

15  plaintiff must be asserting his own legal rights in the case,

16  not those of third parties.

17          Finally, a plaintiff's injuries must be within his

18  own -- as protected by the law from which the claim arises.

19          Here, plaintiffs have sued Criscito for his alleged

20  concealment of breach of fiduciaries owed to the plan.  As

21  successive fiduciaries under ERISA, plaintiff -- plaintiffs

22  seek on behalf of the plan and its participants and

23  beneficiaries, to recover assets that belong to the plan, its

24  participants and beneficiaries, and also seek relief

25  related -- related relief, such as punitive damages.

1          In his proposed third-party complaint, Criscito

2   claims that in the event he is liable for this wrong -- this

3   intentional wrongdoing, based on his neg- -- based on his

4   actions with respect to the plan, the third-party defendants

5   are bound to indemnify him for any judgment rendered against

6   him based upon any losses caused to him as a result of

7   third-party defendants' negligence.

8          The Court finds that Criscito failed to establish

9   that his losses, if any, were the result of the alleged

10  negligence or APC, Warnock or Eck.  Although plaintiffs may

11  have a viable claim against him for their alleged breach of

12  duties as third-party administrator, any relief that

13  plaintiff may seek against the third-party administrator

14  would not appear to reflect plaintiffs' actions against

15  Criscito based on his alleged fraudulent scheme to divert the

16  plan's assets.

17         Additionally, Criscito could not demonstrate that

18  his interests are within -- in his of interests protected by

19  the law from the -- from which his claims arise, the

20  accused -- he was accused of undertaking a fraudulent scheme,

21  while serving as the plan's trustee for his own financial

22  gain.  Such interest cannot be said to be protected by the

23  law.

24         I'm going to talk for a little bit about undue

25  delay and timeliness.  And I say that mindful that this is a

1  case that was filed in '08, over two years ago.  Purpose of

2  Rule 14(a) is to avoid security of action and multiplicity of

3  litigation.  That principle is well settled.  However,

4  joinder of third-party defendants under Rule 14 is not

5  automatic.  The decision to permit joinder rests with the

6  sound discretion of the court.  Courts have considered the

7  following factors in exercising their discretion on whether

8  to permit the filing of a third-party complaint:  Timeliness,

9  probability of trial delay, potential for complication of

10 issues at trial, and prejudice to the original plaintiffs.

11      A motion brought under 14(a) is not alleged under

12 the same standards as a motion seeking leave to amend the

13 pleadings under 15(a).  And that requires a court to look at

14 undue delay, bad faith and dilatory motive, repeated failure

15 to cure deficiencies in the pleadings, and undue prejudice to

16 the opposing party by virtue of the allowance of the

17 amendment.

18      With respect to delay, the Third Circuit has said

19 that the package of time without more does not require that a

20 motion to amend be denied.  However, at some point, the delay

21 would become undue, placing an unwarranted burden on the

22 Court, or it will become prejudicial, placing an unfair

23 burden on the opposing party.  The question of undue delay

24 requires a focus on the plaintiffs' motives for not amending

25 the complaint to assert the claim earlier.

1          Additionally, whether the pleading would be futile,

2    such as when the proposed claim provides an illegal basis for

3    relief, a judge may properly deny a 14(a) motion.

4          Here, the Court is satisfied that there was undue

5    delay in bringing this motion here.  Just -- based on the

6    allegations in the complaint, in the third-party complaint,

7    Criscito knew the crucial facts back in 2000.  He knew who

8    the third-party administrator was.  He knew what their role

9    was.  So for him to say that I didn't learn it until -- that

10   fact of the third-party administrate's role until the

11   deposition this year, completely ignores the history of the

12   course of dealings between the parties as plan fiduciaries

13   and as third-party administrators.

14          Therefore, as early as 2000, Criscito had to have

15   been aware their potential obliviousness to the valuation

16   inaccuracies but waited 10 years, two years into this case

17   after discovery's been ongoing, depositions have been taken,

18   to bring this -- to bring this third-party complaint.

19   Criscito cannot and has not sufficiently explained his delay

20   and failure to take advantage of previous opportunities to

21   implead these third-party defendants, and therefore, the

22   Court finds there's been undue delay.

23          Finally, I want to talk about futility, and I want

24   us to begin with what we talked about earlier during oral

25   argument, which is indemnification.  Indemnification is an

1  equitable doctrine that allows the court to shift the costs

2  from tort-feasor to another.  That's well settled in the

3  Johns-Manville case, 116 N.J. 504 (N.J. 1989).  One branch of

4  common law indemnity shifts the liability from one who is

5  constructively or vicariously liable to the tort-feasor who

6  is primarily liable.  A corollary to this principle is that

7  one who is primarily at fault may not obtain indem --

8  indemnity from another tort-feasor.

9          Accepting Criscito's allegations as true, he is

10 primarily liable to plaintiffs based on intentional

11 wrongdoing, and thus, may not seek indemnity from APC,

12 Warnock, and Eck for indemnity, and therefore the indemnity

13 claims fail as a matter of law.

14         I reach a similar conclusion with respect to

15 contribution, and I rely on the Second Restatement of Torts,

16 § 886(a)(1), which talks about contribution, and it says,

17 first that when two or more persons become liable in tort to

18 the same person for the same harm, there's a right of

19 contribution among them, even though judgment has not been

20 rendered against or all of them, but that there is "no right

21 of contribution in favor any tort-feasor who has

22 intentionally caused the harm."

23         Here, plaintiffs' ERISA action is based on

24 Criscito's fraud, while Criscito's third-party claims are

25 based upon negligence.

1          As Criscito is alleged to have intentionally caused

2    harm to plaintiffs, he cannot maintain a cause of action for

3    common-law contribution against APC, Warnock, or Eck.   To

4    hold otherwise, would be aiding Criscito, who has been

5    alleged to have deliberately done harm to plaintiffs.   This

6    is not a situation where Criscito is alleged to have acted

7    negligently and he is an equal tort-feasor with the

8    third-party defendants.   As such, he fails to state a claim

9    for common-law contribution.

10          So for those reasons, the Court finds that Criscito

11   cannot maintain a third-party complaint for indemnification

12   or contribution, and his motion for leave to file third-party

13   complaint is denied.   And I will sign an order to that effect

14   today.   I believe one had been submitted.

15          Okay.   Why don't we talk a little bit about

16   discovery and where we are with respect to discovery in this

17   case.

18          MR. CHARME:   Discovery is done, Your Honor, because

19   as a matter of fact, what I would like to do is have the

20   Court set a pretrial conference date and then start getting

21   the pretrial order done, if it would be acceptable to

22   Your Honor.

23          THE COURT:   Let me stop and ask you two questions,

24   Mr. Charme.   One is:   Will there be any summary judgment

25   motions?

1              MR. CHARME:  That leads to a different point I was

2      going to make.  I received an ex- -- a four-page expert

3      report from Mr. Kern via email on Friday.  The report is

4      missing some of the prerequisites of Rule 26, such as --

5              THE COURT:  Let me stop you further.  Are you --

6      have you submitted any expert reports?

7              MR. CHARME:  Yes, I did.

8              THE COURT:  Okay.

9              MR. CHARME:  That was done on April 15th.

10             THE COURT:  Okay.  And when was his -- when were

11     his due?

12             MR. CHARME:  His was due Friday.

13             THE COURT:  And he sent you a report.

14             MR. CHARME:  He sent me a report.  But it's

15     incomplete in terms of complying with Rule 26.

16             THE COURT:  Okay.  Have you had a meet-and-confer

17     with him to see if he can give you the editions?

18             MR. CHARME:  Well, I sent the let- -- I sent him a

19     letter this morning.

20             THE COURT:  Okay.

21             MR. CHARME:  I don't anticipate there is going to

22     be an issue on that.  The only thing is, Your Honor, you

23     provided that each side had 20 days from receipt of a report

24     to --

25             THE COURT:  You can have more time to take the

1  depositions, if you need them.

2          MR. CHARME:  Okay.

3          THE COURT:  Not a problem.

4          Are you going to be filing any summary judgment

5  motions?

6          MR. CHARME:  I'm not sure.

7          THE COURT:  Well, I need to know because, if not,

8  I'll give you -- it's a case that's assigned to Judge Brown

9  in Trenton.  He will promptly give you a trial date, if

10 there's no motions pending.  If there are motions pending,

11 he'll hear the motions first.  So you're at the end of

12 discovery.  You have everything in.  Have you made a -- it

13 doesn't -- it sounds like it would be tough to prevail on

14 summary judgment on a fraud case.

15         MR. CHARME:  Yes, that's -- that's correct,

16 Your Honor.  So I don't believe we'll be making a motion.

17         THE COURT:  Okay.  And what about any further

18 settlement discussions?  Are they realistic?  Do you want to

19 come in for another conference?  Do you want to -- I can give

20 a date for a final pretrial conference, not a problem.

21         MR. CHARME:  Your Honor, if I might just tell you

22 where we are.

23         THE COURT:  Okay.  Good.  Do you want to go off the

24 record, since we're talking about settlement?

25         MR. CHARME:  Yeah, go off the record.

1        THE COURT:  Okay.

2                (Pause in proceedings)

3        THE COURT:  -- five days before the pretrial

4   conference.  Tell me when you want to get ready for the

5   pretrial.  Do you want to do it in August?  Do you want to do

6   it in September?  You tell me.

7        MR. CHARME:  As I understand the --

8        THE COURT:  I'll give it to you next week if you --

9   I mean, I'll do it as quickly as you want it.

10        MR. CHARME:  Well, Your Honor, I have the last

11   pretrial order that you signed, and it says that 10 days

12   before the pretrial conference, you want the final pretrial

13   order and all of the other stuff.

14        THE COURT:  Right.  But I'll do it -- you know what

15   I'd like to do is I can assure you that I can give you a

16   prompt trial with Judge Brown.  So I want to have that

17   pretrial order in before 10 days.  I'm not sure what the

18   trial date's going to be.  But you tell me how quickly you

19   can -- you can work together to get a final pretrial order

20   done.  If you want July, August, September, I'm flexible.

21        MR. CHARME:  Okay.  We'd like -- how about if we

22   submit the pretrial order by September 30?

23        THE COURT:  Could we do a little bit earlier in

24   September because, you know, he may be ask- -- why don't we

25   try to do it like mid-September?

1           MR. CHARME:  That's fine.

2           THE COURT:  Is that okay?  Okay.  That gives you

3   the summer to take the two depositions, if you want to take

4   them, and to get the -- is anyone observant of the Jewish

5   holidays?

6           MR. CHARME:  Yes.

7           THE COURT:  Okay.  So let me see where they are.

8   Do you have your calendar?  Do you know when they are?  Jess,

9   can you help me out?  Okay.  It's early in September.  Okay.

10  Yom Kippur's on a weekend.  I have a trial the week of

11  September 20th.  So I can do it -- is it too soon to do it

12  the week of the 13th?

13          MR. KERN:  Your Honor, I am on trial most of

14  September and October.

15          THE COURT:  You have to find a day to come in

16  because Judge Brown will have you come in on a Saturday.

17          MR. KERN:  Okay.

18          THE COURT:  Or a Friday night or something.  So you

19  tell me, you -- I'll work with you, but you can't just say

20  I'm out of the box in September and October.  I can move it

21  till August, but that'll probably be more burdensome.  I'm

22  trying to work with you.

23          MR. KERN:  You want dates now?  If you give me two

24  minutes, I --

25          THE COURT:  Sure.

Proceedings                                    20

1              MR. KERN:   I'm -- at trial on September 23, -4, -8

2    and 30, and then October 1, 7, 8, 14, 15, 21, and 22.

3              THE COURT:   Why don't we do Friday, September 17th?

4    The 17th is the holiday, so we'll do it in the morning at

5    10 o'clock?   What holiday is that?   That's the eve of Yom

6    Kippur.   It doesn't start till that evening.   Is that going

7    to be a problem?

8              MR. CHARME:   No.

9              THE COURT:   Okay.   Good.   So we'll do it early and

10   get you out of here early.   So why don't we say

11   September 17th at 10 a.m. and get me the pretrial the day

12   before, okay?   And come with your calendar so we can talk

13   about a trial with Judge Brown.   I'll see when he's

14   available.

15             How long do you think the trial will be?

16             MR. CHARME:   Maybe a week.

17             THE COURT:   Okay.   I will send a form -- a final

18   pretrial order order, and I will give you a copy of Judge --

19   the sample for Judge Brown's, okay?

20             MR. KERN:   Judge, before we do that, I think there

21   may be a summary judgment motion --

22             THE COURT:   You can file it at any time.   Judge

23   Brown has no rules, but I'm not going to adjourn the final

24   pretrial.

25             MR. KERN:   Okay.

1          THE COURT:   Okay.   So September 17th at 10 -- the

2  defendant's going to move for summary judgment?

3          MR. KERN:   Yup.

4          THE COURT:   Okay.   All right.   September 17th at

5  10 o'clock.   Good luck, everyone.   I will see you then.

6          MR. CHARME:   Thank you, Judge.

7          MR. AGNELLO:   Thank you, Judge.

8          (Conclusion of proceedings at 12:50 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        Certification

 2        I, SARA L. KERN, Transcriptionist, do hereby certify

 3   that the 22 pages contained herein constitute a full, true,

 4   and accurate transcript from the official electronic

 5   recording of the proceedings had in the above-entitled

 6   matter; that research was performed on the spelling of proper

 7   names and utilizing the information provided, but that in

 8   many cases the spellings were educated guesses; that the

 9   transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11        I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   S/  Sara L. Kern                        July 6, 2010

19   Signature of Approved Transcriber              Date

20

21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     65 Willowbrook Boulevard
23   Wayne, NJ 07470
     (973) 237-6080
24

25
```

# EXHIBIT 5

1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2                    CIVIL ACTION CASE NO. 2:08-CV-1567
        ---------------------------------------------:
3       DR. FADI CHAABAN; DR. SABINO R. TORRE, DR.   :
        CONSTANTINOS A. COSTEAS and DR. ANTHONY J.    :
4       CASELLA, as Trustee of Diagnostic & Clinical :
        Cardiology, P.A. Profit Sharing Plan,        :
5                                                     :
                            Plaintiffs,               :
6                                                     :
                                                      :
7            vs.                                      :
                                                      :
8       DR. MARIO A. CRISCITO,                        :
                                                      :
9                           Defendant.                :
        ---------------------------------------------:
                            Wednesday, July 15, 2009
10

11               Deposition of BRIAN WARNOCK, VOLUME II,

12      before Nancy A. Miani, a Certified Court Reporter,

13      License No. XI00814, and a Notary Public of the State

14      of New Jersey at the offices of WITMAN, STADTMAUER,

15      ESQS, 26 Columbia Turnpike, Florham Park, New Jersey,

16      on Wednesday, July 15, 2009, at 10:10 a.m.

17

18

19

20

21                     MIANI COURT REPORTING
                     CERTIFIED COURT REPORTERS
22                      1741 DANIEL COURT
                        WALL, NJ  07719
23                      (732) 681-4776

24

25

ORIGINAL

1    A P P E A R A N C E S:

2    WITMAN, STADTMAUER, ESQS.
     26 Columbia Turnpike
3    Florham Park, NJ 07932
     By:  STEPHEN M. CHARME, ESQ.
4    Attorneys for the Plaintiffs

5    KERN, CONROY & SCHOPPMANN, P.C.
     1120 Route 22 East
6    Bridgewater, NJ 08807
     BY:  STEVEN KERN, ESQ.
7    AND  CHARLES H. NEWMAN, ESQ.
     Attorneys for the Defendant
8
     ALSO PRESENT:
9
     Anthony Casella, M.D.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        A.      Well, I'm getting confused.  Marysue

2    McCarthy --

3        Q.      Was Morgan Stanley.

4        A.      Then it's Morgan Stanley then.  Then I

5    have no idea about that the Solomon Smith Barney.

6        Q.      Well, certainly as late as December,

7    2002, you were aware there was a Smith Barney account,

8    correct?

9        A.      I would have to see -- well, 2002, yes.

10       Q.      And you have  --

11       A.      According to this, yes, there was

12   $739,000 in it.

13       Q.      You have no information concerning what

14   happened to the monies in that account from 2002 to

15   the present.  Is that what you're telling me?

16       A.      What I'm aware of is all the money that

17   was left in the commingled account -- and I don't know

18   the differentiation between these two accounts -- was

19   all rolled over, and the final rollover was either

20   2005 or 2006, where it went to Dr. Criscito's account.

21       Q.      And what --

22       A.      That was when it was like the four

23   million dollar number.

24       Q.      What's the basis of that understanding?

25       A.      That came from Dr. Criscito, that all the

1    money had been paid out, and there was no money left
2    in the commingled account.  The commingled account was
3    basically closed out in 2000, except for the money
4    that was still there for Dr. Criscito, and then
5    Foggio's portion.
6         Q.    If --
7         A.    It was around $20,000.
8         Q.    If you were to learn that through today,
9    the Smith Barney account was not rolled over, that
10   would be inconsistent with your understanding,
11   correct?
12        A.    That would be inconsistent with my
13   understanding.
14        Q.    And the new trustees of the plan have
15   never told you that monies remain in the Smith Barney
16   account, I take it?
17        A.    I'm not aware of that.   I'm not aware of
18   that.  I can tell you Dr. Casella spoke to Dominique,
19   and told her that Dr. Criscito had taken money out of
20   an account, I don't recall the name of the broker or
21   what broker, whether it was Smith Barney or not, that
22   it had been paid out, he had taken it out of that
23   account, 2007 or 2008, I believe it was 2008, and Dr.
24   Casella spoke to the broker about it.  The money was
25   since returned to that account.  So we are aware there

C E R T I F I C A T I O N

1
2
3
4
5          I, NANCY A. MIANI, a Certified Court Reporter
6   and a Notary Public, License No. XI00814, do hereby
7   certify that the foregoing witness, ^ , was duly sworn
8   by me on the date indicated, and that the foregoing is
9   a true and accurate transcription of my stenographic
10  notes.
11         I further certify that I am not employed by
12  nor related to any party to this action.
13
14
15
16  _____
    NANCY A. MIANI, C.S.R.
17  LICENSE NO. XI00814
18  .
19
20
21
22
23
24
25

# EXHIBIT 6

Ref: 00007518 00054421

**WORKING WEALTH.**

AT SMITH BARNEY

# Client Statement
## October 1 - October 31, 2007

J0700007518 307304AF01 WSC00115A
DIAGNOSTIC AND CLINICAL
CARDIOLOGY PA MPPP 4/1/76
DR MARIO CRISCITO
32 CHELSEA DRIVE
LIVINGSTON NJ 07039-3420

**Your Broker/Dealer is**
CITIGROUP GLOBAL MKTS INC.
*Your Financial Advisor*
Allan Yarkin/ Hank Boyce
1000 E.HALLANDALE
BEACH BLVD
HALLANDALE FL 33009
954 457 1590
Email: allan.d.yarkin@smithbarney.com
www.smithbarney.com

Branch Phone: 800 624 0263

*Account number 416-30833-16  707*

Citigroup Global Markets Inc., member NYSE, NASD, other principal exchanges, and the Securities Investor Protection Corporation (SIPC).   Smith Barney is a division and service mark
of Citigroup Global Markets Inc. and its affiliates and is used and registered throughout the world.  Citi and Citi with Arc Design are trademarks and service marks of Citigroup Inc. and
its affiliates, and are used and registered throughout the world.  Working Wealth℠ is a service mark of Citigroup Global Markets Inc.

| Account value | Last period | This period | % | This year |
|---|---|---|---|---|
| Money fund | $ 2,560.66 | $ 2,570.94 | .30 | |
| Bank Deposit Program℠ principal | 28.12 | 1,120.28 | .13 | |
| Common stocks & options | 885,340.46 | 885,826.48 | 99.57 | |
| **Total value** | **$ 887,929.24** | **$ 889,517.67** | **100.00** | |

| Earnings summary | This period | This year |
|---|---|---|
| Other dividends | $ 0.00 | $ 32.08 |
| Money fund earnings | 10.28 | 100.77 |
| Bank Deposit Program℠ | .30 | .70 |
| **Total** | **$ 10.58** | **$ 133.55** |

| Additional summary information | This period | This year |
|---|---|---|
| FRGN tax withheld | $ 0.00 | $ 8.02 |

| Cash, money fund, bank deposits | This period | This year |
|---|---|---|
| Opening balance | $ 2,588.78 | |
| Securities bought and other subtractions | 0.00 | |
| Securities sold and other additions | 1,120.00 | |
| Withdrawals | (28.14) | (28.14) |
| Money fund earnings reinvested | 10.28 | |
| Money fund transfers | 0.00 | 0.00 |
| Bank Deposit Program℠ interest reinvested | .28 | |
| Bank Deposit Program℠ interest credited | .02 | |
| Closing balance | $ 3,691.22 | |

A free credit balance in any securities account may be paid to you on demand.
Although properly accounted for on our books and records, these funds may be
used for our business purposes.

| Portfolio summary | This period | This year |
|---|---|---|
| Beginning total value (excl. accr. int.) | $ 887,929.24 | $ 955,235.86 |
| Net security deposits/withdrawals | (10,465.23) | (10,465.23) |
| Net cash deposits/withdrawals | | (28.14) |
| Beginning value net of deposits/withdrawals | 877,435.87 | 944,742.49 |
| Total value as of  10/31/2007 (excl. accr. int.) | 890,617.67 | 890,617.67 |
| Total return | ($ 16,918.20) | ($ 84,224.82) |

citi smith barney

**WORKING WEALTH.**

AT SMITH BARNEY

# Client Statement
### October 1 - October 31, 2007

Ref: 00007518 00054222

*DIAGNOSTIC AND CLINICAL*

*Account number 416-30833-16 707*

**Gain/loss summary**

| | This period | This year |
|---|---|---|
| Realized gain or (loss) | (# 1,085.65) | (# 1,112.70) LT |
| | | # 0.00 ST |
| Unrealized gain or (loss) to date | 203,799.95 | |

## PORTFOLIO DETAILS

*Your holdings are valued using the most current prices available to us. In most cases, these values are as of 10/31/07, but in some cases our sources are unable to provide timely information. To see the date of the most recent price update, please view your account online at www.smithbarney.com.*

*Securities purchased or sold are included or excluded in this section as of the trade-date. This section may include securities that have not settled as of this statement closing date. Please see the "Unsettled Purchases/Sales" section for more information. Dividend yield is the estimated annual income, assuming the current dividend, divided by the security's market price at the end of the statement period. We do not guarantee the accuracy of the prices reflected on the statement nor do these prices represent levels at which securities can be bought or sold. Please Note: unrealized gain/(loss) is being shown for informational purposes only and should not be used for tax preparation without the assistance of your tax advisor.*

### Money fund

| Number of shares | Description | Current value | Accrued dividends | Annualized % dividend yield | Anticipated Income (annualized) |
|---|---|---|---|---|---|
| 2,570.94 | WESTERN ASSET MONEY MARKET FUND CLASS A | # 2,570.94 | # 0.00 | 4.73% | # 121.60 |
| Total money fund | | # 2,570.94 | # 0.00 | | # 121.60 |

### Bank Deposit Program℠

*Balances are FDIC insured up to $100,000 per institution, subject to combined total of all your deposits, including those outside this account.*

| Principal | Description | Current value | Accrued interest | Annualized % return | Anticipated Income (annualized) |
|---|---|---|---|---|---|
| 1,120.28 | CITIBANK NA SOUTH DAKOTA BANK DEPOSIT PROGRAM | # 1,120.28 | # 0.00 | 4.73% | # 52.98 |
| Total Bank Deposit Program | | # 1,120.28 | # 0.00 | | # 52.98 |

citi smith barney



**Client Statement**

October 1 - October 31, 2007

Ref: 00007518 00054223

AT SMITH BARNEY

*DIAGNOSTIC AND CLINICAL*                    *Account number 416-30833-16  707*

### Common stocks & options

Citi Investment Research and independent, third-party research ratings may be shown for certain securities. All research ratings represent the "opinions" of the research provider and are not representations or guarantees of performance. Because the research report contains more complete information regarding the analyst's opinions, analysis, and rating, you should read the entire research report and not infer its contents from the rating. Citi Investment Research stock recommendations include an investment rating and risk rating. The Investment Rating Code (1, 2 or 3) is a function of Citi Investment Research's expectation of total return (forecast price appreciation and dividend yield within the next 12 months) and a Risk Rating. The Risk Rating (L, M, H or S) represents the stock's expected risk, taking into account price volatility and fundamental criteria. Please refer to the end of this statement for a guide describing Citi Investment Research ratings. Independent, third-party research ratings have been normalized by such third-party providers to a 1 (Buy), 2 (Hold), and 3 (Sell). Citi Investment Research is not the author of, does not take responsibility for, and does not guarantee the accuracy, completeness, or timeliness of the independent, third-party research. Except as noted by an asterisk (*), each independent research provider was selected by an Independent Consultant as required under the Global Research Analyst Settlement.

| Quantity | Description | Symbol | Cost | Date acquired | Share cost | Current price | Current value | Unrealized gain/(loss) | | Average % yield | Anticipated income (annualized) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 96.3711 | ALCATEL-LUCENT ADR Rating: Citigroup : 1H Argus : 2 Morningstar : 1 S&P : 2 | ALU | $ 19,994.71 | 01/27/99 | $ 207.886 | $ 9.69 | $ 933.84 | ($ 19,060.87) | LT | | |
| 54.5103 | | | 11,342.44 | 01/27/99 | 208.108 | 9.69 | 529.17 | (10,813.27) | LT | | |
| 1.0186 | Reinvestments to date | | 92.66 | | 90.967 | 9.69 | 9.87 | (82.79) | LT | | |
| 1.6896 | Reinvestments to date | | 24.05 | | 14.234 | 9.69 | 16.37 | (7.68) | ST | | |
| 153.6896 | | | 31,453.86 | | 204.658 | | 1,489.25 | (29,964.61) | | 3.632 | 54.10 |
| 27.2629 | LSI CORP Rating: S&P* : 2 | LSI | 3,986.78 | 01/27/99 | 146.914 | 6.60 | 179.94 | (3,806.84) | LT | | |
| 15.449 | | | 2,281.59 | 01/27/99 | 147.071 | 6.60 | 101.96 | (2,159.63) | LT | | |
| .2881 | Reinvestments to date | | 18.46 | | 64.074 | 6.60 | 1.90 | (16.56) | LT | | |
| 43 | | | 6,286.83 | | 145.74 | | 283.80 | (6,983.03) | | | |
| 45,530 | SYMANTEC CORP Rating: Citigroup : 1M Argus : 2 S&P : 2 | SYMC | 615,305.81 | 01/14/99 | 13.514 | 18.78 | 855,053.40 | 239,747.59 | LT | 3.03 | |

| **Total common stock and options** | | | | | | | | | | | **$ 64.10** |
| **Total portfolio value** | | | | | | | | (3.96) | ST | .02 | **$ 226.88** |
| | | | | | | | | (3.96) | ST | .02 | **$ 226.88** |

*citi* smith barney

### TRANSACTION DETAILS

#### Investment activity

| Date | Activity | Description | | | | Quantity | | Price | | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/25/07 | Merger | AVAYA INC | | | | -54 | | | | $ 1,120.00 |
| **Total securities bought and other subtractions** | | | | | | | | | | **$ 0.00** |
| **Total securities sold and other additions** | | | | | | | | | | **$ 1,120.00** |

Ref: 00007518 00054224

![WORKING WEALTH.] **Client Statement**
AT SMITH BARNEY
October 1 - October 31, 2007

Page 4 of 8

**DIAGNOSTIC AND CLINICAL**

Account number 416-30833-16 707

## Other security activity

| Date | Activity | Description | Quantity | Value |
|------|----------|-------------|----------|-------|
| 10/16/07 | Withdrawal | ALCATEL-LUCENT ADR<br>FROM 416-30833-01<br>TO 416-6B419-01<br>DIRECT ROLLOVER DIST-IRA | -153.6896 | $ -1,429.31 |
| 10/16/07 | Withdrawal | AVAYA INC<br>FROM 416-6B419-01<br>TO 416-6B419-01<br>DIRECT ROLLOVER DIST-IRA | -64 | -1,107.84 |
| 10/16/07 | Withdrawal | LSI CORP<br>FROM 416-30833-01<br>TO 416-6B419-01<br>DIRECT ROLLOVER DIST-IRA | -43 | -313.90 |
| 10/16/07 | Withdrawal | SYMANTEC CORP<br>FROM 416-30833-01<br>TO 416-6B419-01<br>DIRECT ROLLOVER DIST-IRA | -45,530 | -942,471.00 |
| 10/18/07 | Deposit | ALCATEL-LUCENT ADR<br>FROM 416-6B419-01<br>TO 416-30833-01<br>ROLLOVER CONTRIBUTION<br>REVERSE DISTRIBUTION | 153.6896 | 1,430.85 |
| 10/18/07 | Deposit | AVAYA INC<br>FROM 416-6B419-01<br>TO 416-30833-01<br>ROLLOVER CONTRIBUTION<br>REVERSE DISTRIBUTION | 64 | 1,111.68 |
| 10/18/07 | Deposit | LSI CORP<br>FROM 416-6B419-01<br>TO 416-30833-01<br>ROLLOVER CONTRIBUTION<br>REVERSE DISTRIBUTION | 43 | 315.19 |
| 10/18/07 | Deposit | SYMANTEC CORP<br>FROM 416-6B419-01<br>TO 416-30833-01<br>ROLLOVER CONTRIBUTION<br>REVERSE DISTRIBUTION | 45,530 | 931,999.10 |

Net value of securities deposited/(withdrawn) + capital contributions

$ -10,465.23

citi smith barney

Ref: 00007518 00054225

**WORKING WEALTH.**
AT SMITH BARNEY

# Client Statement
October 1 - October 31, 2007

Page 5 of 8

DIAGNOSTIC AND CLINICAL                          Account number 416-30833-16 707

## Withdrawals

| Date | Description | Reference no. | Amount |
|---|---|---|---|
| 10/16/07 | TRF | | .02 |
| | TO A/C  416-6B419-1-6 | | |

| Date | Description | Reference no. | Amount |
|---|---|---|---|
| 10/16/07 | FROM 416-30833-01 | | 28.12 |
| | TO 416-6B419-01 | | |
| | CASH JOURNAL FROM IDA | | |
| | DIRECT ROLLOVER DIST-IRA | | |
| | **Total withdrawals** | | **$ 28.14** |

## Money fund activity

Opening money fund balance  **$ 2,550.66**

| Date | Activity | Description | Amount |
|---|---|---|---|
| 10/15/07 | Withdrawal | WESTERN ASSET MONEY MARKET FUND CLASS A FROM 416-30833-01 TO 416-6B419-01 DIRECT ROLLOVER DIST-IRA | -2,550.66 |

*All transactions are traded at $1.00 per share.*

| Date | Activity | Description | Amount |
|---|---|---|---|
| 10/18/07 | Deposit | WESTERN ASSET MONEY MARKET FUND CLASS A FROM 416-6B419-01 TO 416-30833-01 ROLLOVER CONTRIBUTION REVERSE DISTRIBUTION | 2,550.66 |
| | | MONEY FUND EARNINGS REINVESTED (SEE DETAILS UNDER EARNINGS DETAILS) | 10.28 |
| | | **Closing balance** | **$ 2,570.94** |
| | | **Total money fund transfers** | **$ 0.00** |

## Bank Deposit Program℠ activity

*The term DEPOSIT typically refers to client initiated deposit of funds. The term AUTODEPOSIT typically refers to the "sweep" of funds into a Program Bank that results from proceeds of a transaction, a dividend from a stock or interest from a bond. Conversely, WITHDRAWAL is the term that refers to transactions that cause funds to be redeemed from your Program Bank, such as the payment for an investment purchase or the payment of FMA checks that you have written.*

Opening balance  **$ 28.12**

| Date | Activity | Description | Amount |
|---|---|---|---|
| 10/16/07 | Withdrawal | BANK DEPOSIT PROGRAM | -28.12 |

| Date | Activity | Description | Amount |
|---|---|---|---|
| 10/29/07 | Autodeposit | BANK DEPOSIT PROGRAM | 1,120.00 |
| | | BANK DEPOSIT PROGRAM INTEREST CREDITED (SEE DETAILS UNDER EARNINGS DETAILS) | .28 |
| | | **Closing balance** | **$ 1,120.28** |

citi smith barney

Ref: 00007518 C00354225

**WORKING WEALTH.**
AT SMITH BARNEY

# Client Statement
October 1 - October 31, 2007

*DIAGNOSTIC AND CLINICAL*                                Account number 416-30833-16 707

## EARNINGS DETAILS

*The tax status of earnings attributable to the bond fund and the income from mutual fund designations refer to the federal income tax status of your securities, not of your account.*

### Money fund earnings

| Date | Description | Comment | Taxable | Non-taxable | Amount |
|---|---|---|---|---|---|
| 10/31/07 | WESTERN ASSET MONEY MARKET FUND CLASS A | REINVESTED FOR PERIOD 10/01/07-10/31/07 31 DAYS AVERAGE YIELD 4.73 %. | $ 10.28 | | $ 10.28 |
| **Total earnings from money fund** | | | **$10.28** | **$0.00** | **$ 10.28** |

### Bank Deposit Program℠ Interest
*This section contains interest credited to your account. Accrued interest is not included. See Portfolio details section for accrued interest information.*

| Date | Description | Comment | Taxable | Non-taxable | Amount |
|---|---|---|---|---|---|
| 10/16/07 | CITIBANK NA BANK DEPOSIT PROGRAM | FULL ROM ACCRUED INTEREST | $ .02 | | $ .02 |
| 10/31/07 | CITIBANK NA SOUTH DAKOTA BANK DEPOSIT PROGRAM | REINVESTED FOR PERIOD 10/01/07-10/31/07 31 DAYS AVERAGE YIELD 4.73 %. | .28 | | .28 |
| **Total Bank Deposit Program Interest credited to account** | | | | | **$ .02** |
| **Total Bank Deposit Program Interest reinvested** | | | | | **$ .28** |
| **Total Bank Deposit Program Interest earned** | | | **$ .30** | **$0.00** | **$ .30** |

## GAIN/LOSS DETAILS

*Please note, this material is being prepared for informational purposes only and should not be used for tax preparation without the assistance of your tax advisor. Trades are allocated using the FIFO (first in-first out) method. Day traders should therefore not rely on this section for day trading results. Your reinvestment activity has been summarized. Single lines have been designated to distinguish Short-term (ST) or Long-term (LT) information. Detailed information will be available at year-end in your 1099 Year-end summary.*

### Realized gain or loss

| Description | Original trade date | Closing trade date | Quantity | Purchase price | Sale price | Cost basis | Proceeds | Realized gain or (loss) |
|---|---|---|---|---|---|---|---|---|
| AVAYA INC | | | | | | | | |
| | 01/27/99 | 10/26/07 Tender | 40.7869 | $ 34.81 | | $ 1,404.80 | $ 713.77 | ($ 691.03) LT |
| | 01/27/99 | 10/26/07 Tender | 23.1126 | 34.848 | | 796.90 | 404.47 | (392.43) LT |
| Reinvestments | 10/26/07 | 10/26/07 Tender | .1005 | 39.303 | | 3.95 | 1.76 | (2.19) LT |
| **Total** | | | **64** | | | **$ 2,205.65** | **$ 1,120.00** | **($ 1,085.65)** |

citi smith barney

Ref: 00007518 00054227

**WORKING WEALTH.**
AT SMITH BARNEY

# Client Statement
October 1 - October 31, 2007

*DIAGNOSTIC AND CLINICAL*

Account number 416-30833-16 707

## Realized gain or loss *continued*

**Description**
LSI LOGIC CORP

| Original trade date | Closing trade date | Quantity | Purchase price | Sale price | Cost basis | Proceeds | Realized gain or (loss) |
|---|---|---|---|---|---|---|---|
| 01/27/99 | 04/03/07 Cash in lieu | .1288 | $146.914 | | $18.54 | $1.32 | ($17.22) LT |
| 01/27/99 | 04/03/07 Cash in lieu | .0719 | 147.071 | | 10.52 | .75 | (9.77) LT |
| Reinvestments | 04/03/07 Cash in lieu | .0013 | 53.846 | | .07 | .01 | (.06) LT |
| Total | | .2 | | | $29.13 | $2.08 | ($27.05) |

| | Cost basis | Proceeds | Realized gain or (loss) |
|---|---|---|---|
| **Total Long Term this period** | | | |
| **Total realized gain or (loss) this period** | $2,206.65 | $1,120.00 | ($1,086.65) |
| **Total Long Term - year-to-date** | | | |
| **Total Short Term - year-to-date** | | | |
| **Total realized gain or (loss) year-to-date** | $2,234.78 | $1,122.08 | ($1,112.70) |

citi smith barney