Exhibit

H

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
 2

 3   CHAABAN, et al.,                    .
                                         .
 4          Plaintiffs,                  .
                                         . Case No. 2:08-cv-01567
 5   vs.                                 .
                                         . Newark, New Jersey
 6   CRISCITO,                           . June 21, 2010
                                         .
 7          Defendant.                   .
                                         .
 8

 9
                          TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE MADELINE ARLEO
                 UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12

13   For the Plaintiffs:   STEPHEN M. CHARME, ESQ.
                           Witman, Stadtmauer & Michaels, P.A.
14                         26 Columbia Turnpike
                           Florham Park, NJ 07932-2246
15
                           JOHN MICHAEL AGNELLO, ESQ.
16                         Carella, Byrne, Cecchi, Olstein,
                           Brody & Agnello, P.C.
17                         5 Becker Farm Road
                           Roseland, NJ 07068
18
     For the Defendant:    STEVEN I. KERN, ESQ.
19                         CONROY & SCHOPPMANN, PC
                           1120 ROUTE 22 EAST
20                         BRIDGEWATER, NJ 08807

21   Audio Operator:

22   Transcription Service:   KING TRANSCRIPTION SERVICES
                              65 Willowbrook Boulevard
23                            Wayne, New Jersey 07470
                              (973) 237-6080
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1              (Commencement of proceedings at 12:22 p.m.)

2

3              THE COURT:  -- Criscito.  Could I have appearances,

4    please?

5              MR. CHARME:  Stephen Charme, Witman Stadtmauer for

6    the plaintiff trustees.

7              THE COURT:  Okay.

8              MR. AGNELLO:  John Agnello also for plaintiffs'

9    trustees.

10             THE COURT:  Okay.

11             MR. KERN:  Steven Kern, Kern Augustine Conroy &

12   Schoppmann on behalf of Dr. Criscito.

13             THE COURT:  Okay.  Have a seat, everyone.  Let me

14   just put a -- this motion in a little bit of factual context.

15             This is a motion of Dr. Criscito seeking leave to

16   file a third-party complaint pursuant to Fed. R. Civ. P.

17   14(a).  Plaintiffs Dr. Fadi Chaaban, Dr. Sabino Torre,

18   Dr. Constantinos Costeas, and Dr. Anthony Casella are

19   trustees of Diagnostic & Clinical Cardiology, a profit

20   sharing plan, which is the subject this action.

21             The complaint as -- alleges as follows:  Criscito

22   intentionally concealed his breach of fiduciary duties to the

23   plan, its beneficiaries and participants.  Specifically

24   Criscito, the former trustee, secretly diverted the plan's

25   assets to his own benefit.  Criscito accomplished this

 1 | unlawful conduct through a series of schemes spanning decades
 2 | until 2007 when he was the sole trustee.  Plaintiffs did not
 3 | discover Criscito's fraudulent scheme until they replaced him
 4 | as trustee in 2007.  Based on this alleged wrongdoing,
 5 | plaintiffs filed this action in March of 2008.  They claim
 6 | that Criscito violated his fiduciaries duties to the plan as
 7 | set forth in the Employee Retirement Income Security Act,
 8 | otherwise known as ERISA.  And I should note for the record,
 9 | that there is no claim of negligence; it's an intentional
10 | tort and a fraud claim brought under ERISA.
11 | And to proceed to the instant motion, on June 16th,
12 | 2009, plaintiffs' counsel deposed Brian Warnock, who was a
13 | vice president of the American Pension Corporation, an
14 | independent third-party administrator, who was retained to
15 | administer the functions of the plan.  According to Criscito,
16 | during Warnock's deposition, he admitted that APC possessed
17 | brokerage account statements from early 2000, which had they
18 | been reviewed, would have no later than October of 2001
19 | revealed the discrepancies in the valuation of the plan's
20 | assets, which would have prevented Criscito's alleged
21 | fraudulent scheme, or, I guess, would have at least brought
22 | it to light.  And that is at admission on April 26, 2010,
23 | Criscito filed this motion to implead APC, Mr. Warnock, and
24 | Sandra Eck [phonetic], a pension consultant of APC, as
25 | third-party defendants.  Criscito seeks to assert common law

1  claims for indemnification and contribution against the

2  third-party defendants based on their negligence.  Criscito

3  alleges that Warnock and/or Eck had a duty to correct any

4  inaccuracies and/or omissions concerning the valuation of the

5  plan assets, based on the brokerage account statements in

6  their possession; yet they failed to discover any alleged

7  discrepancies between the true valuation of the alleged

8  value- -- and the alleged valuation that Criscito had

9  provided.  As such, according to Criscito, the proposed

10  third-party defendants negligently performed their duties

11  "with respect to the administration of the plan."

12        Thus, he claims that in the event that he is liable

13  to the plaintiffs based on his actions while trustee of the

14  plan, the third-party defendants are bound to indemnify

15  Criscito and contribute to any judgment against him based on

16  any lawsuits, costs, and as a result of third-party

17  defendants' negligence.  In support of this motion, Criscito

18  submits that the motion is timely and that his third-party

19  complaint will not cause any undue prejudice.

20        Plaintiff opposes -- plaintiffs oppose the motion

21  on several grounds that -- that the indemnification and

22  contribution claims are preempted by ERISA and thus barred;

23  that Criscito cannot state a claim for contribution or

24  indemnification, his claims are barred by the applicable

25  statute of limitations governing medical- -- malpractice

 1   claims.  There is no basis under ERISA to sue

 2   non-fiduciaries, including the third-party defendants, and

 3   admit that if APC was a fiduciary, Criscito could not assert

 4   indemnification and contribution claims against a third-party

 5   administrator Warnock or Eck.

 6          Rule 14(a) says that a party must serve a

 7   third-party -- summons within 14 days after filing its answer

 8   or must seek leave from court to do so, and that's why this

 9   instant motion is before us.

10          I'd like to begin by asking Mr. Kern a question.  I

11   know there's a lot of issues here today.  But it's -- it's

12   really a basic one that goes to futility, and that is whether

13   the proposed amended -- pleading states a claim for

14   indemnification and contribution.  And your brief did not

15   indicate nor has my research disclosed any cases where a

16   claim for either contribution or indemnification can arise

17   where -- in favor of any tort-feasor who was -- who was

18   alleged to have intentionally caused the harm.  All the cases

19   talk about joint tort-feasors under negligence theories.

20   There's no cases out there where there is solely claims of

21   intentional fraud and then indemnification and contribution

22   claims based on negligence.  They don't exist.

23          And there's some -- there's some very strong

24   language in the Restatement of Torts that says that is not

25   permitted.  Because as I understand your claim, it's --

1  plaintiffs' claim is that Dr. Criscito committed a fraud on

2  us and stole our money, and your contribution and

3  indemnification claim is, well, the third-party

4  administrators should have discovered my fraud, and therefore

5  they're liable to the plaintiffs too.

6          Is there any other way really to describe your

7  third-party complaint?

8          MR. KERN:  If, indeed -- and I think you're

9  correct, plaintiffs' claim is limited to one of fraud.

10          THE COURT:  It is.

11          MR. KERN:  You're right.  I think you raise an

12  interesting point and frankly one where that I'm not sure

13  that we've given much consideration to.  But --

14          THE COURT:  Because -- because think about the

15  whole notion of contribution indemnification as principles.

16  Contribution -- indemnification says, I didn't do it, the

17  other person's primarily liable.  And on the face of the

18  pleadings, that just cannot be, because the theory is you did

19  it intentionally, you went and you stole our money, so

20  there's no way on that intentional theory, you could --

21  Criscito could say to the folks that didn't catch his

22  wrongdoing, you're primarily label.  So I'm not sure how you

23  can even state a claim for indemnity.

24          But when we get to contribution, which is we're all

25  liable, we're all tort-feasors, the case when there's a

 1 | four-party collision and everyone did something wrong on the
 2 | highway and we bring in all the tort-feasors and -- on a
 3 | negligence theory.

 4 |      I haven't seen any cases, and I've looked very,
 5 | very carefully for contribution theories where the -- in
 6 | favor of the tort-feasor who -- who the only theory against
 7 | him is intentional harm.  In fact, that's the third -- the
 8 | second -- the restatement section of torts, says there's no
 9 | right of contribution in favor of any tort-feasor who has
10 | intentionally caused the harm.  That's been adopted by the
11 | New Jersey courts.  And I didn't see any law that's ever
12 | recognized a contribution theory in this intentional
13 | tort-feasor versus negligence context.

14 |      MR. KERN:  It is an interesting question,
15 | obviously.  It's not one that was raised by the plaintiffs.
16 | And frankly, I -- I can't tell that I've considered it at any
17 | length.

18 |      But from what you're saying, Your Honor, I can't
19 | tell you that you're wrong.  And indeed, I -- it sounds like
20 | you're most probably right, but honestly, it's not something
21 | I've addressed.

22 |      THE COURT:  Let me ask you a question about
23 | standing.  I know that the plaintiffs have talked about
24 | standing under ERISA based on fiduciary status.  But there's
25 | some more basic standing concepts out there that talk about

 1  that a plaintiff must have personally suffered some actual or

 2  threatened injury as a result of defendant's alleged conduct.

 3          So how does he have stand- -- when the theory is

 4  you defrauded us, and his -- here's your theory against the

 5  other tort-feasor or the proposed tort-feasor is you should

 6  have let -- you should have -- you should have picked up my

 7  wrongdoing earlier, how come he said that he has personally

 8  suffered some injury as a result of their conduct?

 9          MR. KERN:  I think, again, if we're limiting

10  this -- and you're right -- to a fraud base, then there is

11  none.

12          THE COURT:  Okay.

13          MR. KERN:  I think you're --

14          THE COURT:  Anything else you want to add?

15          MR. KERN:  No, I -- you've stumped me, Your Honor.

16  I think you're --

17          THE COURT:  Okay.

18          Mr. Agnello, anything you want to add?

19          MR. AGNELLO:  Mr. Charme is going to argue the

20  motion, Judge, but no, I don't think we have anything to add.

21          MR. CHARME:  I really have nothing to add to what

22  Your Honor has said.

23          THE COURT:  Okay.  I'm -- I think you see where I'm

24  headed.  And I just want the record to be clear.  There's a

25  lot of issues were raised by the -- both parties.  And I

 1  think there's four fundamental points that make this motion
 2  both untimely, prejudicial, and futile under the proposed
 3  pleading, and for that reason I'm denying the motion to -- to
 4  amend -- for leave, rather, to file a third-party complaint.
 5  And I want to go through my reasons.
 6         The first issue is whether the third-party claims
 7  are dependent on the outcome of the main claim.
 8  Rule 14(a) -- third-party complaints under 14(a) can only be
 9  asserted when the third party's liability is in some way
10  dependent on the outcome of the main claim or when the third
11  party is secondarily liable to the defendant.  If the claim
12  is separate or independent, the pleading will be denied.  The
13  crucial characteristic of a Rule 14 third-party claim is that
14  the original defendant is attempting to transfer to the
15  third-party defendant all or part of the liability asserted
16  against the original plaintiff.  And that's from *In re* One
17  Meridian Plaza Fire Litigation, 820 F. Supp. 1492 (E.D. Pa.
18  1993).
19         Here, the essence of this case is Criscito's
20  alleged concealed breach of his fiduciary duties owed to the
21  plan.  His indemnification and contribution claim against
22  APC, Warnock, and Eck are separate and independent from the
23  main fraud under ERISA.  Specifically, the liability of APC,
24  Warnock, and/or Eck as third-party defendants is not
25  derivative of Criscito's liability concerning his diversion

1   of the plan assets for his own benefit.  Criscito

2   theoretically could file a separate professional and

3   malpractice action against them if a judgment is rendered

4   against him in this case.  Thus, Criscito cannot maintain a

5   third-party action for contribution and indemnification

6   against APC, Warnock, and Eck.

7            Although -- second, I want to talk about standing.

8   Although it was not raised precisely in this way by the

9   parties, the Court finds that Criscito lacks standing to file

10  a third-party complaint on his indemnification and

11  contribution claims.  To have standing, a plaintiff must have

12  personally suffered some actual or threatened injury as a

13  result of defendant's unlawful conduct.  That's the Gariano

14  [phonetic] case at 845 F. Supp. 1074 (D.N.J. 1994).  A

15  plaintiff must be asserting his own legal rights in the case,

16  not those of third parties.

17           Finally, a plaintiff's injuries must be within his

18  own -- as protected by the law from which the claim arises.

19           Here, plaintiffs have sued Criscito for his alleged

20  concealment of breach of fiduciaries owed to the plan.  As

21  successive fiduciaries under ERISA, plaintiff -- plaintiffs

22  seek on behalf of the plan and its participants and

23  beneficiaries, to recover assets that belong to the plan, its

24  participants and beneficiaries, and also seek relief

25  related -- related relief, such as punitive damages.

1         In his proposed third-party complaint, Criscito

2    claims that in the event he is liable for this wrong -- this

3    intentional wrongdoing, based on his neg-  -- based on his

4    actions with respect to the plan, the third-party defendants

5    are bound to indemnify him for any judgment rendered against

6    him based upon any losses caused to him as a result of

7    third-party defendants' negligence.

8         The Court finds that Criscito failed to establish

9    that his losses, if any, were the result of the alleged

10   negligence or APC, Warnock or Eck.  Although plaintiffs may

11   have a viable claim against him for their alleged breach of

12   duties as third-party administrator, any relief that

13   plaintiff may seek against the third-party administrator

14   would not appear to reflect plaintiffs' actions against

15   Criscito based on his alleged fraudulent scheme to divert the

16   plan's assets.

17        Additionally, Criscito could not demonstrate that

18   his interests are within -- in his of interests protected by

19   the law from the -- from which his claims arise, the

20   accused -- he was accused of undertaking a fraudulent scheme,

21   while serving as the plan's trustee for his own financial

22   gain.  Such interest cannot be said to be protected by the

23   law.

24        I'm going to talk for a little bit about undue

25   delay and timeliness.  And I say that mindful that this is a

 1   case that was filed in '08, over two years ago.  Purpose of

 2   Rule 14(a) is to avoid security of action and multiplicity of

 3   litigation.  That principle is well settled.  However,

 4   joinder of third-party defendants under Rule 14 is not

 5   automatic.  The decision to permit joinder rests with the

 6   sound discretion of the court.  Courts have considered the

 7   following factors in exercising their discretion on whether

 8   to permit the filing of a third-party complaint:  Timeliness,

 9   probability of trial delay, potential for complication of

10   issues at trial, and prejudice to the original plaintiffs.

11              A motion brought under 14(a) is not alleged under

12   the same standards as a motion seeking leave to amend the

13   pleadings under 15(a).  And that requires a court to look at

14   undue delay, bad faith and dilatory motive, repeated failure

15   to cure deficiencies in the pleadings, and undue prejudice to

16   the opposing party by virtue of the allowance of the

17   amendment.

18              With respect to delay, the Third Circuit has said

19   that the package of time without more does not require that a

20   motion to amend be denied.  However, at some point, the delay

21   would become undue, placing an unwarranted burden on the

22   Court, or it will become prejudicial, placing an unfair

23   burden on the opposing party.  The question of undue delay

24   requires a focus on the plaintiffs' motives for not amending

25   the complaint to assert the claim earlier.

1            Additionally, whether the pleading would be futile,

2  such as when the proposed claim provides an illegal basis for

3  relief, a judge may properly deny a 14(a) motion.

4            Here, the Court is satisfied that there was undue

5  delay in bringing this motion here.  Just -- based on the

6  allegations in the complaint, in the third-party complaint,

7  Criscito knew the crucial facts back in 2000.  He knew who

8  the third-party administrator was.  He knew what their role

9  was.  So for him to say that I didn't learn it until -- that

10  fact of the third-party administrate's role until the

11  deposition this year, completely ignores the history of the

12  course of dealings between the parties as plan fiduciaries

13  and as third-party administrators.

14            Therefore, as early as 2000, Criscito had to have

15  been aware their potential obliviousness to the valuation

16  inaccuracies but waited 10 years, two years into this case

17  after discovery's been ongoing, depositions have been taken,

18  to bring this -- to bring this third-party complaint.

19  Criscito cannot and has not sufficiently explained his delay

20  and failure to take advantage of previous opportunities to

21  implead these third-party defendants, and therefore, the

22  Court finds there's been undue delay.

23            Finally, I want to talk about futility, and I want

24  us to begin with what we talked about earlier during oral

25  argument, which is indemnification.  Indemnification is an

 1 | equitable doctrine that allows the court to shift the costs
 2 | from tort-feasor to another.  That's well settled in the
 3 | Johns-Manville case, 116 N.J. 504 (N.J. 1989).  One branch of
 4 | common law indemnity shifts the liability from one who is
 5 | constructively or vicariously liable to the tort-feasor who
 6 | is primarily liable.  A corollary to this principle is that
 7 | one who is primarily at fault may not obtain indem --
 8 | indemnity from another tort-feasor.

 9 |        Accepting Criscito's allegations as true, he is
10 | primarily liable to plaintiffs based on intentional
11 | wrongdoing, and thus, may not seek indemnity from APC,
12 | Warnock, and Eck for indemnity, and therefore the indemnity
13 | claims fail as a matter of law.

14 |        I reach a similar conclusion with respect to
15 | contribution, and I rely on the Second Restatement of Torts,
16 | § 886(a)(1), which talks about contribution, and it says,
17 | first that when two or more persons become liable in tort to
18 | the same person for the same harm, there's a right of
19 | contribution among them, even though judgment has not been
20 | rendered against or all of them, but that there is "no right
21 | of contribution in favor any tort-feasor who has
22 | intentionally caused the harm."

23 |        Here, plaintiffs' ERISA action is based on
24 | Criscito's fraud, while Criscito's third-party claims are
25 | based upon negligence.

1          As Criscito is alleged to have intentionally caused

2    harm to plaintiffs, he cannot maintain a cause of action for

3    common-law contribution against APC, Warnock, or Eck.  To

4    hold otherwise, would be aiding Criscito, who has been

5    alleged to have deliberately done harm to plaintiffs.  This

6    is not a situation where Criscito is alleged to have acted

7    negligently and he is an equal tort-feasor with the

8    third-party defendants.  As such, he fails to state a claim

9    for common-law contribution.

10          So for those reasons, the Court finds that Criscito

11   cannot maintain a third-party complaint for indemnification

12   or contribution, and his motion for leave to file third-party

13   complaint is denied.  And I will sign an order to that effect

14   today.  I believe one had been submitted.

15          Okay.  Why don't we talk a little bit about

16   discovery and where we are with respect to discovery in this

17   case.

18          MR. CHARME:  Discovery is done, Your Honor, because

19   as a matter of fact, what I would like to do is have the

20   Court set a pretrial conference date and then start getting

21   the pretrial order done, if it would be acceptable to

22   Your Honor.

23          THE COURT:  Let me stop and ask you two questions,

24   Mr. Charme.  One is:  Will there be any summary judgment

25   motions?

 1              MR. CHARME:  That leads to a different point I was

 2    going to make.  I received an ex- -- a four-page expert

 3    report from Mr. Kern via email on Friday.  The report is

 4    missing some of the prerequisites of Rule 26, such as --

 5              THE COURT:  Let me stop you further.  Are you --

 6    have you submitted any expert reports?

 7              MR. CHARME:  Yes, I did.

 8              THE COURT:  Okay.

 9              MR. CHARME:  That was done on April 15th.

10              THE COURT:  Okay.  And when was his -- when were

11    his due?

12              MR. CHARME:  His was due Friday.

13              THE COURT:  And he sent you a report.

14              MR. CHARME:  He sent me a report.  But it's

15    incomplete in terms of complying with Rule 26.

16              THE COURT:  Okay.  Have you had a meet-and-confer

17    with him to see if he can give you the editions?

18              MR. CHARME:  Well, I sent the let- -- I sent him a

19    letter this morning.

20              THE COURT:  Okay.

21              MR. CHARME:  I don't anticipate there is going to

22    be an issue on that.  The only thing is, Your Honor, you

23    provided that each side had 20 days from receipt of a report

24    to --

25              THE COURT:  You can have more time to take the

 1 | depositions, if you need them.

 2 |             MR. CHARME:  Okay.

 3 |             THE COURT:  Not a problem.

 4 |             Are you going to be filing any summary judgment

 5 | motions?

 6 |             MR. CHARME:  I'm not sure.

 7 |             THE COURT:  Well, I need to know because, if not,

 8 | I'll give you -- it's a case that's assigned to Judge Brown

 9 | in Trenton.  He will promptly give you a trial date, if

10 | there's no motions pending.  If there are motions pending,

11 | he'll hear the motions first.  So you're at the end of

12 | discovery.  You have everything in.  Have you made a -- it

13 | doesn't -- it sounds like it would be tough to prevail on

14 | summary judgment on a fraud case.

15 |             MR. CHARME:  Yes, that's -- that's correct,

16 | Your Honor.  So I don't believe we'll be making a motion.

17 |             THE COURT:  Okay.  And what about any further

18 | settlement discussions?  Are they realistic?  Do you want to

19 | come in for another conference?  Do you want to -- I can give

20 | a date for a final pretrial conference, not a problem.

21 |             MR. CHARME:  Your Honor, if I might just tell you

22 | where we are.

23 |             THE COURT:  Okay.  Good.  Do you want to go off the

24 | record, since we're talking about settlement?

25 |             MR. CHARME:  Yeah, go off the record.

```
 1              THE COURT:  Okay.
 2                   (Pause in proceedings)
 3              THE COURT:  -- five days before the pretrial
 4  conference.  Tell me when you want to get ready for the
 5  pretrial.  Do you want to do it in August?  Do you want to do
 6  it in September?  You tell me.
 7              MR. CHARME:  As I understand the --
 8              THE COURT:  I'll give it to you next week if you --
 9  I mean, I'll do it as quickly as you want it.
10              MR. CHARME:  Well, Your Honor, I have the last
11  pretrial order that you signed, and it says that 10 days
12  before the pretrial conference, you want the final pretrial
13  order and all of the other stuff.
14              THE COURT:  Right.  But I'll do it -- you know what
15  I'd like to do is I can assure you that I can give you a
16  prompt trial with Judge Brown.  So I want to have that
17  pretrial order in before 10 days.  I'm not sure what the
18  trial date's going to be.  But you tell me how quickly you
19  can -- you can work together to get a final pretrial order
20  done.  If you want July, August, September, I'm flexible.
21              MR. CHARME:  Okay.  We'd like -- how about if we
22  submit the pretrial order by September 30?
23              THE COURT:  Could we do a little bit earlier in
24  September because, you know, he may be ask- -- why don't we
25  try to do it like mid-September?
```

 1              MR. CHARME:  That's fine.

 2              THE COURT:  Is that okay?  Okay.  That gives you

 3  the summer to take the two depositions, if you want to take

 4  them, and to get the -- is anyone observant of the Jewish

 5  holidays?

 6              MR. CHARME:  Yes.

 7              THE COURT:  Okay.  So let me see where they are.

 8  Do you have your calendar?  Do you know when they are?  Jess,

 9  can you help me out?  Okay.  It's early in September.  Okay.

10  Yom Kippur's on a weekend.  I have a trial the week of

11  September 20th.  So I can do it -- is it too soon to do it

12  the week of the 13th?

13              MR. KERN:  Your Honor, I am on trial most of

14  September and October.

15              THE COURT:  You have to find a day to come in

16  because Judge Brown will have you come in on a Saturday.

17              MR. KERN:  Okay.

18              THE COURT:  Or a Friday night or something.  So you

19  tell me, you -- I'll work with you, but you can't just say

20  I'm out of the box in September and October.  I can move it

21  till August, but that'll probably be more burdensome.  I'm

22  trying to work with you.

23              MR. KERN:  You want dates now?  If you give me two

24  minutes, I --

25              THE COURT:  Sure.

 1          MR. KERN:  I'm -- at trial on September 23, -4, -8

 2  and 30, and then October 1, 7, 8, 14, 15, 21, and 22.

 3          THE COURT:  Why don't we do Friday, September 17th?

 4  The 17th is the holiday, so we'll do it in the morning at

 5  10 o'clock?  What holiday is that?  That's the eve of Yom

 6  Kippur.  It doesn't start till that evening.  Is that going

 7  to be a problem?

 8          MR. CHARME:  No.

 9          THE COURT:  Okay.  Good.  So we'll do it early and

10  get you out of here early.  So why don't we say

11  September 17th at 10 a.m. and get me the pretrial the day

12  before, okay?  And come with your calendar so we can talk

13  about a trial with Judge Brown.  I'll see when he's

14  available.

15          How long do you think the trial will be?

16          MR. CHARME:  Maybe a week.

17          THE COURT:  Okay.  I will send a form -- a final

18  pretrial order order, and I will give you a copy of Judge --

19  the sample for Judge Brown's, okay?

20          MR. KERN:  Judge, before we do that, I think there

21  may be a summary judgment motion --

22          THE COURT:  You can file it at any time.  Judge

23  Brown has no rules, but I'm not going to adjourn the final

24  pretrial.

25          MR. KERN:  Okay.

```
 1              THE COURT:  Okay.  So September 17th at 10 -- the
 2   defendant's going to move for summary judgment?
 3              MR. KERN:  Yup.
 4              THE COURT:  Okay.  All right.  September 17th at
 5   10 o'clock.  Good luck, everyone.  I will see you then.
 6              MR. CHARME:  Thank you, Judge.
 7              MR. AGNELLO:  Thank you, Judge.
 8              (Conclusion of proceedings at 12:50 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        Certification
 2        I, SARA L. KERN, Transcriptionist, do hereby certify
 3   that the 22 pages contained herein constitute a full, true,
 4   and accurate transcript from the official electronic
 5   recording of the proceedings had in the above-entitled
 6   matter; that research was performed on the spelling of proper
 7   names and utilizing the information provided, but that in
 8   many cases the spellings were educated guesses; that the
 9   transcript was prepared by me or under my direction and was
10   done to the best of my skill and ability.
11        I further certify that I am in no way related to any of
12   the parties hereto nor am I in any way interested in the
13   outcome hereof.
14
15
16
17
18   S/ Sara L. Kern                         July 6, 2010
19   Signature of Approved Transcriber              Date
20
21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     65 Willowbrook Boulevard
23   Wayne, NJ 07470
     (973) 237-6080
24
25
```