UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. FADI CHAABAN, DR. SABINO R. TORRE, DR. CONSTANTINOS A. COSTEAS, AND DR. ANTHONY J. CASELLA as Trustees of Diagnostic & Clinical Cardiology, P.A. Profit Sharing Plan,<br><br>Plaintiffs,<br><br>v.<br><br>DR. MARIO A. CRISCITO,<br><br>Defendant. | Case No. 2:08-cv-01567 (GEB/MCA) |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Stephen M. Charme
Tara S. Sinha
WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 822-0220

-and-

John M. Agnello
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.    NO PLAN PARTICIPANT OTHER THAN CRISCITO HAD AN INTEREST IN THE SMITH BARNEY ACCOUNT AFTER DECEMBER 1999 ............................................ 1

    II.   CRISCITO'S JUDICIAL ESTOPPEL ARGUMENT IS WITHOUT BASIS IN FACT OR LAW ................................................................................................................. 5

        A.   PLAINTIFFS' ERISA CLAIM FOR BREACH OF FIDUCIARY DUTY IS AND ALWAYS HAS BEEN BASED UPON CRISCITO'S FRAUD AND OTHER MISCONDUCT ........................................................................................ 5

        B.   MAGISTRATE ARLEO'S DENIAL OF CRISCITO'S MOTION TO IMPLEAD APC AS A THIRD-PARTY DEFENDANT DOES NOT LIMIT PLAINTIFFS' BREACH OF FIDUCIARY CLAIM ...................................................... 7

III.  PLAINTIFFS' ARE ENTITLED TO AN AWARD OF PUNITIVE DAMAGES AND ATTORNEYS' FEES AND COSTS ................................................................................ 10

CONCLUSION ................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

Erbe v. Billeter,
2006 WL. 3227765 (W.D. Pa. Nov. 3, 2006) .................................................................. 7

Joyce v. RJR Nabisco Holdings Corp.,
126 F.3d 166 (3d Cir. 1997) ............................................................................................ 7

Kreimer v. Bureau of Police for Town of Morristown,
958 F.2d 1242 (3d Cir. 1992) .......................................................................................... 5

Krystal Cadillac-Oldsmobile GMC Truck, Inc. vs. General Motors Corporation,
337 F.3d 314 (3d Cir. 2003) ............................................................................................ 9

Leckey v. Stefano,
501 F.3d 212 (3d Cir. 2007) .................................................................................... 6, 7, 9

Losch v. Borough of Parksburg,
736 F.2d 903 (3d Cir. 1984) ............................................................................................ 5

In re Merck & Co., Inc.,
2010 U.S. Dist. LEXIS 62529 (D.N.J June 23, 2010) .................................................... 6

Pension Fund-Local 701 v. Omni Funding Group,
731 F. Supp. 161 (D.N.J. 1990) ...................................................................................... 5

U.S. v. Doyle,
276 F. Supp. 2d 415 (W.D.Pa. 2003) .............................................................................. 5

Ursic v. Bethlehem Mines,
719 F.2d 670 (3d Cir. 1983) .......................................................................................... 11

**STATE CASES**

Shebar v. Sanyo Business Systems Corp.,
111 N.J. 276 (1988) ...................................................................................................... 10

**FEDERAL RULES AND STATUTES**

Fed.R.Civ.P. 14(a) .............................................................................................................. 8

28 U.S.C. §1144(a) ............................................................................................................ 7

**STATE RULES**

N.J. Court Rule 1:4-8 ..................................................................................................... 3, 4

## PRELIMINARY STATEMENT

There is nothing in Criscito's opposition that prevents this Court from granting Plaintiffs' motion for summary judgment in its entirety. The summary judgment record overwhelmingly and convincingly establishes Criscito's intentional, self-dealing conduct constituting a breach of his fiduciary duties under ERISA. Criscito's attempt to escape liability by claiming that the Smith Barney account (that he controlled, concealed and treated as his own) had sufficient monies "to cover" the losses suffered by the Plan participants as a result of his actions, is futile. Similarly ineffective is his argument that the Court should invoke the doctrine of judicial estoppel to transform Plaintiffs' ERISA breach of fiduciary duty claims into a claim for common law fraud.

Criscito's intentional, self-dealing conduct by which he defrauded the Plan and the Plan participants of millions of dollars renders him "strictly liable" for the damages he caused. Under ERISA, his defense that he was "confused" in 1999 when he falsely reported the value of the commingled account to APC (understating its value by approximately $12MM) provides him no sanctuary. Confusion, good faith and other such defenses are not available to ERISA trustees who have breached their fiduciary duties.

Finally, his defrauding the Plan and its participants of millions of dollars warrants (in addition to compensatory damages) an award of punitive damages and attorneys' fees and costs. Nothing submitted by Criscito in his opposition papers justifies any other outcome.

## ARGUMENT

### I. NO PLAN PARTICIPANT OTHER THAN CRISCITO HAD AN INTEREST IN THE SMITH BARNEY ACCOUNT AFTER DECEMBER 1999

Throughout Criscito's opposition papers (as well as in his moving papers), Criscito argues that since the actual value (as opposed to the understated value he reported to APC) of the Smith Barney account as of December 31, 1999 was $3,924,549.92, this amount was "more than

sufficient to cover the $1,681,572.65 which the Plaintiffs have shown that Criscito misappropriated from the other Plan participants."[1] *See e.g.* Defendant's Opp. Br., (DE 62-12), p. 2, 11; Defendant's Response to Plaintiffs' Rule 56.1 Stmt., (DE 62-13), ¶¶46, 55, 63-88, 91, 92, 95, 97, 100-117, 154, 155 and 157; Defendant's S.J. Br. (DE 58-16), pp. 4-6. In making this argument (which is contrary to the undisputed facts), Criscito attempts to create the illusion of a factual dispute. However, the undisputed evidence in the record, as set forth below, demonstrates that it is crystal clear that no Plan participant other than Criscito had an interest in the Smith Barney account after December 31, 1999. The record confirms:

- The Plan's commingled account included investment accounts with Morgan Stanley and Smith Barney. Plaintiffs' R. 56.1 Stmt, ¶ 28.

- Criscito concealed the true December 31, 1999 values of the Morgan Stanley and Smith Barney accounts ($12,952,936.46 and $3,924,549.92, respectively) from APC and the Plan participants, and instead, falsely reported to APC that the values for these two accounts were $4,017,942.57 and $798,425.50, respectively. Plaintiffs' R. 56.1 Stmt, ¶¶ 32-34, 37-38.

- In connection with reporting the false figures to APC, Criscito arranged to create segregated accounts for the participants in the commingled account based on the dramatically understated values he reported. This enabled him to keep the huge gains (he concealed) for himself. Plaintiffs' R. 56.1 Stmt, ¶¶ 42-53.

- During the period 1/00 through 3/00, the newly created segregated accounts were opened at Morgan Stanley and were funded with money taken from the Morgan Stanley account. The initial deposits into the new segregated accounts were calculated based upon the false (understated) values provided to APC by Criscito. The participants did not receive their allocated portion of the approximately $12,000,000 Criscito concealed nor did they receive any monies from the Smith Barney account. *See* Plaintiffs' R. 56.1 Stmt., ¶¶53 and 56.

- Criscito "covered his tracks" by providing false information to APC about year-end account values for the years subsequent to 1999. As a result, the annual tax returns for the Pension Fund for 1999 to 2005 (IRS Forms 5500) that Criscito signed and submitted to the IRS as being true and correct "under penalties of perjury", contained false and inaccurate information. Plaintiffs' R. 56.1 Stmt, ¶¶ 122-147.

---

[1] Criscito's proffered damage expert agrees that the Plan participants (other than Criscito) were initially deprived of Plan assets totaling $1,681,572.65 as a result of Criscito's actions.

- Criscito maintained the Smith Barney account in the name of the Plan but used his home address as the account address.  Flax Opp. Decl.,[2] Ex. 6, p. 1.

- Criscito repeatedly told APC that all information regarding the Plan should be sent to his home and that APC was not permitted to speak with anyone regarding the Smith Barney account which was part of the commingled account.  *See* Plaintiffs' R. 56.1 Stmt., ¶23-25.

- Criscito was removed as the sole Trustee of the Plan on July 2, 2007.  A few months later, on 10/16/07, Criscito had Smith Barney transfer virtually the entire balance of the Smith Barney account (more than $945,000) to his personal IRA account at Smith Barney.  *See* Flax Opp. Decl., Ex. 6, p. 4; Plaintiffs' R. 56.1 Stmt., ¶¶13 and 40.

- The new Trustees discovered Criscito's transfer of the assets in the Smith Barney account to Criscito's personal IRA and had Smith Barney reverse the transaction.  Flax Opp. Decl., Ex. 6, p. 4; Plaintiffs' R. 56.1 Stmt., ¶41.

- On 2/17/09, Criscito filed his Counterclaim in this case (DE 26) in which he asserted, subject to Rule 11, that "Dr. Criscito maintained his own retirement accounts, funded with his own funds, commonly known as Smith Barney/Citigroup account no. 416-30833-16 007[3], and Independence Bank (n/k/a Sovereign Bank) account no. 1108007053.  Despite the fact that these are Dr. Criscito's own personal accounts, the Plaintiffs have acted to interfere with his access to and control over the funds in these accounts, effectively "freezing" these assets and preventing Dr. Criscito [sic] to manage these funds." (Footnote added). *See* Flax Decl.,[4] Ex. 81, p. 16, ¶2.

- On 4/8/09, Criscito filed a counterclaim against DCC in the litigation pending in New Jersey Superior Court (the "State Court Action").  There he asserted, subject to N.J. Court Rule 1:4-8[5], the same counterclaim he filed in this case and also asserted that:

    - "In interfering with Dr. Criscito's investment accounts (Smith Barney and Independence), as aforesaid, the plaintiff deprived Dr. Criscito of the beneficial use of his assets and thereby converted them to their own use."

---

[2] "Flax Opp. Decl." refers to the Declaration of Melissa E. Flax in Opposition to Defendant's Motion for Summary Judgment (DE 61).

[3] Smith Barney account no. 416-30833-16 007 and Smith Barney account no. 416-30833-16 707 are the same accounts.  *See* Reply Declaration of Melissa E. Flax in Support of Plaintiffs' Motion for Summary Judgment ("Flax Reply Decl."), Ex. 1. (Smith Barney letter produced by Criscito).

[4] "Flax Decl." refers to the Declaration of Melissa E. Flax in Support of Plaintiffs' Motion for Summary Judgment (DE 57-1 through 57-15).

[5] N.J. Court Rule 1:4-8 is the New Jersey equivalent of Rule 11.

- "In interfering with Dr. Criscito's investment accounts (Smith Barney and Independence), as aforesaid, the plaintiff deprived Dr. Criscito of the beneficial use of his assets and thereby committed theft."

*See* Flax Reply Decl., Ex. 2, pp. 25-27, ¶¶50, 55 and 58.

- On 4/8/09, Criscito filed a third-party complaint in the State Court Action against various DCC doctors, including the Plaintiffs, in which Criscito asserted, subject to N.J. Court Rule 1:4-8, the identical claims regarding his ownership of the Smith Barney account that he made in his counterclaims in the State Court Action. *See* Flax Reply Decl., Ex. 2, pp. 30-32, ¶¶13, 18 and 21.

- On 9/17/10, Plaintiffs argued in their summary judgment brief that Criscito's Counterclaim should be dismissed as being without any factual or legal basis. *See* Plaintiffs' S.J. Br., (DE 57-1), p. 28, Point V.

- On 10/20/10, Criscito abandoned his Counterclaim. *See* Defendant's Opp. Br., p. 35, Point 5.

- Criscito still continues to assert his counterclaim and third-party complaint in the State Court Action taking the position that the Smith Barney account is his "own retirement account", "funded with his own funds".

Notwithstanding Criscito's "arguments"[6] to the contrary, the record convincingly establishes that (i) Criscito treated the Smith Barney account as his own, (ii) he briefly succeeded (after he was removed as sole Trustee) in transferring the assets of the Smith Barney account to his personal IRA account, and (iii) he repeatedly asserted in two lawsuits that the Smith Barney account was "his own retirement account", "funded with his own funds". None of the Plan participants (other than Criscito) who had an interest in the commingled account received any interest in or assets from the Smith Barney account when the segregated accounts were created in early 2000. The record that has been developed during the more than 2½ years of litigation in this case has not produced a single document, a word of testimony or a shred of admissible

---

[6] Criscito has not submitted a Declaration that (1) denies that he treated the Smith Barney account as "his own retirement account", or (2) states that the claims he is pursuing in the State Court Action (and that were asserted in this case) based on the Smith Barney account being "his personal retirement account", "funded with his own funds", are baseless.

4

evidence that any Plan participant (other than Criscito) had any ownership interest in the Smith Barney account after December of 1999. The story offered by Criscito that the other Plan participants have an interest in the Smith Barney account is too incredible to believe in light of the fully supported record and therefore should not be viewed as a bar to summary judgment. *See* U.S. v. Doyle, 276 F.Supp.2d 415, 432 n.8 (W.D.Pa. 2003) (defendant's statements insufficient to defeat summary judgment as they were "inherently incredible" and "too incredible to be believed by reasonable minds"); *see also* Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1250 (3d Cir. 1992), Losch v. Borough of Parksburg, 736 F.2d 903, 909 (3d Cir. 1984) and Pension Fund-Local 701 v. Omni Funding Group, 731 F. Supp. 161, 166 (D.N.J. 1990) (a party's statement that is "too incredible to be believed by reasonable minds" cannot bar summary judgment).

Criscito's eleventh hour argument that he is insulated from liability because the actual value of the Smith Barney account as of December 1999 was adequate "to cover" the losses suffered by the Plan participants, would, if accepted, turn ERISA breach of fiduciary duty jurisprudence on its head. The argument is factually unsupportable, legally wrong and should be rejected.

**II.   CRISCITO'S JUDICIAL ESTOPPEL ARGUMENT IS WITHOUT BASIS IN FACT OR LAW**

    **A.   PLAINTIFFS' ERISA CLAIM FOR BREACH OF FIDUCIARY DUTY IS AND ALWAYS HAS BEEN BASED UPON CRISCITO'S FRAUD AND OTHER MISCONDUCT**

A copy of Plaintiffs' Complaint is annexed as Exhibit 1 to the Flax Decl. The Complaint makes it absolutely clear that Plaintiffs' claim is brought under ERISA to redress the "fraud and

other misconduct" undertaken by Criscito in order to enrich himself at the expense of the other Plan participants. *See* Flax Decl., Ex. 1, ¶¶1-7, 13-15 and 68-75.[7]

In Plaintiffs' moving brief, Plaintiffs present this Court with an analysis of cases applying the provisions of ERISA to situations involving breaches of fiduciary duty. *See* Plaintiffs' S.J. Br., pp. 7-17. Those cases confirm that a fiduciary, such as Criscito, is "strictly liable" for a breach of fiduciary duty where the actions taken are unauthorized and/or constitute unlawful self-dealing. A showing of bad faith or negligence is unnecessary for imposing liability on an ERISA fiduciary where there is such a breach of duty. Furthermore, defenses such as the fiduciary's "confusion" or that the fiduciary's actions were taken in "good faith" do not insulate a fiduciary from liability. *See* <u>Leckey v. Stefano</u>, 501 F. 3d 212, 225 (3d Cir. 2007) ("confusion" not a defense to breach of fiduciary duty claim)[8]; <u>In re Merck & Co., Inc</u>. 2010 U.S. Dist. LEXIS 62529 (D.N.J June 23, 2010) at *13 ("good faith" not a defense to breach of fiduciary duty claim). Criscito does not dispute that the foregoing is the controlling law. In fact, he agrees that it is, stating: "as a fiduciary, Dr. Criscito could not avoid his own liability (if any) to the Plan for his breach of fiduciary duty" … even "if such a breach was negligent or unknowing …." Defendant Opp. Br., p. 29.

---

[7] Criscito has acknowledged that Plaintiffs' claim is for breach of fiduciary duty under ERISA. *See* Defendant's S.J. Br., pp. 2-3; Defendant's R. 56.1 Stmt., ¶14.

[8] Ignoring the controlling law, Criscito offers "confusion" as a defense in his opposition Brief. Defendant's Opp. Br., p. 12. First, Criscito suggests that when he sent his January 13, 2000 fax to APC, he thought that he had to report to APC the March 31, 1999 value of the commingled account as opposed to the December 31, 1999 value. That "confusion" is, of course, dispelled by the fact that the value of the Morgan Stanley account on March 31, 1999 was $3,933,019.46, not $4,017,942.57 as reported in the January 13, 2000 fax. *Compare* Flax Reply Decl., Ex. 3 and Flax Decl., Ex. 47. Moreover, in the years before and after 1999, Criscito stated in his faxes to APC that the year-end values he was providing were December 31, not March 31 values. *See* Flax Decl., Ex. 46 and 47. Next, Criscito claims that 1999 was a generally "confusing" year for him as a result of personal problems. Neither version of Criscito's "confusion" defense exculpates him.

Criscito's intentional acts (*e.g.* falsifying the year-end values of investment accounts; reporting the false (understated) year-end values to APC; signing and submitting to the IRS annual IRS Forms 5500 (1999-2005) knowing that the Forms contained false information; concealing the true value of the commingled account; and arranging for the creation of segregated accounts for the Plan participants whose initial balances were far less than they should have been as a result of Criscito's false reporting) are, in part, the facts which support the Plaintiffs' ERISA breach of fiduciary duty claim. Plaintiffs have demonstrated, throughout this litigation, that Criscito's intentional actions – designed to defraud the Plan and the Plan participants and enrich himself – undeniably constitute a breach of his fiduciary duties under ERISA. Because Criscito's actions were clearly unauthorized and constituted unlawful self-dealing, Criscito is "strictly liable" for his conduct. See Leckey, 501 F.3d at 224. Criscito's argument that Plaintiffs must prove common law fraud to be successful on their claims under ERISA for breach of fiduciary duty, is wrong. *See* Plaintiffs' S.J. Br., pp. 7-17. *See also* Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 171 & n.3 (3d Cir. 1997) (holding that common law causes of action against ERISA fiduciaries are subject to the complete preemption doctrine); Erbe v. Billeter, 2006 WL 3227765 (W.D. Pa. Nov. 3, 2006) at *6 (common law claims for, among other things, fraud are "expressly preempted by ERISA"); 28 U.S.C. §1144(a) ("the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan").

**B.   MAGISTRATE ARLEO'S DENIAL OF CRISCITO'S MOTION TO IMPLEAD APC AS A THIRD-PARTY DEFENDANT DOES NOT LIMIT PLAINTIFFS' BREACH OF FIDUCIARY CLAIM**

Criscito devotes a significant portion of his opposition papers (*see* Defendant's Opp. Br., pp. 22-31) attempting to transform Magistrate Arleo's denial of his motion for leave to assert a

7

third-party complaint against APC for contribution and indemnification into something that it is not – a basis for limiting Plaintiffs' ERISA breach of fiduciary duty claims.

At the outset of the oral argument on Criscito's motion for leave to file a third-party complaint against APC, Magistrate Arleo correctly described Plaintiffs' claims as being ERISA breach of fiduciary duty claims based upon Criscito's intentional and fraudulent conduct. *See* Flax Opp. Decl., Ex. 4 (transcript) 2:21-3:10. In rendering her decision denying Criscito's motion, Magistrate Arleo articulated four independent bases for her ruling. First, Magistrate Arleo found the proposed claims against APC to be separate and independent and therefore not permitted under Fed.R.Civ.P. 14(a). Second, Magistrate Arleo found that Criscito lacked standing to bring the third-party complaint. Next, the Magistrate found that Criscito failed to establish that his losses, if any, were the result of the alleged negligence of APC and its employees. Finally, Magistrate Arleo found that there was undue delay in bringing the motion to assert claims against APC. *See* Flax Opp. Decl., Ex. 4 (transcript) 7:12-15:14. In arriving at her decision, the Magistrate noted:

> Contribution – indemnification says, I didn't do it, the other person's primarily liable. And on the face of the pleadings, that just cannot be, because the theory is you (Criscito) did it intentionally, you (Criscito) went and you (Criscito) stole our money, so there's no way on that intentional theory, you could – Criscito could say to the folks that didn't catch his wrongdoing, you're primarily liable.

*See* Flax Opp. Decl., Ex. 4 (transcript) 6:16-22.

Neither Magistrate Arleo's denial of Criscito's motion, nor any position taken by Plaintiffs in connection with the motion (or at any time during this case), provide any basis for employing the doctrine of judicial estoppel to in any way limit Plaintiffs' claims against Criscito.[9] As noted above, Plaintiffs' claims are and have always been based upon a series of

---

[9] The doctrine of judicial estoppel should, however, be used by this Court to bar Criscito's argument that Plan participants (other than Criscito) had an ownership interest in the monies in the Smith Barney account. Criscito repeatedly asserted in his Federal and State pleadings that

8

intentional, unauthorized acts by Criscito that inflicted harm upon the Plan and the Plan's participants and enabled him to line his own pockets with monies belonging to the others. Criscito's own actions unquestionably make him strictly liable for the damages he has caused. *See* Leckey, 501 F. 3d 212 (3d Cir. 2007).

Magistrate Arleo's use of the words "fraud", "intentionally concealed", "intentional theory", "intentional wrongdoing" and "fraudulent scheme" to describe Plaintiffs' allegations against Criscito in this case were accurate. Plaintiffs' position has never changed. As set forth in Krystal Cadillac-Oldsmobile GMC Truck, Inc. vs. General Motors Corporation, 337 F. 3d 314 (3d Cir. 2003), judicial estoppel is only employed when it "is necessary to prevent a litigant from 'playing fast and loose with the Courts'" and "should only be applied to avoid a miscarriage of justice." *Id*. at 319. The basic principle of judicial estoppel is that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursing an incompatible theory." *Id*. (citation omitted). There has never been anything inconsistent about Plaintiffs' position in this litigation. Plaintiffs' claims, which are completely supported by the record, have always been that Criscito's intentional, unauthorized actions were designed to and succeeded in enriching himself and defrauding the Plan and the other participants to the tune of millions of dollars. Criscito's tortured argument that the doctrine of judicial estoppel should be used to limit Plaintiffs' ERISA claims for breach of fiduciary duty has no support in either fact or law.

---

the Smith Barney account was his "own retirement account", "funded with his own funds" and that Plaintiffs interfered with, converted and/or committed theft with respect to the Smith Barney account. *See* Point I, above. For Criscito to now argue, in the face of these pleadings, that the Plan participants were not harmed because they had an interest in the Smith Barney account all along and there was enough money in the Smith Barney account in 1999 "to cover" their losses, is nothing short of "playing fast and loose" with this Court in an attempt to gain an advantage in the litigation.

9

### III. PLAINTIFFS' ARE ENTITLED TO AN AWARD OF PUNITIVE DAMAGES AND ATTORNEYS' FEES AND COSTS

In Plaintiffs' moving brief, Plaintiffs provided this Court with a detailed analysis of why an award of punitive damages and attorneys' fees and costs (liability only) is particularly appropriate in this ERISA case. *See* Plaintiffs' S.J. Br., pp. 21-27. In his opposition papers, Criscito makes four halfhearted arguments opposing the award of punitive damages and attorneys' fees. *See* Defendant's Opp. Br., pp. 32-34. None of those arguments have merit.

First, Criscito argues that an award of punitive damages at the summary judgment stage is inappropriate because in order to award punitive damages, the Court must assess the "Defendant's mental state". In support of his position, Criscito cites to Shebar v. Sanyo Business Systems Corp., 111 N.J. 276 (1988). However, in Shebar, a wrongful termination case (as opposed to an ERISA case) that did not deal with punitive damages, the Supreme Court merely noted that the defense of "waiver" usually involves questions of intent not suited for summary judgment. Shebar's "waiver" discussion does nothing to undermine Plaintiffs' argument that in an ERISA case such as this (where the facts confirm intentional, self-dealing acts by a fiduciary as part of a scheme to defraud the Plan of millions of dollars), punitive damages should be awarded.

Second, Criscito claims that deposition testimony that Criscito elicited from Plaintiffs' damage expert (Feit) on the issue of fraud should be ignored. Criscito does not challenge the fact that Feit has experience as a certified fraud examiner or that he truthfully answered a question posed by Criscito's counsel. Rather, in requesting this Court to ignore the testimony, he relies totally on the fact that Feit was not offered as a fraud expert – which he was not.[10] However,

---

[10] In taking this position, Criscito is again talking out of "both sides of his mouth". Throughout his summary judgment papers, Criscito argues that the Court should accept Feit's deposition testimony regarding "industry standards" in support of his argument attempting to shift blame to APC. He makes this argument despite the fact that Feit did not submit a report on "industry

Feit's testimony regarding Criscito's fraud is not insular, it merely corroborates what the factual record overwhelmingly reveals.

Next, while Criscito agrees that when awarding attorneys' fees the Court should look to the factors set forth in Ursic v. Bethlehem Mines, 719 F. 2d 670 (3d Cir. 1983), he suggests that consideration of "the offending parties' culpability or bad faith" (one of the Ursic factors) requires a determination of "state of mind" which is "ill-suited" for summary judgment. Criscito is wrong. In this case, there can be no question that the record establishes Criscito's culpability as well as his intentional, self-dealing conduct. Thus, in the event this Court grants summary judgment on Plaintiffs' breach of fiduciary duty claims, further proceedings with respect to culpability or bad faith would not be required in order to find Criscito liable for Plaintiffs' attorneys' fees and costs.

Finally, Criscito offers the mantra that appears throughout his opposition papers as a basis for the Court not awarding punitive damages or attorneys' fees – *i.e.* the actual value of the Smith Barney account as of December 31, 1999 (as opposed to the false value he reported to APC) was sufficient to cover the losses suffered by the Plaintiffs as a result of Criscito's actions. His totally unsupportable claim that the Smith Barney account (which he controlled, concealed, briefly transferred to his personal IRA account, and repeatedly claimed to be his personal retirement account in this case and in the State Court Action) shields him from liability is, for the reasons set forth in Point I above, meritless.

Criscito's opposition to Plaintiffs' motion for an award of punitive damages and attorneys' fees should be rejected.

---

standards" nor did Plaintiffs offer him as an "industry standards" expert. Simply put, "what's sauce for the goose is sauce for the gander".

11

**CONCLUSION**

For the reasons set forth herein and in Plaintiffs' moving papers, Plaintiffs respectfully submit that this Court should grant Plaintiffs' motion for summary judgment in its entirety.

Dated: October 29, 2010

Respectfully submitted,

Stephen M. Charme
Tara S. Sinha
WITMAN STADTMAUER, P.A.
26 Columbia Turnpike
Florham Park, New Jersey 07932-2213
(973) 822-0220

By: /s/ Stephen M. Charme
      Stephen M. Charme

John M. Agnello
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

By: /s/John M. Agnello
      John M. Agnello

*Attorneys for Plaintiffs*