```
_____
                               )   UNITED STATES DISTRICT COURT
DR. FADI CHAABAN; DR. SABINO    )   DISTRICT OF NEW JERSEY
R. TORRE; DR. CONSTANTINOS A.   )
COSTEAS and DR. ANTHONY J.      )        Civil Action
CASELLA, as Trustees of         )
Diagnostic & Clinical           )   Case No. 2:08-cv-1567 (GEB - MCA)
Cardiology, P.A. Profit         )
Sharing Plan,                   )
                                )   RETURN DATE: June 6, 2011
          Plaintiffs,           )
                                )
     v.                         )
                                )
DR. MARIO A. CRISCITO,          )
                                )
          Defendant.            )
_____)
```

---

### DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

---

**KERN AUGUSTINE
CONROY & SCHOPPMANN, P.C.**
1120 Route 22 East
Bridgewater, New Jersey 08807
(908) 704-8585
Attorneys for Defendant
RC-8060

**TABLE OF CONTENTS**

Page

Table of Authorities........................................................................ii

Preliminary Statement.....................................................................1

Counter-Statement of Facts and Procedural History.......................4

Argument.........................................................................................7

    Point I –

        The Witman Stadtmauer Bills Must be Cut
        For the Unnecessary Time Spent at the
        Beginning of the Case................................................7

    Point II –

        The Defendant Should not be Required to
        Pay For the Plaintiffs' Luxury of
        Representation by Two Law Firms.............................17

Conclusion.......................................................................................20

## TABLE OF AUTHORITIES

Cases                                                                 Page

*Altran Corp. v. Ford Motor Co.,*
    502 U.S. 939 (1991)......................................................................8

*Kurz v. Philadelphia Electric Co.,*
    96 F.3d 1544 (3d Cir. 1996),
    *reh'g denied*, 113 F.3d 432,
    *cert. denied*, 522 U.S. 913 (1997)..........................................8

*Ranke v. Sanofi-Synthelabo, Inc.,*
    436 F.3d 197 (3d Cir. 2006)......................................................7


Statutes

Employee Retirement Income Security Act of 1974
    ("ERISA"), 29 U.S.C. § 1001, et seq.......................................7

29 U.S.C. §1113.........................................................................................7


Court Rules

Fed. R. Civ. P. 11......................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................1

## PRELIMINARY STATEMENT

The defendant has two main arguments to challenge the substance of the plaintiffs' fee application. The plaintiffs in this case were initially represented by the law firm of Witman Stadtmauer, which filed a baseless motion for sanctions under Fed. R. Civ. P. 11 with respect to the defendant's motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6), and then filed an application for entry of default against the defendant which was, under the circumstances of the case, unwarranted and frankly, silly, and then interposed a baseless opposition to the defendant's motion to set aside that default. If anything in this action "needlessly multiplied" the proceedings below, these actions by plaintiffs' counsel certainly did, and they are not entitled to a fee award for the time spent on these issues.

Also, defendant questions the entire fee application made by the Carella Byrne firm. The Witman Stadtmauer firm represented the plaintiffs from the inception of this litigation, filed on March 28, 2008. Then, more than two years later, in May of 2010, the Carella Byrne firm was brought into the case.[1]  From that point onward, the work

---

[1] Over the course of the action, the Witman Stadtmauer firm had four attorneys working on the case, three partners and

performed by the two firms was largely duplicative.  It was unnecessary to bring another firm in at the end of this case.  The Carella Byrne firm ran up $342,236.26 in fees and costs from May of 2010 until April of 2011.[2]  *See* plaintiffs' Exhibit "D."  The defendant should not be saddled with the responsibility for paying for the plaintiffs' economically unjustified decision to bring in another law firm at the end of the case.  If the plaintiffs wish to pay two law firms for performing the same task, that is up to them, but the defendant should not be required to pay for the plaintiffs' whims.

Finally, the defendant notes his continuing objection to the constant *ad hominem* attacks which have been present in this case from the beginning and which are continued in the fee application.  The plaintiffs have won their case and the Court has made findings in their favor and against the defendant.  The defendant disagrees with many of these findings and believes they are not supportable.  However,

---

one associate.  *See* Declaration of John Agnello, Esq. ("Agnello Dec."), ¶¶75 – 87.  The Carella Byrne firm used five attorneys, four partners and one associate, and three paralegals, during the approximately 12 months that it was involved in the case.  *See* Agnello Dec., ¶¶88 – 101.

[2] During this same period, the Witman Stadtmauer firm billed $140,348.58 in fees and costs.  *See* plaintiffs' Exhibit "C."

at this stage of the case, personal attacks against the defendant are particularly irrelevant and inappropriate.

## COUNTER-STATEMENT OF FACTS AND PROCEDURAL HISTORY

As the Court has already entered final judgment in this case, and made findings of fact, discussion of the facts underlying the case is not appropriate at this juncture.   The defendant, therefore, will confine this statement to factual and procedural issues relevant to the plaintiffs' attorneys' fee application.

On May 7, 2008, the defendant filed a pre-answer motion to dismiss the plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).  This motion appears at docket entry number 5 in the case.[3]  The plaintiffs opposed the motion and the defendant replied to the opposition.   On June 24, 2008, Judge Martini denied the motion.   His opinion appears as docket entry number 11, the Order at number 13.   Under circumstances described in the defendant's motion to vacate default and supporting documents, filed on July 21, 2008 at docket entry number 17, due to a communication error in connection with the transmission of the Court's order denying the motion to dismiss, the defendant did not file an answer to the

---

[3] In order to not burden the Court with excessive paper, the defendant will simply refer to documents which have already been filed of record with the Court, and are available on the Court's CM/ECF system, by document number, rather than submitting additional copies to the Court.

complaint within ten (10) days of the entry of the Order denying the motion to dismiss.

Plaintiffs' counsel, having received and responded to the motion to dismiss, was well aware that the defendant was represented by counsel who had appeared in this action and was vigorously defending the defendant's interests. Although under no obligation to have done so, the simple, expedient thing for plaintiffs' counsel to have done at the time was to pick up the telephone and call defendant's counsel to inquire whether they were aware that the defendant's motion to dismiss had been denied. As events developed in this case, such an action would have saved a tremendous amount of effort, as well as time.

However, plaintiffs' counsel declined to take this reasonable course, and instead filed an entry of the defendant's default upon the docket of the Court. *See* docket entry number 15. The defendant, of necessity, filed a motion to set aside the default, on July 21, 2008, as previously stated. *See* docket entry number 17. The plaintiffs opposed this motion. *See* docket entry number 20.

Approximately two weeks before they filed their request to enter default, the plaintiffs filed a motion for sanctions pursuant to Fed. R. Civ. P. 11, based upon the

defendant's filing of his motion to dismiss.  *See* docket entry number 14.  The defendant opposed this motion and the plaintiffs filed a reply to the opposition.

On February 5, 2009, Judge Greenaway entered an opinion, *see* docket entry number 24, and an Order, *see* docket entry number 25, denying the plaintiffs' motion for sanctions and granting the defendant's motion to set aside the entry of default.

Although the Witman Stadtmauer firm had been representing the plaintiffs in this action even prior to the filing of the complaint in this action on March 28, 2008, the plaintiffs decided, for some reason, to bring a second set of lawyers into the case in May of 2010.  The plaintiffs hired the Carella Byrne firm at that time.  The Carella Byrne firm then billed a considerable amount of time in May of 2010 simply getting "up to speed" on the case, and the work it did after that was largely duplicative of what was being done by the Witman Stadtmauer firm.  *See* plaintiffs' Exhibits "C" and "D."

## POINT I

### THE WITMAN STADTMAUER BILLS MUST BE CUT FOR THE UNNECESSARY TIME SPENT AT THE BEGINNING OF THE CASE.

As described in the Counter-Statement of Facts and Procedural History, *supra*, the defendant filed a pre-answer motion to dismiss the plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6). The argument made in the motion was that the plaintiffs' action was barred by the six-year statute of limitations contained in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, 29 U.S.C. §1113. Defendant's motion to dismiss was based upon the "active concealment" doctrine, and pointed out that the plaintiffs' complaint alleged a single act of fraud, which occurred well beyond the applicable six-year statute of limitations, and failed to allege acts of "active concealment" which occurred during the limitations period. *See Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)("The relevant question is not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty."). Defendant believed that the allegations of the complaint simply stated "self-concealing" frauds, rather than the type of "active concealment" which would justify tolling

the statute of limitations, *see Ranke*, 436 F.3d at 203-4, and that other acts alleged in the complaint, such as claims the defendant made personal use of fraudulently obtained funds, did not amount to concealment at all.

Defendant also pointed out that the complaint did not allege that the plaintiffs acted with due diligence with respect to the pension plan, so that the statute of limitations should apply to bar the complaint. *See Kurz v. Philadelphia Electric Co.*, 96 F.3d 1544, 1552 (3d Cir. 1996), *reh'g denied*, 113 F.3d 432, *cert. denied*, 522 U.S. 913 (1997). When the defendant's motion was denied, the plaintiffs immediately filed an application for sanctions under Fed. R. Civ. P. 11. This motion was, essentially, baseless, and was denied. The mere fact a motion is denied does not mean it was frivolous; if a party's position is reasonable, a loss on the merits does not trigger Rule 11 sanctions. *Altran Corp. v. Ford Motor Co.*, 502 U.S. 939 (1991).

The Witman Stadtmauer firm billed the following time for its Rule 11 motion:[4]

---

[4] These figures come from the bills in plaintiffs' Exhibit "C:" no dollar values are shown for the entries. According to the plaintiffs' submissions, the hourly rates for the years 2008 and 2009 for the timekeepers at issue were as follows:

| Date | Description | Hours | Atty. |
|------|-------------|-------|-------|
| 5/12/08 | Legal research regarding filing procedures for R.11 motions | 0.60 | LC |
| 05/12/08 | Conference regarding responding to dismissal motion; filing sanctions motion | 0.40 | LC |
| 05/12/08 | Preparation of sanctions motion papers | 0.80 | LC |
| 05/12/08 | Review of issues regarding motion to dismiss and frivolous motion; research regarding same | 1.60 | TR |
| 05/13/09 | Legal research regarding standards for sanctions | 2.00 | LC |
| 05/13/08 | Preparation of brief on sanctions motion | 0.80 | LC |
| 05/14/08 | Work on motion papers | 4.30 | SC |
| 05/15/08 | Work on motion papers | 9.00 | SC |
| 05/15/08 | Review, revise and supplement brief in support of motion to impose sanctions | 0.40 | LC |
| 05/19/08 | Work on motion papers | 5.00 | SC |
| 05/29/08 | Work on opposition to motion to dismiss and sanctions motion | 1.90 | SC |
| 06/10/08 | Conference – SMC re: timing of sanctioned [sic] motion | 0.30 | LC |
| 06/16/08 | Work on discovery and review | 2.40 | SC |

| | | |
|------|---|----------|
| SC | – | $350.00 |
| LC | – | $300.00 |
| TR | – | $225.00 |

*See* Agnello Dec., ¶116.

9

```
             documents; work on Rule 11
             motion for sanctions

06/26/08   Work on sanctions motion       0.70      SC

07/02/08   Finalize filing sanctions      0.80      SC
           motion

07/23/08   Work on reply papers for       2.00      SC
           sanctions

07/24/08   Review, revise and             0.40      LC
           supplement letter reply brief
           on sanctions motion

07/25/08   Final edits to sanctions       0.50      SC
           papers

TOTALS:

SC - 24.70 hours   X   $350.00   =   $ 8,645.00

LC -  7.60 hours   X   $300.00   =   $ 2,280.00

TR -  1.60 hours   X   $225.00   =   $   360.00

TOTAL FEES FOR RULE 11 Motion:       $11,285.00
```

The Witman Stadtmauer firm billed the following time for its application to enter default and its opposition to the defendant's motion set aside the default:

| Date | Description | Hours | Atty. |
|------|-------------|-------|-------|
| 07/14/08 | Work on default application | 0.90 | SC |
| 07/14/08 | Conference regarding further proceedings and default procedure | 0.30 | LC |
| 07/15/08 | Document review; motion paper review; edit default papers | 2.90 | SC |
| 07/16/08 | Further edits and file | 1.90 | SC |

|            |                                                                                                          |       |    |
|------------|----------------------------------------------------------------------------------------------------------|-------|----|
|            | default papers; work on discovery                                                                        |       |    |
| 07/22/08   | Review of law regarding setting aside default                                                            | 1.70  | TR |
| 07/22/08   | Conference regarding vacating default and sanctions motion; review and analysis of opposition to sanctions motion | 0.70  | LC |
| 07/22/08   | Review motion papers and research to open default                                                       | 1.40  | SC |
| 07/23/08   | Work on response to set aside default                                                                    | 1.00  | SC |
| 07/24/08   | Work on brief opposing vacating default                                                                 | 2.50  | SC |
| 07/25/08   | Review, revise and supplement brief in opposition to motion to set aside default                        | 0.70  | LC |
| 07/25/08   | Edit opposition papers to set aside default                                                             | 2.00  | SC |
| 07/29/08   | Further edits to papers opposing vacating default                                                       | 0.70  | SC |
| 07/31/08   | Edit opposition to motion to set aside default and work on discovery                                    | 1.60  | SC |
| 08/01/08   | Finalize papers opposing setting aside default                                                          | 0.90  | SC |
| 08/11/08   | Review opposing brief and proposed answer                                                               | 0.50  | SC |
| 08/13/08   | Further review of papers opposing default                                                               | 0.30  | SC |
| 09/08/08   | Telephone call to Judge Greenaway's Chambers regarding disposition of motions                           | 0.20  | LC |

11

| | | | |
|---|---|---|---|
| 09/29/08 | Telephone call to Judge Greenaway's Chambers regarding further proceedings | 0.20 | LC |
| 11/03/08 | Telephone call to Judge Greenaway's Chambers regarding motion to vacate default | 0.20 | LC |
| 12/03/08 | Telephone call – Court regarding motion issues | 0.10 | LC |
| 12/15/08 | Telephone calls – Judge Greenaway's Chambers regarding pending motions | 0.20 | LC |
| 12/17/08 | Telephone call to P. Selecky (Judge Greenaway's Chambers) regarding disposition of motion | 0.20 | LC |
| 01/27/09 | Telephone call to P. Selecky (Judge Greenaway's Chambers) regarding pending motions | 0.20 | LC |
| 01/29/09 | Telephone call to P. Selecky (Judge Greenaway's Chambers) regarding pending motions | 0.20 | LC |
| 02/05/09 | Review and conference regarding Greenaway Order and opinion | 0.30 | SC |
| 02/05/09 | Correspondence – opposing counsel – serve default and sanction motion order and opinion | 0.20 | LC |
| 02/06/09 | Review and analysis of Court's opinion and order on default and sanctions motions | 0.20 | LC |

TOTALS:

SC – 16.90 hours    X    $350.00   =   $5,915.00

LC –  3.50 hours    X    $300.00   =   $1,050.00

```
TR - 1.70 hours    X    $225.00  =   $  382.50
```

```
TOTAL FEES FOR DEFAULT
APPLICATION/MOTION:                  $7,347.50
```

First, there was simply no need for the plaintiffs'
counsel to enter default against the defendant.  As fully
set forth in the defendant's motion to set aside the
default, *see* docket entry number 17, there was a
miscommunication in the defendant's counsel's office which
resulted in the Order denying the motion to dismiss to not
be communicated to the attorneys responsible for filing the
defendant's answer.  Plaintiffs' counsel was well aware
that the defendant was represented by counsel who had
entered an appearance in this case, and who had filed a
Rule 12(b)(6) motion to dismiss, which provided a clear
indication that the defendant intended to vigorously defend
the action against him.[5]  A simple telephone call to the
defendant's counsel, inquiring if they had seen the Order

---

[5] It was, of course, Dr. Criscito's absolute right to defend
himself in this action to the fullest extent permitted by
the law and by the Federal Rules of Civil Procedure.  The
plaintiffs now argue, with the benefit of 20/20 hindsight,
that since the defendant lost on summary judgment, he
should not have defended himself and should have simply
thrown up his hands and allowed judgment to be entered
against him as soon as he was served with process.  Of
course, this is not how the adversary system of civil
litigation operates.  The defendant has appealed the
District Court's judgment and the final outcome of this
action is therefore not a certainty.

denying the motion to dismiss, would have avoided the effort spent by the Court and counsel with respect to the default application and the motion to set aside that default, and the near seven month delay which occurred while the Court decided that motion. The law demonstrating the defendant's entitlement to vacate the default was clear, and the plaintiffs' opposition to the defendant's motion bordered on frivolous.

Equally frivolous was the motion for sanctions pursuant to Fed. R. Civ. P. 11 which the plaintiffs filed with respect to the defendant's motion to dismiss. Plaintiffs' papers in opposition to the motion to set aside default, *see* docket entry numbers 20 and 21, were, as would become the plaintiffs' pattern throughout this entire litigation, replete with *ad hominem* attacks against Dr. Criscito, as well as conclusory assertions that the motion to dismiss was filed for an improper purpose in order to "harass" the plaintiffs, to cause unnecessary delay and to increase the costs of the lawsuit. Plaintiffs' brief in support of their Rule 11 motion, *see* docket entry number 14, basically repeated most of what was said in opposition to the defendant's motion to dismiss. A review of the defendant's papers on the motion to dismiss shows that the defendant had a sound basis upon which to move to dismiss

and non-frivolous arguments in reply to the plaintiffs'
opposition.  The mere fact the motion was denied does not
mean it was frivolous; if a party's position is reasonable,
a loss on the merits does not trigger Rule 11 sanctions.
Judge Martini considered the moving, opposition and reply
papers, and entered an Opinion, see docket entry number 12,
and Order, see docket entry number 13, denying the
defendant's motion.  Judge Martini's opinion does not
castigate the defendant or his counsel, or state the motion
was unfounded or brought for an improper purpose.  Rather,
the Opinion simply states that the complaint contained
sufficient allegations to take it outside of ERISA's
statute of limitations.  This was simply a legitimate
dispute between adversaries in a lawsuit.

     Nor does repeatedly calling Dr. Criscito a "fraud" or
alleging that the motion to dismiss was filed to prevent
Dr. Criscito from being held "accountable" for his "fraud,"
constitute conduct which rises to the level of sanctionable
wrongs under Rule 11.  Of course, in any case where a
defendant files a motion to dismiss he is seeking to avoid
having to defend a lawsuit, and thus seeking to avoid being
held "accountable" for the allegations set forth in the
complaint.  This does not render every motion to dismiss
which is denied a sanctionable event under Rule 11.  The

defendant made a motion to dismiss, in accordance with the Federal Rules of Civil Procedure.  The plaintiffs opposed the motion, and the defendant replied.  Judge Martini denied the motion.

However, this denial does not in any way imply that the defendant's motion to dismiss was frivolous.  Judge Greenaway recognized this when he entered his opinion, *see* docket entry number 24, and Order, *see* docket entry number 25, denying the plaintiffs' motion for sanctions and granting the defendant's motion to set aside the entry of default.

The entry of default, and the motion to set aside default which it necessitated, and the frivolous Rule 11 motion, were unnecessary and needlessly multiplied this litigation.  The Witman Stadtmauer firm billed $18,632.50 for its needless work on these issues.  This amount should be stricken from the fees sought in connection with the plaintiffs' application.

<u>**POINT II**</u>

**THE DEFENDANT SHOULD NOT BE REQUIRED TO PAY FOR THE PLAINTIFFS' LUXURY OF REPRESENTATION BY TWO LAW FIRMS.**

After being represented by the Witman Stadtmauer firm since the inception of this action, prior to the filing of the complaint, the plaintiffs retained the Carella Byrne firm in May of 2010. The Carella Byrne firm did not replace the Witman Stadtmauer firm; instead, both firms continued to represent the plaintiffs from that point onward. While it was certainly the plaintiffs' prerogative to have hired as many lawyers as they liked to represent them, it is unfair for them to attempt to saddle the defendant with paying for this extravagance.

During the approximately twelve months the Carella Byrne firm was involved in this case, from May 6, 2010 through April 25, 2011, *see* Plaintiffs' Exhibit "D," its five attorneys and three paralegals billed 897.7 total hours, *see* Agnello Dec., ¶112, and some $342,236.26 in fees and costs. *See* Agnello Dec., ¶120. This is almost as much as the four attorneys and one paralegal of the Witman Stadtmauer firm billed over the course of the entire case, for nearly three and one-half years, from November 8, 2007 through April 25, 2011, *see* Plaintiffs' Exhibit "C;"

1,329.9 hours, *see* Agnello Dec., ¶111, and $444,248.00 in fees.  *See* Agnello Dec., ¶120.

Since the beginning of May, 2010, when the Carella Byrne firm began working on the case, the Witman Stadtmauer firm billed $137,432.50 in fees on the case:

| Bill Date | Fees Billed |
|-----------|-------------|
| 6/2/10 | $  8,725.00 |
| 7/1/10 | 12,665.00 |
| 8/3/10 | 20,755.00 |
| 9/1/10 | 22,655.00 |
| 10/4/10 | 24,885.00 |
| 11/1/10 | 15,850.00 |
| 2/1/11 | 400.00 |
| 3/4/11 | 20,225.00 |
| 4/5/11 | 7,475.00 |
| 4/26/11 | 3,797.50 |
| TOTAL: | $137,432.50 |

*See* Plaintiffs' Exhibit "C."

Quite simply, there is no reason why the defendant should be compelled to pay for the plaintiffs' extravagance in being represented by two law firms.  The Carella Byrne firms' bills should be deducted from any fee award to the plaintiffs.  The plaintiffs decided to avail themselves of

18

the luxury of representation by two law firms, and they
should be required to pay for this luxury themselves.

## CONCLUSION

For the foregoing reasons, the plaintiffs' fee application should be reduced by the amount of $360,868.76, which includes the $18,632.50 billed by the Witman Stadtmauer firm for actions which unnecessarily prolonged and complicated this matter at the beginning of this case, as set forth in Point I, *supra*, and $342,236.26, the fees and costs billed by the Carella Byrne firm, for the duplication of effort inherent in having two law firms represent the plaintiffs from May of 2010 until April of 2011, as set forth in Point II, *supra*.

Respectfully submitted,

**KERN AUGUSTINE
CONROY & SCHOPPMANN, P.C.**
Attorneys for Defendant

By: /s/ Robert J. Conroy
Robert J. Conroy

Dated:    Bridgewater, New Jersey
          May 23, 2011

20