<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————

:

DR. FADI CHAABAN, DR. SABINO R.          :
TORRE, DR. CONSTANTINOS A.               :
COSTEAS, AND DR. ANTHONY J.              :
CASELLA as Trustees of Diagnostic &      :          Civil Action No. 08-1567 (SDW)
Clinical Cardiology, P.A. Profit Sharing  :
Plan,                                     :          **REPORT AND**
                                          :          **RECOMMENDATION**
        Plaintiffs,                       :
                                          :
             v.                           :
                                          :
DR. MARIO A. CRISCITO,                    :
                                          :
        Defendant.                        :

———————————————————————  :

<u>**ARLEO, U.S.M.J.**</u>

Before the Court are two applications of plaintiffs Doctors Fadi Chaaban, Sabino R.

Torre, Constantinos A. Costeas, and Anthony J. Casella as trustees of the Diagnostic & Clinical

Cardiology, P.A. ("DCC") Profit Sharing Plan ("the Plan") (sometimes collectively referred to as

"Plaintiffs") for: (1) attorney's fees, expenses and costs incurred in connection with this action

against defendant Doctor Mario A. Criscito ("defendant"), (Dkt. Entry 99); and (2) attorney's

fees and costs spent defending against defendant's appeal of the district court's final judgment.

(Dkt. Entry 103-1).  Defendant opposes both fee applications.  District Judge Wigenton referred

both applications to the undersigned for Report and Recommendation.[1]

---

[1] The Third Circuit granted plaintiffs/appellees' motion for attorney's fees and costs.
However, under Local Appellate Rule 108.2, the Third Circuit referred the motion to Judge
Wigenton for calculation of the amount due.

After considering all of the parties' submissions, and for the reasons set forth below, the Court recommends that both fee applications be **GRANTED** and that defendant be ordered to pay $921,807.00 in fees and $52,600.13 in expenses and costs, totaling $974,407.13 in connection with the entry of final judgment; and that defendant be ordered to pay $110,580.00 in fees and $3,163.38 in expenses and costs, totaling $113,743.38 in connection with the appeal.

I.   <u>**BACKGROUND**</u>

Defendant had been the sole trustee of the Plan and its predecessor, the DCC Money Purchase Plan ("Money Purchase Plan"), from April 1976 until he was removed from that position by plaintiffs in July 2007.  After July 2007, plaintiffs assumed responsibilities as trustees of the Plan.

On March 28, 2008, plaintiffs filed the instant action, alleging that defendant intentionally concealed his breach of his fiduciary duties to the Plan, its beneficiaries, and participants in violation of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1001, *et seq.*.  Specifically, plaintiffs contend that defendant, as trustee, secretly diverted the Plan's assets for his own benefit.  Defendant accomplished this unlawful conduct through a series of schemes spanning decades, while he was the sole trustee, until 2007.  Plaintiffs did not discover defendant's fraudulent scheme until they replaced him as trustees in July 2007.  As it relates to the fee applications, to remedy defendant's breach of fiduciary duties, plaintiffs sought compensatory and punitive damages suffered by the Plan as well as attorney's fees and costs.

The Court highlights the following relevant procedural history.  On May 7, 2008, defendant moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) in lieu of filing an answer, having arguing that plaintiffs' complaint was time-barred.  On June 24, 2008, then-presiding

2

District Judge Martini denied defendant's motion after determining that "Plaintiffs adequately allege that Defendant concealed his wrongdoing, preventing Plaintiffs from discovering it until quite recently." (Dkt. Entry 12). As such, Judge Martini found that plaintiffs' claims as pled were timely and thus not barred by the applicable six-year statute of limitations. (Id.)

On July 2, 2008, plaintiffs requested entry of default against defendant. On that same date, plaintiffs filed a motion for monetary sanctions against defendant, pursuant to Fed. R. Civ. P. 11(c), asserting that defendant's motion to dismiss was frivolously filed in violation of Rule 11. The Clerk of the Court granted the entry of default on the same day.[2] On July 21, 2008, defendant moved to set aside entry of default against him, which Judge Greenaway thereafter granted. Judge Greenaway denied plaintiffs' motion for sanctions, finding that defendant's filing of the motion to dismiss did not rise to the level of improper conduct, sanctionable under Rule 11.

On February 17, 2009, defendant filed an answer and counterclaim, alleging that "plaintiffs have acted to interfere with his access to and control over [his] accounts . . . resulting in the substantial loss of value of the assets held in these accounts . . . as a result of [which Defendant] suffered serious losses to the value of the assets held in these accounts." (Ans. & CC at Dkt. Entry 26). On April 23, 2010, defendant sought leave to file a third-party complaint, seeking indemnification and contribution against American Pension Corporation ("APC"), an independent third-party administrator retained to administer the functions of the Plan, and two individuals. This Court denied defendant's motion.

---

[2] On July 17, 2008, the case was reassigned to then District Judge Greenaway and referred to the undersigned.

On September 17, 2010, the parties cross-moved for summary judgment on plaintiffs' affirmative claims.  Plaintiffs argued that there were no genuine issues of material fact and that as a matter of law defendant was liable for breaching his fiduciary duties under ERISA.  Plaintiffs also asserted that they were entitled to compensatory damages, punitive damages, and reimbursement of their attorney's fees and costs.  They also sought dismissal of defendant's counterclaim.[3]  In support of his cross-motion for summary judgment, defendant argued that there was no evidence of fraud.  Defendant also reasserted his contention, originally raised in support of his unsuccessful motion to dismiss, that the complaint was barred by the six-year statute of limitations for ERISA actions.

On January 31, 2011, then-presiding Chief District Judge Brown[4] granted summary judgment in favor of plaintiffs on their ERISA breach of fiduciary duty claims and on the issue of defendant's liability for compensatory damages, finding there was no genuine issue for trial.[5] Judge Brown, however, reserved decision on the final compensatory damage award as the parties disagreed on the appropriate method of interest calculation.  As such, Judge Brown, among other things, denied without prejudice plaintiffs' application for reasonable attorney's fees and costs, pending the entry of final judgment on compensatory damages.  Judge Brown denied plaintiffs'

---

[3] Subsequently, defendant voluntarily abandoned his counterclaim.

[4] On March 15, 2010, this action was reassigned to Judge Brown.

[5] Indeed, in the Memorandum Opinion and Order, Judge Brown determined, in relevant part, the following: (1) granted plaintiffs summary judgment on defendant's liability for breach of his fiduciary duties under ERISA; (2) found that defendant's breach caused a loss to the Plan participants of $1,681,572.65; (3) denied defendant's summary judgment motion; and (4) required supplemental briefing from the parties on the calculation of interest and the total amount of compensatory damages.  (*See generally* Memorandum Op. & Order).

motion for summary judgment on the issue of punitive damages and denied defendant's motion for summary judgment in all respects.

By Order dated March 29, 2011, Judge Brown determined that plaintiffs were entitled to an award of compensatory damages totaling $4,117,464.65.[6] On March 31, 2011, the Court entered a final judgment on damages in favor of plaintiffs against defendant in the sum of $4,117,464.65.  The Court noted that it would separately address any motion, if filed by plaintiffs, for reasonable attorney's fees and costs.

On April 25, 2011, defendant appealed the Court's entry of final judgment.[7] On that same date, plaintiffs served defense counsel with post-judgment discovery, noting that defendant had not posted a supersedeas bond, and no order staying execution had been entered.  Defendant objected to plaintiffs serving post-judgment discovery.

On April 26, 2011, plaintiffs filed their motion for attorney's fees and costs incurred in connection with entry of the final judgment.  On May 19, 2011, this Court entered an Order, granting plaintiffs' request to take post-judgment discovery and directing defendant to respond to plaintiffs' written discovery and appear for a deposition.  (Dkt. Entry 89).  On May 24, 2011, Judge Brown entered an Order, approving the supersedeas bond as submitted to secure a stay of

---

[6] According to plaintiffs, based on the record before it, the Court found that plaintiffs' total compensatory damages award consisted of: (1) $1,681,572.65 for the undisputed loss of Plan assets to participants; (2) $2,418,292 in interest through January 31, 2011 on the undisputed loss; and (3) $17,600 for costs relating to correcting the Forms 5500 and corresponding participants' annual benefits statements, for a total of $4,117,464.65.  (Dkt. Entries 71 and 74).

[7] On appeal, defendant argued that Judge Brown erred in: (1) denying his motion to dismiss and motion for summary judgment on statute of limitations grounds; (2) granting plaintiffs' motion for summary judgment; (3) in failing to allow him to file a third-party complaint against APC; and (4) Judge Brown's calculation of compensatory damages.

enforcement of the final judgment, pending the determination of the appeal.  (Dkt. Entry 92).  On

May 25, 2011, defendant posted the bond in the amount of $ 5,569,386.00.

On June 6, 2011, in light of the Court's stay of execution of judgment pending appeal,

plaintiffs' motion for fees and costs was terminated without prejudice by the Clerk of the Court.

Plaintiff was directed to re-file the motion, if appropriate, following the appeal.

On October 27, 2011, Judge Brown denied plaintiffs' request to restore their motion for

attorney's fees and costs to the active docket, noting that the motion would remain

administratively terminated pending resolution of defendant's appeal.

On March 7, 2012, the Third Circuit entered judgment, affirming Judge Brown's final

judgment in favor of plaintiffs in all respects.  The Third Circuit, rejecting each of defendant's

arguments raised on appeal, affirmed:  the denial of defendant's motion to dismiss and motion

for summary judgment; the grant of plaintiffs' motion for summary judgment; and the calculation

of damages.

On March 26, 2012, plaintiffs renewed the instant motion for attorney's fees and costs in

connection with the entry of final judgment, seeking a total amount of $974,407.13.[8]  The total

award sought is comprised of $950,158.17 for attorney's fees and consultant's fees; and

$17,902.12 in costs paid by plaintiffs' counsel plus $6,346.84 in costs paid directly by plaintiffs.

Defendant opposes the renewed motion.

On April 5, 2012, plaintiffs/appellees filed an application for an award of attorney's fees

and costs in the amount of $113,743.38 incurred in connection with the appeal.  Defendant

---

[8] This total award comprises of the attorney's fees, expenses and costs incurred in connection with this action through April 2012.

opposed plaintiffs' Third Circuit fee motion, challenging the reasonableness of the fees.  The

Third Circuit granted the fee application, but under Local Appellate Rule 108.2, referred the

application to the district court for calculation of the amount due.

## II.   **ATTORNEY'S FEES APPLICATIONS**

Plaintiffs seek attorney's fees, costs, and expenses in the grand total amount of

$1,088,150.50 ($974,407.13 incurred in this district court action and $113,743.38 incurred on

appeal).  In support of their applications, plaintiffs assert that they were completely successful on

the merits of their ERISA breach of fiduciary claims against defendant; the circumstances of this

case satisfy the Third Circuit's standard for awarding attorney's fees in ERISA cases; and the

hours spent, the hourly rates charged, and the costs incurred were reasonable under the applicable

standard.  Finally, plaintiffs claim that their requested amount of fees is consistent with the

remedial purposes of ERISA.

Although defendant does not deny plaintiffs' success of their claims on the merits, he

disputes plaintiffs' entitlement to any award of fees in connection with the district court's entry

of final judgment.  Defendant's objections are as follows: (1) plaintiffs spent time filing frivolous

and unwarranted motions, which were ultimately vacated and/or denied by the Court;  (2) it is

unfair to compel defendant to pay the fees of two law firms, Witman Stadtmauer, P.A. ("the

Witman firm") and Carella, Byrne, Cecchi, Olstein, Brody & Agnello ("the Carella firm"),

retained by plaintiffs; and (3) plaintiffs cannot justify their counsels' unreasonable hourly rates.

Accordingly, to the extent this Court is inclined to award any fees, based on his own

recalculation, defendant urges this Court to reduce plaintiffs' requested fees so that the total

lodestar amount for fees is $343,573.00.

With respect to plaintiffs' fee application regarding the appeal, defendant does not dispute plaintiffs' entitlement to a fee award.  Rather, defendant contends that the requested fees are excessive because plaintiffs unnecessary retained two law firms to perform the same work and defend an otherwise simple and straight-forward appeal.  Finally, defendant again challenges the hourly rates of plaintiffs' counsel.  Defendant, however, does not submit a recalculated reduced amount to be awarded to plaintiffs for the work done on the appeal.

III.   **ANALYSIS**

A.   **Legal Standard**

It is undisputed that a prevailing party may be awarded attorney's fees in actions brought under ERISA.  *See McPherson v. Employees' Pension Plan of American Re-insurance Co., Inc.*, 33 F.3d 253, 254 (3d Cir. 1994).  The Court must first assess if the fee applicant achieved "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins.*, 130 S. Ct. 2149, 2158 (2010).  ERISA, however, sets forth no standard for awarding fees, stating only that "'the court in its discretion may allow a reasonable attorney's fee and costs of action."  *Id.* (quoting 29 U.S.C. § 1132(g)(1)).  As detailed below, the cornerstone to determining the reasonableness of requested fees is examining the attorney's reasonable hourly rate and number of hours reasonably spent performing the work.  *See Blum v. Stenton*, 465 U.S. 886, 888 (1984); *see also Interfaith Cmty. Org. v. Honeywell Intern, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

However, specific to ERISA actions, the Third Circuit established five factors for district courts to consider in determining whether to exercise their discretion to award requested fees:

1.      the offending parties' culpability or bad faith;

2.      the ability of the offending parties to satisfy an award of attorneys' fees;

8

3.      the deterrent effect of an award of attorneys' fees against the offending parties;

4.      the benefit conferred on members of the pension plan as a whole; and

5.       the relative merits of the parties' position.

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983).  The "*Ursic* factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorneys' fees and costs, but rather they are elements a court must consider in exercising its discretion."[9] *Unisys Corp. Retiree Med. Benefits ERISA Litig. v. Unisys Corp.*, 579 F.3d 220, 239 (3d Cir. 2009) (citing *Fields v. Thompson Printing Co.*, 363 F.3d 259, 275 (3d Cir. 2004)). Furthermore, "no single [*Ursic*] factor is decisive."  *Battoni v. IBEW Local Union No. 102 Employee Pension Plan*, 2009 WL 901021, * 1 (D.N.J. Ap. 2, 2009) (internal quotation omitted). Finally, the Third Circuit has instructed that no presumption exists that a successful plaintiff in an ERISA action should be awarded fees "in the absence of exceptional circumstances." *McPherson*, 33 F.3d at 254 (internal citation omitted).

**B.      Application of the Five *Ursic* Factors**

1.      *Culpability or Bad Faith*

In determining the application of this factor, the reviewing court need not find that defendant acted with a "'sinister motive,' i.e., that [he] [] acted in 'bad faith.'" *McPherson*, 33 F.3d at 256.  In *McPherson*, the Third Circuit explained that "[i]n the civil context, culpable conduct is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty. . . .  Such conduct normally involves something more than

---

[9] Surprisingly, despite the Third Circuit's pronouncement, in opposing any award of fees, defendant, here, does not even address the five *Ursic* factors.

simple negligence." *Id.* (quoting *Black's Law Dictionary* (6th ed. 1990)).

Here, Judge Brown found that defendant, "through his misrepresentations, falsification of records, and improper distribution of plan assets, failed to discharge his duties in the interest of participants and instead dealt with the assets in his own interest." (Mem. Op. dated 1/31/11 at 8). Specifically, Judge Brown found that defendant provided false information regarding account balances to APC." *Id.* In short, the Court found that defendant's misrepresentations of year-end account balances amounted to a breach of his fiduciary duties as "'a fiduciary may not, in the performance of [its] duties, materially mislead those to whom the duties of loyalty and prudence are owed.'" *Id.* (quoting *Shook v. Avaya Inc.*, 2010 U.S. App. LEXIS 22681, at *9 (3d Cir. Nov. 2, 2010).

Judge Brown further found that defendant used the Plan assets for his personal use, including spending withdrawn funds on resort membership and private investments, "some of which was transferred into Defendant's personal accounts, $6,000,000 of which was transferred to open the Sovereign Bank account, and much of which Defendant cannot account for at all." (Mem. Op. dated 1/31/11 at 10-11). As such, the Court found that "[n]o reasonable trier of fact could fail to determine that Defendant dealt with the assets of the Plan for his own account in violation of 29 U.S.C. § 1106(b)(1)." *Id.* at 11.

In sum, Judge Brown found that "[d]efendant breached his fiduciary duties as a matter of law by lying to participants about the value of the assets, allowing them to transfer their understated shares into segregated accounts, and using the Morgan Stanley account, the value of which was far greater than any Plan participants imagined, for his own personal benefit." *Id.* at 12. Furthermore, "when Defendant essentially cleared out the account, the other Plan

participants lost out on the interest that would have been generated." *Id.* Based on defendants'

actions as supported by the record, Judge Brown concluded that "Defendant took affirmative

steps to hide his breach of fiduciary duty," *Id.* at 23, and found his conduct to be "clearly

tortious." *Id.* at 19. Finally, the Third Circuit entered judgment, affirming Judge Brown's final

judgment in favor of plaintiffs in all respects

 Given all of these findings, while the Court cannot conclude that defendant acted in bad

faith, this Court finds that defendant's conduct, which amounted to a breach of his fiduciary duty

and to something beyond mere negligence, was culpable. As such, the first *Ursic* factor weighs

in favor of plaintiffs.

   2. *Ability to Pay*

 With respect to the second *Ursic* factor, the Court preliminarily notes that defendant does

not even address, let alone challenge, plaintiffs' assertion that he has the ability to satisfy an

award of attorney's fees and costs. Nonetheless, the Court "must articulate its considerations, its

analysis, its reasons and its conclusions touching on each of the five factors delineated in *Ursic*."

*Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999, 1012 (3d Cir. 1992).

 In support of their assertion that defendant has the ability to pay attorney's fees, plaintiffs

point to defendant's unlawful commingling, withdrawal and/or personal use of Plan assets,

exceeding more than $10,000,000.00. (Pl. Mov. Bf at 11). Plaintiff further rely on evidence

obtained through their own investigative efforts. According to plaintiffs, as of October 2009,

they have uncovered evidence that defendant had substantial combined assets in several bank and

investment accounts, in excess of $1,000,000.00. (*Id.* at 11-12; Decl. of Stephen Charme

("Charme Decl.") at Exh. A). At the same time, defendant owned at least three residences in

Florida and one in New Jersey.  (*Id.* at 12; Charme Decl. at Exhs. B-D).

Finally, plaintiffs assert that on May 25, 2011, defendant posted a supersedeas bond in the amount of $5,569,386.00 (more than $1 million above the final judgment awarded) to secure a stay of enforcement of the final judgment, pending the outcome of the appeal.  Plaintiffs submit that defendant's posting of the bond establishes his ability to pay an award of fees and costs because he must guarantee to the bonding company that he has the financial strength to indemnify the bonding company in the event it is requested to pay under the bond.  This Court agrees.

While defendant's ownership of several properties in Florida and New Jersey certainly suggests he has the ability to pay an award of reasonable attorney's fees and costs, the Court finds defendant's posting of the $5.5 million supersedeas bond, which vastly exceeds the total amount of fees requested by plaintiffs, sufficient evidence of defendant's ability to satisfy an award of reasonable attorneys' fees.  Accordingly, the second factor weighs in favor of a fee award.

### 3.   *Deterrent Effect of A Fee Award*

The Third Circuit has held that "it will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct." *McPherson*, 33 F.3d at 258. As such, although this Court was unable to determine whether defendant's conduct was in bad faith, this Court must ascertain whether "it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which [defendant] engaged." *Id.*

"For deterrence to be effective, [ ] the conduct to be deterred must have been undertaken knowingly. *Smith v. Contini*, Civ. No. 97-2692, 2003 WL 22734320, at *3 (D.N.J. Aug. 19,

2003).  Here, Judge Brown clearly found that defendant knowingly undertook his actions that resulted in millions of lost dollars to the Plan and its participants.  As detailed above, Judge Brown found that defendant "through his misrepresentations, falsification of records, and improper distribution of plan assets, failed to discharge his duties in the interest of participants and instead dealt with the assets in his own interest."  (Mem. Op. dated 1/31/11 at 8).  This conduct, as plaintiffs contend, is unquestionably the kind that this Court seeks to deter.  Thus, this Court finds that this third factor weighs in favor of plaintiffs.

4.   *Benefit Conferred on Plan Members as a Whole*

In examining the fourth factor, the Court must determine "whether there were any other plan members who received a benefit, and if so how many.  In other words, the factor calls for the examination of a benefit to others, not of a benefit to all others."  *Smith*, 2003 WL 22734320, at *4.  *See McPherson*, 33 F.3d at 256 (noting that "[t]he fourth factor requires consideration of the benefit, if any, that is conferred on others by the court's judgment.")

Plaintiffs contend that the final judgment for compensatory damages entered against defendant, which exceeded $4 million, represents 100% of the actual loss to the Plan.  (Pl. Mov. Bf at 14).  According to plaintiffs, the final judgment award will directly benefit the Plan participants who were deprived of their monies due to defendant's unlawful conduct.  Plaintiffs further contend that an award of attorneys' fees and costs will ensure that the full amount of the award for compensatory damages is available to the Plan and its participants.  This Court agrees.

Plaintiffs filed this action as trustees of the Plan.  Although it is unclear how many participants of the Plan there are, there is no doubt that other participants, if not all of them, were deprived of their monies resulting from defendant's conduct.  The final judgment of more than

$4 million as compensatory damages will directly benefit the plan and its participants. Accordingly, this Court finds that this factor weighs in favor of plaintiffs.

### 5.   *Relative Merits of the Parties' Positions*

In considering this factor, the Third Circuit has cautioned that "the fact that the defendants' positions have not been sustained does not alone put the fifth factor in the column favoring an award." *McPherson*, 33 F.3d at 258.  The Court in *McPherson* went on to acknowledge that "there will be cases in which the relative merits of the positions of the parties will support an award even in the absence of bad faith litigating." *Id.*  The Court finds that the factual record in this case supports such an award, absent proof of the defendant's bad faith.

Throughout the case, the Court has rejected defendant's contention that plaintiff's ERISA breach of fiduciary claims are time-barred, finding this argument lacks merit.  In contrast, the Court has granted summary judgment to the plaintiffs on their ERISA breach of fiduciary duty claims and on the issue of defendant's liability for compensatory damages, finding there was no genuine issue for trial.  Indeed, the Third Circuit affirmed the district court.  In short, in this Court's view, this was not a close case on the merits.  The Court therefore finds that the fifth factor weighs in favor of granting an award in connection with entry of final judgment and the appeal.

In sum, having found that all five of the *Ursic* factors weigh in favor of plaintiffs, and given the exceptional circumstances surrounding defendant's unlawful conduct and plaintiffs' substantial efforts to uncover the wrongdoing and obtain a significant judgment against defendant, this Court concludes that plaintiff is entitled to an award of reasonable attorney's fees in connection with entry of final judgment by the district court and defending the appeal.  The

14

Court next considers the reasonableness of plaintiffs' request for fees and costs.

**C.    Reasonableness of the Fee Award: Legal Standard**

To determine the amount of reasonable fees, the Court must calculate the "lodestar" amount by multiplying the attorney's reasonable hourly rate by the number of hours reasonably spent. *Interfaith Cmty. Org.*, 426 F.3d at 703 n.5.  The moving party, here plaintiff, bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed. *Washington v. Philadelphia County Court*, 89 F.3d 1031, 1035 (3d Cir. 1996). *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

"If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the [fee] request." *Interfaith Cmty. Org.*, 426 F.3d at 703 (quoting *Rode*, 892 F.2d at 1183).  Once opposed, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable." *Id.* at 703.

The court has significant discretion in determining the lodestar amount; however, once it is determined, the lodestar amount is presumably reasonable. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).  *See Rode* 892 F.2d at 1183.  After the lodestar amount has been calculated, either party may seek adjustment. *Id.*  In its discretion, the court may increase or decrease the lodestar "'if the lodestar is not reasonable in light of the results obtained.  This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are unrelated to the litigation of the successful claims.'" *Apple Corps. Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp.2d 480, 485 (D.N.J. 1998) (quoting *Rode*, 892 F.2d at 1183).

**D.    Hourly Rates**

The proper starting point for calculating the reasonable hourly rate is the "prevailing

15

market rates in the relevant community." *Interfaith Cmty. Org.*, 426 F.3d at 703.[10]  The district court should "determine the currently prevailing rates in the community for comparable legal services at the time the fee petition was filed." *Lanni*, 259 F.3d at 150.  "[T]o determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* at 426 F.3d at 708 (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir.2001)).

Attorneys may not rest on their own affidavits to support a party's claim of reasonable fees; rather, they must submit evidence that the requested rates fall within the norm of attorneys in the relevant community.  *See Rode*, 892 F.2d at 1183;  *see also P.G. v. Brick Twp. Bd. of Ed.*, 124 F. Supp. 2d 251, 261 (D.N.J. 2000).  In determining a reasonable hourly rate, the Court must first examine "the attorney's usual billing rate, but this is not dispositive." *Loughner*, 260 F.3d at 180 (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).  *See Blum*, 465 U.S. at 896 n.11 (noting that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested

---

[10] The parties do not dispute the standard for calculating fees in that the "relevant community" in this matter is the State of New Jersey.  *See Interfaith Cmty Org.*, 426 F.3d at 705 (noting that the "forum rate rule permits an attorney to claim the prevailing rate for services rendered in the forum of the litigation".)

Consistent with the Third Circuit's reliance on the "forum rate rule," this Court concludes that the State of New Jersey is the relevant community for purposes of calculating the reasonable hourly rate in this case.  Accordingly, as set forth herein, the Court will analyze the reasonableness of plaintiffs' counsel's hourly rates, consistent with the prevailing rates in New Jersey for similar services performed by attorneys.

rates are in line with" the prevailing market rate).

Here, the hourly rates of plaintiffs' attorneys and support staff, who were involved with

the district court action, are as follows:

1.   Joy M. Mercer, P.C. ("Mercer firm") attorney Joy Mercer - $375
and $390; and paralegal Debra Russenberger - $125 and $130[11];

2.   Attorney Charles Detrizio of the Riker Danzig law firm ("Riker firm") -
$375 and $410[12];

3.   Witman Stadtmauer, P.A. firm ("Witman firm") attorneys Stephen
Charme - $350 and $400, Leonard Witman - $450 and $475,
Lewis Cohn - $300, Tara Sinha - $225 and $250, and paralegal
Arlene Greenwald - $130;[13] and

4.   Law firm of Carella, Byrne, Cecchi, Olstein, Brody & Agnello,
P.C. ("Carella firm") attorneys John Agnello - $500, Melissa Flax -
$400, Eric Magnelli - $250 and $300, Brian Fenlon - $350, and
Khoren Bandazian - $350; and paralegals Laura Tempesta - $105
and $125, Ellen Josephson - $125, Sue Vicarisi - $125;[14]

In support of their request for attorney's and consultant fees, plaintiffs submit the

---

[11] Ms. Mercer's and Ms. Russenberger's hourly billing rates were $375 and $125,
respectively, from October 2007 through December 2007 and from May 2008 through July 2008.
Their hourly billing rates increased to $390 and $130, respectively, from January 2008 through
April 2008.  (John Agnello Declaration, ¶ 120).

[12] Mr. Detrizio's hourly billing rate was $375 in August 2007.  In September 2007, his
rate increased to $410.  (John Agnello Declaration, ¶ 121).

[13] A review of Mr. Agnello's supporting declaration reveals that the individual hourly
rates for attorneys Charme, Witman and Sinha increased during the course of the litigation.
(John Agnello Declaration, ¶ 122).  However, as a courtesy to plaintiffs, attorney Charme's
hourly rates were discounted by $50/hour throughout the case.  (Anthony Casella Declaration at ¶
7).

[14] A review of Mr. Agnello's supporting declaration reveals that the individual hourly
rates for attorney Magnelli and paralegal Tempesta increased during the course of the litigation.
(John Agnello Declaration, ¶ 123 and Exh. C attached thereto).

17

declaration of John Agnello from the Carella firm.  Mr. Agnello's supporting declaration, however, does not detail the prevailing rates for New Jersey attorneys comparable to those of plaintiffs' attorneys in this case.  Plaintiffs also submit excerpts from a 2010 survey released by the National Law Journal outlining high, low, and average billing rates for partners and associates at five New Jersey law firms.[15]  (*See Billing Survey*, National Law Journal, annexed to Pl. Mov. Bf at Exh. A).  According to the survey, the highest hourly rates for partners and associates in four reputable north Jersey law firms are $825 and $405 (McCarter & English), $790 and $450 (Gibbons), $825 and $575 (Lowenstein Sandler), and $550 and $275 (McElroy, Deutsch, Mulvaney & Carpenter).  *Id.*

Both plaintiffs and defendant urge this Court to apply the snapshot of hourly rates of partners and associates outlined in the National Law Journal survey.  Plaintiffs contend that their counsels' hourly billing rates ($350-$500 for partners and $225-$300 for associates) are well within the range of hourly rates charged by the five comparable firms outlined in the survey.

Defendant, on the other hand, asks the Court, without offering any explanation, to apply the actual average hourly rates of attorneys at the McElroy firm, which is $280 for partners and $190 for associates, rather than examine the range of high and low hourly rates of all five firms.

---

[15] In connection with the appeal, only attorneys Agnello, Flax, Bartlett and Magnelli from the Carella firm and attorney Charme from the Witman firm as well as paralegal Tempesta from the Carella firm were involved.  Additionally, the hourly rates of those partners who were involved ranged from $400 to $500, and the hourly rate of the one associate, Mr. Magnelli who worked on the appeal, was $300.  (Appellees' Application of 4/5/12 at ¶15).  Finally, in support of their fee petition for the appellate work, plaintiffs submit an excerpt from a 2011 survey released by the National Law Journal outlining high, low, and average billing rates for partners and associates at four north Jersey law firms.  (Agnello 4/5/12 Decl., at Exh. N).  As the same standard governs for determining the appropriateness of a fee award in connection with both the entry of final judgment and the appeal, the Court's analysis as to the reasonable hourly rates is collapsed into a single step.

(Def. Opp. Bf. at 21-22).   Furthermore, as detailed below, defendant argues that it would be

unfair to require him to pay for plaintiffs' choice to employ multiple firms to litigate this action,

beginning in May 2010.  A such, defendant contends that plaintiffs should have to forfeit their

right to collect any fees and costs of the Carella attorneys who were retained in May 2010.  Yet,

to the extent this Court disagrees, defendant submits that the reasonableness of the Carella firm

attorneys' hourly rates also should be reduced, consistent with the average hourly billing rates of

the McElroy firm.  Finally, defendant requests, without any authority, that the requested hourly

rates of paralegals be reduced from $125-$130 to $70.  *Id.* at 22.

   As detailed above, it is the initial burden of the party requesting fees, here plaintiffs, to

"produce sufficient evidence of what constitutes a reasonable market rate for the essential

character and complexity of the legal services rendered. . . ."  *Federal Trade Commission v.*

*Circa Direct LLC*, 2012 WL 6568417, at *5 (D.N.J. Dec. 17, 2012).  In satisfying a prima facie

case of reasonable fees, attorneys may not rest on their own affidavits.  *See Rode*, 892 F.2d at

1183.  "Once a district court finds that the prevailing party has failed to sustain its burden with

respect to a reasonable market rate, it must use its discretion to determine the market rate."  *L.J.*

*v. Audubon Board of Ed.*, 373 F. App'x 294, at *3 (3d Cir. Apr. 9, 2010) (citing *Washington*, 89

F.3d at 1036) ("In the absence of such a showing, the district court must exercise its discretion in

fixing a reasonable hourly rate.")

   Here, there is no dispute that New Jersey is the relevant legal market in assessing

reasonable market rates.  Plaintiffs bear the initial burden of establishing that their requested

hourly rates are reasonable for that market.  If they satisfy that burden, then the burden shifts to

defendant to rebut the reasonableness of the proposed fees with actual evidence.  *See Apple*

*Corps. Ltd.*, 25 F. Supp.2d at 485 n.4.

Here, plaintiffs did not submit affidavits from other litigators who have practiced in New Jersey to support the reasonableness of plaintiffs' counsels' hourly rates as compared with other litigators possessing similar skills and experience.[16]  Rather, plaintiffs rely on Mr. Agnello's declaration and the National Law Journal survey.  However, although the rates of Mr. Agnello and each of his co-counsel appear reasonable, several courts within this district, including the undersigned, have declined to rely on this billing survey as a reliable source in determining the reasonableness of an attorney's hourly rate.  *See, e.g., Westberry v. Commonwealth Financial Systems,* Inc., 2013 WL 435948 at *3 (D.N.J. Feb. 4, 2013); Federal *Trade Commission*, 2012 WL 6568417, at *6; *United States ex rel. Steven Simring v. University Physician Associates, et al.*, Civ. No. 04-3530 (PGS), at 8 n.5 (D.N.J. Oct. 2, 2012) (Dkt. No. 117); *Freid v. Nat'l Action Fin. Servs., Inc.*, 2011 WL 6934845, at *6-7 (D.N.J. Dec. 29, 2011).

As such, the Court must turn to recent cases within this district to determine the prevailing market rate.  Significantly, the Court's own research has revealed complex litigation cases wherein the courts determined that a range of hourly fee rates, comparable to the ones requested in this case, were reasonable.  *See, e.g., Jama v. Esmor Correctional Servs., Inc.*, 577 F.3d 169, 181 (3d Cir. 2009) (Third Circuit noting that fees ranging from $600 for a partner to $205 for a first-year associate were reasonable hourly rates in a Religious Freedom Restoration

---

[16] The Court further notes that defendant offers no evidence to support different hourly rates.  He merely challenges the claimed hourly rates of all of plaintiffs' attorneys, which is insufficient to contest the proposed rates.  *See Lanni*, 259 F.3d at 150 (The opposing party may challenge the reasonableness "only with appropriate record evidence . . . . [I]t is not enough merely to contest the claimed hourly rate.").

Act case); *In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (in consumer class action suit, Judge Debevoise determined that the hourly rates up to $750 for partners and $560 for associates were reasonable); *Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations*, 2011 WL 2293334, at *2 (D.N.J. Jun. 7, 2011) (in complex insurance litigation, former Chief Judge Brown noted that hourly rates up to $540 for partners, $360 for associates, and $162 for paralegals were reasonable); *Aerogroup Internat'l, Inc. v. Ozburn-Hessey Logistics, LLC*, 2011 WL 1599618, at * 2-3 (D.N.J. Apr. 27, 2011) (Judge Wigenton affirming the undersigned's determination that hourly rates of up to $625 for partners, $340 for associates, and $160 for para-professionals are within the arena of reasonable rates); *Bloomfield Condominium Associates, LLC v. Drasco*, 2010 WL 26452465, at *1 (D.N.J. Jun. 25, 2010) (Judge Hayden accepting hourly billing rates of $400 and $600 for partners in a §1983 and violation of due process case); *Nat'l Elec. Benefit Fund v. Starko Elec. Servs., Inc.*, 2010 WL 1049980, at * 4 (D.N.J. Mar. 16, 2010) (Judge Greenaway determining that in ERISA action hourly billing rates up to $650 for partners, $425 for associates, and $200 for paralegals were reasonable).

In his declaration, Mr. Agnello details the billing rate and amount of hours charged by each attorney representing plaintiffs, the level of experience for each particular attorney, and a sufficient description of each attorney's activities during the relevant billing cycles (*i.e.*, through April 2012).  Consistent with the Third Circuit's guidance and other hourly rates approved by courts in this district, the Court finds that plaintiffs' counsel's requested rates for attorney's fees in this complex ERISA and pension fund litigation are reasonable.  I am satisfied that the requested hourly billing rates for each of their attorneys, ranging from $350-$500 for partners;

$225-$300 for associates; and $105-$130 for paralegals, are well within, if not below, the

prevailing rates of New Jersey.  These rates reflect the experience and skill of the lawyers

involved and are comparable to rates that courts have approved in similarly complex civil cases

within New Jersey.  Accordingly, the Court approves the requested rates in determining the

reasonableness of the amount of fees in connection with the final judgment in this action and the

appeal of same.

     **E.**    **Time Expended**

     Once a reasonable hourly rate is determined, the Court must next consider whether the

time expended is reasonable.  As noted above, under *Rode*, the party requesting fees must meet

its initial burden by "'submit[ting] evidence supporting the hours worked and rates claimed.'"

*Rode*, 892 F.2d at 1183 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The court

should exclude "hours that are not 'reasonably expended' by virtue of excessiveness,

redundancy, or lack of necessity." *Mosaid Techs, Inc.*, 224 F.R.D. at 597 (quoting *Rode*, 892 F.2d

at 1183).  *See Public Int. Research Group of N.J.*, 51 F.3d at 1188.  However, "[i]n a statutory

fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief

with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."

*Rode*, 892 F.2d at 1183 (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.

1989)).

     **1.**    *Time Expended In Litigating The District Court Action*

     In determining whether the hours expended by plaintiffs' attorneys are reasonable, this

Court considers defendant's contention that the following tasks performed by the Witman firm

were unnecessary:  (1) plaintiffs' unsuccessful motion seeking Rule 11 sanctions; and (2)

plaintiffs' request for entry of default against defendant and opposition to defendant's motion

seeking to vacate entry of default.  The Court further considers defendant's objection to

plaintiffs' retention of two law firms, the Witman and Carella firms.[17]

As detailed below, this Court determines that none of defendant's challenges are well-

founded.  Contrary to defendant's assertions, the factual and legal issues were complex in this

action, warranting the expertise of multiple seasoned ERISA litigators.  Indeed, the complexity of

the factual record and legal issues presented in dispositive and non-dispositive motion practice

throughout the litigation as well as the result obtained in plaintiffs' favor evidence the enormity

of the work needed to be performed by counsel.

a.      Plaintiffs' Unsuccessful Sanctions Motion

First, defendant contends that plaintiffs' motion for sanctions was unsuccessful, and thus

should be deducted from any fee award.  According to defendant, he had a reasonable good faith

basis to move to dismiss the complaint because plaintiffs' complaint failed to allege affirmative

or active concealment of fraudulent activity.  Plaintiffs filed the motion for sanctions, arguing

that defendant frivolously filed the motion to dismiss solely to harass plaintiffs, unnecessarily

delay the case, and drive up costs.  Plaintiffs contended that defendant, in filing the motion to

dismiss, ignored several relevant allegations in the complaint that supported their position that

---

[17] Significantly, as defendant does not raise any challenges to the time expended by attorneys or paralegals at either the Mercer firm or the Riker firm, this Court recommends awarding the total fees sought by plaintiffs for attorneys Joy Mercer and Charles Detrizio and paralegal Debra Russenberger. *See Interfaith Cmty. Org.*, 426 F.3d at 703 (internal quotation omitted) ("If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the [fee] request.").  Similarly, defendant does not challenge any of the costs or expenses incurred by plaintiffs or their counsel, and thus, the Court recommends awarding the total costs and expenses requested.

defendant affirmatively and actively concealed his fraudulent activity.  Judge Martini denied

defendant's motion to dismiss, disagreeing with defendant's reading of the complaint.  Judge

Greenaway, however, denied plaintiff's sanctions motion, finding there was no showing of

improper conduct on the part of defendant in moving to dismiss.

"[T]he Supreme Court has rejected the notion that the fee award should be reduced

'simply because the plaintiff failed to prevail on every contention raised in the law suit.'" *Blum v.*

*Witco Chemical Corp.*, 829 F.2d 367, 378 (3d Cir. 1987) (quoting *Hensley*, 461 U.S. at 435).

"The result is what matters."  *Id.*

Here, although plaintiffs' motion for sanctions was dismissed, Judge Brown subsequently

granted summary judgment in favor of plaintiffs based, in part, on finding that defendant took

affirmative steps to conceal his breach of fiduciary duty (as initially alleged by plaintiffs in the

complaint).  Judge Brown also granted summary judgment on the issue of defendant's liability

for compensatory damages, finding there was no genuine issue for trial.  As such, plaintiffs' lack

of success on their sanctions motion does not warrant a reduction of fees.  *See Blum*, 829 F.2d at

378 ("The mere failure of certain motions . . . is insufficient to warrant a fee reduction under

*Hensley*.")

   b. <u>Plaintiffs' Request for Default Entry</u>

The Court reaches the same conclusion in connection with defendant's request for a fee

reduction based on plaintiffs' request for entry of default, which was ultimately vacated.  On May

7, 2008, defendant filed a motion to dismiss in lieu of filing an answer.  On June 24, 2008, Judge

Martini filed an Order, and separate Opinion, denying defendant's motion to dismiss.  Pursuant

to Fed. R. Civ. P. 12(a)(4)(A), defendant was obligated to serve his responsive pleading within

ten (10) days of being notified of the Court's Order, denying the motion to dismiss.  Defendant did not timely file a response.  On July 16, 2008, plaintiffs requested, and the Clerk of this Court filed, an entry of default against defendant.  On July 21, 2008, defendant moved to set aside the default entry, which plaintiffs opposed.  Judge Greenaway granted defendant's motion.

In support of his request to reduce the fee award, defendant contends that plaintiffs improperly and unnecessarily sought entry of default.  According to defendant, at the time his responsive pleading became overdue, plaintiffs should have extended a courtesy telephone call to inquire about the status of filing his answer.  This Court disagrees.

While under this district's local rules, lawyers owe their adversaries, among other things, a duty to respect, as well as courtesy and fair dealing, such obligations do not include reminding opposing counsel of filing deadlines for court submissions.  Indeed, defense counsel alone beared the responsibility of timely filing a responsive pleading consistent with the federal rules.  When he failed to do so, plaintiffs were completely within their rights to seek entry of default, which was entered.  Furthermore, although Judge Greenaway vacated default entry, finding that based on the facts alleged, "if established, would constitute a meritorious defense to Plaintiffs' breach of fiduciary duty claims," (Op. 2/5/09 Dkt. 24), this Court finds that Judge Greenaway's ruling does not warrant a fee reduction because ultimately Judge Brown found a meritorious defense was lacking based on the factual record.

c.     <u>Plaintiffs' Retention of Two Law Firms</u>

Finally, this Court addresses whether plaintiffs' retention of a second law firm, the Carella firm, beginning on May 6, 2010 to serve as lead counsel, is compensable as part of any reasonable fee award.  Defendant contends that he should not be required to bear the unjust cost

25

of reimbursing time expended by two law firms.  In seeking reimbursement for both firms' fees, plaintiffs claim that defendant's massive fraudulent pension fund scheme, his dilatory litigation tactics, and the difficulty in attempting to collect a judgment against him required the efforts of both the Carella and Witman firms.  Plaintiffs further claim that these attorneys, lead by the Carella firm, performed only necessary work to obtain the relief sought.  Finally, plaintiffs point out that defendant has not met his burden of providing sufficiently specific objections to challenge the work performed by both law firms, and thus no reduction is warranted on this basis.  This Court agrees.[18]

"[A] district court may not make *sua sponte* reductions to fee requests based on material facts not raised at all by the adverse party, because that would deprive the fee petitioner of notice of the need to offer evidence of reasonableness and because statutory fee litigation is adversarial."  *Taylor v. USF-Fed Star Exp., Inc.*, 212 F. App'x 101, at *8 (3d Cir. Dec. 21, 2006) (citing *Bell*, 884 F.2d at 720).  *See United States v. Eleven Vehicles*, 200 F.3d 203, 212 (3d Cir. 2000) (stating that "[o]nly with proper notice can the [fee] claimant know which [billing entries] . . . to defend as reasonable.").  In *Bell*, the Third Circuit noted "that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive."  *Bell*, 884 F.2d at 720.  Rather, the party challenging the fees must "identify both the general type of work being challenged and the specific grounds for contending that the hours were unreasonable."  *Taylor*, 212 F. App'x at *8 (citing *Bell*, 884 F.2d at 720).

Here, defendant's challenge consists of a general assertion in his opposition brief that it is

---

[18] The Court notes that defendant's objection is further called into question as the official docket reveals that he retained four separate firms to represent him during the pendency of this litigation.

unfair to force him to pay for plaintiffs' "extravagance" in retaining two law firms to represent them.  In support of this general objection, he simply calculates the number of hours spent by the Carella attorneys and paralegals as well as their total number of fees and costs as compared with those of the Witman firm attorneys. He, however, does not challenge with any specificity the type of work performed by the Carella attorneys, let alone why the hours claimed in any one area are unreasonable.  In short, where, as here, defendant raises only generalized conclusory objections to the time spent by the Carella firm, the Court may not award less in fees than requested by the petitioner. *Eleven Vehicles*, 200 F.3d at 211.  *See Smith v. Astrue*, 843 F. Supp.2d 486, 490 (D. Del. 2012);  *George-Jellison v. Commissioner of Social Security*, 2009 WL 1085283, at * 2 (D.N.J. Apr. 22, 2009).  Thus, the Court recommends that no reductions be made to the fee request.

### 2.    *Time Expended On Appeal*

Defendant/appellant ("defendant") concedes plaintiffs/appellees' ("plaintiffs") entitlement to reasonable attorney's fees in connection with defending the appeal.  However, defendant states that the amount of fees should be reduced as follows: (1) deduct the total seven hours spent by Mr. Charme of the Witman firm because the Carella firm, as lead counsel, was capable of handling all aspects of the appeal, and thus Mr. Charme's time was duplicative; (2) reduce the Carella's firm's total fees sought by 25% because they overstaffed the relatively simple work required to defend against the appeal.  Defendant also challenges the hourly rates of each of plaintiffs' attorneys.

In support of their fee petition, plaintiffs again properly address why the *Ursic* factors weigh in favor of an award of attorney's fees and costs in connection with the appeal.  They

further explain the reasonableness of their hourly rates, their work performed, and need for multiple attorneys to defend the appeal.

As to the application of the *Ursic* factors, the Court previously found that all five factors weigh in favor of plaintiffs, and thus they are entitled to an award of reasonable attorney's fees in connection with the appeal. (*See supra* discussion at 9-15). In support of its finding, the Court highlights the following observations. First, in connection with this appeal, defendant concedes plaintiffs' entitlement to reasonable attorney's fees and expenses.

As to the first factor, in affirming the district court's grant of summary judgment, the Third Circuit concluded that defendant's actions as sole trustee of the Plan constituted "fraudulent concealment," and his actions violated his fiduciary duties owed to the Plan's beneficiaries, (Third Circuit Op. at 8, 11), thus supporting a finding of defendant's culpability. As to the third factor regarding deterrence, the Court notes that absent an award of attorney's fees and expenses incurred by plaintiffs in defending against the appeal, the Plan will suffer an unfair loss, having expended $113,743.38 in fees and costs, which plaintiffs would not have incurred but for defendant's breach of his fiduciary duties. As to the fourth factor, successfully defending the appeal conferred a benefit on the members of the Plan, returning $4,117,464.65 to them, collectively. Finally, as to the fifth factor, the Third Circuit affirmed the final judgment in favor of plaintiffs in all respects. As such, it is clear that the Third Circuit did not afford any merit to defendant's legal arguments on appeal.

The Court next considers the reasonableness of plaintiffs' request for fees and costs. As previously noted, the Court have found that the requested hourly rates are reasonable in connection with the final judgment and the appeal of same.

28

As to the reasonableness of time expended, the Court finds, based on its review of the billing records, that the work performed was necessary to defend against the appeal.  Contrary to defendant's assertions, plaintiffs' counsels' work on appeal did not merely consist of filing an appellate brief that recycled the same arguments advanced in support of summary judgment at the district court level.  Rather, in specific cases, preparing an appellate brief can be an enormous undertaking.  Indeed, here, plaintiffs were required to defend the entire summary judgment record because, on appeal, defendant argued that Judge Brown erred in: (1) denying his motion to dismiss and motion for summary judgment on statute of limitations grounds; (2) granting plaintiffs' motion for summary judgment; (3) in failing to allow him to file a third-party complaint against APC; and (4) Judge Brown's calculation of compensatory damages. Furthermore, plaintiffs had to prepare and participate in Third Circuit mediation, prepare the instant Third Circuit fee application, and engage in communications and conferences between co-counsel.  In short, the Court finds that the work performed was necessary and appropriate, and thus does not recommend a reduction of fees on this ground.

Similarly, the Court finds that the use of multiple attorneys was both appropriate and reasonable given the amount of work required regarding the appeal.  First, the Court notes that defendant's objection to the 7.4 hours of work billed by Mr. Charme as being unreasonably duplicated of the work performed by the Carella firm lacks sufficient specificity as required by the Third Circuit.  *See Eleven Vehicles*, 200 F.3d at 211; *see also Bell*, 884 F.2d at 721.  In any event, after carefully reviewing counsels' billing entries, there does not appear to be any unreasonable duplication of efforts.  Rather, the minimal amount of time spent by Mr. Charme on the appeal seems to have been reasonably dedicated to preparing the appellate brief and

conferring with co-counsel regarding same.  Indeed, "not every duplication of a specific activity is unnecessary *per se.*"  *In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F. Supp. 445, 476 (E.D. Pa. 1995).   Accordingly, the Court does not recommend a reduction in fees on this basis.

## IV.   <u>CONCLUSION</u>

In light of the foregoing, the Court recommends that the District Court grant both of plaintiffs' fee applications, (Dkt. Entries 99 and 103-1), as requested without making any reductions.  As such, the Court recommends that plaintiffs be reimbursed by defendant, Dr. Mario Criscito for the following amount of reasonable attorney's fees, expenses and costs:

### A.    **Award In Connection With District Court Action**

<u>Joy M. Mercer, P.C.:</u>

| | |
|---|---|
| Legal Fees To Be Paid: | $ 58,835.50 |
| Costs To Be Paid: | $   5,245.52 |
| Total: | $ 64,081.02 |

<u>Riker Danzig:</u>

| | |
|---|---|
| Legal Fees To Be Paid: | $ 7,042.00 |
| Costs To Be Paid: | $     0.00 |
| Total: | $ 7,042.00 |

<u>Witman Stadtmauer:</u>

| | |
|---|---|
| Legal Fees To Be Paid: | $ 444,248.00 |
| Costs To Be Paid: | $   6,723.98 |
| Total: | $ 450,971.98 |

<u>Carella Byrne:</u>

| | |
|---|---|
| Legal Fees To Be Paid: | $ 411,681.50 |
| Costs To Be Paid: | $   6,305.79 |
| Total: | $ 417,987.29 |

Abar Pension Services, Inc. (Pension Consultants):

|  |  |
|---|---|
| Fees To Be Paid: | $ 27,978.00 |
| Costs To Be Paid: | $        0.00 |
| Total: | $ 27,978.00 |

Plaintiffs for third party vendor services[19]:

|  |  |
|---|---|
| Total Costs To Be Paid: | $ 6,346.84 |

| | |
|---|---|
| **Total Attorneys' Fees and Costs To Be Paid:** | $ 921,807.00 (attorney's fees) |
| | $   52,600.13 (costs) |

| | |
|---|---|
| **Total Attorneys' Fees and Costs Award:** | $ 974,407.13 (total) |

**B.     Award In Connection With Appeal**

As plaintiffs did not itemize the fees and costs individually sought by the Witman and Carella firms, the Court recommends that the total amount of fees and costs be awarded as follows:

| | |
|---|---|
| **Total Attorneys' Fees and Costs To Be Paid:** | $ 110,580.00 (attorneys' fees) |
| | $    3,163.38 (costs) |

| | |
|---|---|
| **Total Attorneys' Fees and Costs Award:** | $ 113,743.38 (total) |

---

[19] Plaintiffs directly paid the following third party vendors for services performed in connection with the district court action: (1) Lindabury McCormick for court appointed mediator services ($1,618.12); (2) Rosenberg & Associates and Miani Court Reporting for court reporting services ($1,054.00 and $3,031.70, respectively); and (4) MCD Solutions for electronic and hard copy document services ($643.02). *See* Agnello Decl. at 19 ¶ 71 and Exhs. F-I attached thereto).

The parties have fourteen (14) days from receipt hereof to file and serve objections.


*s/Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States Magistrate Judge**


DATED: April 3, 2013


cc:    Clerk
       Hon. Susan D. Wigenton, U.S.D.J.
       File